ARI D. KUNOFSKY
ERIN F. DARDEN
Trial Attorneys, Tax Division
U.S. Department of Justice
PO Box 227
Washington, DC 20044
Tel. (202) 353-9187
Fax (202) 514-6866
Ari.D.Kunofsky@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No.: 18-cv-15099-AET-LHG |
| | ) |
| SHANT HOVNANIAN, *et al*., | ) |
| | ) |
| Defendants. | ) |

**UNITED STATES' RESPONSE IN OPPOSITION TO**
**THE VSHPHH TRUST'S MOTION TO DISMISS**

The United States responds to the motion to dismiss of the VSHPHH Trust. (Dkt. 17, hereinafter "VSHPHH's Mtn.")

**PRELIMINARY STATEMENT**

Shant Hovnanian owes over $16 million of income tax liabilities for the years 2002, 2003, 2004, and 2007. (Dkt. 1, Compl. Count I.) The real property at issue is an office building located at 1 Dag Hammarskjold, which is commonly known as the Village Mall. Shant Hovnanian is the true and equitable owner of the Village Mall. He collects the rents from the Village Mall's tenants, and he pays the expenses related to that property from bank accounts under his control. Thus, the United States seeks to foreclose its federal tax liens against this property. (Compl., Counts III, V.)

To prevent the United States from collecting these taxes, Shant Hovnanian arranged with family members to have legal title to the Village Mall placed into the VSHPHH Trust.  While Shant Hovnanian was a trustee of the VSHPHH Trust when it was created, he resigned at a later date.  Even though the VSHPHH Trust holds legal title to this property and Shant Hovnanian is no longer the trustee, he continues to exercise control over the Village Mall and enjoy the benefits as the property's beneficial owner.  As a result, the federal tax liens associated with the $16 million of tax liabilities attach to the Village Mall, and the United States is entitled to foreclose on those liens against this property.

The VSHPHH Trust has moved to be dismissed as a party, arguing that the United States has failed to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  The Trust argues that as a matter of law it is not a nominee or alter ego because: (1) Shant Hovnanian did not transfer the Real Property to the Trust, (2) the Trust was not created for the illegal purpose of avoiding paying the taxes because Shant Hovnanian did not create the Trust, and (3) because Shant Hovnanian did not create the Trust or place the property in the Trust, the fact that he pays the expenses and collects all of the rental income from the property should be ignored.

The Trust's arguments are legally wrong.  At best, it is presenting factors for the Court to consider at a later date.  For purposes of this motion, the United States only needs to allege a facially plausible claim in its Complaint.  As explained below, the United States has met this low burden.  Thus, the motion to dismiss should be denied.

**ARGUMENTS**

**I. The Standard to Overcome a Motion to Dismiss is a Low One.**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the United States needs to merely allege a "facially plausible" claim. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This test is a low hurdle. *E.g., Filgueiras v. Portfolio Recovery Assocs., LLC*, 2016 WL 1626958, *10 (D.N.J. Apr. 25, 2016), *quoting Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Connelly,* 809 F.3d at 786, *quoting Iqbal*, 555 U.S. at 678. At the Rule 12(b)(6) stage, the United States is not required to make its *prima facie* case but merely show "enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Phillips v. City of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 556 (2007). The United States can surmount this low hurdle.

**II. The United States Has Stated A Plausible Claim.**

The Third Circuit stated in *United States v. Patras,* that "[a] third party is the taxpayer's nominee where 'the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership.'" 544 F. App'x 137, 141 (3rd. Cir. 2013), *quoting Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007). A nominee determination requires an analysis using a multi-factor test that applies for both federal and New Jersey law:

> (1) whether the nominee paid adequate consideration for the property;

    (2) whether the property was placed in the nominee's name in anticipation of a suit or other liabilities while the taxpayer continued to control ... the property;

    (3) the relationship between the taxpayer and the nominee;

    (4) the failure to record the conveyance;

    (5) whether the property remained in the taxpayer's possession; and

    (6) the taxpayer's continued enjoyment of the benefits of the property.

