<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES of AMERICA, | |
| Plaintiff, | Civ. No. 18-15099 |
| v. | |
| SHANT HOVNANIAN, PETER HOVNANIAN, in his capacity as trustee for the Pachava Asset Trust, NINA HOVNANIAN, both in her individual capacity and as trustee for the VSHPHH Trust, ADELPHIA WATER COMPANY, INC., MTAG SERVICES, LLC, ULYSSA ASSET SUB II, LLC, and TOWNSHIP OF HOWELL, | OPINION |
| Defendants. | |

<u>THOMPSON, U.S.D.J.</u>

**<u>INTRODUCTION</u>**

      This matter comes before the Court on two Motions to Dismiss brought by Defendant

Nina Hovnanian ("Nina") in her capacity as trustee for both the VSHPHH Trust and the Pachava

Asset Trust (the "Pachava Trust") (collectively, the "Trusts"). (VSHPHH Mot., ECF No. 17;

Pachava Mot., ECF No. 18 (collectively, the "Motions to Dismiss").)[1] Plaintiff United States of

America (the "Government") opposes both Motions. (VSHPHH Opp'n, ECF No. 20; Pachava

Opp'n, ECF No. 21.) The Court has decided the Motions after considering the written

---

[1] Plaintiff originally brought this action against Peter Hovnanian in his capacity as trustee for the Pachava Trust. However, on January 13, 2017, Peter Hovnanian resigned as trustee. (Pachava Mot. at 6 n. 2.) The parties have stipulated that Nina Hovnanian is substituted for Peter Hovnanian as trustee for the Pachava Trust and that Peter Hovnanian is dismissed as a Defendant in this action. (*See* Stipulation ¶ 5, Ex. D, ECF No. 18-1.)

submissions of the parties without oral argument pursuant to Local Civil Rule 78.1(b).  For the following reasons, the Court denies both Motions to Dismiss.

## BACKGROUND

In this action, the Government assesses that Defendant Shant Hovnanian ("Shant") owes $16,209,389.00 in income tax, penalties, and interest associated with tax years 2002, 2003, 2004, and 2007.  (Compl. ¶¶ 14–17, ECF No. 1.)  The Government seeks to attribute two pieces of real property to Defendant Shant: 520 Navesink River Road, Middletown Township, New Jersey (Block 1043, Lot 67.02) (the "Navesink Property"); and 1 Dag Hammarskjold Boulevard, Freehold, New Jersey (Block 143, Lot 25.04) (the "Village Mall Property").[2]  As a result, the Government also seeks to attach federal tax liens and foreclose on these pieces of real property in order to satisfy Defendant Shant's income tax liability.  (*Id.* ¶¶ 18–35, 43–49.)

I.     **The VSHPHH Trust and the Village Mall Property**

The VSHPHH Trust was settled by Defendant Shant's parents on December 28, 2012.  (Ex. A, ECF No. 17-1 ("VSHPHH Trust Agreement"); Compl. ¶ 29.)  Defendant Shant and his sister, Defendant Nina, were named as co-trustees initially, but now Defendant Nina is the only trustee of the VSHPHH Trust.  (Compl. ¶¶ 29–30.)  The children of Defendant Shant and Defendant Nina are the only beneficiaries.  On January 1, 2015, Defendant Shant's parents transferred ownership of the Village Mall Property, an office building with several rented units, to the VSHPHH Trust.  (*Id.* ¶ 31.)

---

[2] The Government also alleges that Defendant Shant is the true and equitable owner of another piece of real property, 572 Wyckoff Mills Road, Howell Township, New Jersey (Block 143, Lot 26.01), through Defendant Adelphia Water Company, Inc. (Compl. ¶¶ 36–42), but that allegation is outside the scope of the Motions to Dismiss.

