NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHANT HOVNANIAN *et al.*,<br><br>Defendants. | Civ. No. 18-15099<br><br>**OPINION** |

THOMPSON, U.S.D.J.

This matter comes before the Court on the Motion for Default Judgment on Count IV and Partial Default Judgment on Count V Against Defendants Shant Hovnanian ("Defendant Shant") and Adelphia Water Company, Inc. ("Adelphia"), filed by Plaintiff United States of America (the "United States") on August 13, 2021. (ECF No. 96.) Another defendant to this action, Nina Hovnanian ("Defendant Nina") opposed (ECF No. 97), and the United States replied (ECF No. 100). For the reasons stated herein, this Motion is GRANTED.

**BACKGROUND**

**I.     The Complaint**

In this action, the United States seeks to reduce to judgment $16,209,389.00 in tax assessments made against Defendant Shant from tax years 2002, 2003, 2004, and 2007. (Compl. ¶¶ 14–17, ECF No. 1.) The United States seeks to attribute three pieces of real property to Defendant Shant, on which to attach liens and foreclose, in order to satisfy Defendant Shant's income tax liability. (*See id.* ¶¶ 18–53.)

1

The only property at issue in the present motion is a property known as "572 Wyckoff Mills Road, Howell Township, New Jersey" (the "Wyckoff Mills Road property"). (*See id.* ¶ 37; Mot. for Default J. at 1, ECF No. 96-2.) Adelphia holds legal title to the Wyckoff Mills Road property. (Compl. ¶ 37.)[1]

The Complaint alleges that, on September 29, 1978, Hovbilt, Inc. transferred the Wyckoff Mills Road property to Adelphia for $3,100. (*Id.*) Adelphia is a "Hovnanian-controlled business." (*Id.* ¶ 38.) On its last income tax return, filed in 1999, Adelphia listed Defendant Shant as owning 25% interest in the corporation, Defendant Nina as owning 25% interest in the corporation, and their parents owning the remaining 50% in the corporation. (*Id.*)

In 2012, Adelphia had its corporate charter revoked after failing to file annual reports, and Defendants Shant and Nina became "the owners of [its] corporate assets under New Jersey law, including the [] Wyckoff Mills Road [p]roperty." (*Id.* ¶ 39.) On February 14, 2019, Defendant Nina disclaimed any interest in the Wyckoff Mills Road property and "agree[d] that she [was] not entitled to any proceeds from [its] sale" if the United States was entitled to sell it. (Stipulation Regarding Nina Hovnanian ¶¶ 1–2, ECF No. 19.) The Court dismissed Defendant Nina as an individual defendant to the action regarding the Wyckoff Mills Road property. (*Id.*) Defendant Shant "enjoys the benefits and bears the burdens of owning" the Wyckoff Mills Road property, such as managing the property and paying the utility bills associated with the property.

---

[1] The other two pieces of property are: (1) 520 Navesink River Road, Middletown Township, New Jersey (Block 1043, Lot 67.02) (the "Navesink property") and (2) 1 Dag Hammarskjold Boulevard, Freehold, New Jersey (Block 143, Lot 25.04) (the "Village Mall property"); (Compl. ¶¶ 18–35.) The "Pachava Asset Trust" and "VSPHH Trust," both held by trustee Defendant Nina, hold title to the Naveseink and Village Mall properties, respectively. (*Id.* ¶¶ 22, 31; Stipulation Regarding Nina Hovnanian ¶ 3, ECF No. 19.) There are no other interest holders in these properties. (*See* Stipulation Regarding Nina Hovnanian ¶ 3; Compl. ¶¶ 47–49; Stipulation Regarding Third-Party Interest in the Navesink Property ¶¶ 3–4, ECF No. 87.)

