ARI D. KUNOFSKY
JOSHUA D. ZIMBERG
Trial Attorneys, Tax Division
U.S. Department of Justice
PO Box 227
Washington, DC 20044
Tel. (202) 353-9187
Fax (202) 514-6866
Ari.D.Kunofsky@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 18-cv-15099-ZNQ-LHG |
| | ) | |
| SHANT HOVNANIAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION
FOR PARTAL SUMMARY JUDGMENT AS TO THE VSHPHH TRUST**

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division

ARI D. KUNOFSKY
JOSHUA D. ZIMBERG
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044
Telephone: (202) 353-9187
Facsimile: (202) 514-6866
Email: Ari.D.Kunofsky@usdoj.gov

*Counsel for the United States*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENTS ................................................................................................................. 4

  I.  Legal Standard for Nominees and Federal Tax Liens. ........................................... 4

  II.  The VSHPHH Trust Is Shant Hovnanian's Nominee. ......................................... 6

    A.  The Mechanics of the Transfer Show A
        Nominee Situation (*Patras* factors 1, 2, & 4). ................................................ 6

    B.  Shant Hovnanian Took the Benefits of the Village Mall,
        While the VSHPHH Trust and Its Trustees Let Him (*Patras* factors 3, 5, & 6). ............. 7

      i. Shant Hovnanian exercised extensive control. .............................................. 8

      ii. Shant Hovnanian took all the rental income, ignoring the VSHPHH Trust. ................ 9

      iii.  Shant Hovnanian did not pay rent for the second floor. ............................... 11

      iv. The VSHPHH Trust never filed tax returns because
         it did not think the rent was its income. ................................................... 12

      v.  Shant Hovnanian paid Village Mall expenses
        from his personal funds. ...................................................................... 12

  III.  This Court Should Order Foreclosure and Sale of the Property with All Proceeds to be
      Paid to the United States. ................................................................................ 14

  IV. The Court's Order Here Should be Entered As a Final Judgment. .................... 15

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360 (3d Cir. 1975) ............................ 16

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) ................................................. 15

*Berkshire Bank v. Town of Ludlow, Mass.*, 708 F.3d 249 (1st Cir. 2013) ............................... 9, 11

*Dutch Run-Mays Draft, LLC v. Wolf Block, LLP*,
    164 A.3d 435 (N.J. Super. Ct. App. Div. 2017) ..................................................................... 10

*Elliott v. Archdiocese of New York*, 682 F.3d 213 (3d Cir. 2012) ................................................ 15

*Fourth Inv. LP v. United States*, 720 F.3d 1058 (9th Cir. 2013) ................................................... 5

*G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977) ......................................................... 14

*Holman v. United States*, 505 F.3d 1060 (10th Cir. 2007) ....................................................... 4, 5

*In re Estate of Burke*, 492 N.Y.S.2d 892, 895 (N.Y. Surr. Ct. 1985) ............................................ 8

*In re Goldstick*, 177 A.D.2d 225, 238 (N.Y. App. Div. 1st Dept. 1992) ....................................... 8

*In re Heller*, 6 N.Y.3d 649, 655 (2006) ...................................................................................... 11

*In re Richards*, 231 B.R. 571 (E.D. Pa. 1999) ......................................................................... 5, 6

*Jemison v. Jemison,* 2021 WL 1171689, *13 (D.N.J. Mar. 29, 2021) .................................... 7, 11

*Khaldei v. Kaspiev*, 135 F. Supp. 3d 70, 83-84 (S.D.N.Y. 2015) .................................................. 8

*Lancellotti v. Maryland Cas. Co.*, 617 A.2d 296 (N.J. Super. Ct. App. Div. 1992) ..................... 10

*Merrill Lynch Pierce Fenner & Smith Inc. v. Nora-Johnson*,
    797 A.2d 226 (N.J. Super. App. Div. 2002) ........................................................................... 8

*Nassar Fam. Irrevoc. Tr. v. United States*, 2016 WL 5793737 (S.D.N.Y. Sept. 30, 2016) ........... 5

*Phelps v. United States*, 421 U.S. 330 (1975) ........................................................................... 14

*Rovakat, LLC v. Comm'r*, 102 T.C.M. (CCH) 264 (T.C. 2011) ..................................................... 7

*United States v. Avila*, 88 F.3d 229, 233 (3d Cir. 1996) ............................................................ 14

*United States v. Balice*, 2017 WL 3420918 (D.N.J. Aug. 9, 2017) ............................................... 4

