## LEASE

THIS LEASE is dated as of May 15, 2013, between Vahak S. Hovnanian and Hasmig Hovnanian or their assignee whose address is c/o Antranik Sarkes, Village Mall, 1 Dag Hammarskjold Boulevard, Freehold, NJ 07728 ("Landlord"), and Alexander Petcu MD, LLC and Dr. Alexander Petcu, whose address is Village Mall, Suite 3, 1 Dag Hammarskjold Boulevard, Freehold, NJ 07728 ("Tenant").

Landlord hereby leases to Tenant and Tenant hereby rents from Landlord the Demised Premises (as defined in Article I) for the Term provided for in Article IV hereof, at the Rent provided for in Article V hereof, and on all of the terms and conditions set forth herein. Intending to be legally bound hereunder and in consideration of $1.00 and other good and valuable consideration, Landlord and Tenant hereby agree with each other as follows:

## ARTICLE I

**LEASE SCHEDULE**

The following terms shall be applicable to the various provisions of this Lease which refer to them:

Section 1.01. Demised Premises and the Village Mall:

Demised Premises means the portion of the Buildings leased to Tenant at the Village Mall complex located at Dag Hammarskjold Boulevard, Freehold, New Jersey. The Demised Premises of this Tenant is a portion of Building One, which consists of 1,525 square feet, commonly known as Suite 3, 1 Dag Hammarskjold Boulevard, Freehold, NJ 07728 ("Demised Premises"). The Demised Premises includes any alterations, additions or repairs made thereto. The complex is referred to in this Lease Agreement as the "Village Mall".

Section 1.02. Building:

Means the Building in which the Demised Premises is located.

Section 1.03.
(a) Commencement Date:
Means the calendar date; June 1, 2013.

(b) Term:
Means the period commencing on the Commencement Date and ending at the end of the calendar month that is at least 60 full calendar months after the Commencement date (the "Expiration Date" (e.g. if the Commencement Date is June 1, 2013 the Term will end on May 31, 2018).

**Plaintiff Exhibit**

103

Section 1.04.  Rent:

(a)  Basic Rent shall commence on the Commencement Date and be calculated as follows:

(b)  In the term of this Lease, Basic Rent shall be the sum of $2,795.83 per month (based upon 1,525 square feet @ $22.00 per square foot per year).

(c)  For the period starting June 1, 2013 and ending on December 31, 2013 the tenant shall pay $1,397.91 per month (50% off basic rent) in lieu of renovation work (Non structural e.g. new flooring, paint, door replacement,...etc.) paid by the tenant. Any work preformed must be carried out with a licensed and insured contractor with landlord's prior approval.

(d)  Basic Rent shall be paid in installments on or before the first day of each and every month during the entire term of the lease. If the Commencement Date is a day other than the first day of a calendar month, Tenant shall pay Landlord on such Commencement Date the proportionate amount of Basic Rent due for the balance of such calendar month, plus the Basic Rent due for the first full calendar month of the Term.

Section 1.05.  Use:

(a) Permitted Use:  General office use for Tenant's business of rendering medical care and services

(b) Tenant's Business Name: Alexander Petcu MD, LLC d/b/a Village Medical Associates

Section 1.06.  Broker: See Section 14.06.

Section 1.07.  Notice Addresses:

(a)  Landlord's Notice Address:

c/o Antranik Sarkes
Village Mall, Suite 12
1 Dag Hammarskjold Boulevard
Freehold, NJ 07728

(b)  Tenant's Notice Address:

Alexander Petcu MD, LLC

*Village Mall, Suite 3*
*1 Dag Hammarskjold Boulevard*
*Freehold, NJ  07728*

Section 1.08.   Shared Use of Building Facilities:

(a)   During the Term, Tenant shall not be permitted to use the kitchen facilities located in Building One.

(b)   Tenant shall not be permitted to use the conference room in Building One.  If Tenant wishes to use the conference room such time may be requested from the office manager and will be permitted at the Landlord's discretion.

## ARTICLE II

**DEFINITIONS**

As used herein, the following words and phrases have the following meanings:

Section 2.01.   Common Area:

Means the portions of the Village Mall Building One designated for common use from time to time by Landlord, such as the lobby, conference room and bathrooms. References to the Common Area include the parts of the Village Mall designated as a Parking Area by Landlord from time to time, and if Landlord so determines, any additional buildings constructed in the Village Mall which are available for common use.

Section 2.02.   Expiration Date:

Means the last day of the Term as set forth in Section 1.03. If the Term has been extended or this Lease has been renewed, the Expiration Date shall be the last day of the Term as so extended or renewed. If this Lease is canceled or terminated prior to the originally fixed Expiration Date, then the Expiration Date shall be the date on which this Lease is so canceled or terminated. Provided, however, that if this Lease is canceled or terminated prior to the originally fixed Expiration Date by reason of Tenant's Default, Tenant's liability under the provisions of this Lease

3

USAPROD-000734

shall continue until the date the Term would have expired as if such cancellation or termination had not occurred.

Section 2.03.   Force Majeure:

Means any of the following events: Acts of God; strikes, lock-outs, or labor difficulty; explosion, sabotage, accident, riot or civil commotion; act of war; fire or other casualty; legal requirements; delays caused by the other party; any causes beyond the reasonable control of a party hereto.  Notwithstanding anything herein contained the provisions of this Section shall not be applicable to Tenant's obligations to pay Rent or any other sums or charges payable by Tenant hereunder.

Section 2.04.   Insurance Requirements:

Means the applicable provisions of the insurance policies carried by Landlord covering the Demised Premises, the Village Mall, or any part of either; all requirements of the issuer of any such policy; and all orders, rules, regulations and other requirements of any insurance service office which serves the community in which the Village Mall is situated.

Section 2.05.   Mortgage:

Means any mortgage, deed to secure debt, trust indenture, or deed of trust which may now or hereafter affect, encumber or be a lien upon the Demised Premises, the Village Mall, the real property of which the Village Mall forms a part, or Landlord's interest therein; and any spreading agreements, renewals, modifications, consolidations, replacements and extensions thereof.

Section 2.06.   Mortgagee:

Means the holder of any Mortgage, at any time.

Section 2.07.   Parking Area:

Means those portions of the Village Mall which are designated as such by Landlord from time to time, subject to the provisions of Section 11.02.

Section 2.08.   Person:

Means an individual, fiduciary, estate, trust, partnership, firm, association, corporation, or other organization, or a government or governmental authority.

USAPROD-000735

Section 2.09.   <u>Repair</u>:

Includes the words "replacement and restoration", "replacement or restoration", "replace and restore", and/or "replace or restore", as the case may be.

Section 2.10.   <u>Tenant's Agents</u>:

Includes Tenant's employees, servants, licensees, subtenants, assignees, contractors, heirs, successors, legatees, and devisees, but shall specifically not include any customers of Tenant.

Section 2.11.   <u>Term</u>:

Includes any extensions and renewals of the initial term hereof and any period during which Tenant is in possession of the Demised Premises.

Section 2.12.   <u>Structural</u>:

Includes the footings, foundations, load bearing walls and roof deck of the Building.

Section 2.13.   Additional Rent:

All sums due to Landlord from Tenant pursuant to any provision of this Lease shall be deemed to be Additional Rent, whether or not specifically so designated herein.

**ARTICLE III**

**<u>CONDITION OF DEMISED PREMISES</u>.**

Section 3.01.   <u>Condition Upon Acceptance</u>:

Tenant shall accept possession of the Demised Premises in a reasonably acceptable condition upon completion of renovation by the Landlord.

Section 3.02.   <u>Delivery of Possession</u>:

5

Delivery of Possession shall be deemed to have occurred when Landlord shall have tendered possession of the Demised Premises to Tenant, which is scheduled to take place on June 1, 2013.

Section 3.03. Tenant's Right of Entry:

Tenant may enter the Demised Premises before the Commencement Date. Upon and after any entry to the Demised Premises by Tenant, all of Tenant's obligations under this Lease shall be applicable, except for Tenant's obligations to pay Basic Rent and any other scheduled charges Tenant is required to pay to Landlord.

Section 3.04. Certificate of Occupancy:

If any governmental authority requires that a certificate of occupancy be issued with respect to the Demised Premises, Landlord shall apply for and obtain a certificate of occupancy.

## ARTICLE IV

### TERM

Section 4.01. Term:

The Term shall expire on the date designated as the Expiration Date in Article I. The date upon which the Term commences is referred to in this Lease as the "Commencement Date".

## ARTICLE V

### RENT, SECURITY, TAX CONTRIBUTIONS

Section 5.01. Basic Rent:

Tenant shall pay Basic Rent to Landlord. Basic Rent shall be payable without notice or demand. Basic Rent shall be payable at the rates set forth in Article I, in monthly installments as set forth therein. Each full monthly installment shall be due in advance, on or before the first day of the month during the Term.

