Plaintiff Exhibit 109

# OMNISAT

## JOINT VENTURE AGREEMENT

This Joint Venture Agreement (the "Agreement") is effective November 1, 2017.

BETWEEN:	HOVSAT Inc. ("HSAT"). HSAT is organized and existing under the laws of the New Jersey, with their head office located at:

2500 Shafto Road,
Tinton Falls, NJ 07712
United States of America

BETWEEN:	OMNIVERSE ONE WORLD TELEVISION, INC. ("OMNI"), corporation. OMNI is organized and existing under the laws of the Delaware, with their head office located at:

1712 Main Street, Suite 100
Kansas City, MO 64108-1332
United States of America

This Agreement is entered by HSAT and OMNI and their appropriate "Affiliates" described below, hereinafter collectively referred to as the "Joint Venturer and/or Joint Venturers" and/or "Party or Parties", for the purpose of distributing television programming received under agreements by HSAT using the proprietary over the top media streaming platform, infrastructure and distribution relationships of OMNI.

WITNESSETH:

WHEREAS, the parties are desirous of forming a Joint Venture hereinafter the "Venture" and/or "OmniSat", under the laws of the State of Delaware by execution of this Agreement for the purposes set forth herein and are desirous of fixing and defining between themselves their respective responsibilities, interests, and liabilities in connection with the performance of the before mentioned project; and

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained, the Parties herein agree to constitute themselves, henceforth as "Venturers" and/or "Parties" for the purposes before mentioned, and intending to be legally bound hereby, the Parties hereto, after first being duly sworn, do covenant, agree and certify as follows:

1. DEFINITIONS

"Affiliate" shall refer to (i) any party directly or indirectly controlling, controlled by or under common control with another party, (ii) any party owning or controlling 10% or more of the outstanding voting securities of such other party, (iii) any officer, director or other partner of such party and (iv) if such other person is an officer, director, Joint Venturer or partner, any business or entity for which such person acts in any such capacity.

"Trial Period" shall refer to the period of time prior to the formal national launch of the Venture. This Trial Period is to prove the Venture can successfully distribute licensed television programming direct to subscribers using over the top media streaming technology.

"Venturers" shall refer to HSAT and OMNI together with their respective Affiliates, and any successor(s) or third party as may be designated and admitted to the Venture.

2. FORMATION, NAME, AND PRINCIPAL PLACE OF BUSINESS

   2.1   Formation

(a) The Venturers do hereby form a joint venture pursuant to the laws of the State of DELAWARE in order for the Venture to carry on the purposes for which provision is made herein.

(b) The Venturers shall execute such certificates as may be required by the laws of DELAWARE or of any other state in order for the Venture to operate its business and shall do all other acts and things requisite for the continuation of the Venture as a joint venture pursuant to applicable law.

   2.2   Name

The Name and style under which the Venture shall be conducted is: "OMNISAT" and or the "Venture".

   2.3   Principal place of business

OmniSat shall maintain its principal place of business at 1712 Main Street, Suite 100, Kansas City, MO 64108-1332, United States of America. The Venture may re-locate its office from time to time or have additional offices as the Venturers may determine.

3. PURPOSE OF THE JOINT VENTURE

The business of the Venture shall be to trial, and upon successful completion of a trial (the "Trial Period"), launch and operate an innovative new television streaming service distributing television programming currently received under contract by HSAT, using the proprietary over the top media streaming platform, infrastructure and distribution relationships of OMNI (the "Operating Period").

- HSAT as a multi-channel programming provider, will provide the joint venture with a co-location agreement for access to the content and technology located HSAT's Data Center facility co-located in the building receiving HSAT's licensed programming, and have access to HSAT's standard programming available during this trial period

- OMNIVERSE ONE WORLD TELEVISION, INC. as a developer of media streaming technology, will contribute their software, media streaming, and media platform management capabilities together with existing relationships with media streaming partners and subscriber acquisition partners

The Venture shall target the following customer groups:

- Subscribers with LOW INCOME or that are UNDERSERVED by the traditional cable television industry

- Subscribers resident in MULTI-DWELLING RESIDENTIAL UNITS or difficult to service COMMERCIAL ACCOMODATIONS serviced by DISTRIBUTION PARTNERS.

