REDACTED

TRUST AGREEMENT made this 28th day of December, 2012, between VAHAK S. HOVNANIAN and PARIS HASMIG HOVNANIAN of Freehold, New Jersey (hereinafter referred to as "Settlors"), as Settlors, and NINA HOVNANIAN AND SHANT HOVNANIAN of Freehold, New Jersey, (hereinafter referred to as the "Original Trustees"), as Trustees.

## W I T N E S S E T H:

FIRST:          The Settlors hereby states his intention to transfer the sum of One Dollar ($1.00) to the original Trustees, which, following receipt, the original Trustees agree to hold in trust and to manage and dispose of the same in accordance with the provisions of this Trust Agreement.

SECOND:          (A)  This Trust Agreement may be referred to as the "VSHPHH TRUST".

(B)  Throughout this Trust Agreement, the word "Trustees" is used to refer to the original Trustees and to each additional or successor Trustee.  Therefore, all references to the "Trustees", and the corresponding pronouns and verbs, shall be deemed to refer to each Trustee serving hereunder at any time, and shall be construed in the masculine, feminine or neuter and in the singular or plural, whichever construction is consistent with the context or the facts prevailing at any given time.

(C)  The property originally transferred to the Trustees, together with any additions, and income earned thereon, is sometimes referred to herein as the "Trust Fund".

- 1 -

**Plaintiff Exhibit**

114

REDACTED

THIRD:        This Trust Agreement and the trusts created hereunder shall be irrevocable.  The Settlor shall have no right or power,  whether alone or in conjunction with others, in whatever capacity, to alter, amend, revoke or terminate the  trusts created hereunder, or any of the  terms of this  Trust  Agreement, in whole or in part.

FOURTH:        The original Trustees shall divide the cash transferred to them pursuant to Article FIRST into five separate trusts.  One separate trust shall be for the benefit of the Settlor's granddaughter, G███████ H█████████████; a second separate trust shall be for the benefit of the Settlor's granddaughter, K█████████ H██████████████, a third separate trust shall be for the benefit of the Settlors' grandson, Vahak W. Hovnanian, a fourth separate trust shall be for the benefit of the Settlor's granddaughter, P██████ H█, and a fifth separate trust shall be for the benefit of the Settlor's grandson, C███████ H████████. Such separate trusts may be referred to as the "G██████ H████████████ Asset Trust", the "K█████████ H██████████████ Asset Trust", the "Vahak W. Hovnanian Asset Trust", the "P████ H██████ Asset Trust" and the "C██████ H██████ Asset Trust", respectively. The "G██████ H███████████ Asset Trust", the "K████████ H██████████████ Asset Trust", the "Vahak W. Hovnanian Asset Trust", the "P█████ H██████ Asset Trust" and the "C████████ H██████ Asset Trust" shall be held by the Trustees pursuant to the terms of Article FIFTH.  The Settlor's said

- 2 -

**REDACTED**

grandchildren are each hereafter referred to respectively as the "Beneficiary" of the separate trust which bears his or her name.

FIFTH:        The following are the dispositive provisions of the "G████ ███ H██████████ Asset Trust", the "Ka█████ H██████████ Asset Trust", the "Vahak W. Hovnanian Asset Trust", the "P████ █ H████ Asset Trust" and the "C█████ █ H███████ Asset Trust" and the trusts that may be created pursuant to paragraph "(E)" of this Article FIFTH:

(A)  The Trustees may, at any time or from time, to time pay to the Beneficiary of such separate trust, or apply for his or her benefit, upon such occasions as the Trustees, in their sole and absolute discretion deem advisable, so much or all (or none) of the net income and principal of the separate trust held for the Beneficiary, even though any such distribution of income or principal may terminate the separate trust held for the Beneficiary. Without limiting the purposes for which payments may be made and without requiring the Trustees to make any payment which they deem inadvisable, the Settlor suggests that such purposes for which amounts of net income and principal might be paid include maintenance, support, education, engagement, marriage, acquisition of a home, birth of a child, commencement or continuation of a business enterprise, and medical requirements. In granting discretion to the Trustees to make such payments of net income and principal, it is the Settlor's desire that such discretion be liberally exercised when the purpose, whether one previously specified or not, is such that the interest of the Beneficiary in question would be best served thereby. In determining

- 3 -

REDACTED

whether or not to make any such payments of net income and principal, the Trustees shall consider only the merits of the proposed purpose of the distribution and they need not (but may) consider:  (1) the obligation of any person or persons for the support of such Beneficiary, (2) the other assets of such Beneficiary or the income therefrom, and (3) the financial needs of such Beneficiary or of the person or persons obligated for his or her support.  At the end of each trust year, the Trustees shall add to the principal of the Beneficiary's separate trust any net income not so paid or applied and thereafter the same shall be dealt with as principal for all purposes.

