IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
------------------------------------------------------

UNITED STATES OF AMERICA,      :

                       :

          Plaintiff.       :       Civil Action No.: 18-15099 (ZNQ)(LHG)

                       :

                       :

v.                          :

                       :

SHANT HOVNANIAN, et al.     :

                       :

         Defendants.    :
------------------------------------------------------

## <u>MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT VSHPHH TRUST</u>

John M. Hanamirian, Esquire
HANAMIRIAN LAW FIRM, P.C.
40 E. Main Street
Moorestown, New Jersey 08057
(856) 793-9092 – t
(856) 793-9121 – f
jmh@hanamirian.com
*Attorney for Defendant VSHPHH Trust*

Motion Date: Tuesday, June 21, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................... 2

I. ................................................................................................................................................. 3

II. ................................................................................................................................................ 3

III. .............................................................................................................................................. 4

IV. .............................................................................................................................................. 14

OPPOSITION LEGAL ANALYSIS .............................................................................................. 16

    A.           Nominee Lien: Taxpayer Not in Title ........................................................ 17

    B.           Alter Ego and Nominee Claims ................................................................. 18

    C.           Several Factors Preclude Any Alter Ego Claim ......................................... 21

CONCLUSION .............................................................................................................................. 32

# TABLE OF AUTHORITIES

## CASES

Cohen v. United States, 1998 WL 953979 (C.D.Cal. 1998)................................... 23, 28, 31

Diebold v. Commissioner, T.C. Memo. 2010-238, at *8 (Tax Ct. 2010)......................... 23

Don Gastineau Equity Trust v. United States, 687 F. Supp 1422, 1425 (C.D.Cal. 1987)..... 27

Drye v. United States, 528 U.S. 49, 58 (1999) ............................................. 18

Genger v. Genger, 990 N.Y.S.2d 498, 505, 121 A.D.3d 270 (1st Dep't 2014)...................... 22

Gillum v. Commissioner, T.C. Memo. 2010- 280, at *3 (Tax Ct. 2010).............................. 23

Hews Co., LLC v. Barnaby, 2007 WL 2033402, at *1 (D.N.H. 2007).............................. 26

Hews Co., LLC, supra, 2007 WL 2033402, at *1-2 ................................................ 27

In re Raymond, 529 B.R. 455,469 (Bkrtcy. D.Mass. 2015) ..................................... 26

In re Vebeliunas, I, 332 F.3d at 91 ............................................. 22, 23, 24, 27

Oxford Capital Corp. v. United States. 211 F.3d 280, 284 (5th Cir. 2000).............................. 22

Spotts v. United States of America, 429 F.3d 248, 251 (6th Cir. 2005)................................ 18, 21

United States v. Balice, 2017 WL 3420918, at *1 (D.N.J. 2017)................................. 23

United States v. Evseroff, 270 Fed. Appx. 75, 77 (2d Cir. 2008)................................... 22, 23, 30

United States v. Greer, 383 F.Supp.2d 861, 867-68 (W.D.N.C. 2005) ... 23, 25, 26, 27, 28, 31

United States v. Jones, 2012 WL 569366, at *9 (C.D.Cal. 2012) ....................................... 31

United States v. Kimball, 2016 WL 3566199, at *6 (D.Me. 2016) ......................................... 24

United States v. Letscher, 83 F.Supp.2d 367, 373 (S.D.N.Y. 1999) ............................................ 23

United States v. Nassar, 2014 WL 5822677, at *5 (S.D.N.Y. 2014)........................................... 30

United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985) ......................................... 18

<u>United States v. Patras</u>, 909 F. Supp 400, 410 (D.N.J. 2012)............................................ 18, 30

<u>United States v. Swan</u>, 467 F.3d 655, 658 (7th Cir. 2006)............................................................. 30

<u>United States v. Towne</u>, 406 F. Supp.2d 928, 937 (N.D.111. 2005) ............................................ 31

<u>United States v. Washington</u>, 2011 WL 3902737, at *18 (S.D.Tex. 2011)............................. 26

<u>Watkins Motor Lines v. De Galliford</u>, 167 F.2d 274, 275 (5th Cir. 1948) ................................ 18

## **<u>RULES</u>**

26 U.S.C. § 6321 ..................................................................................................................... 17,18

## **<u>OTHER CITED AUTHORITIES</u>**

Internal Revenue Code.................................................................................................................. 17

Restatement (Third) of Trusts §§ 76-84 (2012).......................................................................... 16

William  D. Elliot, Federal Tax Collections,  Liens and Levies 19.10[2] (2nd Ed. 2000) ..... 22

## PRELIMINARY STATEMENT

In this case, the government seeks to seize certain assets of Vahak Hovnanian, Sr. and Paris Hasmig Hovnanian that they left for their grandchildren in order to pay some alleged debts of their adult son, Shant.

The Court should not allow this to happen.

First, the Hovnanian grandparents had the right to dispose of the assets in their estate however they wished.  They were wealthy in their own right.  During their long lifetimes they built many communities, selling thousands of homes in New Jersey.

Here, as part of their estate planning, grandparent Paris Hasmig Hovnanian chose to irrevocably place the assets in issue in trusts for the benefit of their five (5) grandchildren, many years ago.

The court should respect and uphold this right.

To seize the assets in issue, the government advances several arguments that misapply precedent and law.  In the case law cited by the government, transferors who have debts (usually tax, penalty, and interest) seek to fraudulently transfer assets to others, or to others they control, so as to avoid seizure.  That does not apply in this case.

The basic problems with the government's arguments are:

(1) The "transferors" referred to in the case law are the Hovnanian grandparents, Vahak and Paris Hasmig Hovnanian, as title owner transferors, not to their son Shant: their son Shant has NEVER been in the chain of title;

(2) There is no fraud here by the Hovnanian grandparents;

(3) The Hovnanian grandparents were not under the control of their adult son;

(4) The trusts were not formed by the Hovnanian grandparents for any illegal purpose;

(5) The transfers were part of an estate plan many years in the making;

(6) The transfers were irrevocable;

(7) The transfers were not made under duress of any kind; and

(8) Whatever benefits or burdens the son may have received, he did not own the properties in issue.

Next, the six (6) tests for ownership articulated in Petras, *infra*, apply to the Hovnanian grandparents, as owner transferors, not to their son.  When applied correctly to the Hovnanian grandparents, rather than to their son, the six (6) tests defeat the government's view.

And finally, the statute of limitations bars any relief to the government for these trust transfers which happened many years ago.

