IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
-------------------------------------------------------

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff. | : | Civil Action No.: 18-15099 (ZNQ)(LHG) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| SHANT HOVNANIAN, et al. | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------

## DEFENDANT VSHPHH TRUST'S COUNTER-STATEMENTS IN RESPONSE TO THE PLAINTIFF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56, Defendant VSHPHH Trust ("Defendant") respectfully submits these Counter-Statements in Response to the Plaintiff United States' ("Plaintiff and/or "IRS"), Statement of Undisputed Material Facts.

## Defendant's Counter-Statement of Material Facts:

Defendant submits these Counter-Statements in Response to the Plaintiff's Statement of Undisputed Material Facts. Defendant notes that there are ninety-five (95) identified material facts and that it is likely that at least one of those is a disputed fact for purposes of denying any form of summary judgment. Also, in any instance where Defendant asserts it does not know the truth of a particular assertion of material fact, it is mostly because the assertions are outside of the scope of its knowledge in this litigation. There are a series of proposed statements of material fact about third-party entities and individuals that are not related to the Trusts or this litigation. The IRS chose not to seek the testimony of Mr. Shant Hovnanian to support such assertions., Instead, the IRS improperly suggests those types of assertions are supported by proposed third-party evidence. They are not, the IRS has the burden of proof in this matter and the IRS cannot seek to "put its case through" the Defendant by making bald assertions and then criticizing the Defendant for any failure

to refute.

1.      Shant Hovnanian lived at a property commonly known as 520 Navesink River Road, Freehold, New Jersey. (Pachava Dep., Vol. I, p. 15:9-22.) His parents lived next door at a property known as 500 Navesink River Road, Freehold, New Jersey. *Id.*

**Response**: The Defendant cannot admit or deny information concerning third parties. However, at the time Vahak and Paris Hasmig Hovnanian's minor grandchildren lived at the real property located 520 Navesink River Road, Freehold, New Jersey, Mr. Shant Hovnanian and his then wife lived with their minor children.

2.      During the course of this litigation, Shant and his sister, Nina Hovnanian, lived in Armenia. (*E.g.*, Pachava Dep., Vol. I, p. 21:14-15 (Nina testifying she lives in Armenia 90% of the time),16:12-17:12 (Nina testifying that her brother has no current address but that a letter could be delivered to her in Armenia, and she would deliver it to him.).)

**Response:** The testimony of Mr. Shant Hovnanian's ex-wife was that Mr. Shant Hovnanian, his then wife and their children lived at the 520 Navesink River Road property for a brief period of time. (Exhibit "AA"; Jenssen Dep., pp. 19:7-10.) When Mr. Shant Hovnanian and his wife divorced, his ex-wife moved back to Norway and Mr. Shant Hovnanian began to reside in Armenia. The IRS effort here is to attempt to confuse the Court into a belief that Mr. Shant Hovnanian lived in that home alone. He did not.

## I.      Shant Hovnanian's Income Tax Liabilities.

3.      A delegate of the Secretary of the Treasury made the following federal income tax (Form 1040) assessments against Shant for the tax periods identified below:

| Tax Period | Date of Assessment | Amount of Tax Assessment | Balance as of September 30, 2018 |
|---|---|---|---|
| 2002 | 10/22/2008 2/13/2013 | $3,914,430 241,764 | $12,274,759 |
| 2003 | 10/22/2008 2/13/2013 | $7,964 $309,108 | $840,528 |
| 2004 | 2/13/2013 | $983,773 | $3,074,834 |
| 2007 | 3/29/2010 | $11,223 | $19,268 |
| | | **Total** | **$16,209,389** |

(Compl. ¶ 14.)

**Response**: It may be true that a delegate of the Secretary of the Treasury made those assessments. The Defendant does not know. The IRS did not produce that "delegate" or identify that "delegate" in discovery.

4.    This liability arose from Shant engaging through various entities in illegal and improper tax shelters during the early 2000s. After the IRS audited the partnerships, the Tax Court upheld the Service's determination. *See, e.g., Rovakat v. Comm'r*, T.C. Memo. 2011-225(Sept. 20, 2011). The Second and Third Circuits affirmed the Tax Court's decisions. *Int'l Strategic Partners, LLC v. Comm'r*, 455 F. App'x 91 (2d Cir. 2012); *Rovakat, LLC v. Comm'r*, 529 F. App'x 124 (3d Cir. 2013).

**Response**: The Defendant would not be privy to information concerning any third party's tax liability.

5.    This Court has already entered default judgment as to the amount owed by Shant for these taxes. (Dkt. 35.)

**Response**: This Court has entered default judgment against Mr. Shant Hovnanian and the

3

IRS did not seek his testimony. (Dkt. 35.) To the contrary, the IRS sought to affirmatively preclude Mr. Shant Hovnanian's testimony in favor of advancing this type of false narrative (Dkt. 89.) The Defendants are unaware of any illegal activity on the part of Mr. Shant Hovnanian.

6.     Federal tax liens arose upon assessment of the income tax assessments describedin paragraph 1, above. 26 U.S.C. § 6321. These federal tax liens attached to Shant's property and rights to property then owned or thereafter acquired. *See id.*

**Response**: Denied. The real property held in the respective Trust was never owned or acquired by Mr. Shant Hovnanian as reflected by the record. (JMH Decl. for VSHPHH Trust ¶ 3.) Furthermore, the Defendant would not be privy to information concerning any third party's tax liability.

7.     The IRS issued Notices of Federal Tax Liens.  (Ex. 101, Notices of Federal Tax Lien.).

**Response**: Those Notices speak for themselves.

## II.     Village Mall.

8.     The Village Mall is a two-floor strip mall. It is located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey (Block 143, Lot 25.04).  (Ex. 102, Deed.)

**Response**: Any referenced documents speaks for itself. The Village Mall property is not a "strip mall", but rather an office complex.

9.     On January 1, 2015, Shant's parents (Vahak and Hasmig Hovnanian) transferred the Village Mall to the VSHPHH Trust for $1.00. (Ex. 102, Deed.) The seller's certificate reflected that

4

the transfer was for a nominal amount and thus no real estate tax was due.  *Id*., p. 3.

> **Response**: The Village Mall was transferred to the VSHPHH Trust by the owners, Vahak
> and Paris Hasmig Hovnanian and the transfer was accomplished for estate planning purposes.
> (JMH Decl. for VSHPHH Trust ¶ 3.) The conclusion that no real estate tax was due is a legal
> conclusion.

10.     William Reed Rankin, *Esq*., notarized the deed. *Id*., p. 4. Rankin also represented
Shant in the Tax Court that gave rise to the liabilities in this matter.  *Int'l Strategic Partners, LLC
v. Comm'r*, 455 F. App'x 91, 92 (2d Cir. 2012); *Rovakat, LLC v. Comm'r*, 529 F. App'x 124 (3d
Cir. 2013).