*Id.* at 141 (finding these same "corresponding factors" apply under New Jersey and other federal cases); *see also, Holman*, 505 F.3d at 1065 (using same six factors); *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 & n. 3 (9th Cir. 2013) (same).

    The lower courts have repeatedly held that these factors should **not** be applied rigidly or mechanically. *E.g., In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999) (applying the same test under Pennsylvania law). The court in *Patras* made a nominee determination when only five of the six factors had been met. *Patras*, 544 F. App'x at 142 (acknowledging the failure to record the conveyance factor had not been met). The overarching key to the nominee analysis is to determine whether a party has "active" or "substantial" control over the property. *E.g., In re Richards,* 231 B.R. at 579.[1]

    The United States has pleaded sufficient facts to support a determination that Shant Hovnanian is the true and beneficial owner of the Village Mall and that the Trust merely holds

---

[1] The Trust's motion draws a distinction between a nominee and alter-ego analysis. When dealing with nominee or alter-ego claims against a single piece of property, these tests are often collapsed. For example, the Third Circuit in *Bogart* recently noted that the two tests are distinct but found the "distinction has no bearing on this case" where a taxpayer's nominee or alter ego is holding a single piece of real property. *United States v. Bogart*, 715 F. App'x 161, 166 n. 4 (3d Cir. 2017). The Court then found that the United States met its burden under the *Patras* factors. For this opposition, the United States will focus primarily on the nominee test.

4

title as his nominee or alter ego.  Shant Hovnanian owes $16 million in taxes for tax years 2002, 2003, 2004, and 2007.  (Compl., ¶ 14.)

On December 28, 2012, Shant Hovnanian's parents created the VSHPHH Trust. (Compl., ¶ 29.)  At the time the VSHPHH Trust was created, all of the taxes at issue were due, and almost $4 million in federal taxes had already been assessed.  *Id.*, ¶ 14.  Shant and his sister (Defendant Nina Hovnanian) were named as co-trustees and their children were named as beneficiaries of the VSHPHH Trust.  *Id.*  Shant Hovnanian resigned as trustee at a later time.  *Id.*, ¶ 30.

On January 1, 2015, Shant Hovnanian's parents placed bare legal title to the Village Mall in the name of the VSHPHH Trust.  *Id.* ¶ 31.  By that time, all the taxes leading to the $16 million liability had been assessed.  *Id.*, ¶ 14.

Shant Hovnanian exercises active and substantial control over the Village Mall.  As the true owner of this property, Shant Hovnanian benefited from the property by receiving the rental income.  *Id.*, ¶¶ 33, 35.[2]  Shant Hovnanian also paid the expenses of the Village Mall from bank accounts under his control that were not associated with the VSHPHH Trust.  (Compl., ¶ 34.)  In short, Shant Hovnanian operates and manages the property while the Trust does nothing more than hold bare legal title.

Given these facts, the United States has stated a plausible claim under the Third Circuit's six-factor *Patras* test.  Legal title may have been transferred to the Trust, but Shant Hovnanian has remained in control of the property even after no longer being a trustee (factor 2).  There is a close relationship between Shant Hovnanian and the VSHPHH Trust because his parents created

---

[2] Even when Shant Hovnanian receives this income, he tried to conceal his connection to the Village Mall.  Shant Hovnanian has the tenants pay the rental checks to the order of his deceased father or a company he owns, and he deposits the checks in the company's bank account.  *Id.*

the Trust, he was originally named as a trustee, his children are some of the beneficiaries, and his sister is the current sole trustee (factor 3). Shant Hovnanian enjoys the benefits of this rental property by receiving the rent, and he also acts as the owner by paying the expenses. (factors 5 and 6).[3] Considering these factors together, the United States has stated a plausible claim that Shant Hovnanian exercises active and substantial control over the Real Property. As such, the Real Property is subject to the federal tax liens under either the nominee or alter-ego theory.