2

The Government alleges that although the VSHPHH Trust holds bare legal title to the Village Mall Property, Defendant Shant is the true and equitable owner, and thus the transfer to the VSHPHH Trust was an attempt to avoid encumbering the property with Defendant Shant's federal tax liens.  (*Id.* ¶ 32.)  Defendant Shant pays both the municipal taxes and utility bills associated with the Village Mall Property.  (*Id.* ¶ 34.)  He also receives rental income from it, even though the tenants direct their payments to Defendant Shant's father, who died in August 2015.  (*Id.* ¶¶ 33, 35.)  Defendant Shant deposits these rent checks in a bank account under HovSat, Inc., which the Government alleges that Defendant Shant controls.  (*Id.* ¶ 35.)  The Government asserts that the VSHPHH Trust is the nominee or alter ego of Defendant Shant, and thus Defendant Shant is the true and equitable owner of the Village Mall Property.  (*Id.* ¶ 27.)

## II.    The Pachava Trust and the Navesink Property

On October 8, 2007, Defendant Shant settled an irrevocable trust, the Shant S. Hovnanian Asset Trust, for the benefit of his children.  (*See* Exs. A–B, ECF No. 18-1 ("Pachava Trust Agreement").)  On June 21, 2011, Defendant Shant's mother transferred ownership of the Navesink Property to the Shant S. Hovnanian Asset Trust.  (Compl. ¶ 19.)  On October 11, 2011, the Shant S. Hovnanian Asset Trust changed its name to the Pachava Trust, and on December 16, 2011, the Shant S. Hovnanian Asset Trust filed a corrective deed purporting that the Pachava Trust owns the Navesink Property.  (*Id.* ¶¶ 19–20.)

The Complaint alleges that although the Pachava Trust holds bare legal title to the Navesink Property, Defendant Shant "is the true and equitable owner."  (*Id.* ¶ 22.)  More specifically, it contends that the transfer of the Navesink Property "was an attempt to avoid encumbering the property with the federal tax liens, which [had] attached to all of [Defendant Shant]'s property."  (*Id.* ¶ 21.)  Defendant Shant resides on and receives his mail at the Navesink

Property, and he pays its municipal taxes and utility bills directly from bank accounts under his control. (*Id.* ¶¶ 23–25.) The Government asserts that the Pachava Trust is the nominee or alter ego of Defendant Shant, and thus Defendant Shant is the true and equitable owner of the Navesink Property. (*Id.* ¶ 27.)

## III.    Subsequent Proceedings

On January 16, 2018, the Government filed a notice of federal tax lien in the Office of the County Clerk of Monmouth County against Defendant Shant for his unpaid federal income taxes. (*Id.* ¶¶ 47, 49, 50.) The Government listed both the Pachava Trust and the VSHPHH Trust as his nominees. (*Id.* ¶¶ 47, 49.) On October 18, 2018, the Government filed this action seeking an order that it has valid federal tax liens against the Navesink Property and the Village Mall Property and that the liens may be foreclosed against such properties. (*Id.* at 11.)

On February 12, 2019, Defendant Nina, in her capacity as trustee, filed the Motions to Dismiss urging dismissal for both the Pachava Trust and the VSHPHH Trust. (VSHPHH Mot. at 1; Pachava Mot. at 1.) The Government opposed both Motions on March 4, 2019 (VSHPHH Opp'n at 1; Pachava Opp'n at 1), and Defendant Nina replied in support of both Motions on March 11, 2019 (VSHPHH Reply, ECF No. 22; Pachava Reply, ECF No. 23). The Motions to Dismiss are currently before the Court.

## <u>LEGAL STANDARD</u>

"To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a

plaintiff must plead to state a claim.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Second, the court

must accept as true all well-pleaded factual allegations and construe the complaint in the light

most favorable to the plaintiff.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir.

2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016).  But the

court may disregard any conclusory legal allegations.  *Fowler*, 578 F.3d at 203.  Finally, the

court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible

claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).  A complaint which does not

demonstrate more than a "mere possibility of misconduct" must be dismissed.  *See Gelman v.*

*State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at

679).

 Although a district court generally must confine its review to the pleadings on a Rule

12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types

of material" beyond the pleadings without converting the motion to dismiss to a motion for

summary judgment.  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir.