(Compl. ¶ 42.) According to the Complaint, a "company under [Defendant Shant's] control (HovSat, Inc.) pays utility bills associated with the property, but the bills are charged to different companies, all of which are controlled by [Defendant Shant]." (*Id.*)

On January 16, 2018, the United States filed notice of a federal tax lien in the office of the County Clerk of Monmouth County against Defendant Shant, listing Adelphia as his nominee. (*Id.* ¶ 50.) An entity called Ulysses Asset Sub II, LLC, may also claim an interest in the Wyckoff Mills Road property. (*Id.* ¶ 51.)[2]

In the present motion, the United States requests the Court to (1) declare that Adelphia is the "nominee" of Defendant Shant and (2) preclude Defendant Shant and Adelphia from "contesting the attachment of the federal tax lien to the [] Wyckoff [Mills Road] property, or receiving any proceeds from its sale." (Mot. for Default J. at 2.)

## II.     Procedural History

On October 18, 2018, the United States filed the Complaint to collect the $16,209,389 of federal tax liability. (ECF No. 1.) On May 21, 2019, the Court determined that Defendant Shant and Adelphia were properly served. (ECF Nos. 29, 30.)

On June 14, 2019, the Clerk of the Court entered default as to Defendant Shant and Adelphia. On June 28, 2019, the United States moved for entry of default judgment against Defendant Shant for the "sum certain" amount of $16,209,389. (*See* Mot. for Default J. on Count I ¶ 1, ECF No. 34.) On July 25, 2019, the Clerk of the Court granted the default judgment in that amount. (Order on Mot. for Default J. on Count I at 1, ECF No. 35.)

---

[2] The Complaint alleged another interested party in the Wyckoff Mills Road property, the Township of Hopewell, (*see* Compl. ¶ 52), but this party was terminated from the action on August 31, 2021 (Order Dismissing Township of Hopewell at 2, ECF No. 99).

3

In the meantime, the owners of the other two properties — Defendant Nina, and Pachava Asset Trust and VSPHH Trust (collectively, the "Trust Defendants") — commenced discovery as to Counts II, III, and V. (*See* United States Response to Letter Order at 1–2, ECF No. 41.) Defendant Nina and the Trust Defendants have remained active parties to date with respect to the Navesink and Village Mall properties. As of March 3, 2022, the Court set a briefing schedule for Defendant Nina, the Trust Defendants, and the United States for the filing of dispositive motions. (*See* Order on Briefing Schedule at 1, ECF No. 111.)

On August 13, 2021, the United States filed this Motion for Default Judgment with respect to Defendant Shant, Adelphia, and the Wyckoff Mills Road property. (ECF No. 96.) Defendant Nina and the Trust Defendants opposed (ECF No. 97), and the United States replied (ECF No. 100). The Motion for Default Judgment is presently before the Court.

## **ANALYSIS**

### I.  **Default Judgment**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A court may enter default judgment for non-monetary relief after a party has defaulted. Fed. R. Civ. P. 55(b)(2). Default judgment is permissible if a plaintiff's well-pleaded factual allegations, taken as true, sufficiently establish a right to the requested relief. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Eastern Constr. & Elec., Inc. v. Universe Techs., Inc.*, 2011 WL 53185, at *3 (D.N.J. Jan. 6, 2011). Default judgment is a sanction of last resort; cases are more appropriately decided on their merits where practicable. *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984). A court must use its discretion

to assess three factors to determine whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether the defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

## II.     Sufficiency of the United States' Claims

In Count IV, the United States requests the Court to declare that Adelphia is the "nominee" of Defendant Shant. (Mot. for Default J. at 5.) The United States may attach a federal tax lien upon all personal and real "property and rights to property" of an individual who is "liable to pay any tax" and who "neglects or refuses to pay the same after demand." 26 U.S.C. § 6321. The United States may then "direct a civil action to be filed in a district court . . . to enforce the lien . . . with respect to such tax." *Id.* § 7403(a), (c). "[T]he right to foreclose on these liens extends to property held by third parties who are 'acting as a nominee or alter ego for a taxpayer.'" *United States v. Wunder*, 2019 WL 2928842, at *4 (D.N.J. July 8, 2019), *aff'd*, 829 F. App'x 589 (3d Cir. 2020) (quoting *United States v. Patras*, 909 F. Supp. 2d 400, 410 (D.N.J. 2012) (citing *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977))).