*United States v. Beeman*, 2011 WL 2601959 (W.D. Pa. June 30, 2011) .................................... 12

*United States v. Bess,* 357 U.S. 51 (1958) ................................................................................ 14

*United States v. Bogart*, 715 F. App'x 161 (3d Cir. 2017) ......................................................... 14

*United States v. Hovnanian*, 2019 WL 1233082 (D.N.J. March 18, 2019) .......................... 1, 4, 6

*United States v. Hovnanian*, 2022 WL 279835 (D.N.J. Jan. 31, 2022) ...................................... 13

*United States v. Hovnanian*, 2022 WL 909868  (D.N.J. Mar. 29, 2022) .................................... 10

*United States v. Patras*, 544 F. App'x 137 (3d Cir. 2013) ................................................. passim

*United States v. Patras*, 909 F. Supp. 2d 400 (D.N.J. 2012) ....................................................... 4

*United States v. Santana*, 2017 WL 4873515 (M.D. Pa. Oct. 27, 2017) ...................................... 5

**Statutes**

26 U.S.C. § 6012(b)(4) ................................................................................. 12
26 U.S.C. § 6321 ...................................................................................... 2, 6
26 U.S.C. § 7403(a), (c) ........................................................................... 4, 14
26 U.S.C. §§ 6322-6323 .............................................................................. 14

**Other Authorities**

Fed. R. Civ. P. 54(b) ................................................................................ 15
Restatement (Third) of Trusts § 78(2) ...................................................... 11
Restatement (Third) of Trusts §§ 76-84 (2012) ...................................... 1, 7
Restatement (Third) of Trusts., §§ 39, 81 (2012) ................................... 1, 8

# PRELIMINARY STATEMENT

Defendant Shant Hovnanian owes $16 million in federal tax liabilities that arose because he engaged in illegal tax shelters.  (Dkt. 35, Default J.)  In this motion for partial summary judgment, the United States seeks to foreclose its federal tax liens against a two-story shopping mall located at 1 Dag Hammarksjold Boulevard, Freehold, New Jersey ("Village Mall").[1]  Legal title to the Village Mall is held in the name of the VSHPHH Trust.  The United States will show that there can be no genuine dispute that the VSHPHH Trust is Shant's nominee, and thus it can foreclose its federal tax liens against the Village Mall.[2]

Trustees of an express trust, like the VSHPHH Trust, have a fiduciary duty towards the beneficiaries to act in their beneficiaries' best interest and to avoid self-dealing for their own benefit.  *E.g.*, Restatement (Third) of Trusts §§ 76-84 (2012) (listing a trustee's duties).  When there are two co-trustees, they generally are expected to act unanimously.  *Id*., §§ 39, 81.  And co-trustees cannot simply give in to the other trustee or ignore their duties.  *Id*. § 81 (noting a trustee cannot abide another trustee's breach of fiduciary duty).  Here, legal title to the Village Mall was transferred to the VSHPHH Trust in 2015.  Shant and his sister, Nina Hovnanian, were named as co-trustees, and their children were named as beneficiaries.  Yet Shant treated the Village Mall as his personally owned property, and the VSHPHH Trust was Shant's nominee.  Because the VSHPHH Trust was his nominee, the federal tax liens attach to the Village Mall and may be foreclosed upon.  *E.g.*, *United States v. Hovnanian*, 2019 WL 1233082, *3 (D.N.J. March 18, 2019) (quoting *United States v. Patras*, 544 F. App'x 137, 140–41 (3d Cir. 2013)).

---

[1] In a separate motion, the United States is moving for relief against another nominee, the Pachava Trust, which holds title to Shant Hovnanian's personal residence.

[2] This case involves several members of the Hovnanian family. Following this Court's past practice, the United States will refer to members by their first name after their first mention.

Shant's parents (the prior owners of the Village Mall) transferred legal title to the VSHPHH Trust for nominal consideration.  When the property was transferred, Shant had been assessed the $16 million of tax liabilities at issue.  A direct transfer to Shant would have resulted in the property being encumbered by federal tax liens.  26 U.S.C. § 6321 (federal tax liens arise upon assessment of the tax). Regardless of whatever subjective reasons his parent had for putting the property in trust, the undisputed facts demonstrate that VSHPHH Trust held the property as Shant's nominee and not exclusively for its beneficiaries.