Section 5.02. Lease Year:

6

Means the twelve (60) month period commencing on June 1, 2013 and ending on the last calendar day of May.

Section 5.03.  Payment of Rent:

  (a)  Rent:  Means Basic Rent.

  (b)  Without Notice:  Rent shall be paid without notice, demand, counterclaim, offset, deduction, defense, or abatement.

  (c)  Place:  All Rent payable under this Lease shall be payable at Landlord's address as set forth herein or at such other address as Landlord shall designate by giving written notice to Tenant.

Section 5.04.  Taxes:

  Tenant shall not be responsible for the payment of any real estate taxes allocable to the Demised Premises.

Section 5.05.  Security Deposit:

  Tenant has submitted to Landlord a security deposit in the amount of $2,795.83, as security for the Tenant's faithful performance of its leasehold obligations.  Said sum shall be returned to the Tenant, without interest, after the expiration of the term hereof, provided that the Tenant has fully and faithfully performed all such covenants and conditions and is not in arrears in Basic Rent or additional rent.  During the term hereof, the Landlord may, if the Landlord so elects, have recourse to such security, to make good any default by the Tenant, in which event, the Tenant shall, on demand, promptly restore said security to the required amount.  Liability to repay such security to the Tenant shall run with the reversion and title to the Village Mall.  The Landlord shall assign or transfer said security, for the benefit of the Tenant, to any subsequent owner or holder of the reversion or title to said property, in which case the assignee shall become liable for the repayment thereof as herein provided, and the assignor shall be deemed to be released by the Tenant from all liability to return such security.  This provision shall be applicable to every alienation or change in title.  The Tenant shall not mortgage, encumber or assign said security.

**ARTICLE VI**

**CONDITIONS OF PREMISES AND SIGNS**

7

USAPROD-000738

Section 6.01.   No Representation, Etc.:

Landlord has made no representation, covenants or warranties with respect to the Demised Premises except as expressly set forth in this Lease.

Section 6.02.   Mechanics' Liens:

If any mechanic's or materialmen's lien is filed against the Demised Premises or the Village Mall as a result of any additions, alterations, repairs, installations or improvements made by Tenant or any other work or act of Tenant, Tenant shall discharge or bond same within twenty (20) days from the filing of the lien. If Tenant shall fail to discharge the lien or bond the lien, Landlord may, upon seventy-two (72) hours notice to Tenant, bond or pay the lien or claim for the account of Tenant without inquiring into the validity of the lienor's claim.

Section 6.03.   Signs:

(a)   Right to Install: Tenant shall have the right to install and maintain throughout the Term, a sign affixed to the exterior of the Demised Premises subject to (i) the written approval of Landlord as to dimensions, material, content, location and design, (ii) applicable legal and code requirements, and (iii) Insurance Requirements. Tenant shall obtain and pay for all required permits and licenses relating to such signs. Copies of all such permits and licenses shall be delivered to Landlord within a reasonable time after they are issued.

(b)   No Other Signs:   Tenant shall not have the right to maintain or install any other signs in or at the Village Mall or visible from the outside of the Demised Premises.

(c)   Removal for Repairs: If Landlord shall deem it necessary to remove any sign in order to paint or to make repairs, alterations or improvements in or upon the Demised Premises, Landlord shall have the right to do so provided that, as soon as possible, Landlord replaces such sign at Landlord's sole expense.

(d)   Illuminated Signs and Loudspeakers Prohibited: Tenant may not install illuminated signs, lamps or other illumination devices in or upon the Demised Premises without the prior written approval of the Landlord.

8

USAPROD-000739

Tenant agrees it will not place any signs or other structure or obstruction on the roof of the Building and it shall not operate any loudspeaker or other device which can be heard outside of the Demised Premises or the Building.

(e) Paper Signs: Tenant agrees not to place any paper sign on any window of the Building unless same are neat, clean and professionally made, and subject to the Landlord's prior written approval in its sole discretion.

Section 6.04. Insurance Covering Tenant's Work:

Tenant shall not make any alterations, repairs or installations, or perform Tenant's Work or any other work to or on the Demised Premises unless prior to the commencement of such work Tenant shall obtain (and during the performance of such work keep in force) public liability insurance pursuant to Section 14.02 of this Lease and workmen's compensation insurance pursuant to law to cover every contractor to be employed. Each of the Tenant's contractors must also obtain and keep in effect during the performance of such work public liability insurance and workmen's compensation insurance pursuant to law. Such policies cannot be canceled without thirty (30) days notice to Landlord. The policies shall be in amounts reasonably satisfactory to Landlord. Prior to the commencement of such work, Tenant and its contractors shall deliver duplicate originals of certificates of such insurance policies to Landlord.

**ARTICLE VII**

**REPAIRS, COMPLIANCE, SURRENDER**

Section 7.01. Repairs and Maintenance by Tenant.

Except for repairs Landlord is specifically obligated to make or cause to be made hereunder, Tenant shall make all repairs to the Demised Premises necessary or desirable to keep the Demised Premises in good order and repair and in a safe, dry and tenantable condition. Without limiting the generality of the foregoing, Tenant shall be specifically required to make repairs: (i) to that portion of any pipes, lines, ducts, wires, or conduits that service Tenant and are contained within the Demised Premises (but not including repairs to any pipes, lines, ducts, wires or conduits that are above the ceiling, beneath the floor, or outside of the demising walls of the Demised Premises); (ii) to windows and glass (but only if damage is caused by Tenant, his employees, agents or guests, doors, and any fixtures or appurtenances composed of glass; (iii)

9

t's sign; and (iv) to the Demised Premises or the Building
pairs to the same are necessitated by any act or omission of
or the failure of Tenant to perform its obligations under
ase. Tenant shall keep the Demised Premises in a clean and
y condition, free from vermin and escaping offensive odors.

7.02. <u>Approval by Landlord of Repairs and Alterations</u>:

nant shall give Landlord prompt notice of any material
or alteration required or permitted by Tenant under any
on of this Lease. Tenant may make repairs and alterations
Demised Premises, subject to the following provisions:

a)   Such alterations or repairs shall not change the general
     character of the Demised Premises or the Building, or
     reduce the fair market value thereof below its value
     immediately before such alteration or addition, or impair
     the usefulness of the Demised Premises or the Building;

b)   Such alterations or repairs shall be effected with due
     diligence and in a good and workmanlike manner, in
     accordance with all applicable legal requirements and
     Insurance Requirements;

(c)  Such alterations or repairs shall be promptly and fully
     paid for by Tenant;

(d)  Any substantial alterations or repairs to the plumbing,
     mechanical, electrical, data or telephone networks and
     cabling, sewerage, sprinkler or HVAC systems, shall be
     done in accordance with plans, specifications and cost
     estimates approved by Landlord, which approval shall not
     be unreasonably withheld;

(e)  Tenant shall not make any exterior or structural
     alterations or repairs without obtaining Landlord's prior
     written consent; and

(f)  Any such alterations or repairs involving an estimated
     expenditure of $5,000.00 or more shall be done in
     accordance with plans, specifications and cost estimates
     approved by Landlord, which approval shall not be
     unreasonably withheld provided that such alterations or
     repairs are nonstructural.

Except in the event of an emergency and subject to the
isions of the preceding paragraphs, if within fourteen (14)
after Tenant's notice is given, Landlord shall give notice to

10

Tenant that it desires to approve specifications and working drawings with respect to any proposed repair or alteration, as to which Landlord has the right of approval as aforesaid, then Tenant shall not commence the repair or alteration until Tenant has submitted specifications and working drawings of the proposed repair or alteration and Landlord has approved them. Landlord shall review such specifications and drawings promptly. Within fourteen (14) days of receipt of the specifications and drawings, Landlord shall either approve of same in writing, or reject same in writing, and in the latter event Landlord shall also set forth its specific objections to the specifications and drawings.  All work shall be commenced promptly after Landlord has consented to same and Tenant has obtained all necessary permits and approvals. Tenant shall perform all work in accordance with the approved specifications and working drawings and prosecute the work diligently to completion. Any such work performed by Tenant shall be subject to Landlord's inspection and approval after completion to determine whether the work complies with the requirements of this Lease.

Section 7.03.  Compliance:

Tenant shall observe and comply promptly with all present and future legal requirements and Insurance Requirements relating, to or affecting the Demised Premises, the Building or any sign of Tenant, or the use and occupancy thereof, or any appurtenance thereto.

Section 7.04.  Electrical Lines.

If the Tenant installs any electrical equipment that overloads the lines in the Demised Premises or the Village Mall, Landlord may require Tenant to make whatever changes to such lines as may be necessary to render the lines in good order and repair and in compliance with all Insurance Requirements and applicable legal requirements.