4. TERM

The term of the Venture shall commence as of the date hereof and shall be terminated and dissolved upon the earliest to occur of: (i) the unanimous agreement of the Parties; (ii) the sale of the Venture to third parties; (iii) completion of the Venture and receipt of all sums due the Venture by the Venturers and customers of the Venture pursuant thereto and payment of amounts owing in connection with the operation of the Venture; or (iv) the order of a court of competent jurisdiction.

5. PARTICIPATION IN VENTURE

   5.1 Interests in Venture

Except as otherwise provided in APPENDIX A and APPENDIX B hereof, the interests of the Parties in any sale of the Joint Venture shall be as follows:

| | |
|---|---|
| Shareholders of HSAT | 25.0% |
| Shareholders of OMNI | 75.0% |

   5.2 Right of Assignment

Nothing in this Agreement shall restrict the Parties to this Agreement from assigning their respective interests in the Net Profits and Losses of the Venture or the proceeds of a Sale of the Venture to a third party.

   5.3 Assets

The Venture shall own the SUBSCRIBERS and relationships with the DISTRIBUTION PARTNERS of the Venture.

The Venture shall retain right to access the HSAT standard programming as described above in the following circumstances: for the greater of A. for the length of the Trial Period, B. through the duration of the Operating Period at which point programming is licensed directly by the Venture and C. until the Venture is sold or ceases operating.

   5.4 Trial Period

Revenues and Expenses of the Venture through the Trial Period shall be allocated between the Venturers in proportion to their incurred operating expenses. The Trial Period shall end no later than December 31, 2017.

   5.5 Operating Period

Revenues and Expenses of the Venture through the Operating Period shall be allocated between the Venturers as set out in Appendix A and APPENDIX B to this agreement. The Operating Period shall commence not later than January 1, 2018 and shall run until the earlier of the sale of the Joint Venture, or the agreement of the Joint Venture to license content from a third party other than HSAT.

   5.6 Post Joint Venture Period

Should the Joint Venture choose to license content from a third party and no longer access content from HSAT, that time forward shall be referred to as the "Post Joint Venture Period". From such time forward, the entity shall operate as a standalone business and the holders of Interests in the Venture, shall participate in the revenues, expenses and earnings of the business as owners with the shareholdings set out in Section 5.1.

   5.7 Revenues & Expenses

Upon completion of the Trial Period, the Revenues of the Venture shall be the monthly subscription fees charged to customers for streaming customers. These subscription fees shall vary in accordance with the type of DISTRIBUTION PARTNER and CUSTOMER the Venture is servicing.

The Revenues of the Venture shall be distributed to the Joint Venturers in accordance with the priority of distributions set out in APPENDIX A.

The Parties shall be responsible for payment of their respective current operating expenses in relation to the Venture.

   5.8 Liabilities

The Parties agree that the Venture shall not knowingly enter into any agreement or business arrangement that might cause the Venture to become liable for expenses, losses or any other obligation, other than those between the Venture and the Venturers under this agreement. Any obligation which commits more than $10,000.00 shall be agreed to unanimously by the Parties.

Where either of the Parties have an undischarged amount owing to the Venture, that amount shall be accrued as a liability owed to the Venture and shall be recoverable by the Venture either directly from the owing party, or by withholding distributions of gross profits to the owing party. Existing amounts owing to the Parties are listed in APPENDIX B to this agreement.

### 5.9 Indemnities

The Venturers agree to indemnify each other and to hold the other harmless from, any and all losses of the Joint Venture that are in excess of such other Venturer's Percentage of Participation. Provided that the provisions of this subsection shall be limited to losses that are directly connected with or arise out of the operation of the Venture and shall not be relate to or include any incidental, indirect or consequential losses that may be sustained or suffered by a Party.

### 5.10 Allocations of Net Profits and Losses

Subject to the provisions of this Article, the Net Profits and Losses of the Venture (including any net "book" gains of the Venture resulting from a Capital Event) shall be allocated to the Venturers in the following priority:

A. NET PROFITS:

(1) First, to those Venturers with negative Capital Accounts, between them in proportion to the ratio of their negative Capital Account balances, until no Venturer has a negative Capital Account.

(2) Thereafter, to the Venturers, pro-rata, based on their respective Venture interests as set forth in Section 5.2 hereof.