(B)  If at any time the Trustees, in their sole and absolute discretion, determine that the value of the separate trust held for the Beneficiary is such that continuance thereof is administratively uneconomical, the Trustees may terminate such separate trust and the entire then principal, together with all accrued and undistributed income, shall be distributed to the Beneficiary thereof.

(C)  Notwithstanding any contrary provision in paragraphs "(A)" and "(B)" of this Article, the discretionary powers regarding income and principal conferred upon the Trustees pursuant to said paragraphs shall not be exercisable by a Trustee who is obligated to support or maintain the Beneficiary of such separate trust in such manner as to discharge any part or all of his or her obligation to support or maintain the Beneficiary of such separate trust.

(D)  When the Beneficiary reaches the age of thirty (30) years, the separate trust held for the Beneficiary shall

- 4 -

REDACTED

terminate; whereupon, the entire remaining principal, together with all accrued and undistributed income, shall be paid to him or her.

(E)   If the Beneficiary dies before reaching the age of thirty (30) years, the separate trust held for the Beneficiary shall terminate and the Trustees shall pay the remaining principal, together with all accrued and undistributed income, to such Beneficiary's issue who survive him or her, per stirpes; or if there are no such issue, to the then living issue of the most immediate ancestor of the Beneficiary who (i) was the Settlor or a descendant of the Settlor and (ii) has issue then living, per stirpes; or if there are no such issue, to the Settlor's then living issue, per stirpes; provided that all property payable pursuant to this paragraph to:   (1) a person who is the Beneficiary of a trust held under this Article FIFTH which is then in existence, irrespective of the age of such person, shall be added in its entirety to the principal of such trust to be administered therewith and shall not be paid to such person outright; and (2) a child or more remote descendant of the Settlor for whose benefit a trust held under this Article FIFTH is not then in existence and who is then younger than thirty (30) years of age shall not be paid to him or her outright, but rather shall be held by the Trustees in a separate trust for his or her benefit pursuant to this Article FIFTH (each such person shall be hereinafter referred to as the "Beneficiary" of his or her separate trust). If there are no issues of the Settlor living at the Beneficiary's death, such property shall be paid to the same persons, and in the same proportions, as would have inherited such property from the Settlor had he then died

- 5 -

REDACTED

intestate, the absolute owner thereof, and a resident of the State of New York.

(F)   Notwithstanding any contrary provision in this Trust Agreement, but only if the continuation of the separate trust would violate a rule against perpetuities, a rule against suspension of ownership or power of alienation, or other similar rule, the separate trust held for the Beneficiary shall terminate, to the extent that it shall not have previously terminated, twenty-one (21) years after the death of the last survivor of such issue of the Settlor as were living on the date of the execution of this Trust Agreement. Upon the termination of such separate trust pursuant to this provision, the Trustees shall pay the entire then principal, together with all accrued and undistributed income, to the Beneficiary thereof.

SIXTH:   (A)   No assignment, disposition, charge or encumbrance on the income or principal of any trust held under this Trust Agreement, or any part thereof, by way of anticipation, alienation or otherwise, shall be valid or in any way binding upon the Trustees, and the Settlor directs that a beneficiary shall not have the right to assign, transfer, encumber or otherwise dispose of such income or principal, or any part thereof, until the same shall be paid to him or her by the Trustees. No income or principal of any trust held under this Trust Agreement, or any part thereof, shall in any way be liable to any claim of any creditor of a beneficiary.

(B)   The terms the "Settlor's children", "Settlor's issue", and "Settlor's descendants" shall include, for all

- 6 -

REDACTED

purposes of this Trust Agreement, persons attaining that status during minority by formal adoption, it being the Settlor's intention to expressly include any extension of the line of descent by means of adoption.

(C)   It is the Settlor's request, and earnest desire, that any distribution under this Trust Agreement for any beneficiary be for the benefit of such person and should not be considered for the benefit of his or her spouse in the event of any determination involving rights of equitable distribution or other marital rights.