For these reasons, the Court should deny the government's Motion, and grant the Defendant Trusts' Motion for Summary Judgement.

## FACTUAL BACKGROUND

Nina Hovnanian ("Ms. Hovnanian") as Trustee of the VSHPHH Trust, by and through counsel, John M. Hanamirian of the Hanamirian Law Firm, P.C., respectfully submits this brief in opposition to the "United States' Motion for Partial Summary Judgment as to the VSHPHH Trust" ("PSJ Motion") and Order of Sale as to the 1 Dag Hammarskjold Property.

According to the Internal Revenue Service ("IRS"), Mr. Shant Hovnanian failed to pay certain federal income taxes for the tax periods ending December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, totaling $16,209,389.00, as of September 30, 2018, inclusive of interest and penalties.

The Pachava Asset Trust is the owner of certain real property located at 520 Navesink River Road in Red Bank, New Jersey and the VSHPHH Trust is the owner of certain real property

located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey (when abbreviated, "Properties"). On January 16, 2018, the United States of America, Department of the Treasury, Internal Revenue Service ("IRS") filed Nominee Liens against the Properties, each of record with the Monmouth County Clerk. The Nominee Liens potentially affect title to the Properties.

The following are the facts relevant to the Motion, presented chronologically:

## I.

Ms. Hovnanian is the daughter of Vahak and Paris Hasmig Hovnanian and the sister of Mr. Shant Hovnanian. Ms. Hovnanian is the current trustee of the Pachava Asset Trust and the VSHPHH Trust (sometimes hereinafter referred to as the "Trusts"). Ms. Hovnanian's predecessors in that role included her former sister-in-law and a cousin. Ms. Hovnanian works with her family's bookkeeper to maintain and administer the Pachava Asset Trust and the VSHPHH Trust. That bookkeeper, Karen Gandolfo, worked for the family in their home construction business for nearly thirty (30) years. The Hovnanian family of builders began their business as an effort to provide value to potential homeowners in the mid-priced real estate marketplace. The Hovnanian brothers are first generation immigrants from Baghdad, Iraq, and each of the brothers escaped the Armenian Genocide in 1915 and made a life in the United States. They are a very close family. This matters because it matters, but also to allow the Court to understand that the real property held by the VSHPHH Trust was intended to be a gathering place for Vahak and Paris Hasmig Hovnanian's grandchildren and that the objective of any transfers to trust was to accomplish assurances that their grandchildren would be provided for in their estate planning.

## II.

In furtherance of their estate planning objectives to equalize assets to maximize the use of the unified credit and to provide for their grandchildren, on January 1, 2015, Vahak S. Hovnanian

3

and Hasmig Hovnanian a/k/a Paris H. Hovnanian transferred title to the real property located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey to the VSHPHH Trust, which was recorded on January 31, 2015. (Exhibit "A").

The VSHPHH Trust has not conveyed any legal or equitable title to the real property located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey to any other individual, individuals, or legal entity since July 1, 2015.

## III.

The United States filed and refiled several notices of federal tax liens that were recorded in the Office of the County Clerk of Monmouth County against Mr. Shant Hovnanian for his purported unpaid federal income taxes as follows:

(1) On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "Shant S. Hovnanian Asset Trust, as nominee of Shant Hovnanian", Serial No.: 271810382, attaching to the real property located at 520 Navesink River Road, Middletown, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86;

(2) On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "Pachava Asset Trust, as nominee of Shant Hovnanian", Serial No.: 271810381, attaching to the real property located at 520 Navesink River Road, Middletown, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86:

a. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on September 26, 2018;

b. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2018;

c. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 12, 2018;

d. On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of $18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019;

(3) On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810383, attaching to the real property located at 1 Dag Hammarskjold Boulevard, Howell Township, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86:

a.  September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on September 26, 2018;

b.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2018;

c.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 12, 2018;

d.  On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of $18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019;

(4) On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810384, attaching to certain real property located at 124 Wemrock Road, Freehold Township, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86:

6

a.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on September 26, 2018;

b.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2018;

c.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 12, 2018;

d.  On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of $18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019;

(5) On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810385, attaching to the real property located at 7 Highway 33, Manalapan Township, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86;

a.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on September 26, 2018;

b.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2018;

c.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 12, 2018;

d.  On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of $18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019;

(6) On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810386, attaching to the real property located at Shafto Road, Borough of Tinton Falls, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86:

   a.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on September 26, 2018;

   b.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2018;

   c.  On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 12, 2018;

   d.  On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of $18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019;

(7) On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810389, attaching to the real property located at Wyckoff Mills Road, Howell Township, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86;

a. On October 2, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 4, 2018;

b. On October 2, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 10, 2018;

(8) On May 3, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810479, attaching to any interest in VEC Realty LLC, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,244,335.86:

a. On October 2, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 4, 2018;

b. On October 2, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 10, 2018; and

c. On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of

10

$18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019.

On October 18, 2018, the IRS filed the within Complaint seeking to validate the Nominee Liens (Dkt. 1). Agent Michael MacGillivray of the IRS prepared a report and provided testimony surrounding the IRS collection efforts as against Mr. Shant Hovnanian. (Exhibit "B"). The IRS did not seek to collect from Mr. Shant Hovnanian through the "usual" methods of bank and investment account levies or other collection efforts, but rather immediately sought to impose the Nominee Liens. (MacGillivray Dep. 46:8-47:8; Exhibit "C".) Likewise, the IRS did not even try to seek out Shant's testimony and sought to affirmatively preclude it. (Dkt. 89.) Agent MacGillivray's Report states that the IRS was aware of the transfers of the Properties located at 520 Navesink River Road and 1 Dag Hammarskjold Boulevard ("Office Complex") as early as June 2013:

> *Indications are that TP's master file address, (1 Dag Hammarskjold Plaza, Freehold, New Jersey), is a business office for his family's business. (Hovnanian Builders). It appears that TP and his spouse reside at 520 Navesink River Road, Red Bank, New Jersey.*
>
> *The taxpayer's father, Vahak S. Hovnanian, transferred the property at 520 Navesink River Road, Red Bank, New Jersey to the taxpayer's mother for $1.00 on 09/28/2007. The taxpayer's mother, Paris Hasmig Hovnanian, transferred the property to The Shant S. Hovnanian Asset Trust for $1.00 on 06/21/2011. This trust transferred the property to Pachava Asset Trust for $1.00 on 12/16/2011. This deed indicates that The Shant S. Hovnanian Asset Trust had changed its name to Pachava Asset Trust.*

(Exhibit "B" at pg. 3.)