> **Response**: The IRS sought and obtained a preclusion order relative to William Read Rankin,
> Esquire and accordingly, any facts relative to Mr. Rankin are not properly a part of the basis
> for any summary adjudication. (Dkts. 89 and 106.) A party cannot seek a preclusion remedy
> and then make-up facts relative to that person. Nonetheless, the referenced documents speak
> for themselves.

11.     The deed was recorded on July 31, 2015, seven months after the transfer.(Ex. 102,
Deed, p. 1.)

> **Response**: Any recorded deed speaks for itself.

12.     Vahak died shortly thereafter on August 31, 2015.  (Pachava Dep., Vol. I p. 211:14-
17).  Hasmig (a/k/a Paris) Hovnanian died in November of 2016.  *Id*., p. 204:7. Shant's father had
been ill at the time of the transfer of the Village Mall to the VSHPHH Trust.(VSHPHH Dep., Vol.
I, p. 79:8-19.)

> **Response**: The facts surrounding the date of death for each of Vahak and Paris Hasmig

5

Hovnanian are a matter of public record.

13.     The first floor of the Village Mall has tenants who pay rent. These tenants are small businesses like a hairdresser, podiatrist, and physician. (VSHPHH Dep., Vol. I, p. 101:7- 16.) The average rent collected is approximately $78,000 per year. (*See* Ex. 104, Hollobaugh Exp. Report, p. 41, Ex. K.) On the first-floor leases, the landlords were Paris and Vahak. (*E.g.,* Ex. 103, Lease.) The VSHPHH Trust did not produce any leases after January 1, 2015, to reflect the new landlord and the tenants summonsed by the IRS provided leases showing the landlords were Paris and Vahak.  *Id*.

> **Response**: The Village Mall has tenants. The terms of any tenancy are as reflected in any leases between a particular tenant and landlord. The landlords were, in some instances, identified as Vahak and Paris Hasmig Hovnanian until they transferred the property into trust for the benefit of their grandchildren, thereby accomplishing their estate planning objectives. (Exhibit "BB".)

14.     Shant managed the tenants' rental of space at the Village Mall and had them either contact him directly or through his secretary, Karen Gandolfo. (VSHPHH Dep., Vol. I,pp. 104:21- 105:2.)

> **Response**: The Defendant does not know whether this is accurate.

15.     The second floor of the Village Mall included an office for Vahak, an office for Gandolfo, and a desk that Shant would use. (Gandolfo Dep., pp. 113:18-114:17.) There werealso conference rooms and a kitchenette.  *Id*.

> **Response**: The Defendants do not dispute that there was an office that family members used in the Village Mall property, but Ms. Gandolfo, who works as a bookkeeper for some of the family's businesses did not testify that there was a dedicated space for Mr. Shant Hovnanian.

(Exhibit "CC"; Gandolfo Dep., pp. 113:18-20.)

16.    Shant reported to a Revenue Officer that he used the Village Mall as his personal residence, leaving his minor children to live at his 9,000 square foot home on their own. (MacGillivray Dep., pp. 87:16-88:8.).

**Response**: The Statement is not a statement of material fact. Rather, it is an impermissible and derogatory statement about an individual who is not party to this case. The Revenue Officer will likely testify a trial, and, at that time, we can assess the credibility of any such statement. That type of Statement and the conclusion it seeks to impose on the Court is precisely why any form of summary judgment is not appropriately granted.

17.    The VSHPHH Trust could not produce any proof that Shant resided or lived at the Village Mall. (Ex. 106, VSHPHH Resp. to Req. for Prod. 16 (stating there were no leases of anyone related to Shant for the Village Mall).)  No lease was provided.  *Id.*

**Response**: The VSHPHH Trust would not seek to introduce evidence that Mr. Shant Hovnanian lived at the Village Mall. The Defendant assumeS that fact is set forth to support a claim that if Mr. Shant Hovnanian did not live in the Village Mall, then where did he live? The IRS, however, has the burden of proving any such facts might matter. The burden is not on the Defendant to prove the negative.

18.    Gandolfo testified she would come to the office at 7:30 or 8:00 in the morning tothe Village Mall. (Gandolfo Dep., pp. 66:20-69:8.) She did not see any evidence of someone residing at the Village Mall, such as a person sleeping there.  *Id.*

**Response**: Same response as immediately above.

19.     The Village Mall is not zoned for residential use. (VSHPHH Dep., Vol. I,p. 118:15-17.)

**Response**: The Defendant does not know whether this is true, but true or false, there should be a citation to some public or other record instead of a citation to a deposition transcript.

20.     Shant did not pay rent for using the space for his office or for his alleged residence at the Village Mall. (Gandolfo Dep., p. 114:14-17 (Q. "Did Shant ever pay rent forusing office space either as an office or as a residence? A. I don't think so.")).

**Response**: I read the testimony "I don't think so" to mean that the witness is uncertain about that particular subject. I do not read "I don't think so" to mean "no". The words have to have meaning and this is another example of a forced effort to create an illusion of material fact where it does not exist in the record.

21.     Several entities controlled by Shant and discussed below used the Village Mall as office space. Despite being the Rule 30(b)(6) representative of the VSHPHH Trust, Nina refused to say if these entities paid rent.  (VSHPHH Dep., Vol. I, pp. 109:12-110:19.)

**Response**: Ms. Nina Hovnanian testified that she wasn't sure whether those entities paid rent. (Exhibit "DD"; VSHPHH Dep., Vol. I, pp. 109:12-14; 109:20-110:5.) She also testified that if any of the Trust properties had expenses that exceeded income, that she would pay for those expenses from other sources, including her own monies. (Exhibit "DD"; VSHPHH Dep., Vol. I, pp. 73:4-9.) Ms. Nina Hovnanian did not "refuse" to testify at any level about any subject matter.

22.     These entities did not pay rent.  (Ex. 104, Hollobaugh Exp. Report, Ex. K.)

**Response**: Ms. Nina Hovnanian testified that she wasn't sure whether those entities paid rent. (Exhibit "DD"; VSHPHH Dep., Vol. I, pp. 109:12-14; 109:20-110:5.) She also testified that if any of the Trust properties had expenses that exceeded income, that she would pay for those expenses from other sources, including her own monies. (Exhibit "DD"; VSHPHH Dep., Vol. I, pp. 73:4-9.)

### III.    Shant Hovnanian's Related Entities.

23.    The Defendants have not identified or produced records for any bank accounts in Shant's name during the time from 2015 to 2018. Instead, Shant used bank accounts in the name of several other entities to pay for both business and personal expenses. These entities used the Village Mall's second floor as their address.  Below is a description of the relevant entities.

**Response**: The Defendants are not "Shant" and are not defending the IRS claims on his behalf. The Defendants are independent trusts formed for the benefit of Vahak and Paris Hasmig Hovnanian's grandchildren. The Defendants do not have an obligation to prove the IRS claims by producing a third-party's records or otherwise. To the contrary, the IRS bears the burden of proof in this case.