### III. The Trust's Three Arguments Fail.

The Trust makes three legal arguments that it alleges preclude a nominee or alter ego determination that would make repleading this matter impossible. As explained below, each of these theories fails.

#### A. There Is No Need For a Direct Transfer from Shant Hovnanian to the Trust.

The Trust erroneously asserts that as a matter of law it does not own the Real Property as Shant Hovnanian's nominee because he did not transfer it to the Trust. (VSHPHH's Mtn., pp. 19, 26 of 30.) Limiting nominee determinations to cases where there is a direct transfer by the taxpayer contradicts the repeated admonition that a nominee analysis should not be rigid or mechanical. *E.g., Magesty Sec. Corp. v. IRS*, 2012 WL 1425100, *4 (S.D.N.Y. April 24, 2012) (courts must "avoid an over-rigid preoccupation with questions of structure") (quoting *LiButti v. United States*, 107 F.3d 110, 119 (2d Cir. 1997). In fact, a direct transfer by the taxpayer was not

---

[3] If it is necessary to reach the alter-ego test, the United States has pleaded sufficient facts to show both a unity of interests between the VSHPHH Trust and Shant Hovnanian and an improper purpose. Shant Hovnanian pays the expenses associated with this property and takes the rental income generated by it. The Trust has not taken any action that would reflect an ownership interest beyond holding bare legal title. And the VSHPHH Trust was used to hide assets from the United States, which the Trust admits can be an improper purpose. (VSHPHH's Mtn. p. 17.)

6

a factor for finding a nominee under *Patras*.  Indeed, the person who transferred the property to the nominee in *Patras* was a bankruptcy trustee, not the taxpayer.  *Patras*, 544 F. App'x at 139.

Two other Courts of Appeal have considered this direct-transfer argument and rejected it.  The Tenth Circuit in *Holman* stated "[a]lthough in many instances the delinquent taxpayer will have transferred legal title to a third party, an actual transfer of legal title [by the taxpayer] is not essential to the imposition of a nominee lien."  505 F.3d at 1066.

The Second Circuit also rejected the Trust's argument under New York law.  In *United States v. Nassar*, the United States asserted that a trust was holding an apartment as the taxpayer's nominee.  *United States v. Nassar*, 699 F. App'x 46, 47 (2d Cir. 2017).  The taxpayer argued that he intended for the nominee to take title directly.  *Id*.  The Second Circuit held that "[e]ven if we were to accept the unsubstantiated contention that [the taxpayer] never intended to personally hold title to the apartment, we would conclude that, under the totality of the undisputed circumstances, [the taxpayer] is the beneficial owner of the apartment and the Trust is his bare legal title-holding nominee."  *Nassar,* 699 F. App'x at 48.  The Second Circuit's holding emphasizes that control over the property is the key concern, not the path the title took to reach the trust.

Given that the Trust's direct-transfer theory fails under the precedent in *Patras*, *Holman,* and *Nassar,* the Court should reject that theory.

### B. The Trust's Allegation That It Was Not Established For An Improper Purpose Falls Flat.

The VSHPHH Trust admits that transferring property to avoid a federal tax liability constitutes promoting a fraud or injustice.  (VSHPHH's Mtn., p. 17.)  The United States pleaded that the reason for placing the Real Property in the VSHPHH Trust was to avoid Shant

7

Hovnanian's tax liens.  (Compl., ¶ 32.)  Accordingly, the Complaint satisfies the pleading requirements.

The Trust argues, however, that a court applying New York law can only find a fraudulent or unjust purpose if the taxpayer himself forms the trust and funds the trust with his own assets.  (VSHPHH's Mtn. p. 19.)  This argument fails for three reasons.

First, New York law does not apply here.  When the United States seeks a declaration that a person holding legal title to real property is a taxpayer's nominee or alter ego, the law of where the real property is located will control.  *F.P.P. Entrp. v. United States*, 646 F. Supp. 713, 714, 417 (D. Neb. 1986); *Restatement (Second) Conflicts of Law* §§ 278(c), (e) (when property is held in a trust, the law of where the property is located governs who holds title and who can claim a lien on the property).