1999).  The Court may consider "matters incorporated by reference or integral to the claims,

matters of which the Court may take judicial notice, matters of public record, orders, and other

items of record in the case."  *Blue Sky 1, LLC v. Jaguar Land Rover N. Am., LLC*, 2016 WL

6803081, at *4 (D.N.J. Nov. 16, 2016).  Additionally, "a district court may examine an

'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if

the plaintiff's claims are based on the document.'"  *In re Rockefeller*, 184 F.3d at 287 (quoting *In*

*re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).[3]

---

[3] The Trusts rely on several documents found outside the Complaint—namely, the Trusts'
formation documents.  (*See, e.g.*, VSHPHH Trust Agreement; Pachava Trust Agreement.)  The
"primary problem raised by looking to documents outside the complaint—lack of notice to the

**DISCUSSION**

The Government seeks to foreclose tax liens against both the Navesink Property and the

Village Mall Property.

> [W]here there has been a refusal or neglect to pay any tax, the United States may
> direct a civil action to be filed in a district court . . . to enforce [a] lien . . . with
> respect to such tax . . . or to subject any property . . . of the delinquent . . . to the
> payment of such tax or liability.

26 U.S.C. § 7403(a), (c).  This right of foreclosure also extends to property held by a taxpayer's

nominee "[w]here a property owner is acting as a nominee or alter ego for a taxpayer."  *See*

*United States v. Patras*, 909 F. Supp. 2d 400, 410 (D.N.J. 2012) (citing *G. M. Leasing Corp. v.*

*United States*, 429 U.S. 338, 351 (1977)).  The district court is tasked with determining "whether

property should be construed as belonging to the taxpayer if he/she treated and viewed the

property as his/her own, in spite of the legal machinations employed to distinguish legal title to

the property."  *United States v. Balice*, 2017 U.S. Dist. LEXIS 126448, at *27 (D.N.J. Aug. 9,

2017) (quoting *In re Richards*, 231 B.R. 571, 578 (E.D. Pa. 1999)).  The Third Circuit has

explained:

> If the property is under the control of a third party found to be the delinquent
> taxpayer's nominee or alter ego, it can be subject to [the taxpayer's] lien.  A third
> party is a taxpayer's nominee where the taxpayer has engaged in a legal fiction by
> placing legal title to property in the hands of [that] third party while actually
> retaining some or all of the benefits of true ownership.

*United States v. Patras*, 544 F. App'x 137, 140–41 (3d Cir. 2013).

---

plaintiff—is dissipated" where the plaintiff relies on those same documents.  *In re Burlington
Coat*, 114 F.3d at 1426.  Because the Complaint predominantly centers on the Trusts themselves,
taken together with the fact that the Government itself relies on the Trusts' formation documents
in its briefs opposing the Motions to Dismiss, the Court finds it appropriate to consider them for
purposes of deciding the Motions to Dismiss.

As a threshold matter, New Jersey law governs whether the Pachava Trust or the VSHPHH Trust is a nominee of Defendant Shant. The Trusts contend that New York law governs because their formation documents contain choice-of-law provisions. (Pachava Mot. at 8; VSHPHH Mot. at 7.) The Court does not doubt that these choice-of-law provisions are valid, but the Government was not a settlor, trustee, beneficiary, nor was it otherwise involved in their formations. These provisions state that "matters of interpretation, validity and administration" are governed by New York law (Pachava Trust Agreement at 14; VSHPHH Trust Agreement at 14), but this dispute is outside the confines of these prescriptions; the Court is focused on the conduct of Defendant Shant and his exercise of control over the Trusts' properties, not on the interpretation of the Trusts' formation documents. These provisions cannot dictate the governing law in this action.

Moreover, the Third Circuit has counseled that "state law . . . determine[s] the taxpayer's ownership interest in the property and whether the title holder is merely a nominee," and "then federal law determines whether that property interest is subject to a federal tax lien." *Patras*, 544 F. App'x at 141 (citing *Drye v. United States*, 528 U.S. 49, 58 (1999)). Because both the Navesink Property and the Village Mall Property are located in New Jersey, the law of New Jersey governs the determinations at issue. *See In re Estate of Fenton*, 901 A.2d 455, 465 (N.J. Super. Ct. App. Div. 2006) (explaining that "the legal incidents and effects of that [trust] with respect to property, are determined by the laws of the state where the property has its situs" (internal citation omitted)).