In determining whether an entity is a taxpayer's nominee, "[t]he district court is tasked with determining 'whether property should be construed as belonging to the taxpayer if he/she treated and viewed the property as his/her own, in spite of the legal machinations employed to distinguish legal title to the property.'" *United States v. Hovnanian*, 2019 WL 1233082, at *3 (D.N.J. Mar. 18, 2019) (quoting *United States v. Balice*, 2017 WL 3420918, at *10 (D.N.J. Aug. 9, 2017)). The Court considers the following factors:

> (i) whether the nominee paid adequate consideration for the property; (ii) whether the property was placed in the nominee's name in anticipation of a suit or other liabilities while the taxpayer continued to control . . . the property; (iii) the relationship between the

>    taxpayer and the nominee; (iv) the failure to record the conveyance; (v) whether the property remained in the taxpayer's possession; and (vi) the taxpayer's continued enjoyment of the benefits of the property.

*Id.* (quoting *Patras*, 544 F. App'x at 141 (3d Cir. 2013) (omission in original)).

An assessment of these factors favors the United States' position. While the United States does not raise arguments regarding factors (i), (ii), and (iv), the remaining factors strongly support a finding that Adelphia is Defendant Shant's nominee. Regarding factor (iii), the Complaint alleges a close relationship between the taxpayer and nominee — that Adelphia was a "Hovnanian-controlled business" and that Defendant Shant owned a "25% interest in the corporation," with Defendant Nina and his parents owning the remaining interests. (Compl. ¶¶ 8, 38.) And, since the revocation of Adelphia's corporate charter in 2012, its corporate assets belong solely to Defendants Nina and Shant. (*Id.* ¶ 40.) Regarding factor (v), the Wyckoff Mills Road property remains in Defendant Shant's possession. Defendant Shant continues to "manage" and "pay utility bills" for the Wyckoff Mills Road property through companies under his control, *e.g.*, "HovSat, Inc." (*Id.* ¶ 42; Mot. for Default J. at 5–6.) Regarding factor (vi), Defendant Shant "benefits" from the Wyckoff Mills Road property by managing the property and "act[ing] as [its] lessor." (Compl. ¶ 42; Mot. for Default J. at 5–6.)

Further, the fact that Defendant Shant continues to oversee Adelphia, despite the revocation of its corporate charter, suggests that Adelphia exists as Defendant Shant's nominee, and not to function as a corporation. *Cf. Lancellotti v. Maryland Cas. Co.*, 260 N.J. Super. 579, 583 (App. Div. 1992) ("A dissolved corporation exists solely to prosecute and defend suits, and not for the purpose of continuing the business for which it was established.") Thus, the Court finds that the Complaint sufficiently alleges that Adelphia is Defendant Shant's nominee in holding title to the Wyckoff Mills Road property. *See Hovnanian*, 2019 WL 1233082, at *5

6

(finding a nominee relationship when the "fifth and sixth factors weigh heavily in favor of the Government," and the defendant paid utility bills and taxes, and managed and controlled the property); *Wunder*, 2019 WL 2928842 (finding a nominee relationship where the taxpayer had "maintained total control, possession, and enjoyment of the [] Property, [thus] demonstrating his total control over [the nominee]").

In Count V, the United States requests an order precluding Defendant Shant and Adelphia from contesting the attachment of a federal tax lien to the Wyckoff Mills Road property or receiving any proceeds from its sale. (Mot. for Default J. at 5.) The Court already determined that Adelphia and Defendant Shant were properly served and have defaulted in this action. (ECF Nos. 29, 30, 34, 35.) Courts may preclude defaulting parties and their nominees from contesting or collecting proceeds from foreclosure sales of their properties. *See Wunder*, 2019 WL 2928842 (finding that, after defendant taxpayer defaulted, the United States held "valid and subsisting federal tax liens against [the defendant], which encumber all of his property and rights to property, including any property held by [his] nominees or alter ego" and that the property "shall be sold free and clear of any right, title, lien, claim, or interest of [the defendant], [the nominee], or [a third-party interest]"). Thus, the United States has sufficiently alleged a claim for an order precluding Defendant Shant and Adelphia from contesting or receiving proceeds from the foreclosure sale of the Wyckoff Mills Road property.