The Village Mall is a two-story building.  The first floor consists of office suites rented to tenants, which generated $78,000 annually in rent.  The second floor consists of space that Shant and his companies used rent free.  If this had been a relationship where Shant or Nina respected their duties as trustees, they would have segregated the rental income, using it exclusively for their beneficiaries.  Further, Shant would have avoided self-dealing and would have charged himself and his companies rent for use of the space.

What happened instead is rent from the first-floor tenants was transferred to a bank account held in the name of a defunct company: HovSat, Inc.  Shant controlled the HovSat account.  A forensic accountant determined that Shant took a quarter of the rent and deposited it in his separate, personal account.  Additional funds in the HovSat account were used to pay Shant's personal expenses (like his Country Club membership).  None of the rent from the Village Mall was paid to the VSHPHH Trust or its beneficiaries.  After this suit was filed, the VSHPHH Trust tellingly tried to paper over this practice.  Over a year after this case started, the VSHPHH Trust opened its first bank account in December 2019.  The Village Mall tenants started to pay rent to the VSHPHH Trust in January 2020.

Shant also used the second floor of the Village Mall for his own personal use.  He and his secretary had offices on the second floor.  Several of his companies used the second floor.

2

Neither Shant nor his companies paid rent for the use of the second floor of the Village Mall. Because Shant was the equitable owner of the Village Mall (even though on paper he was a trustee obligated to manage the trust assets for the beneficiaries), paying rent would have been pointless, as he would have been paying himself.

Shant and Nina further ignored the VSHPHH Trust when it came time to file the Trust's annual federal income tax returns. No tax returns were filed because the VSHPHH Trust did not consider the Village Mall's rental income to be the Trust's income.

Shant also paid the expenses of the Village Mall like it was his own property. Shortly after legal title passed to the VSHPHH Trust, Shant paid $201,204 in real estate taxes from his personal funds. There is no record that Shant or the VSHPHH Trust treated this payment as a gift or a loan to the VSHPHH Trust. Instead, he was merely paying one of his debts as the owner of the Village Mall. The Village Mall's other expenses were paid from Shant's HovSat account until this litigation began.

These facts lead to one conclusion: the VSHPHH Trust was Shant's nominee, and he is the true beneficial owner of the Village Mall. Thus, the United States' federal tax liens attach to the Village Mall because of this nominee relationship, and the Court should authorize the foreclosure and sale of this property with the proceeds to be paid towards his tax liability.

If the Court grants this motion, the United States further requests under Fed. R. Civ. P. 54(b) that the default judgment against Shant, the order granting this motion, and the order of sale be entered as a final judgment. The order requested will dispose of all claims to or interests in the Village Mall. In addition, there is no just reason to delay the sale or entry of a final judgment because the economics of any sale would require finality. This action involves several properties which the United States contends are subject to the federal tax liens arising from Shant's unpaid liabilities. Without a Rule 54(b) certification, the United States could not move

3

to enforce its lien through sale of any property.  Yet Shant's liabilities exceed the value of the properties subject to suit, either alone or combined. Interest continues to accrue on the unpaid liabilities. Thus, it is preferable to sell property sooner rather than later.  Despite the ongoing litigation about other property, there is no need for further delay the Village Mall's sale.

**ARGUMENTS**

**I.  Legal Standard for Nominees and Federal Tax Liens.**

Under 26 U.S.C. § 7403, where there has been a "refusal or neglect to pay any tax, the United States may direct a civil action to be filed in a district court ... to enforce [a] lien ... with respect to such tax ... or to subject any property ... of the delinquent ... to the payment of such tax or liability."  26 U.S.C. §§ 7403(a), (c); *Hovnanian*, 2019 WL 1233082, at *3.  "This right of foreclosure also extends to property held by a taxpayer's nominee '[w]here a property owner is acting as a nominee or alter ego for a taxpayer.'"  *Id.,* (quoting *United States v. Patras*, 909 F. Supp. 2d 400, 410 (D.N.J. 2012)).  In determining whether legal title is held in the name of a nominee, courts must consider "whether property should be construed as belonging to the taxpayer if he/she treated and viewed the property as his/her own, in spite of the legal machinations employed to distinguish legal title to the property."  *Id*. (quoting *United States v. Balice*, 2017 WL 3420918, *10 (D.N.J. Aug. 9, 2017)).