Section 7.05. Emergency Repairs:

If, in an emergency, such as, for example, fire, flood or storm, when the Tenant or Tenant's Agents are not on the Demised Premises, it shall become necessary to make promptly any repairs or replacements required to be made by Tenant, Landlord may re-enter the Demised Premises and proceed to have such repairs or replacements made and pay the cost of such repairs or replacements. Within thirty (30) days after Landlord renders a bill for such repairs or replacements, Tenant shall reimburse Landlord for the reasonable cost of making such repairs, provided that such repairs

11

shall have first been an obligation of Tenant to perform under this Lease.

Section 7.06. <u>Surrender of Premises</u>:

On the Expiration Date, Tenant shall quit and surrender the Demised Premises broom clean, and in good condition and repair, reasonable wear and tear and damage by fire or the elements excepted, together with all alterations, fixtures, installations, additions and improvements which may have been made in or attached on or to the Demised Premises. Prior to or on the Expiration Date, Tenant shall remove its trade fixtures, shelving, inventory and other personal property from the Demised Premises and shall promptly repair any damage caused by such removal. Tenant's obligations under this Section shall survive the Expiration Date.

**ARTICLE VIII**

**SERVICE AND UTILITIES**

Section 8.01.  <u>Electricity</u>:

Landlord shall supply electric service to the Demised Premises.  Tenant shall pay to Landlord its share of the electric bills for the building. Tenant's share of such charges will be 64% of the total for the building.

Section 8.02.  <u>Sewer and Water</u>:

Tenant shall pay to Landlord Tenant's share of:(i) any sewer charges assessed to Building Two and (ii) the cost of water consumed in Building Two. Tenant's share of such charges will be 64% of the total for the building. Payments shall be due within fifteen (15) days after a bill is rendered. If any sewer or water rent, charge, tax or levy is imposed against the Village Mall, Tenant shall pay Tenant's Share thereof within five (5) days after Landlord renders a bill for same.

Section 8.03.  <u>Heat, Hot Water, Air Conditioning</u>:

Landlord shall supply heat, hot water and air conditioning to the Demised Premises, all of which are electric.  The cost thereof shall be included in Tenant's electric service charges.

12

## ARTICLE IX

**USE AND OPERATION**

Section 9.01.  Use:

The Demised Premises shall be used only as specified in Section 1.05(a) ("Permitted Use") and for no other purpose.

Section 9.02.  Continuous Occupancy:

Tenant shall occupy the Demised Premises on the Commencement Date and thereafter shall continuously conduct its business in the Demised Premises in accordance with the Permitted Use.

Section 9.03. Operations in Good Faith:

Tenant shall cause said business to be conducted and operated in good faith.

Section 9.04.  Operations at the Demised Premises:

(a)   Non-Retail Space: Tenant shall only use space in the Demised Premises for office, clerical or other non-selling purposes as is reasonably required for Tenant's tax preparation practice therein. Tenant shall not perform any substantial amount of office or clerical function in the Demised Premises for any other business.

(b)   Keeping Demised Premises Clean: Tenant shall keep the Demised Premises, including interior portions of all windows, doors and all other glass, in neat and clean condition.

(c)   Paying License Fees: Tenant shall pay promptly all licensee fees, permit fees and charges of a similar nature for the conduct by Tenant of any business or undertaking authorized hereunder to be conducted in the Demised Premises.

(d)   Rules and Regulations:  Tenant shall observe all reasonable rules and regulations (the "Rules") established by Landlord from time to time for the Village Mall, provided Tenant shall be given at least five (5) days notice thereof, and further provided that same do not materially and adversely affect Tenant's use of the Demised Premises or the Common Areas, in accordance with the provisions of this Lease.  Tenant's failure to keep

13

USAPROD-000744

and observe said Rules constitutes a breach of the terms of this Lease in the same manner as if the Rules were contained herein as covenants. In the case of any conflict between said Rules and this Lease, this Lease shall be controlling. The initial set of Rules is annexed hereto as Exhibit A.

(e)   Restrictive Covenants: Tenant agrees that it will comply with and observe all restrictive covenants of record or of which Tenant has been given actual notice which affect or are applicable to the Village Mall, the Demised Premises and the common areas, provided same do not prohibit Tenant's use of the Demised Premises in accordance with the provisions of this Lease.

Section 9.05.   Restriction on Tenant's Activities at Village Mall:

(a)   Sidewalk Use:   Tenant shall not use the sidewalk adjacent to or any other space outside the Demised Premises for display, sale or any other similar undertaking without the prior written consent of Landlord in each instance.

(b)   Loudspeaker Use:   Tenant shall not use any advertising medium which may be heard outside the Demised Premises.

(c)   Plumbing Facility Use:   Tenant shall not use the plumbing facilities in the Common Areas the Demised Premises for any purpose other than the purpose for which they are intended.   Tenant shall repair any damage to the plumbing system caused by its activities.

(d)   Floor Load.   Tenant shall not place a load on any floor exceeding the floor load per square foot which such floor was designed to carry. Tenant shall not install, operate or maintain any heavy item of equipment in the Demised Premises except in such manner as to achieve a proper distribution of weight.

(e)   Exterior or Roof.   Tenant shall not use for any purpose all or any portion of the roof or exterior walls of the Demised Premises. Tenant shall not cause a violation or do any act which may result in a violation of the roof bond with respect to the Demised Premises.

Section 9.06.   Insurance Rates:

14

Tenant agrees to comply with all Insurance Requirements relating to or affecting the Demised Premises or the Village Mall. If the insurance rates applicable to the Village Mall are raised: (i) as a result of, or in connection with, any failure by Tenant to comply with the Insurance Requirements; or (ii) as a result of, or in connection with, any use to which the Demised Premises are put other than the Permitted Uses; then provided Tenant receives a statement from the insurance carrier setting forth the reason therefore, Tenant shall pay to Landlord on demand, the portion of the premiums for all insurance policies applicable to the Village Mall as shall be attributable to the higher rates or cease the activity which caused the higher rates. For the purposes of this Section, any finding or schedule of the fire insurance rating organization having jurisdiction over the Village Mall shall be deemed to be conclusive.

Section 9.07.   Illegal Purposes:

Tenant shall not use the Demised Premises for any illegal trade, manufacture, or other business, or any other illegal purpose.

**ARTICLE X**

**TRANSFER OF INTEREST, PRIORITY OF LIEN**.

Section 10.01.   Assignment, Subletting, etc.:

(a)   General: Tenant shall not sublet the Demised Premises or any part thereof, or assign, mortgage or hypothecate, or otherwise encumber this Lease or any interest therein nor grant concessions or licenses for the occupancy of the Demised Premises or any part thereof, without Landlord's prior written consent, which consent shall not be unreasonably withheld. Any unauthorized attempted transfer, assignment or subletting shall be void and confer no rights upon any third person. The transfer of control or a majority of the issued and outstanding capital stock of any corporate tenant or subtenant of this Lease or of a majority interest in any partnership tenant or subtenant, however accomplished, and whether in a single transaction or a series of transactions, shall be considered an assignment of this Lease or of such sublease requiring Landlord's prior written consent in each instance. The transfer of outstanding capital stock of any corporate tenant, for purposes of this Section 10.01, shall not include any sale of such stock by persons other than those deemed "insider" within the

15

USAPROD-000746

meaning of the Securities Exchange Act of 1934 as amended, and which sale is effected through "over-the-counter-market" or through any recognized stock exchange. No subletting shall relieve Tenant of any obligations herein, nor shall such subletting be deemed to be a waiver of Landlord's consent required for any future subletting. The consent by Landlord to any assignment shall, however, relieve Tenant of all of Tenant's obligations hereunder.

(b)   <u>Notice</u>. In the event that Tenant shall desire Landlord's consent to the subletting of the Demised Premises or the assignment of this Lease, Tenant shall give Landlord one (1) months prior written notice thereof, providing Landlord with the name, address and telephone number of, and type of business to be conducted by, any proposed sub-tenant or assignee, along with written authorization from the proposed sub-tenant or assignee permitting Landlord to conduct any credit, criminal or other search as may be reasonably required by Landlord. Landlord shall use all diligent good-faith efforts to advise Tenant of the approval or disapproval of the proposed subletting or assignment within one (1) month of Tenant's notice and, if the proposed transaction is a disapproved, Landlord shall set forth, in writing, the specific reasons therefor.

(c)   <u>Assignment and Sublease</u>. Tenant's request for Landlord's consent to assign this Lease or sublet the Demised Premises shall not be considered unless the following terms and conditions are fully complied with:

(i)   Tenant shall not be in default under this Lease at the time Landlord's consent is requested or at the effective date of the assignment or subletting.

(ii)   Tenant shall furnish Landlord with such financial data or other information concerning the proposed assignee or subtenant as Landlord may request and the net worth of the proposed assignee or subtenant shall be reasonably acceptable to Landlord.

(iii)   The Demised Premises shall be used by the assignee or subtenant solely for the Permitted Use as set forth herein or for such other use

16

USAPROD-000747

as Landlord may approve, which approval may not be unreasonably withheld.