B. NET LOSSES:

(1) Subject to the provisions of this Article, Net Losses of the Venture (including any net "book" loss of the Venture resulting from a Capital Event) shall be allocated to the Venturers, pro rata, based upon their respective Venture interests as set forth herein.

C DISTRIBUTIONS.

Distributable Cash of the Venture shall be distributed to the Venturers, pro rata, based on their respective Venture interests as set forth herein.

## 6. DELEGATION OF AUTHORITY

The Venturers agree to a split of authority between themselves as follows:

Jason M. DeMeo shall be the General Managing Partner responsible for all day to day operating activities and payroll of the Joint Venture.

A representative of HSAT shall be the Shareholders Representative and shall assist in interactions with potential joint venture participants including equity participants and content providers.

### 6.1 General Manager

The General Manager shall be responsible for carrying out and supervision of all matters necessary and connected with the performance of the Contract, with the exception of that performed by the Shareholders Representative.

### 6.2 Delegation of authority

Authority to act for and bind the Venturers in connection with any and all of the performance of the Project may be delegated in writing by unanimous vote of the Venturers to any designated individual(s).

## 7. RESOLUTION OF DISPUTES

All disputes arising out of this Joint Venture Agreement between the Venturers that is not resolvable by good faith negotiations by the same, shall be filed in New York State, and shall be settled by arbitration under the rules of New York State. In so agreeing the parties expressly waive their right, if any, to a trial by jury of these claims and further agree that the award of the arbitrator shall be final and binding upon them as though rendered by a court of law and enforceable in any court having jurisdiction over the same.

## 8. OTHER PROVISIONS

### 8.1 Entire Agreement

This agreement including APPENDIX A and APPENDIX B, constitutes the entire agreement of the parties and may not be altered, unless the same is agreed upon in writing signed and acknowledged by the parties. If parts of the agreement are held to be illegal or otherwise unenforceable, the remainder of the agreement shall still apply.

This agreement is binding upon the heirs, court appointed representatives, assigns, and successors of the parties.

### 8.2 Governing Law

This agreement shall be governed and construed by the laws of the New York State.

IN WITNESS WHEREOF, each party to this agreement has caused it to be executed on _November 1, 2017_.

| HOVSAT Inc. | OMNIVERSE ONE WORLD TELEVISION, INC. |
|---|---|
| 2500 Shafto Road, | 1712 Main Street, Suite 100 |
| Tinton Falls, NJ 07712 | Kansas City, MO 64108-1332 |
| United States of America | United States of America |

Authorized Signature

Shant Hovnanian, Authorized Representative

Print Name and Title

Authorized Signature

Jason DeMeo, Chief Executive Officer

Print Name and Title

## APPENDIX A – Distribution of Joint Venture Revenues

It is contemplated that all revenues of OmniSat are to be distributed to the Joint Venturers in the form of expense payments and that OmniSat will operate on a breakeven basis.

Should OmniSat generate either retained earnings or losses, those gains or losses shall be shared between the Joint Venturers in proportion to their "Interests in Venture" set out in Section 5.1.

*Trial Period:*
For the Trial Period ending no later than December 31, 2017, revenues of OmniSat shall be distributed in proportion to the Joint Venturers operating expenses.

*Operating Period:*
Upon formal launch of the Joint Venture at the end of the Trial Period, the monthly revenues of the entity shall be distributed in accordance with the following order of priority:

1. BASE SERVICES FEE: To HSAT, at a flat cost of $9,000 per month

2. MARKETING SERVICES FEE To OMNI, to cover operating expenses of up to $100,000 per month

3. CONTENT LICENSE FEE: To HSAT, on a per subscriber basis calculated as:

    Multi Dwelling Unit Subscribers:
    | | |
    |---|---|
    | 0 - 50,000 subscribers: | $7.75 per subscriber per month |
    | 50,001 - 100,000 subscribers: | $8.00 per subscriber per month |
    | 100,001 and greater subscribers: | $8.25 per subscriber per month |

    Individual Subscribers:
    | | |
    |---|---|
    | 0 - 50,000 subscribers: | $7.75 per subscriber per month |
    | 50,001 - 100,000 subscribers: | $8.25 per subscriber per month |
    | 100,001 and greater subscribers: | $8.75 per subscriber per month |

4. SUBSCRIPTION ARREARS: To HSAT, any unpaid BASE SERVICES FEE or unpaid CONTENT LICENSE FEE.

These unpaid amounts are set out in APPENDIX B to this agreement.