SEVENTH:   Payment of any property under this Trust Agreement to a person who is a minor or who is under some other legal disability or who, in the opinion of the Trustees, is incapable of managing his or her affairs, may be made by the Trustees directly to such person or, in the sole and absolute discretion of the Trustees, may be made to such person's parent, spouse, other relative, or his or her Guardian, Committee or Conservator (other than the Settlor, the Settlor's spouse (at or subsequent to the creation of any trust held under this Trust Agreement), or any other person who has added property to any trust held under this Trust Agreement) in whatever jurisdiction appointed, or, in the case of any such person who is younger than twenty-one (21) years of age, whether or not a minor, to a custodian (other than the Settlor, the Settlor's spouse (at or subsequent to the creation of any trust held under this Trust Agreement), or any other person who has added property to any trust

- 7 -

REDACTED

held under this Trust Agreement) for such person's benefit under the Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any of the following states:  the state in which such person resides; the state in which any Trustee then serving resides; or the state in which any ancestor, sibling, uncle or aunt of such person resides.  The receipt by the person to whom distribution is made pursuant to this Article shall be a complete release and discharge of the Trustees in respect of the distributed property even though such person may be a Trustee hereunder.  Reference in this Trust Agreement to a "minor" shall mean a person younger than twenty-one (21) years.

EIGHTH:        If any beneficiary of this Trust Agreement shall die within thirty (30) days after the death of any person upon whose death such beneficiary would, but for this Article, be entitled to receive either income or principle under this Trust Agreement, then for the purposes of this Trust Agreement, such beneficiary shall be deemed to have predeceased such person, provided, however, that this Article shall not be construed to permit any violation of the rule against perpetuities, the rule against suspension of ownership or of the power of alienation, or any other similar rule.

NINTH:        (A)   The Settlor or any other person may add property to any separate trust held under this Trust Agreement (i) by lifetime transfers of additional property; (ii) by will; (iii) by naming the Trustees as beneficiaries of one or more life insurance policies; or (iv) by any other means; provided that such property shall be acceptable to the Trustees.  The Trustees may, in their sole and absolute discretion, decline to accept all or any portion of such

REDACTED

additions.   Furthermore, if the Trustees agree to accept any such additions they shall not be required to retain any property in the form received.   Upon receipt and acceptance thereof by the Trustees, any such additions shall be allocated to the separate trusts designated by the donor of such additions, or failing such designation, equally to all separate trusts then held under this Trust Agreement.

(B)   (1)   With respect to the initial transfer of property to the original Trustee made pursuant to Article FIRST of this Trust Agreement to the separate trusts held under Article FIFTH (for purposes of this paragraph, the initial transfer is treated as an "Addition", as defined in subparagraph "(6)" of this paragraph), and with respect to all other inter vivos Additions from all sources made, at any time, to the trusts held under Article FIFTH, each Beneficiary of a separate trust then held under Article FIFTH shall have a "power of withdrawal", as set forth below, with respect to any such Addition made to the separate trust of which he or she is the Beneficiary, as set forth below.

(2)   Subject to the provisions of subparagraph "(7)" of this paragraph "(B)", any such right of withdrawal must be exercised by the Beneficiary having the power of withdrawal by delivery of a written notice to the Trustees setting forth the amount of the Addition that the Beneficiary having the power of withdrawal desires to withdraw.   Upon receipt of such notice, the Trustees shall promptly pay the amount so demanded to the persons exercising the power of withdrawal.

- 9 -

REDACTED

(3)   The Trustees shall give prompt notice
(unless actual notice exists) of the withdrawal rights conferred by
this Article and of any Additions, and the amount thereof, to the
Beneficiary of each separate trust, except if any such Beneficiary is
under a legal disability, notification shall be given to his or her
Guardian, the Committee (if he or she is an adjudicated incompetent),
the Conservator of his or her property, or if none has been appointed,
to a parent or other relative of the Beneficiary under a legal
disability or to such other individual as the Trustees shall deem
appropriate.

(4)   If the Beneficiary of the separate
trust having a power of withdrawal is a minor or is then incompetent
or otherwise unable effectively to exercise his or her power of
withdrawal, the power to make such demand shall vest in his or her
Guardian, his or her Committee or the Conservator of his or her
property, or if none has been appointed, a parent or other relative of
the Beneficiary under the legal disability or such other individual as
the Trustees deem appropriate.   In no event shall such power vest in
the Settlor or any other person who has added property to any trust
held under Article FIFTH of this Trust Agreement.   The property
received pursuant to such demand by such Guardian, Committee or
Conservator, parent, other relative or other designee, as the case may
be, shall be held for such Beneficiary's benefit and use.