Agent MacGillivray's Report also demonstrates that the IRS knew and understood that Mr. Shant Hovnanian was not present at the Properties:

*ATTEMPTED CONTACT TAXPAYER*

11

*RESULTS: FV to 1 Dag Hammarskjold Blvd, Howell Township, New Jersey. Shant Hovnanian 's business office.*

*The doors to the main building were locked. RO gained access to the main building through the office of Jerry Hillman, CPA RO asked an African American woman if Shant Hovnanian was present. She seemed to not know him. She said, "Isn't he the manager or something. " She instructed RO to go through a door to the rights to gain access to the main building. RO entered the main building to find all of the lights off RO looked on the first floor and the second*

*floor. All doors were locked and all lights were off Shant*

*Hovnanian and/or his secretary were not present. There was an access door to J Vero Associates. RO knocked on the door. A woman came to the door. (RO thinks this is J Vero). RO asked if Shant Hovnanian was present. She stated that she does not remember the last tome [sic] that she saw Shant Hovnanian.*

*RO left.*

*ACTION DATE: 03/20/2018         SYSTEM DATE: 03/20/2018 CONTACT: FIELD    CREATE ID: 21013529*

*ATTEMPTED CONTACT*

*ATTEMPTED CONTACT -*

*TAXPAYER*

*RESULTS: FV to 520 Navesink River Road Middletown Township New Jersey Afternoon*

*As RO drove up the driveway it was apparent that the Range Rover had been moved. RO drove up near the front door and young man was visible walking around the house with black dog. He walked toward RO 's vehicle. RO exited his vehicle and walked toward him. RO asked if he is Shant Hovnanian 's son Vahak Hovnanian? He conformed [sic] that he is Shant Hovnanian 's son, Vahak Hovnanian. (Note: Vahak Hovnanian is known to be 21 years old). RO asked if Shant Hovnanian was available. He stated that Shant*

*Hovnanian is not present Shant Hovnanian is currently in Armenia. Shant Hovnanian will return in approximately 1 week. RO handed two envelopes to Vahak Hovnanian and RO's business card:*

(Exhibit "B" at pg. 315 to 316).

12

Jessica L. Hollobaugh prepared an expert report and provided testimony on behalf of the IRS. That report and the related testimony are both littered with legal conclusions admittedly outside of the scope of Ms. Hollobaugh's expertise. That expert report in accounting concludes that the bookkeeping for the Trusts was, as one might expect with family matters, not maintained with all of the formalities that may normally be associated with recordkeeping where a third-party is involved. Here, it was all family. Ms. Hollobaugh concluded that the gift of the Properties, particularly the gift of the 520 Navesink River Road property was not a gift to the grandchildren who are the named beneficiaries, but rather only a gift to Mr. Shant Hovnanian because he had "an obligation to provide his children with shelter". (Hollobaugh Dep., 51:1-62:24; Exhibit "D".)  This is the extent to which the IRS will go in pursuing Mr. Shant Hovnanian, defying logic, the law, and the plain language of the Trust agreement in favor of seeking to enforce their improper nominee liens.

The IRS sought the testimony of Nina Hovnanian, the current trustee of the Trusts, but not someone who had familiarity or knowledge with respect to the transfer of the Properties to the Trusts. They also chose to not seek out the testimony of whom these alleged tax liabilities attach. Vahak and Paris Hasmig Hovnanian passed away before the Complaint was filed. Mr. Shant Hovnanian was available for deposition testimony, but the IRS concluded that it was too much trouble to seek his testimony in Armenia, potentially having to invoke the Hague Convention.  The foregoing is true despite web-based interactions having become a part of everyday life. Closer to home, the IRS did not seek the testimony of Peter Hovnanian, a former trustee of the Pachava Asset Trust who resides in Moorestown,  New Jersey.

The "Pachava" in the name "Pachava Asset Trust" is an acronym reflecting the first initial of the first names of both grandparents and each respective grandchild's name; Vahak, Paris and Charentz Hovnanian.

The Nominee Liens affect the ownership interests of the Trusts, create a cloud on the chain of title, and render the title to the Properties potentially unmarketable by the Trusts.

## IV.

The IRS has tried to collect tax debts against Mr. Shant Hovnanian, but apparently has been unsuccessful.  The IRS now seeks to collect the purported tax debt of Mr. Shant Hovnanian from the VSHPHH Trust.  The IRS claims that the Trust is a mere alter ego of Mr. Shant Hovnanian, or, alternatively, a mere nominee holding property that in fact belongs to Mr. Shant Hovnanian. The IRS has made similar claims against several other third parties. The IRS has also chosen to seek out third party testimony rather than Shant's testimony.

In its pleadings and correspondence with the Court to date, the IRS sets forth that the conveyances from Vahak and Paris Hasmig Hovnanian were fraudulent as to the IRS in that they were done at a time when Mr. Shant Hovnanian owed federal income taxes and were potentially made without adequate consideration and rendered Mr. Shant Hovnanian insolvent, and/or they were made to hinder, delay, or defraud the United States. Therefore, the conveyances can be set aside as fraudulent. In addition, the IRS alleges that the Trusts hold the Properties as nominees or as the alter ego of Mr. Shant Hovnanian.

The Complaint itself contains a key admission, namely that the 1 Dag Hammarskjold Boulevard property was not contributed to the VSHPHH Trust by Mr. Shant Hovnanian, but was instead contributed by his father and mother. In addition, the IRS claims are undermined by the very trust agreement that created the VSHPHH Trust ("Trust Agreement"), a document that shows

14

that the Trust was established long before some of Mr. Shant Hovnanian's tax liabilities arose (which the Complaint nor any other communication bothers to mention), that Mr. Shant Hovnanian was never a beneficiary of the VSHPHH Trust (which the Complaint also omits), and that the VSHPHH Trust is irrevocable and could not be undone by Mr. Shant Hovnanian. (Exhibit "E".) Next, the allegations in the Complaint, pleadings and the documents produced in this case regarding Mr. Shant Hovnanian's use of the property at issue are irrelevant or insufficient to establish either alter ego or nominee liability.