### A.  HovSat, Inc.

24.    HovSat, Inc. was established in 1984.  (Ex. 107, New Jersey Business Gateway Report for HovSat.)

**Response**: The Defendant does not know if this is true, but understands a document was submitted to support the Statement. That document would seemingly speak for itself. Defendants do not know why this would be identified as a material fact.

9

25.     Vahak (*i.e.*, Nina and Shant's father) was listed as the president. *Id*. HovSat, doing business as GrandView Cable, provided cable television services.  (Gandolfo Dep., p. 22:15-25; VSHPHH Dep., Vol. II, p. 176:17-22.)

**Response**: The Defendant does not know if this is true, but understands a document was submitted  to support the Statement. That document would seemingly speak for itself. The Defendant does not know why this would be identified as a material fact.

26.     In 2012, the State of New Jersey revoked the entity's status because it had not filed an annual report since 2009.  (Ex. 107, New Jersey Business Gateway Report for HovSat.)

**Response**: The Defendant does not know if this is true, but understands a document was submitted to support the Statement. That document would seemingly speak for itself. The Defendant does not know why this would be identified as a material fact.

27.     HovSat continued to operate after 2012.

**Response**: The Defendant does not know if this is true and there is no exhibit cited or provided in support of the assertion that this is a true statement let alone a statement of material fact.

28.     From at least 2015 through 2019, HovSat had several accounts with Affinity Federal Credit Union.  (Ex 104, Hollobaugh Exp. Report, p. 39-44, Ex. K.)[1]

**Response**:  The Defendant does not know if this is true. Any Affinity Federal Credit Union

---

[1] Jessica L. Hollobaugh, CPA/ABV, CFE, is an expert witness who produced a 43-page report to the United States.  (Ex. 104.)  This report also contained detailed schedules of sources and uses of cash from the Affinity Federal Credit Union and other entities. The report and schedules are 431 pages. The United States is producing just the report itself, her qualifications, and Schedule K, which is the summary of the sources and uses of cash in HovSat's bank account.

10

documentation would determine the truth of the proposed material statement.

29.   On September 1, 2014, HovSat entered into a Co-Location Agreement with Omniverse. (Ex. 108.) Shant signed the agreement as HovSat's managing partner. *Id*.

**Response**: The Defendant does not know if this is true and does not understand why it would be identified as a statement of material fact.

30.   On November 1, 2017, HovSat entered into a Joint Venture Agreement with Omniverse. (Ex. 109.) Shant signed the agreement on HovSat's behalf as its authorized representative. *Id*.

**Response**: The Defendant does not know if this is true and does not understand why it would be identified as a statement of material fact .

31.   Even though Shant held himself out as an authorized representative, the VSHPHH Trust maintains that he has no role with HovSat. (VSHPHH Dep., Vol. I, p. 24:4-11.) When asked if Shant controlled HovSat, the VSHPHH Trust's representative said that Shant was not in charge of HovSat but was just the trustee. *Id*.  When asked who controlled HovSat, she could not answer. *Id*.

**Response**: The Statement assumes facts and testimony that does not support the assertion.

32.   The VSHPHH Trust tried to assert that Karen Gandolfo was in charge of HovSat. (VSHPHH Dep., Vol. I, p. 25:19-26:23.) When asked why a bookkeeper was in charge, VSHPHH Trust could not explain, and she said that was "before" Nina was in charge (*i.e*., someunspecified point in late 2017). *Id*.

**Response**: The assertion that "the VSHPHH Trust tried…" is argument and not an assertion of material fact and the existence of the need to argue to support a particular fact defeats a

claim for summary judgment.

33.     Gandolfo is a long-term secretary and bookkeeper that provided services to various Hovnanian entities. (*E.g.*, VSHPHH Dep., Vol. I, pp. 33:24-34:11.) The VSHPHHTrust could not explain why a secretary is managing this company.  *Id*.

**Response**: The Defendant agrees with sentence one. Sentence two is twisted testimony. Ms. Nina Hovnanian testified that Ms. Gandolfo did the bookkeeping for the Trusts. (Exhibit "DD"; VSHPHH Dep., Vol. I, pp. 30:22-24.) The suggestion that someone is a "mere secretary" and does not have the skill set to administer simple rental real estate for a family trust is offensive and misogynistic.

34.     Gandolfo admits she took instructions from Shant about how to spend the funds in the HovSat account. (*E.g.*, Gandolfo Dep., pp. 90:24-91:5 (Gandolfo took instruction from Shanton payment of bills), 106:9-22 (Gandolfo generally followed Shant's instructions regarding the VSHPHH Trust until Nina took over as trustee)).

**Response**: This proposed statement is a jumble. Ms. Gandolfo testifying that she took direction form Mr. Shant Hovnanian with respect to an entity that is not a party to this litigation is inappropriate. If the IRS wants this Court to take the leap and suggest that HovSat is the alter ego or nominee of Mr. Shant Hovnanian, then the IRS should plead in that manner and the Defendant might respond, but this bald assertion is unsupported and irrelevant to the underlying claims. Finally, whether Mr. Shant Hovnanian helped Ms. Gandolfo during a break in the tenure of trustees of the Trusts is meaningless. Ms. Gandolfo did not testify that she took direction from Mr. Shant Hovnanian before or after that time and again, those types of assertions re-direct the proper legal analysis of alter ego and nominee lien to Mr. Shant

12

Hovnanian and the Trusts where Mr. Shant Hovnanian was not the transferor of assets in the Trusts.

35.     Shant told Nina about HovSat's role with the Village Mall, and said it was managing the property. (VSHPHH Dep., Vol. I, p. 23:16-24:11.) No written contract wasprovided in discovery showing this managerial arrangement.

**Response**: The Defendant does not understand how this assertion rises to a material fact. In any event, the properties held by the Trusts could be managed in the name of an entity, whether there is a written agreement or not. These are all family transactions, and the formalities were not always followed. There was no reason to do so. If the parties intended to deceive creditors, the Defendant submits they would have followed the formalities "to a T". The Defendant believes if that were the case, the IRS would argue substance over form instead of form over substance.

36.     At the same time, as a Rule 30(b)(6) representative, Nina could not say who was managing HovSat (and thus, perhaps, the Village Mall) and declined to admit it was Shant.  *Id*.

**Response**: Ms. Nina Hovnanian testified that she did not know who was "managing" HovSat, and not knowing the answer, did not "admit" it was Mr. Shant Hovnanian. (Exhibit "DD"; VSHPHH Dep., Vol. I, pp. 24:4-12.) She said she didn't know. How would she then "admit" anything?

37.     Shant arranged for Gandolfo to be the sole person with access and authority overthe HovSat bank accounts. *Id.*, pp. 67:20-68:3; (Gandolfo Dep., pp. 102:16-103:20; *see, e.g.,* Ex. 110, Bank Signature Cards.) Gandolfo took instructions from Shant until late 2017 or 2018,while also contending that she did not know his exact role with HovSat.  (Gandolfo Dep.,

pp. 102:16-103:20.)