The Village Mall is located in New Jersey, so New Jersey law applies.  The Trust has not pointed to any New Jersey case law requiring the Court to cabin its view of the case to find a nominee or alter-ego situation when the taxpayer creates the trust.  The Second Circuit, however, in applying New Jersey law, noted that if a taxpayer "dominates and controls" an alter ego or nominee, then that taxpayer cannot "escape his tax liabilities" based on an "over-rigid" analysis regarding the entity that holds the property as the alter ego or nominee.  *LiButti*, 107 F.3d at 109.  Indeed, the overly rigid rule that the Trust proposes is inadvisable because it could be easily gamed by sophisticated taxpayers.  Any trust could defeat a nominee lien under the Trust's theory if the taxpayer had a strawman create the trust before he decided to engage in a patently improper tax shelter.  But this sort of gamesmanship should not be allowed to strike a federal tax lien blind even if it may pass muster under some state's law.  *E.g., Drye v. United States*,

8

528 U.S. 49, 58 (1999) (federal tax liens cannot be "struck blind" by state-law exemption statutes, retroactive renunciations of interests, or disclaimers of transferred interests).

Second, an improper purpose could exist even if Shant Hovnanian did not create the Trust. It is reasonable to infer here that Shant Hovnanian's parents created the VSHPHH Trust for the improper purpose of setting up a legal fiction to defeat their son's tax liens. Indeed, the sole purpose of the Trust appears to be nothing more than keeping legal title out of Shant Hovnanian's hands, even though Shant controls the Village Mall and enjoys the benefits derived from that property.

Third, the cases that the VSHPHH Trust relies on do not actually support the rule that the only time a nominee or alter ego situation can arise is if the taxpayer forms the trust. For example, the Trust relies heavily upon *United States v. Greer,* 383 F. Supp. 2d 861, 867-868 (W.D.N.C. 2005) to support the legal contention that no nominee or alter ego situation could occur if the taxpayer does not create the trust. (VSHPHH's Mtn, pp. 20-22.) In *Greer*, the mother of a taxpayer transferred property to a trust. *Greer,* 383 F. Supp. 2d at 865-866. The taxpayer was named as the trustee and was also one of several beneficiaries of the trust. *Id.* The United States asserted that the taxpayer acted as more than just a trustee or beneficiary, but had taken additional steps that made it appear as if he was the true and beneficial owner. *Id.,* at 864. At trial, the Court found the taxpayer was not the true and beneficial owner. *Id.* Instead, it held the taxpayer's actions generally fell within his role as a trustee and beneficiary, and any activities outside of that role were minor. *Id.*

The *Greer* case is readily distinguishable. First, the Trust ignores the procedural posture of the case. The *Greer* case was not considered under the Fed. R. Civ. P. 12(b)(6) standard. Instead, the court decided the matter after a trial on the merits. *Id.* Moreover, the Court made

9

numerous additional findings to show the taxpayer was not in exclusive control or benefit of the property. *Id., at* 867. The Court found that the taxpayer did not control the real property "in such a manner as to prevent the other Trust beneficiaries or other family members from using the Trust property." *Id*. Here, Shant Hovnanian is not a beneficiary, yet he receives the Village Mall's rental income. (Compl., ¶ 33 ("Shant Hovnanian … receives the rental income from this property through a company under his control.").) And Shant Hovnanian is in control of the Village Mall property even though he is no longer the trustee. The *Greer* case at best provides additional considerations for trial, but does not preclude the United States from stating a facially plausible claim. Accordingly, the motion to dismiss should be denied.

### C. The Fact that Shant Hovnanian Received Rental Income and Pays the Expenses of the Village Mall Is Relevant, Despite The Trust's Statements to the Contrary.