To determine whether a trust is a taxpayer's nominee under New Jersey law, courts examine the following:

> (1) whether the nominee paid adequate consideration for the property; (2) whether the property was placed in the nominee's name in anticipation of a suit or other

liabilities while the taxpayer continued to control . . . the property; (3) the relationship between the taxpayer and the nominee; (4) the failure to record the conveyance; (5) whether the property remained in the taxpayer's possession; and (6) the taxpayer's continued enjoyment of the benefits of the property.

*Patras*, 544 F. App'x at 141–42 (collecting cases under New Jersey law).[4]

## I.      The VSHPHH Trust

An examination of the applicable factors counsels a finding in favor of the Government. To begin, the VSHPHH Trust admits that it received the Village Mall Property for nominal consideration.  (VSHPHH Reply at 11.)  Therefore, the first factor favors the Government.

The second factor also favors the Government.  The Government does not allege that Defendant Shant contributed the Village Mall Property to the VSHPHH Trust; his parents did. The Government also does not allege that Defendant Shant transferred the Village Mall Property to his parents who then transferred it to the VSHPHH Trust.  In fact, the Government does not allege that Defendant Shant *ever* owned the property.  But the Government *does* allege that the

---

[4] Although the Government contends that the tests for nominee liability and alter ego liability "are often collapsed" (VSHPHH Opp'n at 4 n.1), "the concepts are distinct," *United States v. Bogart*, 715 F. App'x 161, 166 n.4 (3d Cir. 2017).

> Under a nominee theory, the Government may levy upon only those assets to which a third party holds legal title, but from which the delinquent taxpayer enjoys the true beneficial ownership.  Under an alter ego theory, however, the Government may seize all of the assets of an alter ego corporation if the separate entity is merely a sham.

*Id.* (internal citations omitted).  In comparison with the six-factor test for the nominee theory as described above, the alter ego theory requires a finding that the trust was a "mere instrumentality" of the defendant, so that "liability generally is imposed only when the [defendant] has abused the privilege of incorporation by using the [trust] to perpetrate a fraud or injustice, or otherwise to circumvent the law."  *Shotmeyer v. N.J. Realty Title Ins. Co.*, 948 A.2d 600, 608 (N.J. 2008) (quoting *Dep't of Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150 (N.J. 1983)). However related the two tests may be, because the Court finds that the Government sufficiently states a claim under its nominee theory, the Court need not examine the Government's alter ego theory.

transfer of the Village Mall Property, which occurred after Defendant Shant's tax liability arose, "was an attempt to avoid encumbering the property with the federal tax liens, which attached to all of [Defendant Shant]'s property." (Compl. ¶ 32.) Although the Government's contention— that Defendant Shant's parents owned and transferred the Village Mall Property in an effort to avoid their son's tax liens—requires an inference, facts encircling the transaction and illuminating the relationship between Defendant Shant and his parents that could bolster this inference may be sought during discovery; at this point in the litigation, the Government's argument need only be plausible.

The third factor slightly favors the VSHPHH Trust. The Government concedes that Defendant Shant neither settled the VSHPHH Trust nor contributed the Village Mall Property to it. But Defendant Shant's proximity to every person involved in the VSHPHH Trust gives the Court pause: Defendant Shant's parents settled the trust and contributed the Village Mall Property to it, Defendant Shant's sister serves as trustee (and Defendant Shant himself initially served as co-trustee), and Defendant Shant's children are the sole beneficiaries. (*Id.* ¶¶ 29, 31.) Defendant Shant's familial proximity alone, however, does not completely negate his legal distance from the VSHPHH Trust.

The fourth factor—failure to record—favors the VSHPHH Trust. The Government does not plead any facts in regard to recordation, but the VSHPHH Trust offers that the transaction was recorded. (*See* VSHPHH Reply at 12; Village Mall Property Deed, Ex. B, ECF No. 17-1.)