### III.   Default Judgment Factors

The Court next examines the equitable factors of default judgment. *See Chamberlain*, 210 F.3d at 164. First, the Court considers prejudice to Plaintiff if the default judgment is denied. *Id*. Prejudice refers to an impairment of a plaintiff's ability to pursue its claim and recover its sought-after remedy. *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982).

Failure to file any responsive pleadings may leave a plaintiff without recourse on its claims. *See United Communities, LLC v. Hallowell Int'l, LLC*, 2012 WL 5880295, at *4 (D.N.J. Nov. 21, 2012). Here, Defendant Shant's failure to participate in this litigation prevents the United States from recovering its $16,209,389 in federal tax liability. (*See* Mot. for Default J. on Count I ¶ 1.) The United States' ability to seek recourse is particularly important given the "paramount interest in prompt and certain collection of delinquent taxes." *United States v. Rodgers*, 461 U.S. 677, 711 (1983). Thus, this factor weighs in favor of granting default judgment.

Second, the Court considers whether the defendant appears to have a litigable defense. *Chamberlain*, 210 F.3d at 164. The Court finds that these defendants do not. The Court rejects the "procedural" arguments raised by Defendant Nina.[3] The Court also rejects the argument that the nominee theory is too complex to determine on default. (*See* Opp'n at 4, ECF No. 97.) While default judgment is a sanction of last resort, courts have, on default judgment motions, made similar nominee determinations as this one. *E.g.*, *Wunder*, 2019 WL 2928842, at *4.

The Court also notes the existence of a possible third-party interest, Ulysses Asset Sub II, LLC, on the Wyckoff Mills Road property. (Compl. ¶ 51.) Once the United States obtains default judgment against Defendant Shant and Adelphia, it "will then separately file a motion for the sale of the [] Wyckoff [Mills Road] property[,]" where it will address the interests of the remaining claimants. (Mot. for Default J. at 6–7.) This is an appropriate way to handle third-party interests on properties subject to federal tax liens. *See United States v. Rodgers*, 461 U.S. 677, 693–94 (1983) ("[W]e must read the statute to contemplate, not merely the sale of the

---

[3] The Court also notes that Defendant Nina, having disclaimed her interest in the Wyckoff Mills Road property and been dismissed as a defendant to this action, does not have any interest in this Motion and thus, improperly raises arguments on behalf of Defendant Shant. (*See* Stipulation Regarding Nina Hovnanian ¶¶ 1–2.)

8

delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution."); *United States v. Klimek*, 952 F. Supp. 1100, 1117 (E.D. Pa. 1997) (allowing sale of property despite possibility of third-party interests). Thus, the existence of a third-party interest on the property is not a defense to this foreclosure sale.

Finally, the Court considers whether the defendant's delay is due to culpable conduct. *Id.* Culpable conduct refers to "actions taken willfully or in bad faith," *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983), and that rise above the level of mere negligence, *Sourcecorp, Inc. v. Croney*, 412 F. App'x at 460. Failure to defend, despite being served, demonstrates a defendant's culpable conduct. *See Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 537 (D.N.J. 2008). Here, the Court found that Defendant Shant and Adelphia were properly served, yet have failed to appear, suggesting their willful avoidance of this lawsuit. (ECF Nos. 29, 30.)

In sum, the Court finds that the default judgment factors favor granting the United States' requested relief in its Motion for Default Judgment.

## CONCLUSION

For the foregoing reasons, the United States' Motion for Default Judgment on Count IV and Partial Default Judgment on Count V Against Defendant Shant and Adelphia (ECF No. 96) is GRANTED. An appropriate Order will follow.

Date: <u>March 29, 2022</u>　　　　　　　　　　　　　　*/s/ Anne E. Thompson*
　　　　　　　　　　　　　　　　　　　　　　　　　ANNE E. THOMPSON, U.S.D.J.