The Third Circuit held in *Patras,* that "[a] third party is the taxpayer's nominee where 'the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership.'"  544 F. App'x at 141 (quoting *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007)); *see Hovnanian*, 2019 WL 1233082, at *3 (noting the taxpayer himself need not transfer property directly).  A

4

nominee determination requires an analysis using a multi-factor test that applies for both federal and New Jersey law:

(1) whether the nominee paid adequate consideration for the property;

(2) whether the property was placed in the nominee's name in anticipation of a suit or other liabilities while the taxpayer continued to control ... the property;

(3) the relationship between the taxpayer and the nominee;

(4) the failure to record the conveyance;

(5) whether the property remained in the taxpayer's possession; and

(6) the taxpayer's continued enjoyment of the benefits of the property.

*Id.* at 141 (finding these same "corresponding factors" apply under New Jersey and other federal cases); *see also, Holman*, 505 F.3d at 1065 (using same six factors); *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 & n. 3 (9th Cir. 2013) (same six factors).

The courts have repeatedly held that these factors should **not** be applied rigidly or mechanically. *E.g.*, *In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999) (applying the same test under Pennsylvania law). The court in *Patras* made a nominee determination where only five of the six factors were met. *Patras*, 544 F. App'x at 142 (acknowledging the failure to record the conveyance factor had not been met); *see Nassar Fam. Irrevoc. Tr. v. United States*, 2016 WL 5793737, at *7 (S.D.N.Y. Sept. 30, 2016), *aff'd*, *United States v. Nassar*, 699 F. App'x 46 (2d Cir. 2017); *In re Richards*, 231 B.R. at 579. The overarching key to the nominee analysis is to determine whether a party has "active" or "substantial" control over the property. *E.g., In re Richards,* 231 B.R. at 579; *United States v. Santana*, 2017 WL 4873515, at *4 (M.D. Pa. Oct. 27, 2017).

5

**II.  The VSHPHH Trust Is Shant Hovnanian's Nominee.**

Applying the *Patras* factors here, the VSHPHH Trust is Shant's nominee.  Shant

exercised active and substantial (if not exclusive) control of the Village Mall, at least through the

time of his alleged resignation from the VSHPHH Trust in 2017.  Shant ignored any duties owed

to the trust beneficiaries as well as the VSHPHH Trust.  He received significant financial

benefits from the Village Mall and paid significant expense related to the property.  As a result,

the Village Mall property is subject to the federal tax lien.

**A.  The Mechanics of the Transfer Show A Nominee Situation (*Patras* factors 1, 2, & 4).**

*Patras* factors 1, 2, and 4 look at the mechanics of the transfer: its timing, consideration,

and recordation.  The mechanics of the transfer here reflect a nominee relationship.  The Village

Mall was placed into the VSHPHH Trust for nominal consideration of one dollar, satisfying

factor 1.  *Hovnanian*, 2019 WL 1233082, at *4; *see also*, Stmt. of Undisputed Material Facts

("SUMF") ¶ 9 (deed showing consideration of $1).  Factor 2 looks at whether the property was

transferred to a nominee to escape the taxpayer's liabilities.  *Patras*, 544 F. App'x at 142.  At the

time of the transfer on January 1, 2015, Shant's parents could not transfer the property directly to

him because of the $16 million in federal tax liens that had arisen.  *See* 26 U.S.C. § 6321;

(SUMF ¶¶ 6-7.)  These liens would have encumbered any property transferred to Shant.[3]

Shant's parents were aware the taxes were due.  First, Shant and his father (Vahak

Hovnanian) were close both personally and professionally.  Shant and his father lived next door

to each other and ran several businesses together.   (SUMF ¶¶ 1, 24-25, 29, 44-45, 52.)  Second,

the tax shelters involved SpeedUS and HovBilt, two companies that both Vahak and Shant were

---

[3] The transfer of legal title was recorded (*Patras* factor 4).  While the failure to record a
transaction could be evidence of an attempt to hide it, merely recording the conveyance is given
little weight.  *Patras*, 544 F. App'x at 142; *In re Richards*, 231 B.R at 579.

involved in leading. *Id.*; *see*, *e.g.*, *Rovakat, LLC v. Comm'r*, 102 T.C.M. (CCH) 264 (T.C. 2011) (noting the entities involved). Third, Shant's counsel during the Tax Court case was William Reed Rankin, *Esq*. *Id*. Rankin also was the family's counsel. (SUMF ¶¶ 10, 56.) Rankin created the VSHPHH Trust, and he continues to advise the VSHPHH Trust in this litigation even though he has not filed a notice of appearance here. *Id*. Finally, at the time of the transfer, the IRS had filed a notice of federal tax lien against Shant, putting the world on notice that these taxes were owed. *Id*. ¶ 7.