(iv)   Tenant or the proposed sub-tenant or assignee shall pay the reasonable fees and disbursements of Landlord's attorney in connection with any assignment or subletting (whether proposed or effected).

(v)   In the case of an assignment, it shall provide for the assignment of Tenant's entire interest of this Lease and the acceptance by the assignee of said assignment and its agreement to perform directly for the benefit of Landlord all of the terms and provisions of this Lease on Tenant's part to be performed.

(vi)   In the case of a subletting, it shall be expressly subject to all of the obligations of Tenant under this Lease and the further conditions and restrictions that the sublease shall not be assigned, encumbered or otherwise transferred or the subleased premises further sublet by the sublessee in whole or in part, or any part thereof suffered or permitted by the sublessee to be used or occupied by others, without the prior written consent of Landlord in each instance.

(d)   <u>Copies to Landlord</u>: Landlord shall be furnished with a duplicate original of the assignment or sublease within: (i) ten (10) days after its execution; or (ii) prior to its effective Date, whichever is earlier.

(e)   <u>Limitation on Remedies</u>.   Intentionally Deleted.

<u>Section 10.02</u>.   <u>Subordination</u>:

This Lease shall be subordinate to the lien of any present or future Mortgage or Master Lease irrespective of the time of recording of such Mortgage or Master Lease.  This clause shall be self-operative and no further instrument shall be required. Upon Landlord's request, however, from time to time, Tenant shall confirm in writing that this Lease is so subordinate to the lien of any Mortgage or Master Lease.  Notwithstanding the foregoing, this section shall not apply to the extent that any mortgage is held

17

USAPROD-000748

directly or indirectly by Landlord or any member of the Landlord's immediate family.

Section 10.03.   Attornment:

If the Demised Premises or the Village Mall are encumbered by a mortgage and such Mortgage is foreclosed, or if the Demised Premises or Village Mall are sold pursuant to such foreclosure or by reason of default under said Mortgage, then notwithstanding such foreclosure, such sale, or such default:

    (a)   Tenant shall not disaffirm this Lease or any of its obligations hereunder; and

    (b)   at the request of the applicable Mortgagee or purchaser at such foreclosure or sale, Tenant shall attorn to such Mortgagee or purchaser and provide an Estoppel Certificate for the Demised Premises in the form contemplated by Article XVII herein.

Section 10.04.   Transfer of Landlord's Interest:

The term "Landlord" as used in this Lease means only the owner for the time being or the Mortgagee in possession for the time being or the Mortgagee in possession for the time being of the Demised Premises.   In the event of any sale of the Demised Premises, or in the event the Demised Premises are leased to any person (subject to this Lease), said Landlord shall be and hereby is entirely freed and relieved of all of its covenants, obligations and liability hereunder from and after the date of the transfer, except for accrued liabilities, provided that the transferee assumes all obligations of Landlord under this Lease from and after the date of the transfer. This subsection shall be applicable to each owner of the Demised Premises, from time to time, and shall not be limited to the first owner of the Demised Premises.

# ARTICLE XI.

## STRUCTURAL REPAIRS, COMMON AREA AND VILLAGE MALL

Section 11.01.   Structural Repairs:

18

Landlord shall make all repairs to the HVAC system, and all Structural Repairs to the Building, and will keep in good order or repair the Common Areas, the roof, and the exterior of the Building (except any doors, or door frames, storefronts, windows, and glass in Tenant's Demised Premises); provided Tenant shall give Landlord reasonable written notice of the necessity for such repairs, and provided that the damage thereto shall not have been caused by negligence of Tenant, its concessionaires, officers, employees, licensees, contractors or agents, in which event Tenant shall be responsible therefore. Landlord shall be under no liability for repair, maintenance, alteration or any other action with respect to the Demised Premises or any part thereof, or any plumbing, electrical, or other mechanical installations therein, except as may be expressly set forth in this Lease.

Section 11.02.  Use of Common Areas:

During the Term the following privileges to use certain portions of the Village Mall in common with Landlord and any designee of Landlord, subject to Landlord's rules and regulations, are hereby granted to Tenant:

(a)  the non-exclusive license to permit its customers to use the Common Areas, sidewalks and customer Parking Areas;

(b)  the non-exclusive license to permit its employees to use the Common Areas, sidewalks and employee Parking Areas; and

(c)  the non-exclusive privilege to permit its employees and customers to use the entrance and exit ways designated by Landlord from time to time for access to the Demised Premises from a public street or highway adjacent to the Village Mall through the appropriate entrances and exits so designated.

Section 11.03.  Landlord's Rights:

Notwithstanding anything to the contrary, Landlord shall have the following rights:

(a)  to close all or any portion of the Common Area, including the Parking Area to such extent as may in the opinion of Landlord be necessary to prevent a dedication thereof or the accrual of any rights of any person or the public therein;

USAPROD-000750

(b) to close all or any portion of the Common Area temporarily to discourage use by non-customers;

(c) to prohibit parking or passage of motor vehicles in areas previously designated for such;

(d) to expand, decrease or alter the size of the Village Mall or Building; and

(e) to erect additional buildings on the Common Area, or to change the location of buildings or other structures to any location in the Village Mall including the Common Area (and upon such erection or change of location the portion upon which such buildings or structures have been erected shall no longer be deemed to be a part of Common Area).

Notwithstanding the foregoing, Landlord shall not take any action that would materially decrease the parking area so as to jeopardize the Tenant's Permitted Use of the Demised Premises, and at all times there shall be sufficient parking spaces available for the use of Tenant's staff.

Section 11.04.  License Numbers:

In order to restrict the use by Tenant's employees of Parking Areas designated or which may be designated by Landlord as customer Parking Areas, Tenant agrees that it will, if and when so requested by Landlord, at any time, furnish Landlord with the license numbers of any vehicle of Tenant and Tenant's employees.

**ARTICLE XII.**

**DESTRUCTION AND FIRE INSURANCE**

Section 12.01.  Rent Abatement:

If the whole or any portion of the Demised Premises is damaged by fire or other casualty, Rent shall abate until such restoration is substantially completed, provided the damage has not been caused by Tenant or Tenant's employees, agents, guests or invitees. In the event of partial damage to the Demised Premises, such abatement shall be in the same percentage as the floor area of the Demised Premises that is damaged as of the floor area of the Demised Premises.  Notwithstanding the preceding, if the Demised Premises is damaged during the months of January, February, March or April (collectively referred to as the "Tax Season"), and/or has been damaged before then but has not been substantially repaired during

20

the Tax Season, and Tenant reasonably believes he cannot effectively run his tax practice at the Demised Premises during the Tax Season, Tenant may secure alternate rental space (with or without Landlord) until such time as the Demised Premises has been substantially repaired, and Tenant's Rent shall abate in full until such time as the Demised Premises has been substantially repaired. The foregoing shall in no way be deemed a waiver of Tenant's right to terminate pursuant to Section 12.02 hereof.

Section 12.02.   Option to Terminate:

If all or a portion of the Demised Premises shall be damaged by fire or other casualty, this Lease may not be terminated by Tenant unless Landlord has not substantially completed the restoration of the Demised Premises, as provided in Section 12.03, within six (6) months following the fire or other casualty, and Tenant provides notice to Landlord within ten (10) days after the expiration of said six (6) month period. In addition, if a "substantial Casualty" (as hereinafter defined) shall occur anytime during the Term, either party may terminate this Lease by notice, to the other within thirty (30) days after such occurrence.

For the purpose of this Section, "Substantial Casualty" means a fire or other casualty resulting in damage to the Demised Premises to the extent of fifty (50%) percent or more of the replacement value thereof.

Section 12.03.   Landlord's Obligation to Rebuild:

If all or any portion of the Demised Premises is damaged by fire or other casualty and this Lease is not terminated, Landlord shall, as required by Section 11.01 of this Lease and within a reasonable time after such occurrence, repair or rebuild the Demised Premises or such portion, to its or their condition immediately prior to Delivery of Possession.

Section 12.04. Tenant's Obligation to Rebuild:

If all or any portion of the Demised Premises is damaged by fire or other casualty and this Lease is not terminated, Tenant shall, as required by Article VII of this Lease and, at its own cost and expense, repair and restore the entire Demised Premises, to the extent Landlord is not obligated to repair pursuant to Section 12.03, to its or their condition immediately prior to said fire or casualty. Tenant shall commence the performance of its work when notified by Landlord that the work to be performed by Landlord

21

has proceeded to the point where the work to be performed by Tenant can, in accordance with good construction practices, then be commenced. Tenant shall perform such work in a manner that will restore the Demised Premises to its condition immediately prior to such occurrence.