5. OPERATOR FEES: To OMNI, all residual revenues after expense shall be paid to OMNI.

*Post Joint Venture Period:*
Should the Joint Venture choose to license content from a third party other than HSAT and to cease utilizing HSAT content, it shall be agreed that at that time, the Joint Venture shall no longer operate as a pass-through entity and that the BASE SERVICES FEE, MARKETING SERVICES FEE, CONTENT LICENSE FEE and OPERATOR FEES shall cease to be payable to the respective Joint Venturers.

Any unpaid SUBSCRIPTION ARREARS shall remain an outstanding obligation of the Joint Venture and payable to HSAT.

Post Joint Venture, the Joint Venture shall be operated as a standalone entity with owners of the Joint Venturers holding shares in the entity as set out in Section 5.1 of this agreement.

## APPENDIX B – Joint Venture Liabilities

As set out in APPENDIX A, HSAT is entitled to payment of SUBSCRIPTION ARREARS for the Operating Period of the Joint Venture.

The following schedule sets out the SUBSCRIPTION ARREARS through September 30, 2018 and shall be updated monthly.

| Month | MDU Subscribers | Individual Subscribers | Subscription Fee Payable | Subscription Fee Paid | Subscription Fee Unpaid |
|---|---|---|---|---|---|
| 2018: | | | | | |
| January | 0 | 2,757 | $ 21,366.75 | - | $ 21,366.75 |
| February | 0 | 3,083 | 23,893.25 | - | 23,893.25 |
| March | 0 | 3,165 | 24,528.75 | - | 24,528.75 |
| April | 0 | 3,186 | 24,691.50 | - | 24,691.50 |
| May | 0 | 3,433 | 26,605.75 | - | 26,605.75 |
| June | 0 | 3,699 | 28,667.25 | $ 7,750.00 | 20,917.25 |
| July | 0 | 3,712 | 28,768.00 | 7,750.00 | 21,018.00 |
| August | 0 | 4,420 | 34,255.00 | 7,750.00 | 26,505.00 |
| September | - | - | - | - | - |
| TOTAL | - | 27,455 | $ 212,776.25 | $ 23,250.00 | $ 189,526.25 |

The above SUBSCRIPTION ARREARS plus future additions to this amount shall be repaid as follows:

| | |
|---|---|
| October 1, 2018 | $30,000 |
| November 1, 2018 | $15,000 |
| December 1, 2018 | $15,000 |
| Subsequent Months | $20,000 |

These SUBSCRIPTION ARREARS payments shall be paid until any outstanding SUBSCRIPTION ARREARS have been extinguished.

This SUBSCRIPTION ARREARS liability of the Joint Venture shall remain a liability of the Joint Venture throughout the Operating Period and into any Post Operating Period.

| | |
|---|---|
| From: | shant <ssh@jet.io> |
| To: | David Cash <david.s.cash@hotmail.com> |
| Sent: | November 2, 2017 10:22:44 AM EDT |
| Received: | November 2, 2017 10:22:53 AM EDT |

David, on the road right now, will look at this when I get to my laptop. Meantime, please make the November payment and we need to know what's due to Speedus as well, thanks and look forward to reviewing this, best Shant

On Nov 2, 2017 2:12 AM, "David Cash" <david.s.cash@hotmail.com> wrote:

> Shant, Jason and Michael
>
> My apologies for my slowness in getting the attached memo to the group. Things have been a little crazy here in Melbourne and consequently I missed my deadline yesterday to get this to you.
>
> Just for framing purposes, the attached memo is partly an overview on the current status of Omniverse and partly an outline of potential terms for transitioning Jason into a consulting role and for financing that transition and the ongoing operations of Omniverse. It is my hope that you will all find the memo to be an accurate representation of the current situation as well as a realistic road map for this accomplishing our twin goals of a sensible transition for Jason and an appropriate operating/ownership model for Omniverse.
>
> I will check in with each of you tomorrow [Thursday your time, Friday my time] to discuss the memo and to set a time for more detailed conversation.
>
> Thank you again for your patience and talk to you all tomorrow.
>
> All the best,
>
> David