(5)   Each Beneficiary of such separate
trust (or the person authorized under this paragraph if such
Beneficiary is under a legal disability) shall have a power of

- 10 -

REDACTED

withdrawal subject to the provisions of subparagraph "(7)" of this paragraph "(B)". However, the aggregate amount that each Beneficiary living on the date of the Addition shall have the power to withdraw pursuant to this subparagraph "(5)" from the principal of the separate trust held under Article FIFTH of which he or she is the Beneficiary (including the initial Addition and any subsequent Addition) in any calendar year shall not exceed (subject to the provisions of subparagraph "(7)" of this paragraph "(B)"), the lesser of:

(a)   The fair market value of all Additions made to the trust held under Article FIFTH during the calendar year, determined with respect to each Addition as of the time the Additions were made to the Beneficiary's separate trust; and

(b)   The maximum dollar amount that can be excluded as a taxable gift to the Beneficiary of such separate trust at the time of the Addition under Section 2503(b) of the Internal Revenue Code of 1986, as amended (hereinafter referred to as the "Code"), including any gift tax exclusion under that Section that may be attributable to a spouse's joinder in the gift pursuant to Section 2513 of the Code (whether or not such spouse makes an election pursuant to Section 2513 of the Code with respect to such gift).

(6) For purposes of this paragraph "(B)", an "Addition" means any property added to any of the trusts held under Article FIFTH, the transfer of which would be treated under Chapter 12 of the Code as a Taxable gift of the donor or the donor's spouse (before taking into account the exclusion allowed by Section 2503(b) of the Code).

- 11 -

REDACTED

(7)   Any power of withdrawal granted to the Beneficiary of a separate trust under this Article with respect to an Addition to a separate trust held under Article FIFTH shall terminate sixty (60) days after the date of such Addition, but only to the extent that such termination does not exceed (i) the greater of (I) Five Thousand Dollars ($5,000), reduced by the amount that the person having the power of withdrawal shall have the right to withdraw during the calendar year under any other trust agreement created by the Settlor or the Settlor's wife, or (II) Five Percent (5%) of the value of the separate trust held under Article FIFTH of this Trust Agreement on the date of the Addition, reduced by (ii) the value of the withdrawal rights possessed by the person having the power of withdrawal (or the person authorized under this paragraph "(B)" if such person is under a legal disability) with respect to any Addition which previously terminated during that year.   A person's withdrawal right that does not terminate pursuant to the preceding sentence shall, until fully terminated, terminate in whole or in part on February 1 of each following calendar year in an amount that does not exceed the limitations set forth in the preceding sentence.   If a person having a power of withdrawal (or the person authorized under this paragraph if such person having the power of withdrawal is under a legal disability) possesses powers of withdrawal which have not terminated with respect to more than one Addition, then the powers of withdrawal shall terminate in the order in which they were created. Notwithstanding the foregoing, all powers of withdrawal with respect to a person having a power of withdrawal shall terminate on the date

- 12 -

REDACTED

preceding the date of death of such person having the power of withdrawal.

(8)   Any individual making an Addition to a trust held under Article FIFTH shall have the right, by an instrument filed with the Trustees at the time of the Addition, with respect to any power of withdrawal that would otherwise be created (i) to exclude any Beneficiary who would otherwise be entitled to a power of withdrawal from exercising the power, (ii) to increase or decrease the amount subject to the power, except that the amount subject to all powers shall not exceed the amount of the Addition, or (iii) to change the period during which the power may be exercised.

TENTH:       (A) The Trustees shall not be required to make physical segregation of the property held under this Trust Agreement except when necessary for the purposes of distribution, but may, in their discretion, maintain the separate trusts held under this Trust Agreement in one or more consolidated funds.  As to each consolidated fund the division into the various shares or parts comprising such fund need be made only on the Trustees' books of account, in which each separate trust shall be allotted its proportionate part of the principal and income of the fund and charged with its proportionate part of expenses of the fund and charged further with distributions of income and principal of such separate trust.