The applicable law with respect to nominee or alter ego liability presupposes that the transferee is the nominee or alter ego of the transferor. That is not this case. In this case, the transferors are Vahak Hovnanian and Paris Hasmig Hovnanian. The IRS attempt to impose a nominee or alter ego liability analysis and to present claims against Mr. Shant Hovnanian in the PSJ Motion and the Complaint are based upon an analysis of Mr. Shant Hovnanian and his relationship with the Trusts, but he is not the proper focus for that purpose. Rather, it must be the transferor that is attempting to escape liability through a transfer to a nominee or an alter ego. There are no allegations that either Vahak or Paris Hasmig Hovnanian, the transferors, had an objective in transferring assets other than advancing estate planning. If Vahak and/or Paris Hasmig Hovnanian were attempting to conceal their own assets or insulate Mr. Shant Hovnanian from his purported tax liability, they simply would not have transferred the assets to the Trusts. There was no urgency to transfer assets as some of the transfers took place many years apart. Further, neither Vahak nor Paris Hasmig Hovnanian achieved any immediate economic or other benefit from the transfers and, by making the transfers, they exposed their son to the claims identified herein when doing nothing would have insulated their son. Given the foregoing, Plaintiff's alter ego and nominee claims against the Trusts are unsustainable.

## OPPOSITION LEGAL ANALYSIS

The IRS sets forth that:

> 1. *Defendant Shant Hovnanian owes $16 million in federal tax liabilities that arose because he engaged in illegal tax shelters. (Dkt. 35, Default J.)*

 (Dkt. 123)

There is nothing in the record to support any "illegal" conduct.

> 2. *Trustees of an express trust, like the VSHPHH Trust, have a fiduciary duty towards the beneficiaries to act in their beneficiaries' best interest and to avoid self-dealing for their own benefit. E.g., Restatement (Third) of Trusts §§ 76-84 (2012) (listing a trustee's duties). When there are two co-trustees, they generally are expected to act unanimously. Id., §§ 39, 81. And co-trustees cannot simply give in to the other trustee or ignore their duties. Id. § 81 (noting a trustee cannot abide another trustee's breach of fiduciary duty). Here, legal title to the Village Mall was transferred to the VSHPHH Trust in 2015. Shant and his sister, Nina Hovnanian, were named as co-trustees, and their children were named as beneficiaries. Yet Shant treated the Village Mall as his personally owned property, and the VSHPHH Trust was Shant's nominee. Because the VSHPHH Trust was his nominee, the federal tax liens attach to the Village Mall and may be foreclosed upon. E.g., United States v. Hovnanian, 2019 WL 1233082, \*3 (D.N.J. March 18, 2019) (quoting United States v. Patras, 544 F. App'x 137, 140–41 (3d Cir. 2013)).*

<u>(Id.)</u>

There is nothing in the record identifying any claim for breach of fiduciary duty, the IRS likely does not have standing to pursue or even assert such a claim and this type of grasping at straws and changing legal theory is reflective of the lack of substance to the IRS claims.

> 3. *Shant's parents (the prior owners of the Village Mall) transferred legal title to the VSHPHH Trust for nominal consideration. When the property was transferred, Shant had been assessed the $16 million of tax liabilities at issue. A direct transfer to Shant would have resulted in the property being encumbered by federal tax liens. 26 U.S.C. § 6321*

16

> *(federal tax liens arise upon assessment of the tax). Regardless of whatever subjective reasons his parent had for putting the property in trust, the undisputed facts demonstrate that VSHPHH Trust held the property as Shant's nominee and not exclusively for its beneficiaries.*

(Id.)

The IRS applies an incorrect analysis to claims of nominee ownership, focusing on a third-party as opposed to the transferor. If Vahak and Paris Hasmig Hovnanian were seeking to protect any assets from creditors of Mr. Shant Hovnanian, they simply would not have transferred any assets. There was no compulsion. Instead, the record reflects that Vahak and Paris Hasmig Hovnanian sought to accomplish estate planning. That is reasonable given their ages at that time.

> *4. The Village Mall is a two-story building. The first floor consists of office suites rented to tenants, which generated $78,000 annually in rent. The second floor consists of space that Shant and his companies used rent free. If this had been a relationship where Shant or Nina respected their duties as trustees, they would have segregated the rental income using it exclusively for their beneficiaries. Further, Shant would have avoided self-dealing and would have charged himself and his companies rent for use of the space.*

(Id.)

The testimony and the record reveals that the Village Mall property was running at best, at break-even. The Trustees' efforts were to assure the expenses associated with that property were paid to preserve the underlying asset for Vahak and Paris Hasmig Hovnanians' grandchildren. The gift to the VSHPHH Trust was a gift of the Village Mall itself, not necessarily a gift of the net income. The trustees' obligation is to preserve trust assets and they did.

## A.    Nominee Lien: Taxpayer Not in Title

The Internal Revenue Code ("Code") provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any ... addition to tax...) shall be a lien in favor of the United States upon all properties and rights to properties, whether

17

real or personal, belonging to such person". *See* 26 U.S.C. § 6321.  The Code further provides that "the lien imposed by [the foregoing language] shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time". *See* id. § 6322.

The United States Supreme Court has made clear that "[a] federal tax lien does not arise or attach to Properties in which a person has no interest under state law". *See* Spotts v. United States of America, 429 F.3d 248, 251 (6th Cir. 2005) (citing United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985)). Once state law determines that a property interest exists, federal law dictates the tax consequences." *See id.* (citing Nat'l Bank of Commerce, 472 U.S. at 722; Drye v. United States, 528 U.S. 49, 58 (1999)).

As previously stated, the IRS's theory of the case is that the real property transaction wherein the Office Complex was transferred to the VSHPHH Trust was the result of fraudulent conveyances from Mr. Shant Hovnanian. The IRS, of course, bears the burden of proving this theory of the case at trial. *See* Watkins Motor Lines v. De Galliford, 167 F.2d 274, 275 (5th Cir. 1948). It will be unable to do so because it has absolutely no credible evidence to support it, as demonstrated by the record in this case.

**B.    Alter Ego and Nominee Claims**

The entirety of Plaintiff's alter ego and nominee claims against the VSHPHH Trust are predicated on the following seven (7) paragraphs in the Complaint and some additional assertions from the PSJ Motion, each an effort to "rewrite" the facts to meet the multi-factor test of a nominee determination, United States v. Patras, 909 F. Supp. 2d 400, 410 (D.N.J. 2012)).

18

(i)     From the Complaint:

> 29.  Shant Hovnanian's parents settled the VSHPHH Trust on December 28, 2012. Defendant Shant Hovnanian and his sister, Defendant Nina Hovnanian, were named as co-trustees. Shant's and Nina's children are the beneficiaries of the VSHPHH Trust.