**Response**: The Defendant does not know if the proposed statement of material fact is true.

38.    For example, in connection with the two agreements with Omniverse, over $720,000 was deposited into HovSat's bank account.  (Ex. 104, Hollobaugh Exp. Report, Ex. K.) Shant instructed Gandolfo to treat these funds as "data service center" income on HovSat's accounting files.  (Gandolfo Dep., p. 99:3-13.)  She did not know what data service center income meant.  *Id*.

**Response**: The Defendant does not know if the proposed statement of material fact is true.

39.    Gandolfo admitted that she would pay Shant's personal expenses from the HovSat account when he instructed her to do so.  *Id*. pp. 53:10-54:13.

**Response**: The Defendant does not know if the proposed statement of material fact is true.

40.    Gandolfo testified she treated HovSat, the Village Mall, and the VSHPHH Trust as one in the same, she could not differentiate them, and she went to Shant for instruction regarding these entities.  (Gandolfo Dep., pp. 97:19-98:23.)

**Response**: The Defendant does not know if the proposed statement of material fact is true.

41.    After this litigation commenced in October 2018, the VSHPHH Trust opened a bank account in its own name at TD Bank in December 2019, which it started using to deposit the Village Mall rental income. (Ex. 104, Hollobaugh Exp. Report, p. 37; VSHPHH Dep. Vol II, p.189:23-190:19.)  The accounts at Affinity Federal Credit Union stopped being used.  *Id*.  Yet the VSHPHH Trust and HovSat continued to operate from this single account.  *Id*.

**Response**: The Defendant does not understand the proposed Statement. The Statement appears to suggest that somehow the Defendant changed its practices after this litigation

started. The likely event is that its then counsel suggested that they start adhering strictly to the formalities of trust administration that would be associated with a non-family trust.

42.     HovSat used the mall's second floor.  (*E.g.*, MacGillivray Dep., p. 34:25-35:10.)

**Response**: There is not a timeframe associated with the proposed Statement and the citation is to the IRS witness's testimony.  The proposed statement is unsupported in fact.

43.     The VSHPHH Trust has not produced a written lease for HovSat. HovSat paid norent to the Village Mall.  (Hollobaugh Exp. Report, p. 41.)

**Response**: The Defendant has not produced a written lease for HovSat and does not know if HovSat rented the property or otherwise would have paid rent.

## B. SpeedUS

44.     SpeedUS, Corp., along with its wholly owned subsidiary SpeedUSNY.com, LP (collectively, "SpeedUS"), was a publicly traded corporation.  In its last Annual Report filed with the Securities and Exchange Commission (Form 10-K), Shant was listed as the Chairman ofthe Board of Directors, President, and Chief Executive Officer.  (Ex. 111, Form 10-K, item 10.)

**Response**: The Exhibit speaks for itself. There is no relevance to this analysis.

45.     Vahak (Shant's father) was listed as one of the directors of SpeedUS. He andShant were the largest owners of stock.  *Id.*, items 10, 12.

**Response**: The Exhibit speaks for itself. There is no relevance to this analysis.

46.     SpeedUS stopped operating before the period relevant to this suit (*i.e.*, January 1,

2015). (Ex. 105, Pallinkus **[sic]** Exp. Report, p 8.) ("There is no dispute that Speed[US] has not had any business dealings since the early 2000s and the sources of funds and uses of funds were personal in nature.").

> **Response**: The citation is to the IRS's own accounting expert who is not appropriate to provide evidence, much less a statement of material fact surrounding an entity that is not a party to this litigation and such testimony is clearly outside the scope of that person's expertise. The Defendant does not know if there is "no dispute" about SpeedUS activities as SpeedUS is not a party to this litigation and no person involved with SpeedUS provided testimony about its activities. The asserted material fact is all irrelevant and assumption-based.

47.     SpeedUS listed its address as the Village Mall on its final Annual Report with the Securities and Exchange Committee. *Id*., p. 1.  The VSHPHH Trust has asserted SpeedUS is stilla tenant of the Village Mall.  (VSHPHH Dep., Vol. I, pp. 33:24-34:11.)

> **Response**: Any annual report speaks for itself. The Defendant did not testify that SpeedUS is "still a tenant of the Village Mall". (Exhibit "DD"; VSHPHH Dep., Vol. I, pp. 110:18-19.)

48.     VSHPHH Trust did not produce a written lease between SpeedUS and the Village Mall.  SpeedUS paid no rent to the Village Mall.  (Ex. 104, Hollobaugh Exp. Report, p. 41.)

> **Response**: The Defendant did not produce a written lease for SpeedUS and do not know if SpeedUS rented the property or otherwise would have paid rent.

49.     SpeedUS had an account at Morgan Stanley. The VSHPHH Trust's own expertagrees that during the period relevant to this suit, Shant used this account for his personal use. (Ex.105, Paulikens Exp. Report, p. 8.)

**Response**: The Defendant agrees that SpeedUS, at some point in time, had an account with Morgan Stanley as reflected in various documentation submitted to date. The Defendant is not aware of any personal use of any such account.


50.    Karen Gandolfo is a SpeedUS employee, who had a role as a secretary or bookkeeper. (VSHPHH Dep., Vol. I, pp. 33:24-34:11.) She has been compensated in partthrough HovSat during the relevant time.  (Hollobaugh Exp. Report, p. 44.)

**Response**: The Defendant does not know if the asserted statement of material fact is true.


51.    In 2015, SpeedUS opened an account with Interactive Brokers. (Gandolfo Dep., pp. 56:11-57:15.) Shant asked Gandolfo to open the account but she "never accessed it [or did]… anything with it." *Id.* Gandolfo asked why Shant wanted the account in her name ratherthan his name, but he refused to tell her.  *Id*.

**Response**: The Defendant does not know if SpeedUS opened an account with Interactive Brokers. Ms. Gandolfo's testimony speaks for itself, but also, the Defendant does not find that her deposition testimony is the best evidence of the proposed statement to material fact.


### C. HovBilt

52.    HovBilt is another Hovnanian-controlled entity that filed for bankruptcy in 2013.(Ex. 112, *In re HovBilt,* No. 13-bk-30341, dkt. 25 (Bankruptcy Sch. & Stmt. of Fin. Aff.).) TheVS Hovnanian Group owned 99.5% of HovBilt. *Id*., SOFA item 21. According to the Defendants, Shant's father owned the VS Hovnanian Group, which in turn owned HovBilt. (Pachava Dep., Vol. I, p. 39:16-40:7.)  Shant was the executive vice president of HovBilt.

 (Ex. 112, SOFA, item 21.)

**Response**: The Defendant does not know whether the proposed statements of material fact are true. It is another jumble about a non-party.

53.     In its bankruptcy schedules, HovBilt stated it rented office space at the Village Mall during the bankruptcy. *Id*., Sch. F. (listing rent due to Paris, who is Shant's mother). HovBilt represented it incurred rent of $5,000 per month. *Id*.; Ex. 113, *In re HovBilt,* 13-30341-MBK, dkt. 286, p. 6 of 11.  Shant signed the declaration under penalties of perjury.  *Id*., p. 1.