The Trust argues that it is not relevant that Shant Hovnanian receives the rental income and pays the expenses associated with the Village Mall because Shant Hovnanian never owned the property. (VSHPHH's Mtn., pp. 22-25, 27 of 30.) Thus, it argues the fact that Shant Hovnanian received the rental income may lead to a claim by the trust for breach of a fiduciary duty, but cannot constitute evidence of ownership. *Id*., p. 24. The Trust further argues that Shant's paying the expenses can only qualify as evidence of him being the beneficial owner if he was the prior owner of the property. *Id*., p. 23.

These arguments are nothing more than an effort to restate the direct-transfer rule. As explained above, nominee and alter-ego relationships are not limited to simple direct transfers.

The Trust repeatedly overstates its case, which countenances that this matter should be allowed to move forward. For example, the Trust cites to *In re Vebeliunas* for the proposition that paying the expenses related to the Real Property does not show an ownership interest.

10

(VSHPHH's Mtn., p. 23, *quoting In re Vebeliunas*, 332 F.3d 85, 92 (2d Cir 2003).)  But that case was decided after a trial, not on a Rule 12(b)(6) standard where all reasonable inferences are viewed in favor of the United States.  In addition, the debtor in *Vebeliunas* was a husband who lived in his wife's home, where the home was placed in the wife's trust.  *Id.*  The courts below held that the husband should be deemed an owner of the house because he lived in the house and he paid some of the household expenses.  *Id.*  But the Second Circuit reversed, holding that spouses have close and intertwined relationships, so cohabitation and sharing expenses did not indicate that the husband owned the property.  *Id.*  Here, we do not have an inherently close spousal relationship.  Instead, Shant Hovnanian alone does the work associated with running the rental property, receives its benefits, and bears the expenses, while the Trust holds bare legal title.

The Trust also cites to *Don Gastineau Equity Trust v. United States*, 687 F. Supp 1422, 1425 (C.D. Cal. 1987) for the proposition that paying expenses is only evidence of ownership if the taxpayer previously owned the property.  (VSHPHH's Mtn., p. 23.)  In *Don Gastineau*, a taxpayer transferred property to a sham trust.  *Don Gastineau*, 687 F. Supp. at 1425.  One factor the Court considered was that the taxpayer continued paying expenses related to the property as evidence that the taxpayer "retained the complete, unrestricted beneficial use of the real property."  *Id.*, p. 1425.  The Court did not hold that evidence of the payment of expenses can only be used in a case where the taxpayer was the prior owner; it merely was the way the court characterized the facts in a case involving a direct transfer.  In short, the VSHPHH Trust is taking language from the *Don Gastineau* case out of context.

In the end, the facts as pleaded show that Shant Hovnanian exercises active and substantial control even though he did not create the VSHPHH Trust or transfer his property to

11

the trust directly. Moreover, the United States has alleged sufficient facts, like the fact that Shant receives the rental income and pays the expenses associated with the Village Mall, to draw the reasonable inference that Shant Hovnanian is the true and equitable owner of the property. Accordingly, the motion to dismiss must be denied.

### IV. The Trust's Request to Deny Repleading Should Be Denied.

Dismissal of a complaint under Rule 12(b)(6) "without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). The Trust argues that it would be futile to replead because the United States has already admitted various facts that legally annul a nominee/alter-ego holding (like the fact that his parents created the VSHPHH Trust). We disagree with this legal analysis as explained above. Any argument about futility accordingly fails.

### CONCLUSION

For the foregoing reasons, the VSHHPHH Trust's motion to dismiss should be denied.

Date: March 4, 2019,

                                      Respectfully submitted,

                                      RICHARD E. ZUCKERMAN
                                      Principal Deputy Assistant Attorney General
                                      Tax Division

                                      */s/ Ari D. Kunofsky*_____
                                      ARI D. KUNOFSKY
                                      ERIN F. DARDEN
                                      Trial Attorney, Tax Division
                                      U.S. Department of Justice
                                      Post Office Box 227
                                      Washington, D.C. 20044
                                      Telephone: (202) 353-9187
                                      Facsimile: (202) 514-6866
                                      Email: Ari.D.Kunofsky@usdoj.gov
                                      *Counsel for the United States*