Most importantly, however, the fifth and sixth factors weigh heavily in favor of the Government. The Government alleges that Defendant Shant receives rental income from the Village Mall Property and pays both its municipal taxes and utility bills. (Compl. ¶¶ 33–34.) It also alleges that Defendant Shant "has attempted to hide his ownership" of the Village Mall

Property. (*Id.* ¶ 35.) After Defendant Shant's parents transferred the property to the VSHPHH Trust, Defendant Shant still had the tenants make rental payments directed to his father—even after his father passed away—which were then deposited into a bank account controlled by Defendant Shant. (*Id.*)

The VSHPHH Trust's principal argument is that it cannot be, as a matter of law, a nominee of Defendant Shant because Defendant Shant did not create the trust and did not transfer assets to it. (VSHPHH Mot. at 9–13.) The Third Circuit provides no guidance on this precise issue, so the VSHPHH Trust points to two out-of-circuit cases in support of its argument. But both of those non-binding cases present vastly different procedural postures and thus disfavor effective analogy. *See In re Vebeliunas*, 332 F.3d 85, 90–91 (2d Cir. 2003) (entertaining appeal of bankruptcy court judgment); *United States v. Greer*, 383 F. Supp. 2d 861, 866–69 (W.D.N.C. 2005) (entertaining non-jury trial). Rather than analyze whether allegations sufficiently state a claim, as the Court must do here, those courts balanced the weight of the admitted evidence that had the advantage of discovery. *In re Vebeliunas*, 332 F.3d at 90–91 (reviewing bankruptcy court's findings of fact only for clear error); *Greer*, 383 F. Supp. 2d at 866–69 (concluding that "the United States ha[d] failed to meet its burden of proof *by a preponderance of the evidence* that the [trust at issue was] the alter ego or nominee of the [d]efendant" (emphasis added)). The Trusts make hay of the fact that Defendant Shant did not contribute either property to them, but the Third Circuit's test for nominee liability ponders "whether the property *was placed* in the nominee's name in anticipation of a suit," *not* "whether the *defendant-taxpayer placed* the property in the nominee's name in anticipation of a suit." *See Patras*, 544 F. App'x at 141–42 (emphasis added).

The Government pleads that Defendant Shant sought to avoid entangling the Village Mall Property with his tax liability, and Defendant Shant's use of the property, coupled with his familial relations with the settlor (his parents), contributor of property (his parents), trustee (his sister), and beneficiaries (his children), creates enough plausibility to survive the motion-to-dismiss stage.  To be clear, the Court does not find today that Defendant Shant is the true owner of the Village Mall Property and that the VSHPHH Trust's presumption of separateness should be ignored.  The Government's theory surely is not without gaps, and discovery may magnify those gaps.  But for now, its allegations support a plausible inference that although the VSHPHH Trust holds legal title, Defendant Shant may enjoy the true beneficial ownership of the Village Mall Property.

## II.     The Pachava Trust

An examination of the applicable factors also counsels a finding in favor of the Government in regard to the Pachava Trust.  The VSHPHH Trust and the Pachava Trust have many of the same characteristics, so the Court incorporates by reference the rationale explicated above in regard to the VSHPHH Trust.  The Court thus focuses only on the differences here.  To begin, Defendant Shant's mother transferred the Navesink Property to the Pachava Trust for nominal consideration.  (Compl. ¶ 19.)  Therefore, the first factor favors the Government.

The second factor also favors, perhaps even more so than for the VSHPHH Trust, the Government.  Again, the Government does not allege that Defendant Shant ever owned the Navesink Property or transferred it to the trust, but the Government alleges that the transfer "was an attempt to avoid encumbering the property with the federal tax liens, which attached to all of [Defendant Shant]'s property."  (*Id.* ¶ 21.)  Additionally, unlike the VSHPHH Trust, Defendant

11

Shant himself settled the Pachava Trust, which was initially named the Shant S. Hovnanian Asset Trust (Pachava Trust Agreement at 1), bolstering the Government's deductive skepticism.