### B.  Shant Hovnanian Took the Benefits of the Village Mall, While the VSHPHH Trust and Its Trustees Let Him (*Patras* factors 3, 5, & 6).

*Patras* factors 3, 5, and 6 look at the relationship between the nominee and taxpayer, as well as whether the taxpayer retained possession and enjoyed the benefits of the property. *Patras*, 544 F. App'x at 141. Shant exercised exclusive control over the Village Mall, and he treated the Village Mall as if it were his own personal property. He deposited the Village Mall's rent collected from tenants into bank accounts he controlled and used those funds for his own personal benefit. He also used the second floor as office space, rent free. In short, he treated the Village Mall like he owned it, ignored the VHSPHH Trust, and his co-trustee Nina let him do so.

On paper, Shant and Nina Hovnanian were co-equal trustees, and the Village Mall was merely a trust asset. If this was the co-trustee's actual relationship to the property, the benefits of the Village Mall should have gone exclusively to the beneficiaries. Shant and Nina should have had a singular loyalty and fiduciary duty to the VSHPHH Trust's beneficiaries. They needed to avoid self-dealing, segregate trust funds and property, and preserve the property for the beneficiaries, *etc. E.g.*, Restatement (Third) of Trusts §§ 76-84  (listing duties of a trustee); *see, e.g.*, *Jemison v. Jemison,* 2021 WL 1171689, *13 (D.N.J. Mar. 29, 2021), *appeal pending* No. 21-1805 (3d Cir.) (generally discussing the high standard of fiduciary duty under New Jersey

law); *Khaldei v. Kaspiev*, 135 F. Supp. 3d 70, 83-84 (S.D.N.Y. 2015) (same under New York law). When there are two co-trustees, they generally are expected to act unanimously. *E.g.*, Restatement (Third) of Trusts, §§ 39, 81; *see, e.g.*, *Merrill Lynch Pierce Fenner & Smith Inc. v. Nora-Johnson*, 797 A.2d 226, 228 (N.J. Super. App. Div. 2002); *In re Estate of Burke*, 492 N.Y.S.2d 892, 895 (N.Y. Surr. Ct. 1985) (co-trustees must generally act "collectively"). Co-trustees Shant and Nina ignored these duties and allowed Shant to treat the property titled in the name of the VSHPHH Trust as his own.

### i. Shant Hovnanian exercised extensive control.

The VSHPHH Trust admits Shant exercised extensive control over the Village Mall while he and Nina were purportedly co-equal trustees. (SUMF ¶ 66, *citing,* VSHPHH Trust Dep. Vol I, p. 27:6-9 (stating Shant was "in charge more or less")). The VSHPHH Trust could not produce any record of any decision ever made by the two trustees, records of Shant ever documenting his decisions for the VSHPHH Trust, or even a pre-suit communication between the two trustees.

The most the VSHPHH Trust could muster about co-trustee Nina's role was that Shant would tell her about decisions, sometimes, after the fact. (SUMF ¶ 72.) Her lack of knowledge is telling. Nina admitted she had not even "learned the ropes" of being a trustee until Shant allegedly resigned in late 2017, conceding she was not acting as trustee beforehand. *Id.*[4]

A co-trustee cannot simply acquiesce to the other trustee. Restatement (Third) of Trusts § 81 (noting a trustee cannot abide another co-trustee's breach of fiduciary duty); *Merrill Lynch,* 797 A.2d at 228 (same); *In re Goldstick*, 177 A.D.2d 225, 238 (N.Y. App. Div. 1st Dept. 1992)

---

[4] The VSHPHH Trust has no evidence that Shant resigned, beyond Nina's say so. There are transfers to his companies even after his purported resignation. (SUMF ¶ 85.) Yet for purposes of this motion, the United States will assume Shant resigned sometime in late 2017.

(a co-trustee cannot shirk her fiduciary duty even if a different trustee has been delegated the duty to monitor or control certain investments).  Nina's failure to monitor Shant or stop him from taking all the rent demonstrates the VSHPHH Trust was a nominee.  *See Berkshire Bank v. Town of Ludlow, Mass.*, 708 F.3d 249, 252 (1st Cir. 2013) ("lack of interference in taxpayer's use of property by the titleholder" is relevant to the nominee analysis) (quoting *In re Callahan*, 442 B.R. 1, 6 n.5 (D. Mass. 2010)).

### ii. Shant Hovnanian took all the rental income, ignoring the VSHPHH Trust.

Setting up the trust properly in 2015 would have required minimal efforts.  The co-trustees could have opened a bank account in the name of a trust and instructed the tenants to pay their rent checks to the trust as landlord.  Shant ignored the VSHPHH Trust.  He took all the rents that the Village Mall generated and deposited them into accounts under his control.