Section 12.05. <u>Waiver of Subrogation</u>:

Landlord and Tenant each hereby releases the other, its officers, directors, employees and agents, from liability or responsibility (to the other or anyone claiming through or under them by way of subrogation or otherwise) for any loss or damage to property covered by valid and collectible fire insurance with standard extended coverage endorsement, even if such fire or other casualty shall have been caused by the fault or negligence of the other party, or anyone for whom such party may be responsible. However, this release shall apply only to loss or damage occurring during such time as the releasor's fire or extended coverage insurance policies shall contain a clause or endorsement to the effect that any such release shall not adversely affect or impair such policies or prejudice the right of the releasor to recover thereunder. Landlord and Tenant each agrees that any fire and extended coverage insurance policies carried by each of them respectively and covering the Demised Premises or their contents will include such a clause or endorsement as long as the same shall be obtainable without extra cost, or, if extra cost shall be charged therefore, so long as the other party pays such extra cost. If an extra cost shall be chargeable therefore each party shall advise the other of the amount of the extra cost.

**ARTICLE XIII.**

**CONDEMNATION**

Section 13.01. <u>Definitions</u>:

Within the meaning of Article XIII, the following words have the following meaning:

(a) <u>Award</u>: means the award for or proceeds of any Taking, less all expenses in connection therewith, including reasonable attorney's fees.

(b) <u>Taking</u>: means the taking of or damage to the Demised Premises or the Village Mall or any portion thereof, as the case may be, as the result of the exercise of any power of eminent domain, condemnation, or purchase under threat thereof in lieu thereof.

22

(c)  <u>Taking Date</u>:  means, with respect to any Taking, the date on which the condemning authority shall have the right to possession of the Demised Premises or the Village Mall or any portion thereof, as the case may be.

<u>Section 13.02</u>.  <u>Total or Substantial Partial Taking of Demised Premises</u>:

In the event of a Taking of the whole of the Demised Premises, other than a Taking for temporary use, this Lease shall automatically terminate as of the Taking Date. In the event of a Taking any portion of the Demised Premises, Landlord or Tenant may terminate this Lease effective as of the Taking Date by giving notice to the other party within thirty (30) days after the Taking.

<u>Section 13.03</u>. <u>Restoration</u>:

In the event of a Taking of a portion of the Demised Premises other than a Taking for temporary use, if this Lease is not terminated under the provisions of Section 13.02 hereof, the Rent shall be reduced in the proportion that the area so Taken bears to the entire area contained within the Demised Premises and Landlord shall restore or cause to be restored the remainder of the Demised Premises and the Common Area to their condition immediately preceding such Taking to the extent practical.

<u>Section 13.04</u>. <u>Taking for Temporary Use</u>:

If there is a Taking of the Demised Premises for Temporary use, this Lease shall continue in full force and effect, and Tenant shall continue to comply with all of the provisions thereof, except as such compliance shall be rendered impossible or impracticable by reason of such Taking, and Rent shall be abated during the course of such Taking.

<u>Section 13.05</u>. <u>Disposition of Awards</u>:

All awards arising from a total or partial taking of the Demised Premises, the Building, or of Tenant's leasehold interest, shall belong to Landlord without any participation by Tenant. Tenant shall have no interest in any Award based on the value of the Property in which the Demised Premises are located.  Tenant hereby assigns to Landlord any share of such Award which may be awarded to Tenant.

Nothing contained herein shall be construed to preclude Tenant, at its sole cost and expense, from independently prosecuting any claim directly against the condemning authority,

23

USAPROD-000754

either in such condemnation proceedings or in a separate proceeding, for Tenant's damages related to itsbusiness (e.g. depreciation to its business, damage to its business, cost of removal of and for the value of stock, trade fixtures, furniture and other personal property belonging to Tenant, moving expenses), and any Award therefore shall belong solely to Tenant.

### ARTICLE XIV.

## INDEMNITY AND LIABILITY

Section 14.01.   Indemnity:

    (a)   Definition: Within the meaning of Article XIV, "Claims" means any claims, suits proceedings, action, causes of action, responsibility, liability, demands, judgments, and executions.

    (b)   Tenant's Indemnification: Tenant hereby indemnifies and agrees to hold harmless Landlord, and any Mortgagee from and against any and all Claims, which either:

        (i)    arise from or are in connection with the possession, use, occupation, management, repair, maintenance or control of the Demised Premises for the purpose hereof the Demised Premises shall include the service areas adjoining the same and any loading area allocated to or used by the Tenant, or any portion thereof;

        (ii)    arise from or are in connection with any act or omission of Tenant, or Tenant's Agents;

        (iii)    result from any Default, breach, violation or nonperformance of this Lease or any provision therein by Tenant; or

        (iv)    arise from an injury to person or property or loss of life sustained in the Demised Premises, unless caused by the negligence of Landlord, its agents, contractors or employees. Tenant shall defend any actions, suits and proceedings which may be brought against Landlord or any Mortgagee with respect to the foregoing or in which they may be impleaded. Tenant shall pay, satisfy and discharge any judgments, orders and decrees

USAPROD-000755

which may be recovered against Landlord, or any Mortgagee in connection with the foregoing.

(c)     In the event of a conflict between the above subsections (b)(i) and (b)(iv), then b(iv) shall take precedence.

Section 14.02. Liability Insurance:

(a)   Coverage: Tenant shall provide, on or before it enters the Demised Premises for any reason and shall keep in force during the term for the benefit of Landlord and Tenant, liability insurance naming Landlord and any designee of Landlord as additional insureds. The policy shall protect Landlord, Tenant and any designee of Landlord against any liability occasioned by any occurrence on or about the Demised Premises or any appurtenance thereto, or arising from any of the items indicated in Section 14.01 against which Tenant is required to indemnify Landlord.  Such policy is to be written:

(i)     by a good and solvent insurance company satisfactory to Landlord; and

(ii)    in a combined, single limit of at least $1,000,000 for injury or death to one or more than one person arising from any one occurrence and in the amount of $1,000,000 with respect to property damages.

Section 14.03.   Fire Insurance:

(a)   Coverage:  Tenant shall insure and keep its personal property and all leasehold improvements installed in the Demised Premises or elsewhere in the Village Mall by Tenant insured against damage by fire, vandalism and malicious mischief.

Section 14.04.   General Provisions with Respect to Insurance:

(a)   Policies and Premiums: Upon the execution of this Lease and before any insurance policy shall expire, Tenant shall deliver to Landlord a certificate of insurance evidencing required coverages. Any insurance required to be carried hereunder may be carried under a blanket or

25

umbrella policy covering the Demised Premises and other locations of Tenant.

(b) <u>Notice of Cancellation</u>: Tenant will direct that its insurance carrier provide to Landlord thirty (30) days' prior notice of cancellation of Tenant's insurance required by this Lease. In the event that Tenant does not renew, reinstate or obtain alternate coverage in compliance with this Lease within twenty (20) days of such notice, Landlord may declare this Lease null and void.

(c) <u>Quality of Insurer</u>: Each insurance policy shall be issued by an insurer of recognized responsibility reasonably satisfactory to Landlord; shall be satisfactory to Landlord in form and substance; and shall be carried in favor of Landlord, Tenant and all Mortgagees as their respective interests may appear. Within the meaning hereof, the term "insurance policy" shall include any extensions or renewals of such insurance policy.

<u>Section 14.05</u>.   <u>Inability to Perform</u>:

(a) <u>Force Majeure</u>:  Landlord and Tenant shall not be required to carry out any of their obligation hereunder, nor be liable for loss or damage for failure to do so, nor shall Landlord or Tenant thereby be released from any of its obligations hereunder, where such failure arises by reason of delays caused by Force Majeure.

(b) <u>Delayed Performance</u>:  If Landlord or Tenant is so delayed or prevented from performing any of its obligations, the period of such delay or such prevention shall be added to the time herein provided for the performance of any such obligation.

<u>Section 14.06</u>.   <u>Brokerage</u>:

Landlord and Tenant warrant and represent to each other that no real estate brokerage commission is due to any person based on their actions with respect to this Lease. Each of Landlord and Tenant agree to defend, indemnify and hold the other party harmless with respect to any judgment, damages, attorneys' fees, court costs and any and all liabilities of any nature whatsoever arising from breach of the above representations based upon a claim made by any real estate brokerage firm or realtor.  This indemnification shall survive the expiration of the term of the Lease.

26

ARTICLE XV.

**COVENANT OF QUIET ENJOYMENT**

Landlord covenants that if Tenant pays the Rent and all other charges provided for herein, performs all of its obligations provided for hereunder, and observes all of the other provisions hereof, Tenant shall at all times during the Term peaceably and quietly have, hold and enjoy the Demised Premises, without any interruption or disturbance, subject to the terms hereof.

ARTICLE XVI.

**DEFAULT**

(a)  <u>Cure</u>. If Tenant fails to pay when due amounts payable under this Lease or to perform any of its other obligations under this Lease within the time permitted for its performance, then Landlord, after ten (10) days' written notice to Tenant (or, in case of any emergency, upon notice or without notice as may be reasonable under the circumstances) and without waiving any of its rights under this Lease, may (but will not be required to) pay the amount or perform the obligation.