(B) If the Settlor or any other person creates or created another trust, whether by Will or during lifetime, the provisions of which are substantially the same as those of any trust created under this Trust Agreement, the Trustees, in their sole and

REDACTED

absolute discretion, may merge such trust created hereunder into such other trust. In determining whether the provisions of such other trust are substantially the same as the provisions of the trust created hereunder, the good faith determination by the Trustees shall be conclusive and binding on all persons interested in any trust created hereunder.

(C) Sections 7-1.6 and 7-1.11 of the New York Estates, Powers and Trusts Law shall not apply to any trust created under this Trust Agreement.

ELEVENTH: All matters of interpretation, validity and administration of any trust held under this Trust Agreement shall be governed by the laws of the State of New York and any proceeding involving such trust may be brought in that state. The Trustees may, without the approval of any court, change the sites of any trust held hereunder and its governing law to any other state of the United States of America, and may move the assets of such trust from one jurisdiction to another.

TWELFTH: The Settlor hereby confers upon the Trustees all powers and discretion conferred generally upon fiduciaries by Section 11-1.1 of the Estates, Powers and Trusts Law of the State of New York and other provisions of law and this Trust Agreement. In addition, without limiting the foregoing, the Trustees shall have the following powers and discretion with respect to all property of whatever kind at any time held by them, including income held by them until its distribution, which they may exercise as they deem advisable:

- 14 -

REDACTED

(A)   To retain, sell (whether at public or private sale), purchase, exchange, invest and reinvest in bonds, preferred or common stocks, mutual funds, money market funds, certificates of deposit, partnerships, limited liability companies, or other business entities or ventures, mortgages, interests in any kind of investment trust, or other evidences of rights, interests or obligations, secured or unsecured, foreign or domestic, or other property, real or personal and whether or not in the nature of a wasting asset, all without any duty to diversify investments, and fully free of any and all restrictions imposed by law upon the investment of funds held by a fiduciary; and to retain and insure the same for any period of time without liability therefor;

(B)   To employ and to pay the compensation of such agents, accountants, custodians, experts and counsel, legal or investment (including any firm with which a Trustee hereunder may be associated), which compensation shall not reduce any commissions or other compensation payable to the Trustees, and to delegate discretionary powers to, and rely upon information or advice furnished by, such agents, accountants, custodians, experts or counsel, including with respect to the purchase, retention or sale of any securities or other assets under investment management;

(C)   To improve, lease (for any term, whether or not beyond the term of any trust created hereunder or the term fixed by any law), partition or otherwise deal with or dispose of any real or personal property or any interest therein; to make alterations in, renovations and extraordinary improvements to any building now or

- 15 -

REDACTED

hereafter located on any such property or to demolish the same; to construct new buildings; and to enter into contracts or grant options (for any period) with respect to any of the foregoing;

(D)   To consent to the modification, renewal or extension of any note, whether or not secured, or any bond or mortgage, or any term or provision thereof, or any guarantee thereof, or to the release of such guarantee; to release obligors on bonds or notes secured by mortgages or to refrain from instituting suits or actions against such obligors for deficiencies; to use property held under this Trust Agreement for the protection of any investment in real property or in any mortgage on real property;

(E)   To abandon any property, real or personal, which they shall deem to be worthless or not of sufficient value to warrant keeping or protecting; to abstain from the payment of taxes, water rents, assessments, repairs, maintenance and upkeep of such worthless property; to permit such worthless property to be lost by tax sale or other proceeding, or to convey any such worthless property for nominal or no consideration;

(F)   To pledge, mortgage or use as security any property; to pay off and satisfy any mortgage or any other security interest to which any property held under this Trust Agreement shall be subject, and to use for that purpose any property, real or personal, held under this Trust Agreement;

(G)   To acquire, exercise or dispose of any or all options, privileges or rights appurtenant or incident to the

REDACTED

ownership of any property, whether publicly traded securities or otherwise; to vote, assent, subscribe, convert property of any nature;

(H)     To assent to or participate in any reorganization, readjustment, recapitalization, liquidation, partial liquidation, consolidation, merger, dissolution, sale or purchase of assets, lease, mortgage, contract or other action or proceeding by any corporation and, in connection therewith, to subscribe to new securities issued pursuant thereto or exchange any property for any other property or pay any assessments or other expenses; to delegate discretionary powers to any reorganization, protective or similar committee;

(I)   To borrow money from any party, including any Trustee hereunder, whether for the purpose of raising funds to pay taxes, to purchase property, or otherwise, and to give or not to give security therefor;

(J)   To hold property in the name of a nominee or unregistered or in such form as will pass by delivery.