> 30.  Defendant Nina Hovnanian recently represented to the IRS that Shant Hovnanian is no longer a trustee of the VSHPHH Trust. Thus, Nina Hovnanian is the only trustee, and Shant Hovnanian has no formal role with the VSHPHH Trust. He has not right to take income from the VSHPHH Trust and no obligation to pay the Trust's expenses.

> 31.  On January 1, 2015, Shant Hovanian's parents transferred ownership of the Village Mall property, which is commonly known as 1 Dag Hammarskjold Boulevard, Freehold, New Jersey (Block 143, Lot 25.04) to the VSHPHH Trust. The Village Mall property is an office building with several rented units.

> 32.  The transfer to the VSHPHH Trust, rather than to Shant Hovnanian directly, was an attempt to avoid encumbering the property with the federal tax liens, which attached to all of Shant Hovnanian's property and rights to property.

> 33.  Shant Hovnanian enjoys the benefit of ownership of the property. He receives the rental income from this property through a company under his control.

> 34.  Shant Hovnanian also carries the burden of ownership. He has paid municipal taxes and utility bills associated with the Village Mall property from bank accounts under his control.

> 35.  Shant Hovnanian has attempted to hide his ownership of the Village Mall property. Even after the transfer from his parents to the VSHPHH Trust, Shant Hovnanian had the tenants make rent payments payable to his father (their previous landlord) through January of 2017. Shant Hovnanian's father, however, died on August 31, 2015. These checks were deposited in the bank account of a company under Shant Hovnanian's control, HovSat, Inc. In February of 2017, Shant Hovnanian instructed the tenants to pay rent directly to HovSat, Inc.

(Dkt. 1.)

(ii)     From the PSJ Motion:

> *Applying the Patras factors here, the VSHPHH Trust is Shant's nominee. Shant exercised active and substantial (if not exclusive) control of the Village Mall, at least through the time of his alleged resignation from the VSHPHH Trust in 2017. Shant ignored any duties owed to the trust beneficiaries as well as the VSHPHH Trust. He received significant financial benefits from the Village Mall and paid significant expense related to the property. As a result, the Village Mall property is subject to the federal tax lien.*
>
> *Patras factors 1, 2, and 4 look at the mechanics of the transfer: its timing, consideration, and recordation. The mechanics of the transfer here reflect a nominee relationship. The Village Mall was placed into the VSHPHH Trust for nominal consideration of one dollar, satisfying factor 1. Factor 2 looks at whether the property was transferred to a nominee to escape the taxpayer's liabilities. At the time of the transfer on January 1, 2015, Shant's parents could not transfer the property directly to him because of the $16 million in federal tax liens that had arisen. These liens would have encumbered any property transferred to Shant….Shant's parents were aware of the taxes that were due.*
>
> *Patras factors 3, 5, and 6 look at the relationship between the nominee and taxpayer, as well as whether the taxpayer retained possession and enjoyed the benefits of the property. Shant exercised exclusive control over the Village Mall, and he treated the Village Mall as if it were his own personal property. He deposited the Village Mall's rent collected from tenants into bank accounts he controlled and used those funds for his own personal benefit. He also used the second floor as office space, rent free. In short, he treated the Village Mall like he owned it, ignored the VHSPHH Trust, and his co-trustee Nina let him do so. On paper, Shant and Nina Hovnanian were co-equal trustees, and the Village Mall was merely a trust asset. If this was the co-trustee's actual relationship to the property, the benefits of the Village Mall should have gone exclusively to the beneficiaries. Shant and Nina should have had a singular loyalty and fiduciary duty to the VSHPHH Trust's beneficiaries. They needed to avoid self-dealing, segregate trust funds and property, and preserve the property for the beneficiaries, etc. When there are two co-trustees, they generally are expected to act unanimously. Cotrustees Shant and Nina ignored these duties and allowed Shant to treat the property titled in the name of the VSHPHH Trust as his own.*

(Dkt. 123; citations omitted.)

20

Based on these allegations, Plaintiff asks the Court to "decree that Defendant VSHPHH Trust is the nominee of Shant Hovnanian, and thus Shant Hovnanian is the true and equitable owner of the Village Mall property" and to grant its PSJ Motion (Complaint, pg. 7. and PSJ Motion p. 16).

Mr. Shant Hovnanian does not have an interest under state law to the real property located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey based upon the following property transfer recorded as a matter of public record with the Monmouth County Clerk's Office:

> (1) On January 1, 2015, Vahak S. Hovnanian and Hasmig Hovnanian a/k/a Paris H. Hovnanian transferred title to the real property located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey to the VSHPHH Trust, which was recorded on January 31, 2015. (Exhibit "A").

> (2) The Defendant Trust has not conveyed any legal or equitable title to the Office Complex to any other individual, individuals, or legal entity since January 1, 2015;

> (3) The IRS has known about the existence of the Office Complex since at least 2013; and

> (4) The IRS filed and recorded the Nominee Liens on January 16, 2018.

The Nominee Liens are invalid because Mr. Shant Hovnanian was never in title to the Properties, and "[a] federal tax lien does not arise or attach to property in which a person has no interest under state law." Spotts, 429 F.3d at 251. During the course of this case, the IRS has not put forth any challenge to this assertion; rather, it has contended that the Nominee Liens are nonetheless justified.  Thus, the Nominee Liens must be released.

### C.   Several Factors Preclude Any Alter Ego Claim

21

The Trust relies upon Judge Anne E. Thompson's March 18, 2019, Opinion, where she states the following: "As a threshold matter, New Jersey law governs whether the Pachava Trust or the VSHPHH Trust is a *nominee* of Defendant Shant" (emphasis added) at Dkt. 34)("A nominee theory involves the determination of the true beneficial ownership of property. An alter ego theory focuses more on those facts associated with a 'piercing the corporate veil' analysis." Oxford Capital Corp. v. United States. 211 F.3d 280, 284 (5th Cir. 2000) (quoting William D. Elliot, Federal Tax Collections, Liens and Levies 19.10[2] (2nd Ed. 2000))).