**Response**: The Bankruptcy Court Schedules speak for themselves.

54.     The VSHPHH Trust has not produced any evidence showing this rent was paid.[2]

**Response**: The proposed statement of material fact suggests the Trust should provide personal records of Paris Hasmig Hovnanian receiving rents from a third party, HovBilt?  The Defendant is not obligated to provide proof of third-party rental payments to other third-parties stemming from unrelated litigation in the Bankruptcy Court.

### IV.  VSHPHH Trust.

55.     Shant's parents formed the VSHPHH Trust on December 28, 2012.  (Compl., ¶ 29; Ans. ¶ 29).  It was funded with $1.  (Ex. 114, VSHPHH Trust, Art. I.)

**Response**: The Defendant agrees.

56.     William Reed Rankin, *Esq*., drafted the VSHPHH Trust Agreement.  (VSHPHHDep., Vol. I, pp. 13:14-15, 19:5-10; Ex. 114, VSHPHH Trust Agreement (acting as notary).) Rankin

---

[2] Other companies that Shant controlled, like Zargis Medical Corporation, listed the Village Mallas their main address.

advised the family afterwards, including during this litigation.  *Id*., pp. 12:24-13:16.

> **Response**: The Defendant does not know if the proposed assertions of material fact are true. The IRS chose not to depose William Read Rankin, Esq and affirmatively sought to preclude his testimony. (Dkts. 89 and 106.) It cannot be that the IRS now relies upon facts wholly within the knowledge of Mr. Rankin.  The Federal Rules of Civil Procedure and the Federal Rules of Evidence do not allow a party to pick and choose how they want to obtain or use evidence. The best evidence is always the non-hearsay polluted evidence and, in this instance, the IRS has affirmatively chosen to disregard that option in favor of suggesting assumption based upon the testimony of others.

57.     Shant and Nina were named as co-trustees of the VSHPHH Trust. (Compl., ¶ 29;Ans. ¶ 29). Their five children are the beneficiaries. (Compl., ¶ 29; Ans. ¶ 29; Ex. 114, VSHPHH Trust, Art. IV).

> **Response**: Mr. Shant Hovnanian was briefly a trustee of the VSHPHH Trust. (Exhibit "DD"; VSHPHH Dep., Vol. I, pp. 18:9-19.)

58.     The trustees were provided discretion to manage the principle and income of the VSHPHH Trust for the beneficiaries. (Ex. 114, VSHPHH Trust, Art. IV-V.) A trustee, however, is prohibited from exercising their discretionary powers if they were otherwise "obligated to support or maintain the Beneficiary of such separate trust in such manner as to discharge any part or all of his or her obligation to support or maintain the Beneficiary of such separate trust." (Ex. 114, VSHPHH Trust, Art. V(C).) funds by paying private school tuition while he was the only trustee doing any actions. This provision means that if the VSHPHH was paying expenses of one of Shant's children, then Nina, as co-trustee, had to approve. *Id*. Shant paid for expenses of his children from

trust payments. The VSHPHH Trust produced no records showing that Nina authorized those

> **Response**: Sentences one and two of the proposed Statement: The trust instrument speaks
> for itself. The balance of the proposed Statement is a legal argument and is a legal argument
> based on assumptions, not fact.

59.     The VSHPHH Trust had the power to "open and maintain bank accounts."
(Ex. 114, VSHPHH Trust, Art. XII(K).)  The VSHPHH Trust did not open its own bank account
until December 2019.  (*E.g.,* VSHPHH Dep., Vol. I, pp. 65:2-66:6).

> **Response**: The Defendant does not know whether the proposed Statement is true. The Trust
> was created by Vahak and Paris Hasmig Hovnanian well before Ms. Nina Hovnanian was
> involved.

60.     The VSHPHH Trustees were required to maintain a book of accounts showing each
beneficiary's proportionate share of principal, income, and expenses. (Ex. 114, VSHPHH Trust,
Art. X (requiring the maintaining of a book of accounts if the trustees did not physically segregate
each Beneficiary's sub-trust.) The VSHPHH Trust did not produce its own accounting records or
book of accounts during discovery.

> **Response**: Sentence one: The trust instrument speaks for itself. Sentence two: This is a
> manipulation of the discovery production. The Trust did provide its accounting and
> bookkeeping records. (Exhibit "EE".)

61.     A trustee of the VSHPHH Trust could resign if the trustee provided written noticeto
the other trustees.  (Ex. 114, VSHPHH Trust Art XIV, XV(F).)

> **Response**: The trust instrument speaks for itself.

62.     The VSHPHH Trust alleged that Shant resigned sometime in 2017, either August, September, or the Fall of 2017. (VSHPHH Dep., Vol. I, pp. 20:17-21:25, 54:21-55:3; Vol. II., 243:16-22, 244:2-20.)  It could not produce the written notice of resignation.  *Id*.

        **Response**: The VSHPHH Trust did not "allege" anything. Instead, the current Trustee testified that she believed Mr. Shant Hovnanian was a trustee at some point in time and that he resigned. (Exhibit "DD"; VSHPHH Dep., Vol. I, pp. 20:22-24.)

63.     The VSHPHH Trust also could not explain why Shant resigned despite it being a noticed topic for a Fed. R. Civ. P. 30(b)(6) deposition.  *Id*.

        **Response**: This issue was addressed and disposed of through previous motion practice and a written opinion of the Court. (Dkts. 89 and 106.)

64.     On June 14, 2017, the IRS sent notices to Shant demanding payment of thefederal tax liabilities.  (Ex. 115.)

        **Response**: The Defendant does not know if this proposed assertion is true. The IRS chose not to depose Mr. Shant Hovnanian and then actively sought to preclude his testimony. (Dkts. 89 and 106.)

65.     The VSHPHH Trust never filed income tax returns (Form 1041) with the IRS. (Ex. 116, (IRS transcript reflecting no Form 1041s filed); MacGillivray Dep., pp. 89:19-92:19 (explaining VSHPHH Trust had no income tax returns filed).)

        **Response**: The Defendant has already addressed this fact within discovery procedures. (Exhibit "DD"; VSHPHH Dep., Vol. I, pp. 128:22-129:4.) There was no generated net

income. Between the rent and expenses to maintain the property, there is a negative cash flow – no net income.

## V.      Shant Hovnanian Controlled the Village Mall.

66.      The VSHPHH Trust admits Shant Hovnanian exercised substantial control until he allegedly resigned in 2017.  (VSHPHH Dep., Vol. I, p. 27:6-9 ("Shant was the person really in touch with Karen [Gandolfo], and – for the VSHPHH before [2018]. He would confer with me, but he was, you know, in charge more or less."), 37:16-18 (Shant was "primarily in charge"),54:14-20 (Shant was responsible for monitoring the Village Mall property)).

> **Response**: The Defendant does not know whether the proposed material fact is true. The IRS, the Plaintiff and the party with the burden of proof, chose not to depose Mr. Shant Hovnanian in favor of making inferences based upon third-party testimony.