The Pachava Trust attempts to dilute the significance of this fact by contending that Defendant Shant created the Pachava Trust before his debts arose.  (Pachava Mot. at 11.)  The Pachava Trust offers a technical argument whereby it concedes that Defendant Shant incurred tax liability—for tax years 2002, 2003, and 2004 (Compl. ¶ 14)—before the Pachava Trust was created, but it argues that a "tax lien does not arise until there has been an assessment" and the Government did not "assess" these tax liabilities until after the trust was created (Pachava Reply at 4–6).  However, Defendant Shant knew, or should have known, at the time he created the Pachava Trust in October 2007 that he had incurred a substantial amount of tax liability and that any property rights to which he was entitled were vulnerable.  Therefore, the second factor favors the Government.

The third factor, unlike the VSHPHH Trust, slightly favors the Government.  Although, like the VSHPHH Trust, Defendant Shant did not contribute the Navesink Property to the Pachava Trust, unlike the VSHPHH Trust, he was the one who settled the Pachava Trust.  (Pachava Trust Agreement at 1.)  Additionally, Defendant Shant is closely related to the others involved in the trust: his mother contributed the property, his sister serves as trustee, and his children are the sole beneficiaries.  (*Id.* at 1–2; Compl. ¶ 19.)

Next, the Government admits that the Shant S. Hovnanian Asset Trust recorded the transfer of the Navesink Property.  (Compl. ¶ 20.)  Therefore, the fourth factor favors the Pachava Trust.

Like the VSHPHH Trust, however, the fifth and sixth factors weigh heavily in favor of the Government.  The Government alleges that Defendant Shant resides at the property, receives

mail at the property, and pays both its municipal taxes and utilities bills.  (*Id.* ¶¶ 23–26.)  The Government also alleges that Defendant Shant "has taken steps to hide his ownership of the [Navesink Property]":  He allegedly reported to an Internal Revenue Officer that he does not reside at the property but instead lives at the Village Mall Property, a building zoned for commercial use.  (*Id.* ¶ 26.)  Defendant Shant has also kept the utility bills in his deceased father's name, even though he pays them from a bank account under his control.  (*Id.* ¶¶ 24, 26.)

Again, the Government offers allegations suggesting that, despite the Pachava Trust's legal title, Defendant Shant possesses and exercises control over the Navesink Property. Although others may also exercise control over the property that ultimately tempers the Government's theory, the Court simply does not have the benefit of discovery yet.  The Pachava Trust's out-of-circuit cases that it offers does not preclude this conclusion, though the fact that the Pachava Trust is an irrevocable trust makes this decision slightly more difficult.[5]  Simply put, the Government's allegations, taken together, support a plausible inference at this point in the litigation that Defendant Shant may enjoy true beneficial ownership of the Navesink Property. Accordingly, the Government sufficiently states a claim in regard to the Pachava Trust.

---

[5] The Pachava Trust offers *Dean v. United States*, 987 F. Supp. 1160 (W.D. Mo. 1997), and *In re Raymond*, 529 B.R. 455 (Bankr. D. Mass. 2015), because, in those cases, the taxpayer/debtor created an irrevocable trust for the benefit of their children and thus retained no ownership interest in the property contributed to the trust.  (Pachava Mot. at 13–15.)  The Court obviously is not bound by either case.  Nonetheless, the decision in *Dean* was an opinion derived from a non-jury trial and thus distinguishable on that ground alone as the court had the advantage of a full record.  987 F. Supp. at 63–67.  And, the decision in *Raymond* is distinguishable on numerous grounds: it analyzes alter ego theory under Massachusetts law in a bankruptcy matter, rather than nominee theory under New Jersey law in a tax matter.  529 B.R. at 480–85.

## **<u>CONCLUSION</u>**

For the reasons stated herein, the Motions to Dismiss as to the VSHPHH Trust and the

Pachava Trust are both denied.  An appropriate order will follow.


Date: 03/18/2019                                            */s/ Anne E. Thompson*
                                                           ANNE E. THOMPSON, U.S.D.J.