From 2015 through early 2017, the first-floor tenants made their rental income checks payable to Vahak, Shant's father, who died in August 2015.  (SUMF. ¶¶ 66-70.)  Shant then had the rent checks in his father's name and then transferred them to a bank account in the name of a defunct company that he controlled (HovSat, Inc.).  *Id*. ¶¶ 70-73, 85-88. In early 2017, Shant ordered that the tenants pay HovSat directly rather than the prior landlord (his parents) or current landlord (the VSHPHH Trust).  *Id.*  The tenants complied, revealing the VSHPHH Trust was at most just a name on a deed.

Nina asserts HovSat was engaged in some sort of management agreement on behalf of the VSHPHH Trust.  (SUMF ¶¶ 31-36, 83-84.)  No management agreement was ever produced, there is no evidence that HovSat received anything in compensation, and the only service it provided was being a name on a bank account in which to deposit rents.  *Id.*  Nina's only basis for this understanding was that Shant told her there was a management arrangement.  *Id*.

The funds in the HovSat account were Shant's funds both legally and practically. HovSat's corporate charter was revoked in 2012, yet Shant continued to operate the company as his own personal entity.  (SUMF ¶¶ 27-31.)   This is not an acceptable use of a defunct company, as "[a] dissolved corporation exists solely to prosecute and defend suits, and not for the purpose of continuing the business for which it was established." *Lancellotti v. Maryland Cas. Co.*, 617 A.2d 296, 298 (N.J. Super. Ct. App. Div. 1992); *Dutch Run-Mays Draft, LLC v. Wolf Block, LLP*, 164 A.3d 435, 446 (N.J. Super. Ct. App. Div. 2017); *see United States v. Hovnanian*, 2022 WL 909868, *3 (D.N.J. Mar. 29, 2022).  If an owner continues to operate the company, he may become both personally liable for corporate expenses and treated as the owners of the remaining assets or earnings of the corporation.  *Lancellotti*, 617 A.2d at 298; *Hovnanian*, 2022 WL 909868, at *3.  Shant continued to operate HovSat after 2012.  He entered new contracts in HovSat's name in 2014 and 2017, signing them as the "managing partner" and "authorized representative."  (SUMF ¶¶ 27-30.)  He also kept the HovSat bank account open for years rather than shutting down the company.  *Id.*

As a practical matter, the funds in the HovSat bank account were at Shant's disposal. Shant's secretary (Karen Gandolfo) was the only person with legal authority over that account.[5] But Gandolfo admitted she would take Shant's instructions to use the funds for non-business purposes.  (SUMF ¶¶ 32-37, *citing in part* Gandolfo Dep., pp. 74:7-10 (Q. "[S]o when Shant said pay this house expense, you'd say okay? A. Well, yes. What else am I supposed to say?).)

In total, the first-floor tenants paid $278,000 in rent from January 1, 2015, to December 31, 2017, which was deposited into the HovSat account.  (SUMF ¶¶ 85-86.)  Roughly a quarter

---

[5] Shant obtained electronic access to financial accounts in which he lacked any legal authority to use.  For example, Shant had his secretary open a brokerage account with Interactive Brokers. (SUMF ¶ 51.)  Gandolfo testified that she did nothing more than open the account.  *Id.*

of the Village Mall's rent ($65,000) went to a bank account held in the name of SpeedUS, or otherwise covered expenses normally paid from the SpeedUS bank account.  *Id.*; *see*, *e.g.*, *Berkshire Bank*, 708 F.3d at 253 (finding an LLC was a nominee in part where a taxpayer admitted to taking 10-15% of the revenue to pay personal expenses.)  The VSHPHH Trust's own expert witness conceded that "sources of funds and uses of funds [in the SpeedUS account] were personal in nature."  (SUMF ¶ 46; Ex. 105, Paulikens Exp. Report, p. 8.)

Shant also paid his personal expenses from the HovSat account as well.  He paid for expenses related to his house at 520 Navesink River Road, his Country Club expenses, and his children's private school tuition from that account.  (SUMF ¶¶ 58, 85-86.)  Even if the VSHPHH Trust now to assert tuition payments or other payments benefited Shant's children, Shant was still exercising control beyond his role as trustee.  Under the VSHPHH Trust, a trustee could not authorize a distribution to support a beneficiary that is also their dependent unless another trustee approved.  (Ex. 114, VSHPHH Trust Art. V(C).)  The VSHPHH Trust did not come forward with any such proof.