All amounts so paid by Landlord and all costs and expenses incurred by Landlord in connection with the performance of any obligations (together with interest at the prime rate from the date of Landlord's payment of the amount or incurring of each cost or expense until the date of full repayment by Tenant) will be payable by Tenant to Landlord on demand.  In the proof of any damages that Landlord may claim against Tenant arising out of Tenant's failure to maintain insurance, Landlord will not be limited to the amount of the unpaid insurance premium but will also be entitled to recover as damages for the breach of any uninsured loss (to the extent of any deficiency in the insurance required by the provisions of this Lease), damages, costs and expenses of suit, including attorneys' fees, arising out of damage to, or destruction of, the Demised Premises occurring during any period for which Tenant has failed to provide the insurance.

(b)  <u>Events of Default</u>. The following occurrences are "events of default":

27

(i)     Tenant defaults in the due and punctual payment of rent, and the default continues for ten (10) days after notice from Landlord;

(ii)    Tenant vacates or abandons the Demised Premises;

(iii)   This Lease or the Demised Premises or any part of the Demised Premises is taken upon execution or by other process of law directed against Tenant, or is taken upon or subjected to any attachments by any creditor of Tenant or claimant against Tenant, and the attachment is not discharged within thirty (30) days after its levy;

(iv)    Tenant files a petition in bankruptcy or insolvency or for reorganization or arrangement under the bankruptcy laws of the United States or under any insolvency act of any state, or is dissolved, or makes an assignment for the benefit of creditors;

(v)     Involuntary proceedings under any bankruptcy laws or insolvency act or for the dissolution of Tenant are instituted against Tenant, or a receiver or trustee is appointed for all or substantially all of Tenant's property, and the proceeding is not dismissed or the receivership or trusteeship is not vacated within ninety (90) days after institution or appointment;

(vi)    Tenant fails to take possession of the Demised Premises on the commencement date of the term; or

(vii)   Tenant breaches any of the other agreements, terms, covenants, or conditions that this Lease requires Tenant to perform, and the breach continues for a period of thirty (30) days after notice by Landlord to Tenant.

(c)  Remedies. If any one or more events of default set forth in paragraph 16(b) occurs, then Landlord may, at its election, either:

28

(i)        give Tenant written notice of its intention to terminate this Lease on the date of the notice or on any later date specified in the notice, and, on the date specified in the notice, Tenant's right to possession of the Demised Premises will cease and the Lease will be terminated, except as to Tenant's liability set forth in this paragraph 16(c)(i), as if the date fixed in the notice were the end of the term of this Lease. If this Lease is terminated pursuant to the provisions of this subparagraph (1), Tenant will remain liable to Landlord for damages in an amount equal to the rent and other sums that would have been owing by Tenant under this Lease for the balance of the term if this Lease had not been terminated, less the net proceeds, if any, of any reletting of the Demised Premises by Landlord subsequent to the termination, after deducting all Landlord's expenses in connection with reletting, including without limitation the expenses set forth in paragraph 16 (c)(ii). Landlord shall have an affirmative obligation to mitigate its damages by attempting to re-let the Demised Premises. Landlord will be entitled to collect damages from Tenant monthly on the days on which the rent and other amounts would have been payable under this Lease if this Lease had not been terminated, and Landlord will be entitled to receive damages from Tenant on each day;

or

(ii)       without demand or notice, re-enter and take possession of the Demised Premises or any part of the Demised Premises; repossess the Demised Premises as of the Landlord's former estate; expel the Tenant from the Demised Premises and those claiming through or under Tenant; and remove the, effects of both or either, without being deemed guilty of any manner of trespass and without prejudice to any remedies for arrears of rent or preceding breach of covenants or conditions. If Landlord elects to re-enter as provided in this paragraph 16 (c)(ii), or if Landlord takes

29

possession of the Demised Premises pursuant to legal proceedings or pursuant to any notice provided by law, Landlord may, from time to time, without terminating this Lease, relet the Demised Premises, or any part of the Demised Premises, either alone or in conjunction with other portions of the building of which the Demised Premises are a part, in Landlord's or Tenant's name but for the account of Tenant, for the term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the term of this Lease) and on such terms and conditions (which may include concessions of free rent, and the alteration and repair of the Demised Premises) as Landlord, in its uncontrolled discretion, may determine. Landlord may collect and receive the rents for the Demised Premises. Landlord will not be responsible or liable for any failure to relet the Demised Premises, or any part of the Demised Premises, or for any failure to collect any rent due upon the reletting. No re-entry or taking possession of the Demised Premises by Landlord will be construed as an election on Landlord's part to terminate this Lease unless a written notice of the intention is given to Tenant. No notice from Landlord under this Lease or under a forcible entry and detainer statute or similar law will constitute an election by Landlord to terminate this Lease unless the notice specifically says so. Landlord reserves the right following any re-entry or reletting, or both, to exercise its right to terminate this Lease by giving Tenant written notice, and in that event the Lease will terminate as specified in the notice. If Landlord elects to take possession of the Demised Premises according to this paragraph 16 (c)(ii) without terminating the Lease, Tenant will pay Landlord the rent and other sums which would be payable under this Lease if the repossession had not occurred, less the net proceeds, if any, of any reletting of the Demised Premises after deducting all of Landlord's expenses incurred in connection with the reletting, including without

30

USAPROD-000761

limitation all repossession costs, brokerage commissions, legal expenses, attorneys' fees, expenses of employees, alteration, remodeling and repair costs, and expenses of preparation for the reletting. If, in connection with any reletting, the new lease term extends beyond the existing term, or the Demised Premises covered by the reletting include areas that are not part of the Demised Premises, a fair apportionment of the rent received from the reletting and the expenses incurred in connection with the reletting will be made in determining the net proceeds received from reletting. In addition, in determining the net proceeds from reletting, any rent concessions will be apportioned over the term of the new lease. Tenant will pay the amounts to Landlord monthly on the days on which the rent and all other amounts owing under this Lease would have been payable if possession had not been retaken, and Landlord will be entitled to receive the rent and other amounts from Tenant on each day.  Notwithstanding the previous provisions of this sub-paragraph (ii), Landlord may take no action with regard to the Demised Premises without having first obtained an appropriate Court Order.  This includes, but is not limited to, Landlord not being permitted to enter the Demised Premises "by force", Landlord not being permitted a lien on, or to take possession of, or to distrain, any of Tenant's assets, without Court Order. Further, Tenant neither waives nor forfeits any of its remedies under statutory or common law including, but not limited to, the right to repossess or the right to exempt certain property from execution or levy.

## ARTICLE XVII

### TENANT'S CERTIFICATE

At any time within ten (10) days after request by Landlord, by written instrument, duly executed and acknowledged, Tenant shall certify to Landlord, any Mortgagee, assignee of a Mortgagee, any purchaser, or any other person, specified by Landlord, to the effect:

31

(a)  whether or not Tenant is in possession of the Demised Premises;

(b)  whether or not this Lease is unmodified and in full force and effect (or if there has been modification, that the same is in full force and effect as modified and setting forth such modification);

(c)  whether or not there are then existing set-offs or defenses against the enforcement of any right or remedy of Landlord, or any duty or obligation of Tenant (and if so, specifying the same); and

(d)  the dates, if any, to which any Rent or other charges have been paid in advance.

**ARTICLE XVIII.**

**RIGHT OF ACCESS; PIPES, CABLES AND WIRES**

Section 18.01.   Entry:

During any reasonable time before and after the Commencement Date and as mutually agreed upon by Landlord and Tenant, Landlord may enter upon the Demised Premises, any portion thereof and any appurtenances thereof (with men and materials, if required) for the purpose of:

(a)  inspecting same;

(b)  making such repairs, replacements or alterations which it may be required to perform as herein provided, or which it may deem desirable for the Demised Premises; and

(c)  showing the Demised Premises to prospective purchasers, or showing the Demised Premises to prospective lessees during the last six months of the Term.

Section 18.02.   Easement for Pipes:

Tenant shall permit Landlord to erect, use, maintain and repair pipes, cables, conduits, plumbing vents and wires in, to and through the Demised Premises as and to the extent that Landlord may now or hereafter deem to be necessary or appropriate for the proper operation and maintenance of the Demised Premises.

During any such entry by Landlord into the Demised Premises, pursuant to Section 18.01 and 18.02, Landlord shall use reasonable

32

USAPROD-000763

efforts and proceed with due diligence, in order to minimize interference with the conduct of Tenant's business. Except in emergencies, any entry by Landlord into the Demised Premises at a mutually agreed upon time.

In addition, Landlord shall not place or install any utility lines, pipes, ducts, conduits or the like in the Demised Premises, unless such work is performed along walls, inside the walls, above the hung ceiling or below the floor. If Landlord installs, repairs, replaces or maintains any such items and may damage is done to the Demised Premises, Landlord shall repair any such damage.