(K)     To open and maintain bank accounts and brokerage accounts;

(L)     To make loans to such persons, firms, corporations and entities as they in their exercise of discretion shall deem advisable;

(M)   To engage in business with the property held under this Trust Agreement as a sole proprietor, or as a general or limited partner, or as a member of a limited liability company, with all the powers customarily exercised by an individual so engaged in

- 17 -

REDACTED

business, and to hold an undivided interest in any property as tenant in common or as tenant in partnership;

(N)   To satisfy any distribution or interest under this Trust Agreement with any property, including an undivided interest in the property, whether or not the same kind of property is used in satisfaction of any other such distribution or interest;

(O)   To determine whether or to what extent receipts should be deemed income or principal, whether or to what extent expenditures should be charged against principal or income, and what other adjustments should be made between principal and income. The Trustees may in their discretion maintain a reserve for depreciation of real property or for the amortization of leaseholds, and may set aside and add to principal, a portion of the income for any such reserve; and in determining the amount of any such reserve, the Trustees may, but need not, be guided by a rate and method of computing amortization or depreciation that is allowable for federal income tax purposes;

(P)   If a trust held hereunder would be partially exempt from generation skipping transfer tax by reason of an allocation of an exemption to it, the Trustees, in their sole and absolute discretion, before the allocation, may divide the trust into two separate trusts of equal or unequal value, to permit allocation of the exemption solely to one trust which will be entirely exempt from generation skipping transfer tax.  In addition, if a trust hereunder is entirely exempt, entirely nonexempt or partially exempt from generation skipping transfer tax and adding property to the trust

- 18 -

REDACTED

would alter the portion of the trust and subject it to generation skipping transfer tax, the Trustees, in their discretion, may hold that property as a separate trust in lieu of making the addition.

THIRTEENTH:    (A) The Trustees may from time to time settle their accounts with respect to any separate trust held hereunder by agreement with:

(1)   each income beneficiary of such separate trust, and as to each such beneficiary who is a minor or under a legal disability, with such beneficiary's legally appointed Guardian of the property, Committee or Conservator, or if none have been appointed, the parent or other relative of such income beneficiary; and

(2)   each beneficiary who would be entitled to receive some part or all of the principal if such separate trust were to terminate at the time of such agreement, and as to each such beneficiary who is a minor or under a legal disability, with such beneficiary's legally appointed Guardian or the property, Committee or Conservator, or if none have been appointed, the parent or other relative of such beneficiary.

Such agreement shall bind all persons, whether or not then in being, then or thereafter entitled to any property of the separate trust, whether principal or income, and shall constitute a complete release and discharge of the Trustees for the acts and proceedings so accounted for.

- 19 -

REDACTED

(B)    Nothing contained in this Article shall preclude the Trustees from seeking a judicial settlement of their accounts.

(C)    For purposes of this Trust Agreement, the income beneficiary of a separate trust is each person eligible to receive income distributions, whether or not such beneficiary is in fact receiving distributions of income currently.

FOURTEENTH:    The Trustee or Trustees at any time in office under this Trust Agreement by unanimous choice (if more than one), may designate one or more individuals (other than the Settlor or any other person who has added property to any trust held under this Trust Agreement) and/or a qualified bank or trust company, to act as a Trustee under this Trust Agreement.  Such designation shall be in writing and shall specify the time at which or the event upon which the designation so made shall become effective.  Such instrument shall further specify whether the designee shall serve as a co-Trustee with the Trustee or Trustees then serving or as a successor Trustee, and if more than one successor is designated, the order of succession.

Any instrument of designation may be revoked at any time, as to any designee who has not taken office (but not as to any designee who has), by the unanimous act of all Trustees in office under this Trust Agreement at the time of such revocation.  Such revocation shall be in writing.  In case of such revocation a new designation may be made as specified above, provided that the Settlor or any other person who had added property to any trust held under

- 20 -

**REDACTED**

this Trust Agreement may never be appointed as a Trustee, co-Trustee or successor Trustee.

If there is more than one instrument designating additional or successor Trustees, the instrument that bears the most recent date and that makes an unrevoked designation shall govern. Before taking office, each Trustee, other than the original Trustees, shall accept the terms of this Trust Agreement and shall agree to act as a Trustee by signing a written instrument to that effect. A Trustee shall be deemed to have taken office when he, she or it signs that instrument.