With respect to an alter ego claim against a trust, the burden is even higher. A plaintiff must show that the trust was *"formed* for an illegal purpose" -- i.e., the creator of the trust formed it in order to commit fraud or conceal assets. Genger v. Genger, 990 N.Y.S.2d 498, 505, 121 A.D.3d 270 (1st Dep't 2014)(emphasis added; dismissing the claim that trust was a mere alter ego, reasoning that "[t]here is no authority for applying, by analogy, a theory of 'piercing the corporate veil' to disregard the form of a trust when the trust was not formed for an illegal purpose and there is the requisite separation between beneficiary and trustee"); *see also* In re Vebeliunas, I, 332 F.3d at 91 ("The appellees identify cases in which New York State courts have preserved the right to pierce trusts. However, those cases are distinguishable, as all involved allegations that the respective parties used trusts to conceal assets or engaged in fraudulent conveyances to shield funds from adverse judgments").

Nonetheless, in tax collection cases courts will routinely permit alter ego claims against a trust in those instances where (unlike here), a taxpayer creates the trust after his tax obligations arise and transfers his assets to the trust in order to prevent the IRS from collecting against those assets. *See*, e.g., United States v. Evseroff, 270 Fed. Appx. 75, 77 (2d Cir. 2008) (alter ego liability is proper where taxpayer created trust and contributed property at issue to the trust at or around

22

time that tax liabilities arose); United States v. Balice, 2017 WL 3420918, at *1 (D.N.J. 2017)(same); United States v. Letscher, 83 F.Supp.2d 367, 373 (S.D.N.Y. 1999)(same).

This makes sense, since the trust in such a circumstance is just a sham mechanism established by the taxpayer to try to hide his pre-existing assets from the reach of the IRS. *See* Evseroff, supra, 270 Fed.Appx. at 77 (alter ego liability against trust is proper in such circumstance because taxpayer used his control of trust "to commit a fraud or other wrong resulting in an unjust loss or injury" to the IRS); In re Vebeliunas, *supra*, 332 F.3d at 91 (noting that successful alter ego claims against trusts in federal tax cases "involve allegations that the trusts at issue were used to conceal or to shield assets owned by the taxpayer"); Gillum v. Commissioner, T.C. Memo. 2010- 280, at *3 (Tax Ct. 2010) (noting that alter ego liability in federal tax cases "generally involves a sham corporation or other entity used by the taxpayer as an instrumentality to avoid his or her own legal obligations"). But, where the taxpayer (or other debtor) did not create the trust at issue and did not transfer his assets to the trust, it is well established that any alter ego claim against the trust must fail. *See* In re Vebeliunas, *supra,* 332 F.3d at 90 (rejecting alter ego claim against trust under New York law, where debtor's wife created trust at issue and debtor's wife funded trust with her own inheritance); United States v. Greer, 383 F.Supp.2d 861, 867-68 (W.D.N.C. 2005)(rejecting IRS's alter ego claim against trust where trust was created and funded by taxpayer's mother); Cohen v. United States, 1998 WL 953979 (C.D.Cal. 1998)(rejecting IRS's alter ego claim against trust where testamentary trust was created by taxpayer's father); Diebold v. Commissioner, T.C. Memo. 2010-238, at *8 (Tax Ct. 2010)(rejecting IRS's alter ego claim regarding trust where taxpayer did not form the trust).

23

Here, Plaintiff admits in the Complaint that Mr. Shant Hovnanian did not create the VSHPHH Trust (his father and mother created it); he did not transfer the asset at issue, the Office Complex, to the Trust (it was contributed to the Trust by his parents); and he is not a beneficiary of the Trust (the grandparents named all of their grandchildren as the beneficiaries of the VSHPHH Trust). (Complaint ¶¶ 29 and 31.) (Exhibit "E"). These admissions preclude any claim of alter ego liability, because they establish that the VSHPHH Trust was not created or owned by Mr. Shant Hovnanian, since he is neither a settlor nor a beneficiary of the Trust. The admissions also establish that Mr. Shant Hovnanian did not form the VSHPHH Trust for an illegal purpose (since he did not form it at all), and the Trust was not used to commit a fraud against the IRS, since the property transferred into it (the Office Complex) did not belong to Mr. Shant Hovnanian (it was contributed to the trust by his parents, Vahak Hovnanian and Paris Hasmig Hovnanian -  the very people who established the Trust for the benefit of their grandchildren), and thus was not an asset that Mr. Shant Hovnanian already owned but was trying to conceal. (Being a co-trustee of the VSHPHH Trust did not make Mr. Shant Hovnanian an owner. *See* United States v. Kimball, 2016 WL 3566199, at *6 (D.Me. 2016) (rejecting IRS argument that taxpayer's status as trustee established that trust was his alter ego, reasoning "it is 'standard common-law doctrine' that a trustee holds a 'nonbeneficial' ownership and that it is the beneficiaries of the trust who hold beneficial interests or equitable title while the trustee ordinarily 'holds 'bare' legal title.'"). In any event, Plaintiff has also admitted that Mr. Shant Hovnanian is no longer a co-trustee; his sister, Nina Hovnanian is now the sole trustee. (Complaint ¶ 30.)) Given the foregoing, there is no basis for alter ego liability against the VSHPHH Trust. *See* In re Vebeliunas, *supra,* 332 F.3d at 90 (under New York law, alter ego claim against trust was inappropriate because there was no allegation that

24

"Trust was used to conceal assets from creditors," and no allegation that property contributed to trust was part of a "fraudulent conveyance").

The decision in United States v. Greer, 383 F.Supp.2d 861, 867-68 (W.D.N.C. 2005) is instructive. There, the IRS sued both a taxpayer and a trust of which the taxpayer was a beneficiary and trustee. The IRS claimed that the trust was a mere alter ego of the taxpayer, and that the IRS was therefore entitled to look to the assets of the trust to satisfy the taxpayer's outstanding tax liability. The court rejected that claim, and held that the trust could not be deemed the taxpayer's alter ego because the trust was formed by the mother of the taxpayer, and the mother contributed the assets at issue to the trust:

> The Court has also determined infra that the *Defendant's mother,* not the Defendant, *was the true owner of the 20-acre tract at all times prior to creating the Trust and conveying the property to the Trust. This fact distinguishes this case from other cases in which a trust has been disregarded under an alter ego theory*... The Court believes this distinction is important with regard to whether the Defendant's control over the Trust is being used to commit fraud or some other wrong. Here, *Mr. Greer never owned title to the 20 acres, except as an agent of his mother, and therefore, has not used the Trust as a shield for his own assets.*

Id., at 867-68 (emphasis added).