67.      When the VSHPHH Trust took legal title to the Village Mall, rent checks from the first-floor tenants continued to be paid to a bank account held in the name of Shant's father.*Id*, p. 67:7-25. Shant allowed the checks to be paid to the account in his father's name rather than the VSHPHH Trust.  *Id*.

> **Response**: The Defendant does not know if the proposed Statement is true. There is no timeframe referenced and Vahak Hovnanian died a number of years ago and the IRS, the Plaintiff and the party with the burden of proof, chose not to depose Mr. Shant Hovnanian.

68.      The rent was not used for paying expenses of the Village Mall from that account. (Ex. 104, Hollobaugh Exp. Report, p. 37.) Instead, rent was deposited from the father's accountinto Shant's account in the name of HovSat.  *Id*.

**Response**: The Defendant does not know if the proposed Statement is true. There is no timeframe referenced and Vahak Hovnanian died a number of years ago and the IRS, the Plaintiff and the party with the burden of proof, chose not to depose Mr. Shant Hovnanian.

69.     In early 2017, Shant instructed the tenants to pay rental income directly to HovSat, rather than to his father's account or the non-existent account for the VSHPHH Trust.(VSHPHH Dep., Vol. I, pp. 67:9-15, 104:12-20.) At least one tenant was told to pay rent directly to HovSat at Shant's express instruction. (Ex. 117, Email from Karen Gandolfo to tenant; Gandolfo Dep., pp. 110:9-24.)[3] Rent was paid to HovSat through December of 2019. (Ex. 104, Hollobaugh Exp. Report, p. 12.)

**Response**: The Defendant does not know if the proposed Statement is true. There is no timeframe referenced, Vahak Hovnanian died a number of years ago and the IRS, the Plaintiff and the party with the burden of proof, chose not to depose Mr. Shant Hovnanian.

70.     Nina never had authority over the HovSat account and could not access it. (VSHPHH Dep., Vol. I, p. 68:2-5.) On paper, Gandolfo was the only person with access to the account. *Id*.

**Response**: The Defendant does not know if the proposed Statement is true.

71.     Shant could use HovSat funds how he saw fit. (*E.g.*, Gandolfo Dep., p. 54:6-13 (Shant would instruct Gandolfo to transfer funds from HovSat to cover household expenses),

---

[3] Gandolfo alleges that she did not tell the truth in her email to the tenant because she did not actually receive a direct instruction from Shant. Whether that statement is true is not material. The VSHPHH Trust has admitted the instruction came from Shant. Further, the tenants followed her instructions, showing that Shant was not just a random interloper but instead was in charge of the Village Mall.

90:24-91:5 (Gandolfo took instruction from Shant on what bills to pay), 98:3-8, 106:9-22

(Gandolfo followed Shant's instructions regarding the VSHPHH Trust).)

> **Response**: The Defendant does not know if the proposed Statement is true. The IRS, the
>
> Plaintiff and the party with the burden of proof, chose not to depose Mr. Shant Hovnanian.

72.     Nina had no role or interest in Shant's activities when he controlled the VillageMall.

During the Rule 30(b)(6) deposition of the VSHPHH Trust, Nina tried to say she was apprised of

trust information and decisions after they occurred. *Id*. (VSHPHH Dep., Vol. I, pp. 22:3-24:3.)  Yet

when asked what Shant actually did, Nina testified that she did not know what he did before he

resigned as trustee and had to "learn[] the ropes" after his resignation.  *Id*.

> **Response**: The proposed Statement is legal argument ("Nina...tried to say") and an effort to
>
> impeach a witness on paper. This type of proposed Statement reflects why a summary
>
> adjudication is improper.

73.     Nina did not monitor the rent generated by the Village Mall or the HovSat account.

(VSHPHH Dep. Vol. II, pp. 179:7-180:23.) She just trusted Shant and his secretary.*Id*. When asked

whether HovSat (d/b/a Grandview Cable) shared the same files for accountingwith the VSHPHH

Trust or Village Mall, she said she did not think so (even after producing those records in

discovery).  *Id.*, pp. 132:23-133:15.

> **Response**: The proposed Statement is legal argument and an effort to impeach a witness on
>
> paper. This type of proposed Statement reflects why a summary adjudication is improper.

74.     As the VSHPHH Trust's only Rule 30(b)(6) designee, Nina testified that she was

"very surprised" about the commingling of records, even after the VSHPHH Trust produced those

records in response to discovery requests. *Id.* 133:2-7. Her surprise demonstrates she didnot take a

role in the operations of the Trust where she was purporting to be a co-trustee with Shant over the

past five years.

> **Response**: This issue was addressed and disposed of through previous motion practice and
>
> a written opinion of the Court. (Dkts. 89 and 106.)

### VI.    The Village Mall's Funds Were Commingled.

75.    The VSHPHH Trust did not have financial statements, ledgers, or accounting

records.  (Ex.106, VSHPHH Resp. to Req. for Prod. ¶¶ 7-9.)

> **Response**: The Defendant produced the accounting and bookkeeping records for the Trust.
>
> (Exhibit "EE".)

76.    The limited amount of tracking of Village Mall funds was done through a Quickbooks

accounting file for HovSat using the name Grandview Cable.  (VSHPHH Dep., Vol.I, p. 134:9-13.)

HovSat and the Village Mall commingled funds, without any segregation or earmarking of the

Village Mall's funds.  (*See, e.g.,* Ex. 104, Hollobaugh Exp. Report, p. 40.)

> **Response**:  The Defendant produced the accounting and bookkeeping records for the Trust.
>
> (Exhibit "EE".) This "material fact" contradicts the previously asserted "material fact".

77.    On the second day of its two-day deposition in February of 2021, the VSHPHH

Trust admitted the QuickBooks files were incomplete and insufficient. (VSHPHH Dep., Vol. II,pp.

155:10-157:3.) The VSHPHH Trust stated it would hire an accountant or auditor to provide an

accurate financial picture of the VSHPHH Trust.  *Id*.

> **Response**: The Defendant did not state what is suggested. The transcript of the cited

testimony supports the Defendants assertion.

78.     The VSHPHH Trust never turned over that accurate financial picture in discovery.

**Response**: The Defendant produced the accounting and bookkeeping records for the Trust. (Exhibit "EE".)

79.     The VSHPHH Trust could not explain why the VSHPHH Trust failed to keep its own set of records and comingled its accounts with HovSat. *Id*., Vol. I, p. 134:9-13 ("Q. … [F]rom the trust's perspective why Grand View Cable – why the trust's financial records were recorded in Grand View Cable [QuickBook files]. A. I can't answer that. I have no idea.").

**Response**: Ms. Gandolfo provided testimony that details her methods of bookkeeping. (Exhibit "CC"; Gandolfo Dep. pp. 36:4-37:9).  If the assertions are that these items reflect undisputed material facts, they have to be taken as a whole and not paraphrased or otherwise perverted.