### iii.  Shant Hovnanian did not pay rent for the second floor.

A trustee cannot allow himself to use trust property for his own use as that is self-dealing. *See, e.g.*, Restatement (Third) of Trusts § 78(2) ("Except in discrete circumstances [not applicable here], the trustee is strictly prohibited from engaging in transactions that involve self-dealing[.]"); *Jemison,* 2021 WL 1171689, at *13; *In re Heller*, 6 N.Y.3d 649, 655 (2006). Before 2015, the Hovnanians used the second floor for their various businesses.  After the Village Mall transferred, nothing changed.  Shant continued to use the second floor for himself and his businesses.  His companies did not sign leases and paid nothing to the Village Mall.

Shant and his companies continued use of the second floor rent-free further establishes that he was the true beneficial owner of the Village Mall.  Paying rent would be meaningless

11

because Shant owned both the Village Mall and the comapnies.  It was no different than just moving cash from one of his pockets to another.  *See United States v. Beeman*, 2011 WL 2601959, at *14 (W.D. Pa. June 30, 2011), *summ. aff'd* No. 11-03080 (3d Cir. 2012) (payments were illusory when it was "never reported on a tax return" and "even if the transfer did occur, the monies would simply have passed from one [Taxpayer]-controlled entity to another . . . .").

### iv. The VSHPHH Trust never filed tax returns because it did not think the rent was its income.

The VSHPHH Trust asserted that it did not need to file tax returns because the rents were deposited with HovSat.  (VSHPHH Trust Dep., Vol 1., p. 125:5-22.)[6]  Not so.  If the rent was the VSHPHH Trust's income, then the trust had to file an income tax return.  26 U.S.C. § 6012(b)(4) ( "every trust having … gross income of $600 or over, regardless of the amount of taxable income" must file tax returns income).  More importantly, by asserting this position, the VSHPHH Trust conceded that it did not consider the rental income to be its income; it thought the income was HovSat's.  It is also noteworthy that the VSHPHH Trust eventually opened its own bank account in December 2019, over a year after this suit was filed.  (SUMF ¶ 82.)

### v. Shant Hovnanian paid Village Mall expenses from his personal funds.

Shant also bore the expenses of ownership.  If the VSHPHH Trust was the true owner of the Village Mall, it would have needed to ensure the Village Mall expenses were paid.  There is no record of the VSHPHH Trust taking any such steps, or that it ever paid these expenses.

---

[6] Shant's parents also did not file a gift tax return, which was due to the IRS after they transferred the Village Mall to the VSHPHH Trust.  26 U.S.C. § 6019; Rev. Proc. 2014-61 (requiring a gift tax return if the gift exceeds $13,000 in 2015).  The gift tax return could have resulted in the assessment of a gift tax.  It also would have shown the IRS the fair market value of the Village Mall as well as listing the donees.  Failing to provide this information helped keep the IRS in the dark about this transfer.

12

Shortly after legal title was conveyed to the VSHPHH Trust, Shant paid $201,204 from his SpeedUS bank account for real estate taxes on the Village Mall.  There is no record that Shant was making either a gift or a loan to the VSHPHH Trust.  (SUMF ¶¶ 83-84.)  The only logical conclusion is that Shant was paying the real estate taxes because he personally owned the Village Mall.  The VSHPHH Trust could not explain why Shant was paying the Village Mall's expenses during its Rule 30(b)(6) deposition, and it has been precluded from doing so now. (SUMF ¶ 92, *citing* VSHPHH Trust Dep., Vol. 1, p. 85:18-21 ("[Why] did Shant need money from the SpeedUS NY account to pay the real estate taxes for Village Mall?  A. I don't know. Ask him.")); *United States v. Hovnanian*, 2022 WL 279835, at *7-8 (D.N.J. Jan. 31, 2022) (sanctions order and opinion).

That Nina did not know why her brother and co-trustee personally paid the real estate taxes for the Village Mall is telling.  These real estate taxes were paid shortly after the Village Mall was transferred, and it was by far the largest expense identified by the United States. (SUMF ¶¶ 85-86, 93.)  One would expect two trustees to discuss where the funds came from and whether the funds should be considered a loan or a gift.  Yet co-trustee Nina knows nothing. Further, the VSHPHH Trust refused to prepare for the Rule 30(b)(6) deposition by having Nina her ask her brother Shant, who she talks to weekly.  *Id*. ¶ 92; (Pachava Trust Dep., Vol. I, p. 51:5-9).  The VSHPHH Trust also refused to designate Shant as a representative and refused to even provide Shant's current address in Armenia, making it impossible to take his deposition.