## ARTICLE XIX.

**ENVIRONMENTAL MATTERS**

<u>Section 19.01</u>.  Industrial Site Recovery Act:

   (a)   <u>Industrial Establishment</u>: Tenant represents and warrants that it is not an "Industrial Establishment" as that term is defined in the Industrial Site Recovery Act, <u>N.J.S.A</u>. 13:1K-6 <u>et</u> <u>seq</u>., as same may be amended from time to time (the "Act"). Tenant shall not do or suffer anything that will cause it to become an Industrial Establishment under the Act during the Term of this Lease. Landlord may from time to time require Tenant, at Tenant's sole expense, to provide proof satisfactory to Landlord that Tenant is not an Industrial Establishment. In the event that Tenant now is, or hereafter becomes, an Industrial Establishment, Tenant shall comply with all conditions as set forth below.

   (b)   <u>Compliance</u>.   Tenant agrees that it shall, at its sole cost and expense, fulfill, observe and comply with all of the terms and provisions of the Act and all roles, regulations, ordinances, opinions, orders and directives issued or promulgated pursuant to or in connection with said Act by the Department of Environmental Protection ("DEP"), or any subdivision or bureau thereof or any other governmental or quasi-governmental agency, authority or body having jurisdiction thereof (The Act and all said rules, regulations, ordinances, opinions, orders and directors are here and after collectively referred to as "ISRA")

   (c)   <u>Indemnification</u>:  Without limiting the foregoing, Tenant agrees:

33

(i)      at its sole cost and expense, to promptly discharge and remove any lien or encumbrance against the Demised Premises, the Building, the Real Estate or any other property owned or controlled, in whole or in part, by Tenant imposed due to Tenant's failure to comply with ISRA, and

(ii)      to defend, indemnify and hold Landlord harmless from and against any and all liability, penalty, loss, expenses, damages, costs, claims, causes of action, judgments and/or the like, of whatever nature, including but not limited to attorneys' fees and other costs of litigation or preparation therefor, to the extent such costs arise from or in connection with Tenant's failure or inability, for any reason whatsoever, to observe or comply with ISRA and/or provisions of this Section 19.01.

(d)    <u>Survival</u>: Tenant agrees that each and every provision of this Section 19.01 shall survive the expiration or early termination of the Term of this Lease. The parties hereto expressly acknowledge and agree that the Landlord would not enter into this Lease but for the provisions of this Section 19.01 and the aforesaid said survival thereof.

Section 19.02. <u>Spill Act</u>:

(a)    <u>General</u>: Tenant agrees that it shall, at its sole cost and expense, observe, comply and fulfill all of the terms and provisions of the Spill Compensation and Control Act, <u>N.J.S.A.</u> 58:10-23.11 <u>et. seq.</u>, as the same may be amended from time to time (the "Act") and all rules, regulations, ordinances, opinions, orders and directives issued or promulgated pursuant to or in connection with said Act by DEP, any subdivision or bureau thereof or governmental or quasi-governmental agency or body having jurisdiction thereof. (Said Act and all said rules, regulations, ordinances, opinions, orders and directives are hereinafter in this Section 19.02 collectively referred to as "Spill Act".)

(b)    <u>Compliance</u>: Without limiting the foregoing, the Tenant agrees:

34

USAPROD-000765

(i)      that it shall not do, omit to do or suffer the commission or omission of any act which is prohibited by or may result in any liability under the Spill Act including without limitation the discharge of petroleum products or other hazardous substances (as said terms are defined in the Spill Act); and

(ii)     whenever the Spill Act requires the "owner or operator" to do any act, Tenant shall do such act and fulfill all such obligations at its sole cost and expense, it being the intention of the parties hereto that Landlord shall be free of all expense and obligations arising from or in connection with-compliance with the Spill Act.

(c) <u>Indemnification</u>:   Without  limiting  the  foregoing, Tenant agrees:

(i)      at its sole cost and expense, to promptly discharge and to remove any lien or any encumbrance against the Demised premises, the Building, the Shopping Center or any other property owned or controlled, in whole or in part, by Tenant, imposed by Tenant's failure to comply with the Spill Act; and

(ii)     to defend, indemnify and hold Landlord harmless from and against any and all liability, penalty, loss, expenses, damages, costs, claims, causes of action, judgments and/or the like, of whatever nature, including but not limited to attorneys' fees and other expenses of litigation or preparation therefor, to the extent such costs arise from or in connection with Tenant's failure or inability, for any reason whatsoever, to observe or comply with the Spill Act and/or the provisions of this Section 19.02.

(d) <u>Survival</u>:  Tenant agrees that each and every provision of this Section 19.02 shall survive the expiration or earlier termination of the Term of this Lease. The parties hereto expressly agree and acknowledge that the Landlord would not enter into this Lease but for the provisions of this Section 19.02 and the aforesaid survival thereof.

35

<u>Section 19.03.</u>  <u>Other Environmental Laws:</u>

Tenant agrees that it shall, at its sole cost and expense, promptly comply with all federal, state and local laws, ordinances, rules, regulations and requirements relating to air, ground and water pollution and protection and/or preservation of the environment.

## ARTICLE XX.

### ALTERNATIVE DISPUTE RESOLUTION

Any controversy, dispute or disagreement arising out of or relating to this Agreement, or breach thereof, shall be settled by mediation or, if unsuccessful, binding arbitration with a single arbitrator in accordance with the rules of the American Arbitration Association, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Such mediation or arbitration proceeding shall be held in Freehold Township, New Jersey. Each party shall be responsible for his/her/its expenses and shall split equally the costs for the mediation and/or arbitration; provided, however, that the arbitrator shall have the authority to order that any or all fees and/or expenses be paid in a different percentage if one of the parties has acted in bad faith. Notwithstanding the foregoing, Landlord shall have the right to file eviction proceedings in the Superior Court of New Jersey in the event that Tenant is in default of its obligations under this Lease. If Landlord elects to file eviction proceedings in the Superior Court of NJ, then Tenant shall be entitled to bring all defenses and counterclaims in that forum.

## ARTICLE XXI

### INTERPRETATION, NOTICE, MISCELLANEOUS

<u>Section 21.01.</u>  <u>Interpretation:</u>

(a)  <u>Covenants</u>:  Every term, condition, agreement or provision contained in this Lease which imposes an obligation on Landlord or Tenant, shall be deemed to be also a covenant by Landlord or Tenant.

(b)  <u>References</u>:  Any reference herein to subtenants or licensees shall not be deemed to imply that any subtenants or licensees are permitted hereunder. Any references herein to any extensions or renewals of the Term or any period during which Tenant may be in

USAPROD-000767

possession after the Expiration Date shall not be deemed to imply that any extension or renewal of the Term is contemplated hereby or that Tenant shall be permitted to remain in possession after the expiration of the Term.

(c)  Severability: If any provision of this Lease or the application thereof to any person or circumstance shall to may extent be invalid or unenforceable, the remainder of this Lease, or the application of such provision to person or circumstances other than those to which it is invalid or unenforceable, shall not be affected thereby, and each provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

(d)  Headings: The captions and headings used throughout this Lease are for convenience of reference only and shall not affect the interpretation of this Lease.

(e)  Particular Action:   Anything in this Lease to the contrary notwithstanding:

  (i)     Any provision which permits or requires a party to take any particular action shall also be deemed to permit or require a party to cause such action to be taken; and

  (ii)    Any provision which requires arty party not to take any particular action shall be deemed to require the party not to permit such action to be taken by any person or by operation of law.

(f)  Counterparts:   This Lease may been executed in several counterparts; but the counterparts shall constitute but one and the same instrument.

(g)  Expense of Performance: Wherever a requirement is imposed on any party hereto, it shall be deemed that such party shall be required to perform such requirement at its own expense unless it is specifically otherwise provided herein.

(h)  Singular/Plural:   The singular includes the plural and the plural includes the singular.

(i)  Governing Law:   This Lease shall be construed and enforced in accordance with the laws of the State in which the Demised Premises are situated.

37

Section 21.02.   <u>Construing Various Words and Phrases</u>:

    (a)  <u>May Act</u>: Wherever it is provided herein that a party may perform an act or do anything, it shall be construed that that party may, but shall not be obligated to, so perform or so do.

    (b)  <u>Reenter</u>:   The words "reenter" and "reentry" as used herein are not restricted to their technical legal meaning.

    (c)  <u>Other Definitions</u>: The following words and phrases shall be construed as follows:

        (i)     "At any time" shall be construed as, "at any time or from time to time."

        (ii)    "Any" shall be construed as "any and all."

        (iii)   "Including" shall be construed as "Including but not limited to."

Section 21.03.   <u>No Oral Changes</u>:

    This Lease may not be changed or terminated orally.