Each instrument that designates a Trustee that revokes a designation or that signifies a Trustee's acceptance of office shall be filed with the trust records maintained by the Trustees and a copy of which shall be mailed or personally delivered to every other Trustee, if any, then in office.

If at any time there is no Trustee serving hereunder and no successor Trustee can be appointed as authorized above, then the Settlor's nephew Peter Hovnanian, shall commence serving as Trustee.

FIFTEENTH:    (A)  No bond or other security shall be required of any Trustee serving hereunder at any time, including any successor (whether or not appointed by instrument), any provision of law to the contrary notwithstanding.

(B)  All powers, authority and discretion herein conferred upon the Trustees shall pass to and be exercisable by each successor (whether or not appointed by instrument).

- 21 -

REDACTED

(C)   No person dealing with the Trustees shall be required to see to the application or disposition by the Trustees of any cash or property transferred or delivered to or on the order of the Trustees, nor shall any such person be required to inquire into the authority for or propriety of any action by the Trustees.

(D)   Any one or more of the Trustees may disclaim or release, in whole or in part, any power or discretion given to them with respect to any trust created hereunder by filing with the attorneys representing the Trustees, a written instrument to that effect, and giving written notice to the other Trustees.

(E)   In addition to and not in limitation of any law authorizing Trustees to act by a majority, the Settlor directs that ministerial duties of the Trustees (such as signing of checks, execution of brokerage transactions relating to securities or commodities, and the like) may be executed by any one Trustee.

(F)   Any trustee at any time in office hereunder may resign by mailing or delivering a signed and acknowledged written notice of resignation to every other Trustee at the time in office, or if none, to the next successor Trustee.   Such resignation shall take effect upon the date specified in such notice, whereupon all duties of the Trustee so resigning shall cease, other than the duty to account.

Any Trustee so resigning shall take all steps necessary to effect and perfect the delivery and transfer of all property then held under this Trust Agreement to the remaining Trustees or, if applicable, to the successor Trustee.   No successor Trustee shall be obliged to examine the accounts, records, or acts of

- 22 -

REDACTED

any previous Trustee or any allocations of receipts or disbursements as between principal and income made by any previous Trustee.

SIXTEENTH:   The Trustees shall be deemed to have acted within the scope of their authority, to have exercised reasonable care, diligence and prudence, and to have acted properly as to all persons interested and all matters unless the contrary be proved by affirmative evidence. The Trustees shall not be liable for any losses incurred by the Trust Fund, either of principal or income, resulting from any investment now held by the Trustees or hereafter made by the Trustees, provided such loss has not occurred through the gross negligence or willful misconduct of the Trustees.

SEVENTEENTH:   To the same effect as if it were the original, anyone may rely upon a copy certified by a notary public to be a true counterpart of this instrument (and of the writings, if any, endorsed thereon or attached thereto).   Anyone may rely upon any statement of fact relating to this Trust Agreement or any trust created herein which statement of fact is certified under oath by anyone who appears from the original document, or a certified copy, to be the Trustee hereunder.   This Trust Agreement may be executed in several counterparts any of which shall constitute an original.

**REDACTED**

IN WITNESS WHEREOF, the Settlors and the original Trustees have hereunto set their hands and seals this 28th day of December, 2011.

VAHAK S HOVNANIAN, Settlor

PARIS HASMIG HOVNANIAN, Settlor

NINA C. HOVNANIAN, Trustee

SHANT HOVNANIAN, Trustee

STATE OF NEW JERSEY )
                     )SS.
COUNTY OF MERCER   )

On the 28th day of December, in the year 2012, before me, the undersigned, a Notary Public in and for said State, personally appeared **VAHAK S.HOVNANIAN** and **PARIS HASMIG HOVNANIAN** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument the individual, or the person upon behalf of which the individual acted, executed the instrument.

William Read Rankin ESQ.

- 24 -

**REDACTED**

STATE OF NEW JERSEY )
                    )SS.
COUNTY OF MERCER   )

On the 28th day of December, in the year 2012, before me, the undersigned, a Notary Public in and for said State, personally appeared NINA C. HOVNANIAN and SHANT HOVNANIAN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument the individual, or the person upon behalf of which the individual acted, executed the instrument.

William Read Rankin ESQ