Although Greer involved the application of North Carolina alter ego law, the test for alter ego liability under North Carolina law is identical to that under New York law: (1) complete "control" with "respect to the transaction attacked," and (2) that "control must have been used by the defendant to commit fraud or wrong" that resulted in the plaintiff's injuries. Greer, *supra,* 383 F.Supp.2d at 867.) The court in Greer stated further that it:

> has been *unable to find,* and the United States has not put forth, *any case from within this Circuit or any other, where an otherwise valid trust, created by and funded with the property or assets of someone other than the taxpayer, has been declared the alter ego of the*

*taxpayer* simply on behalf of the control exerted over the trust by the taxpayer in his position as a trustee and/or beneficiary. *In fact,those cases the Court has been able to find with facts analogous to the case here have reached the opposite result.*

Id., at 868 (emphasis added).

There is no reason for the Court in this case to reach a conclusion different from that in Greer. (In addition to the foregoing, the fact that Mr. Shant Hovnanian is neither beneficiary nor a trustee of the Trust is an additional independent ground for denying Plaintiffs alter ego claim. *See* In re Raymond, 529 B.R. 455,469 (Bkrtcy. D.Mass. 2015)(dismissing alter ego claim against trust created by debtor for benefit of his children, citing inter alia to fact that debtor was "neither a trustee nor beneficiary and thus held neither legal nor equitable title to the trust property"); *see also* United States v. Washington, 2011 WL 3902737, at *18 (S.D.Tex. 201 l)(finding that even though trust was created by taxpayer, it was not his alter ego, because, inter alia beneficiaries of trust were taxpayer's children); Hews Co., LLC v. Barnaby, 2007 WL 2033402, at *1 (D.N.H. 2007)(even though trust was formed by debtor and debtor paid some trust expenses with personal funds, court found trust was not a "sham," because debtor's children were the only beneficiaries of the trust).

Simply put, there is no basis in the law for Plaintiff's alter ego claim against the VSHPHH Trust.

Notwithstanding its admissions (and their consequences), the IRS argues that the VSHPHH Trust is a mere alter ego of Mr. Shant Hovnanian because Mr. Shant Hovnanian has allegedly paid some of the expenses of the Office Complex property, and has allegedly directed some of the tenants of that property to make their rent payments to bank accounts under Mr. Shant Hovnanian's control, conduct that, according the IRS, establishes that the Office Complex property is owned by Mr. Shant Hovnanian because it demonstrates that he

26

has both the "burdens" and "benefits" of ownership. (Complaint ¶¶33-35.) Even assuming these allegations are true for purposes of this Motion, these alleged actions by Mr. Shant Hovnanian do not serve to create an ownership interest that does not otherwise exist. *See,* e.g., Hews Co., LLC, supra, 2007 WL 2033402, at *1-2 (fact that debtor "paid some trust expenses ...on a trust where his children were beneficiaries does not suggest that the trust was, or is, a sham," and did not create ownership interest in trust or its underlying properties).

The only reason why bill payments may be important in an alter ego or nominee case involving a trust is because they may bolster other evidence establishing that the property that previously belonged to the taxpayer still belongs to that same taxpayer -- i.e., he never truly relinquished it notwithstanding the fact that he placed it into a trust. *See,* e.g., Don Gastineau Equity Trust v. United States, 687 F. Supp 1422, 1425 (C.D.Cal. 1987)(taxpayer's payment of property taxes and other bills with respect to real property was significant to alter ego claim because taxpayer created trust and contributed property at issue to the trust, and court found that the bill payments reflected that taxpayer still *"retained* the complete, unrestricted beneficial use of the real property" that he previously owned, while purporting to "shield" property from IRS via the trust)(emphasis added).

There is, however, no reason to ascribe significance to such bill payments when, as is the case here, the taxpayer or debtor (here Mr. Shant Hovnanian) did not create the VSHPHH Trust, did not contribute the property at issue to the Trust, and is not a beneficiary of the Trust. *See* In re Vebeliunas, supra, 332 F.3d at 93 (where debtor's wife created trust at issue and debtor's wife funded trust with her own inheritance, court rejected alter ego claim predicated in part on debtor's payment of expenses, since such payments "do not evidence a transfer in ownership"); Greer, *supra,* 383 F.Supp.2d at 867 (where trust was created and funded by

27

taxpayer's mother, court rejected alter ego and nominee claims predicated in part on allegation that taxpayer-trustee paid "the Trust's property taxes" because such conduct did not create ownership interest in property that was not contributed by the taxpayer); *cf.* Cohen, *supra,* 1998 WL 953979, at *8 (where taxpayer-trustee did not create trust or contribute properties at issue to trust, court rejected alter ego and nominee claims based in part on allegation that taxpayer commingled his own income with monies held in the trust's bank account, reasoning that such conduct did not create ownership interest in the properties held by the trust).

Nor does Mr. Shant Hovnanian's alleged taking of rental income belonging to the Trust establish an ownership interest, either in the VSHPHH Trust or in the Office Complex property. *See* Cohen, supra, 1998 WL 953979, at *8 (rejecting alter ego and nominee claims predicated in part on the taxpayer-trustee taking income belonging to trust for his own personal use; court reasoned that the taxpayer's "treatment of the Trust as his personal bank account and his disregard of certain Trust formalities constitutes a failure to maintain an arm's length relationship, but that failure did not transfer title to the Trust's major assets" to the taxpayer, since at most such conduct constitutes "fiduciary breaches" that "do not convert the principal of the Trust to [the taxpayer's] personal property"); *see also* Greer, *supra,* 383 F.Supp.2d. at 868-69 (rejecting alter ego and nominee claims predicated in part on allegation that taxpayer-trustee disbursed trust income to himself in contravention of provisions of trust; court reasoned that "failure to abide by the terms of a trust by a trustee does not render the trust invalid," and that instead "the trustee would be in breach of his fiduciary duty and liable for damages caused by the breach").