80.     The VSHPHH Trust authorized the trustees to "make loans to such persons, firms, corporations and entities" or "engage in business with the property held under this Trust Agreement as a sole proprietor, or as a general or limited partner, or as a member of a limited liability company, with all the powers customarily exercised by an individual so engaged in." (Ex. 114, VSHPHH Trust Art. XII(L)-(M).)

**Response**: The trust instrument speaks for itself.

81.     The VSHPHH Trust could not produce any records – like contracts, invoices, loans, or leases – showing the trust engaged in any businesses before this litigation began.

(Ex. 106, VSHPHH Trust Resp. to Req. for Prod. 7 (requesting documents reflecting expenses).)

> **Response**: The Defendant does not understand the Statement. Why would the Trust engage
> in business other than owning rental real estate or a family home?

82.     When preparing for a Rule 30(b)(6) deposition on behalf of the VSHPHH Trust
where the finances of the Trust were at issue, Nina refused to look at any bank accounts that
preceded the opening of the account at TD Bank in December 2019. (*See* VSHPHH Dep., Vol. I,pp.
141:23-142:10.) She asserted the HovSat bank records were not the VSHPHH Trust's records even
though all the rent collected was deposited into the HovSat account.  *See id*.

> **Response**: This issue was addressed and disposed on in motion practice and concluded in a
> written opinion of the Court. (Dkts. 89 and 106.)

83.     The VSHPHH Trust asserts HovSat was acting as the manager for the VSHPHH
Trust. There is no evidence of such an arrangement like a contract. The only service HovSat
allegedly provided was being a bank account.  (VSHPHH Dep., Vol. I, p. 177:4-16, 178:2-22.)

> **Response**: This Statement is more legal argument based upon distorted assertions of fact.

84.     HovSat received nothing in compensation for its managerial services.  *Id*., p. 179:7-
9. The VSHPHH Trust could not say if the rents deposited into the HovSat bankaccount were used
to pay HovSat's expenses. *Id*., p. 179:11-23.

> **Response**:  This Statement is more legal argument based upon distorted assertions of fact.

### VII.     Shant Hovnanian Received the Benefits and Bore the Expenses of the Village Mall.

85.     The following is a summary of the HovSat bank account activities:

**HOVSAT/VILLAGE MALL CASH FLOW**
**SUMMARY OF BANK ACCOUNTS (NOTE 1)**
January 1, 2015 to September 30, 2020                                      EXHIBIT K

| | | 2015 | 2016 | 2017 | 2018 | 2019 | September 2020 | Jan 2015 - Sept 2020 |
|---|---|---|---|---|---|---|---|---|
| Opening Cash | | $ 1,266.37 | $ 31,733.08 | $ 24,766.85 | $ 11,624.78 | $ 73,559.21 | $ 7,142.33 | $ 1,266.37 |
| **Sources and Uses of Cash** | | | | | | | | |
| **Village Mall** | | | | | | | | |
| Sources | | | | | | | | |
| Rental Income | | - | 4,344.17 | 71,372.20 | 75,129.37 | 78,915.99 | 71,632.76 | 301,394.49 |
| Rental Income- Hovnanian entities | F | - | - | - | - | - | - | - |
| Rental Income- AFCU x1502 | E | 78,770.00 | 72,700.00 | 11,255.00 | - | - | - | 162,725.00 |
| Uses | | | | | | | | |
| Real Estate Taxes | B | - | (63,323.09) | (33,959.77) | (34,128.39) | (34,563.54) | - | (165,974.79) |
| Repairs & Maintenance | | (3,975.89) | (3,073.13) | (4,960.11) | (4,741.54) | (42,030.61) | (6,973.00) | (65,754.28) |
| Utilities | G | (9,503.99) | (8,046.76) | (8,986.94) | (10,947.05) | (9,291.54) | (11,541.90) | (58,318.18) |
| Other Uses | | (15,059.11) | (9,705.57) | (7,900.57) | (12,404.93) | (9,524.74) | (5,185.17) | (59,780.09) |
| Net Village Mall prior to Litigation Costs | | 50,231.01 | (7,104.38) | 26,819.81 | 12,907.46 | (16,494.44) | 47,952.69 | 114,312.15 |
| Professional Fees | | - | - | - | (6,000.00) | (92,700.00) | - | (104,700.00) |
| Net Village Mall | | 50,231.01 | (7,104.38) | 26,819.81 | 6,907.46 | (109,194.44) | 41,952.69 | 9,612.15 |
| **GrandView / Hovsat** | | | | | | | | |
| Sources | | | | | | | | |
| Paid to Hovsat/Grandview | | 21,118.88 | 11,813.81 | 13,329.22 | 18,237.22 | 12,729.40 | 11,697.89 | 88,926.42 |
| Zargis Medical | A | 84,650.00 | 66,179.00 | 16,950.00 | 8,500.00 | 23,400.00 | - | 199,679.00 |
| Omniverse | | 99,000.00 | 108,000.00 | 108,000.00 | 224,225.25 | 181,462.00 | - | 720,687.25 |
| Uses | | | | | | | | |
| DirecTV | | (65,907.92) | (69,626.86) | (70,785.67) | (67,096.43) | (68,163.07) | (21,903.08) | (363,483.03) |
| Maintenance - Kevin Morrison | | (48,392.97) | (45,405.22) | (42,971.79) | (46,607.99) | (53,751.27) | (30,186.51) | (267,315.75) |
| Karen Gandolfo | | (11,431.21) | (5,888.86) | (6,041.27) | (6,228.00) | (13,327.50) | (13,838.07) | |
| Storage Rental- Zac's Garage | | (4,494.00) | (4,494.00) | (5,122.11) | (4,889.83) | (5,431.14) | (5,219.28) | (29,650.36) |
| Consulting | | (49,073.87) | (26,907.58) | - | - | - | - | (75,981.45) |
| Utilities | G | (5,742.17) | (4,543.70) | (4,475.82) | (4,874.88) | (4,133.77) | (166.60) | (23,936.94) |
| Computer/Internet/Programming | H | (9,581.39) | (9,096.63) | (8,600.64) | (9,837.64) | (9,128.83) | (3,605.14) | (49,820.27) |
| Other Uses | I | (10,412.32) | (8,124.39) | (4,920.66) | (5,341.73) | (4,693.91) | (4,248.45) | (35,741.46) |
| Net GrandView / Hovsat | | (266.97) | 13,955.77 | (4,638.74) | 106,085.97 | 58,961.91 | (67,469.24) | 106,628.70 |
| **Other Sources and Uses** | | | | | | | | |
| Hovnanian International | | - | - | - | - | 6,000.00 | 49,980.00 | 55,980.00 |
| VEC Realty, LLC (Paid to VSHPHH) | | - | - | - | - | 15,003.00 | - | 15,003.00 |
| Speedus NY Account Transfers | | 4,000.00 | 17,000.00 | - | - | 5,000.00 | - | 26,000.00 |
| Speedus NY Account Transfers | | (18,400.00) | (18,400.00) | (12,000.00) | (40,000.00) | (45,000.00) | - | (133,800.00) |
| Speedus NY Expenses Paid | D | (5,074.05) | (5,518.21) | (6,291.97) | (5,610.69) | (5,469.51) | (5,317.03) | (33,281.46) |
| Other Deposits | | - | - | - | - | 200.00 | - | 200.00 |
| Interest Income | | 0.72 | 0.74 | 5.78 | 5.70 | 15.30 | 0.13 | 28.37 |
| 520 Navesink River Road Expenses | C | - | (3,002.15) | (936.00) | (2,949.00) | (960.00) | - | (8,745.15) |
| Pachava Trust Account Transfers | | - | - | - | - | 9,500.00 | (5,000.00) | 4,500.00 |
| Other Expenses- Cash/Unidentified | | - | (3,000.00) | (229.45) | (200.00) | (437.00) | (6,750.70) | (10,617.15) |
| NCC Membership | | - | - | - | (2,305.01) | - | - | (2,305.01) |
| Drivers License Expenses (Shant) | | (24.00) | - | (71.50) | - | - | - | (95.50) |
| Children's School Costs | | - | - | (15,800.00) | - | - | (36.14) | (20,336.14) |
| Net Other Sources & Uses | | (19,497.33) | (13,817.62) | (35,323.14) | (51,059.00) | (16,184.35) | 28,412.40 | (107,469.04) |
| Ending Cash | | $ 31,733.08 | $ 24,766.85 | $ 11,624.78 | $ 73,559.21 | $ 7,142.33 | $ 10,038.18 | $ 10,038.18 |