Beyond paying the $201,204, Shant paid the Village Mall's other expenses from his HovSat account.  (SUMF ¶ 94.)  The VSHPHH Trust never paid any expenses in its own name before the start of this suit.

**III.  This Court Should Order Foreclosure and Sale of the Property with All Proceeds to be Paid to the United States.**

Under 26 U.S.C. § 7403(c), the Court should "determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property . . . ."  If the Court determines the federal tax liens attach to the property, it should authorize the sale of the property.

There are no other creditors with a valid claim or interest in the property according to the public record.   Because the VSHPHH Trust is the nominee for Shant, the proceeds from the sale should be paid to the United States.  *See United States v. Bogart*, 715 F. App'x 161, 168 (3d Cir. 2017) (affirming sale of property of where taxpayer transferred entirety's property to a nominee); *G.M. Leasing Corp. v. United States*,, 429 U.S. 338, 351 (1977) (a corporation being an alter ego has "no countervailing effect for purposes of [taxpayer's] federal income tax.... It would then follow that the [United States] could properly regard [the alter ego's] assets as [taxpayer's] property subject to the lien").

Nina may assert that the VSHPHH Trust now has an interest in the property because it stopped being Shant's nominee after this litigation began.  But once a federal tax lien attaches, it stays with the property and any subsequent owner takes the property subject to the federal tax lien.  26 U.S.C. §§ 6322-6323; *United States v. Bess,* 357 U.S. 51, 57 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere*."); *Phelps v. United States*, 421 U.S. 330, 334–35 (1975) (A "lienholder ... may follow the [encumbered] proceeds wherever they can distinctly trace them."); *United States v. Avila*, 88 F.3d 229, 233 (3d Cir. 1996).  Whatever interest the VSHPHH Trust may claim now cannot be divorced from its past inaction.

14

**IV. The Court's Order Here Should be Entered As a Final Judgment.**

The United States asks that the Court's resolution of this motion, including any order of sale, as well as the default judgment previously entered against Shant Hovnanian as to the amount of his liability (dkt. 35) be entered as a final judgment under Fed. R. Civ. P. 54(b). Rule 54(b) provides that a court may enter a final judgment as to "one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); *Elliott v. Archdiocese of New York*, 682 F.3d 213, 219–20 (3d Cir. 2012). Thus, the Court should determine that there has been an "ultimate disposition on a cognizable claim for relief as to a claim or party" of less than all the claims in a civil action, and that there is no "just reason for delay." *Elliott*, 682 F.3d at 220 (citations and quotation marks omitted).

Granting this motion and the corresponding Order of Sale will fully dispose of the United States' action to enforce its tax liens against the Village Mall, including the disposition of the proceeds of any sale. Yet there are two other properties in this case that are being resolved with separate motions. As a result, entry of this motion fully resolves the claims over the Village Mall, but it is not a full disposition of this litigation.

There also is no just reason for delay. In making that determination, a court should consider several factors: (i) "the relationship between the adjudicated and unadjudicated claims"; (ii) "the possibility that the need for review might or might not be mooted by future developments in the district court"; (iii) "the possibility that the reviewing court might be obliged to consider the same issue a second time"; (iv) "the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final"; (v) "miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006) (citing *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*,

15

521 F.2d 360, 364 (3d Cir. 1975)).  Here, the Village Mall can be sold separately from the other properties at issue.  The United States has asserted that each property is held by a different nominee or alter ego of Shant.  Thus, the claims are separate and there is little chance of overlap, mootness, or having to review these matters another time again.  There is also no chance of offset as there are no counterclaims.

Finally, the economics of this matter warrant the entry of an order of sale that is final. The sale of the Village Mall cannot practically occur without that order as buyers will be more hesitant to purchase without a final order.  In addition, Shant has not paid his taxes in over twenty years since they accrued.  Delay simply allows him to accrue further interest.

## CONCLUSION

For the foregoing reasons, the motion for partial summary judgment should be granted.

Date: May 13, 2022,

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division

*/s/ Ari D. Kunofsky*
ARI D. KUNOFSKY
JOSHUA D. ZIMBERG
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044
Telephone: (202) 353-9187
Facsimile: (202) 514-6866
Email: Ari.D.Kunofsky@usdoj.gov

*Counsel for the United States*