Section 21.04.   <u>Communications</u>:

    No notice, request, consent, approval, waiver or other communication under this Lease shall be effective unless, but any such communication shall be effective and shall be deemed to have been given if, the same is in writing and is hand delivered, sent by recognized overnight courier service, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed:

    (a)  <u>To Landlord</u>:  If to Landlord, to the address designated as Landlord's Notice Address in Article I, or such other address as Landlord designates by giving notice thereof to Tenant, with a copy thereof to the address designated as Landlord's Notice Copy Address in Article I or to such other person or party as Landlord shall designate by notice to Tenant, and

    (b)  <u>To Tenant</u>: If to Tenant, to the address designated as Tenant's Notice Address in Article I, or such other address as Tenant shall designate by giving notice thereof to Landlord, with a copy of the address designated as Tenant's Notice Copy Address in Article I

USAPROD-000769

or to such other person or party as Tenant shall designate by giving notice thereof to Landlord.

Section 21.05.  Method of Payment:

Except as herein otherwise expressly provided, all amounts payable under this Lease shall be payable in check, coin or currency of the United States of America which at the time of payment is legal tender for public and private debts.

Section 21.06.  Successors and Assigns:

Subject to the provisions hereof, this Lease shall bind and inure to the benefit of the parties and their respective successors, representatives, heirs and assigns.

Section 21.07.  Responsibility of Tenant:

Any restriction on or requirement imposed upon Tenant hereunder shall be deemed to extend to Tenant's subtenants, concessionaires and licensees and it shall be Tenant's obligation to cause the foregoing persons to comply with such restriction or requirement.

Section 21.08.  Holdover:

If Tenant shall holdover after the end of the Term, such holding over shall be construed as a tenancy from month-to-month, subject to all of the provisions, conditions and obligations of this Lease, except that if Landlord notifies Tenant that a new tenant is ready to take possession of the Demised Premises or that Landlord is ready to commence work in the Demised Premises for a new tenant, monthly Basic Rent shall be triple the monthly installment of Basic Rent payable for the last month of the Term.

Section 21.09.  Landlord's Additional Right to Recapture:

If at any time during the Term, all or substantially all of the Demised Premises is not open to the public for business for a period of six (6) consecutive months for reasons other than damage and destruction or eminent domain (i.e. Tenant is not operating its business in the Premises but there is nothing wrong with the Demised Premises preventing Tenant from doing so), Landlord shall have the right to recapture the Demised Premises in accordance with the provisions of the immediately succeeding paragraph.

39

At any time after the event set forth in the immediately preceding paragraph has occurred, Landlord may, but shall be under no obligation to give to Tenant, a notice (hereinafter "Notice of Recapture"). Landlord, in its Notice of Recapture, shall set forth a date within thirty (30) days of such notice, as the date for the termination of this Lease, and upon such date, this Lease shall be null and void and of no further force or effect, except for accrued liabilities. Notwithstanding the foregoing, if prior to the giving of the Notice of Recapture the conditions set forth in the immediately preceding paragraph do not exist and if the Demised Premises are being used in accordance with this Lease and are opened to the public staffed, fixtured and merchandised in accordance with sound business judgment, then Landlord's Notice of Recapture shall be automatically revoked.

Section 21.10.   Consequential Damages:

Landlord and Tenant agree that as to the other, Landlord and Tenant shall not have any right to sue for or collect, and Landlord and Tenant shall never have any liability or responsibility whatsoever for, any consequential or indirect damages whether proximately or remotely related to any default of the other under this Lease, and Landlord and Tenant hereby waive any and all such rights.

Section 22.11.   Execution:

This Lease shall be of no force and effect unless and until it is executed by both Landlord and Tenant.

IN WITNESS WHEREOF, Landlord has caused this Lease to be executed, attested to and sealed by its duly authorized officers and Tenant has caused this Lease to be executed, attested to and sealed by its duly authorized officers.

LANDLORD:                                    TENANT:
                                             Alexander Petcu MD, LLC

_____
VAHAK S. HOVNANIAN                           _____


_____
HASMIG HOVNANIAN

USAPROD-000771

## EXHIBIT A

## RULES AND REGULATIONS

Tenant shall not obstruct walkways, entrances, passages, courts, corridors, vestibules, halls, and stairways in or adjoining the Demised Premises.

Tenant shall not install any sign or signs on the exterior wall or roof of the Demised Premises without first obtaining the written consent of Landlord.

In advertising or other publicity pertaining to the Demised Premises, Tenant shall use Village Mall Office Building as the address of the business conducted on the Demised Premises.

Tenant shall not place any objects on the ledges or other parts of the, exterior of the Demised Premises, nor permit anything to be thrown or dropped from the roof or windows of the Demised Premises.

Tenant shall have full responsibility for protecting the Demised Premises and the property located therein from theft and robbery, and shall keep all doors, windows and transoms securely fastened when not in use.

Blinds, shades, awnings, window ventilators and other similar equipment visible from outside of the Demised Premises shall be in good taste and consistent with the decor of the overall facility and surrounding premises.

Tenant shall not install or maintain machinery or non-medical mechanical devices in the Demised Premises without the prior written consent of Landlord.

Tenant shall not use any space in the Demised Premises for living quarters, whether temporary or permanent.

Tenant shall not keep on the Demised Premises inflammables, such as gasoline, kerosene, naptha and benzene, or explosives, or any other articles of an intrinsically dangerous nature.

Tenant shall not place unsightly objects against glass partitions, windows or doors.

Tenant shall not place any radio or television antenna, loudspeakers or similar devises on the roofer exterior of the Demised Premises.

Tenant shall place all trash and garbage in the containers approved by Landlord.

Tenant shall keep the Demised Premises free and clear from rodents, bugs and vermin. Tenant shall use, at Tenant's cost, such pest extermination contractor as Landlord may direct, and at such intervals as Landlord may require, provided the cost thereof is competitive to any similar service

41

USAPROD-000772

available to Tenant.

Tenant shall not burn any trash of any kind.

Tenant shall not use any advertising media, such as loudspeakers, phonographs, radio or television broadcast in a manner to be heard or seen outside the Demised Premises.

Tenant and its employees shall park their cars only in areas specifically designated for that purpose by Landlord from time to time, and shall within five days after written notice from Landlord furnish automobile license numbers assigned to its cars and cars of all employees.

Tenant shall not conduct auction, fire or bankruptcy sales in or about the Demised Premises.

Landlord will furnish each Tenant with two keys free of charge. Landlord may make reasonable charge for any additional keys which Tenant may request so that each staff member and its cleaning service may have a key to the Demised Premises.  No Tenant shall have any keys made. No Tenant shall alter any lock or install a new or additional lock or any bolt on any door of its Demised Premises without the prior consent of Landlord. Each Tenant shall in each case furnish Landlord with a key for such lock. Each Tenant upon the termination of its tenancy, shall deliver to Landlord all keys to doors in the Village Mall which shall have been furnished to Tenant. Each Tenant shall see that the doors of its Demised Premises are closed and securely locked at such times as Tenant's employees leave the premises.

The toilet rooms, toilets, urinals, wash bowls and other apparatus shall not be used for any purpose other than that for which they were constructed, no foreign substance of any kind whatsoever shall be thrown therein. The expense of any breakage, stoppage or damage resulting from the violation of this rule shall be borne by the Tenant who, or whose employees or invitees shall have caused it.

Landlord shall have the right, exercisable without notice and without liability to any Tenant, to change the name and street address of the Village Mall.

The directory of the Village Mall, if any, will be provided for the display of the name and location of Tenants and Landlord reserves the right to exclude any other names there from. Any additional name which Tenant shall desire to place upon said bulletin board must first be approved by Landlord, and, if so approved, a charge will be made therefore.

Curtains, draperies, blinds, shutters, shades, screens or other coverings, hangings or decorations shall be attached to, hung, or placed in, or used in connection with any window of the Village Mall in a neat, workman like manner.

Tenant shall see that the doors of its premises are closed and locked and that all water faucets, water apparatus and utilities are shut off before Tenant or Tenant's employees leave the

USAPROD-000773

premises, so as to prevent waste or damage, and for any default or carelessness in the regard Tenant shall make good all injuries sustained by other tenants or occupants of the Village Mall or Landlord.

No Tenant shall use any portion of the common area for any purpose when the Demised Premises of such Tenant are not open for business or conducting work in preparation therefore.

Landlord may waive any one or more of these Rules and Regulations for the benefit of any particular Tenant or Tenants but no such waiver by Landlord shall be construed as a waiver of such Rules and Regulations in favor of any other Tenant or Tenants, nor prevent Landlord from thereafter enforcing any such Rules and Regulation against any or all of the Tenants of the Village Mall.

These Rules and Regulations are in addition to and shall not be construed to in any way modify, alter or amend, in whole or in part the terms covenants, agreements and conditions of any Lease or premises in the Village Mall.

43

USAPROD-000774