Finally, the assertion that Mr. Shant Hovnanian resided at the Office Complex is absurd. The testimony was that Mr. Shant Hovnanian may have slept on a couch in the office, but that is not determinative of residency and certainly does not give rise to an ownership

interest. The IRS knew that Mr. Shant Hovnanian did not spend time at the Office Complex,

as reflected in Agent MacGillivray's Report:

> *ATTEMPTED CONTACT TAXPAYER*
>
> *RESULTS: FV to 1 Dag Hammarskjold Blvd, Howell Township, New Jersey. Shant Hovnanian 's busjness office.*
>
> *The doors to the main building were locked. RO gained access to the main building through the office of Jerry Hillman, CPA RO asked an African American woman if Shant Hovnanian was present.*
>
> *She seemed to not know him. She said, "Isn't he the manager or something." She instructed RO to go through a door to the rights to gain access to the main building. RO entered the main building to find all of the lights off RO looked on the first floor and the second floor. All doors were locked, and all lights were off Shant Hovnanian and/or his secretary were not present. There was an access door to J Vero Associates. RO knocked on the door. A woman*
>
> *came to the door.  (RO thinks this is J Vero). RO asked if Shant*
>
> *Hovnanian was present. She stated that she does not remember the last tome [sic} that she saw Shant Hovnanian.*
>
> *RO left.*
>
> *ACTION DATE: 03/20/2018        SYSTEM DATE: 03/20/2018*
> *CONTACT: FIELD                 CREATE ID: 21013529*
>
> *ATTEMPTED CONTACT ATTEMPTED CONTACT- TAXPAYER*
>
> *RESULTS: FV to 520 Navesink River Road Middletown Township New Jersey Afternoon*
>
> *As RO drove up the driveway it was apparent that the Range Rover had been moved. RO drove up near the front door and young man was visible walking around the house with black dog. He walked*
>
> *toward RO's vehicle. RO exited his vehicle and walked toward him. RO asked if he is Shant Hovnanian 's son Vahak Hovnanian? He conformed [sic} that he is Shant Hovnanian 's son, Vahak Hovnanian. (Note: Vahak Hovnanian is known to be 21 years old). RO asked if Shant Hovnanian was available. He stated that Shant Hovnanian is not present Shant Hovnanian is currently in Armenia.*

> *Shant Hovnanian will return in approximately 1 week. RO handed two*
> *envelopes to Vahak Hovnanian and RO's business card:*

(Exhibit "B" at pg. 315 to 316).

**D.      Summary of the Six Factor Test**

While they are closely related, the key difference between nominee liability and alter ego liability is that "the nominee theory focuses on the taxpayer's control over and benefit from the property while the alter ego theory emphasizes the taxpayer's control over the entity that holds the property." *See* United States v. Evseroff, 2012 WL 1514860, at *10 (E.D.N.Y. 2012). To determine whether a trust is a taxpayer's nominee under New Jersey law, courts examine the following:

> (1) whether the nominee paid adequate consideration for the property; (2) whether the property was placed in the nominee's name in anticipation of a suit or other liabilities while the taxpayer continued to control. .. the property; (3) the relationship between the taxpayer and the nominee; (4) the failure to record the conveyance; (5) whether the property remained in the taxpayer's possession; and (6) the taxpayer's continued enjoyment of the benefits of the property.

Patras, 544 F. App'x at 141-42 (collecting cases under New Jersey law).

Thus, the focus in nominee liability cases is on the taxpayer transferring property that he owns to another party or entity to hold for him on his behalf, while the taxpayer continues to fully enjoy all of the benefits of the property as if he had never transferred it. As one federal Court of Appeals has put it: "Suppose a person who wants to evade taxes parks his property with a friend or family member. That would be a fraudulent conveyance, and so the person to whom the property was conveyed would be deemed the taxpayer's 'nominee' and forced to cough it up." United States v. Swan, 467 F.3d 655, 658 (7th Cir. 2006); see also United States v. Nassar, 2014 WL 5822677, at *5 (S.D.N.Y. 2014)(key to nominee liability is "whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another

30

while, in actuality, *retaining* all or some of the benefits of being the true owner")(emphasis added); United States v. Jones, 2012 WL 569366, at *9 (C.D.Cal. 2012)(same).

Obviously, then, if the taxpayer did not contribute the property at issue to the purported third-party nominee, then there can be no claim for nominee liability. See United States v. Towne, 406 F. Supp.2d 928, 937 (N.D.111. 2005)(rejecting IRS claim of nominee liability, reasoning that the "[t]he key to the Court's analysis under the Government's nominee theory is whether the transferor had control over the Property," and "[h]ere, the transferor is ... not the [Taxpayers]").

Here, there can be no claim of nominee liability because the IRS admits that the taxpayer (Mr. Shant Hovnanian) did not transfer the property at issue (the Office Complex) to the purported nominee (the VSHPHH Trust). (Complaint ¶¶ 29 and 31.) Instead, it was the taxpayer's father and mother who contributed that property to the Trust. (Id.). *See* Towne, supra, 406 F. Supp.2d at 937 (no nominee liability under these circumstances); Greer, *supra*, 383 F. Supp.2d at 867 (same); Cohen v. United States, 1998 WL 953979, at *8 (C.D.Cal. 1998) (same).

The second factor, whether the property was transferred in anticipation of a suit or claim is not met here. The property transfer in anticipation of a suit has to relate to the transfer of property by the transferor, not the transferee. The analysis would be that Mr. Shant Hovnanian's parents were the persons seeking to avoid a claim, suit or other liability and there is no claim in this case nor evidence in the record to support that assertion.

The third factor, namely the relationship between the taxpayer and the nominee is not met. The taxpayer is Mr. Shant Hovnanian and his relationship to the VSHPHH Trust is not the relevant relationship analysis. Rather, the nominee relationship is viewed in the context of the relationship between the nominee and the transferors. In that regard, there is no relationship between Vahak Hovnanian and/or Paris Hasmig Hovnanian and the VSHPHH Trust.

31

The fourth factor, the failure to record the conveyance is not applicable as the conveyance here was recorded, but again, this relates to the motivation of the transferor and that person's efforts to hide the transfer. That did not occur here.

The fifth factor, "whether the property remained in the taxpayer's possession" is not met. The use of the word "remained" of course, connotes that the taxpayer had possession of the transferred property before the transfer. There is no contention that Mr. Shant Hovnanian possessed the Office Complex before it was transferred to trust. (Exhibit "A")

Finally, the sixth factor, "the taxpayer's continued enjoyment of the benefits of the property", again, of course, connotes that the taxpayer had the enjoyment of the benefits of the property before the transfer. Otherwise, why use the word "continued". There has been no showing that Mr. Shant Hovnanian enjoyed any benefits of the Office Complex before the property was transferred to trust, so he didn't "continue" to enjoy any benefits. The words have to have meaning.

## CONCLUSION

For the foregoing reasons, this Court should enter an Order denying Plaintiff's Motion for Partial Summary Judgment.

Dated: 6/7/2022

Respectfully submitted,

John M. Hanamirian, Esquire
HANAMIRIAN LAW FIRM, P.C.
40 E. Main Street
Moorestown, New Jersey 08057
(856) 793-9092 – t
(856) 793-9121 – f
jmh@hanamirian.com

32