(Ex 104, Hollobaugh Report, Ex. K.)

**Response**: The foregoing summary is argument as it has not been admitted as evidence in this proceeding. It is a summary prepared by the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

86.     Based on the summary above, among other things:

  i.   No rental income was ever distributed to the trust's beneficiaries.

28

**Response**: The foregoing summary is argument as it has not been admitted as evidence in this proceeding. It is a summary prepared by the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

     ii.   The Village Mall received $238,441 for the period from January 1, 2015, to December 31, 2017.

**Response**: The foregoing summary is argument as it has not been admitted as evidence in this proceeding. It is a summary prepared by the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

     iii.   Shant took the rental income for his personal benefit.  From 2015 to 2017, $48,000 was transferred to the SpeedUS account where Shant then used the funds for his personal use. (Ex. 105, Paulikens Exp. Report, p. 8 (admitting the "Speed[US account's] ... the sources of funds and uses of funds were personal in nature.").) An additional $17,683 was paid to cover expenses Shant normally paid from the SpeedUS account.

**Response**: The foregoing summary is argument as it has not been admitted as evidence in this proceeding. It is a summary prepared by the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

     iv.   The amount of $15,800 was paid to the Ranney School where his children attended school. Under the terms of the VSHPHH Trust Shant could not authorize the Trust to make this payment because it was a personal Shant's

29

parental obligation.  (Ex. 114, VSHPHH Trust, Art V(C).)

**Response**: The foregoing summary is argument as it has not been admitted as evidence in this proceeding. It is a summary prepared by the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

      v.   Shant's Country Club membership, driver's license fees, and expenses that he was responsible to pay for 520 Navesink River Road were paid from the HovSat account.

**Response**: The foregoing summary is argument as it has not been admitted as evidence in this proceeding. It is a summary prepared by the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

      vi.   Karen Gandolfo received significant payments from HovSat even though she was a SpeedUS employee.

**Response**: The foregoing summary is argument as it has not been admitted as evidence in this proceeding. It is a summary prepared by the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

87.    The VSHPHH Trust had no records reflecting the payments made from HovSat orthe Village Mall to Shant or on his behalf. (Ex. 106, Resp. to Req. for Prod. 24.) It could not provide evidence before this litigation began where a trustee authorized the payment, any consideration given for the payment, or any written explanation of the payment (demonstrating the payment was intended

as compensation, a gift, a loan, *etc*). *Id*. The VSHPHH Trust alsocould not produce records showing how it reported these payments to the IRS either on its (unfiled) tax returns or via an informational return like a Form W-2 for reporting wages or a Form 1099 for non-employee compensation. *See id*.

> **Response**: The Defendant does not understand the proposed Statement. Records of what payments and for what purpose? The citation is to the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

88.     No funds from the Village Mall were ever distributed to the VSHPHH Trust beneficiaries. (Ex. 104, Hollobaugh Exp. Report, Ex. K.)

> **Response**: The Defendant does not understand the proposed Statement. What funds? The citation is to the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

89.     The VSHPHH Trust paid none of the expenses of the Village Mall. *Id*.

> **Response**: The Defendants do not understand the proposed Statement. The citation is to the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

90.     Shant used $201,204 from his personal funds in his SpeedUS account to pay thereal estate taxes due on the Village Mal in 2005. (*Id.*, p. 19; Ex. 105, Paulikens Exp. Report, pp. 21-22 ("We do not dispute the factual accuracy of the flow of funds").)

> **Response**: The Defendant does not understand the proposed Statement. The citation is to the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's

expertise and will be the subject of a form of motion in advance of trial. Beyond the foregoing, Mr. Paulikens did not testify as described in the proposed Statement parenthetical.

91.     The VSHPHH Trust had no record showing why Shant paid the real estate taxes from SpeedUS or reflecting whether that payment was a gift or loan to the Trust.

**Response**: There is no cited authority for the proposed Statement and the Defendant disagrees.

92.     When the VSHHPHH Trust's Rule 30(b)(6) designee (Nina) was asked why Shant was paying the real estate taxes, she said "you need to ask him. I don't know" despite transfers from SpeedUS being one of the topics for the Rule 30(b)(6) deposition. (VSHPHH Dep., Vol. I, pp. 98:6-99:23.) Nina alleged that until the date of the deposition, she was unawarethe transfer of $201,204 ever occurred.  *Id*.

**Response**: This issue was addressed in prior motion practice and was disposed on in a written opinion of the Court. (Dkts. 89 and 106.)

93.     The payment of $201,204 was the largest expense paid for the Village Mall.(Ex. 104, Hollobaugh Exp. Report, Ex. K.)

**Response**: The Defendant does not understand the proposed Statement. The citation is to the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

94.     The other Village Mall expenses, like utilities and real estate taxes, were paid from HovSat. *Id.*

**Response**: The Defendant does not understand the proposed Statement. The citation is to the IRS accounting expert as a part of an opinion that far exceeds the scope of the proponent's expertise and will be the subject of a form of motion in advance of trial.

Dated: June 7, 2022

Respectfully submitted,

HANAMIRIAN LAW FIRM, P.C.

John M. Hanamirian, Esquire
N.J. Attorney I.D.: 002861992
40 E. Main Street
Moorestown, New Jersey 08057
(856) 793-9092 – t
(856) 793-9121 – f
jmh@hanamirian.com

*Attorney for Defendant VSHPHH Trust*