N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-15099-ZNQ-LHG |
| | ) | |
| SHANT HOVNANIAN, *et al*., | ) | |
| | ) | Motion Return Date: June 21, 2022 |
| Defendant. | ) | |
| _____ | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT VSHPHH TRUST'S
MOTION FOR SUMMARY JUDGMENT**

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division

ARI D. KUNOFSKY
JOSHUA D. ZIMBERG
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-353-9187 (v)
202-514-6866 (f)
Ari.D.Kunofsky@usdoj.gov

**TABLE OF CONTENTS**

Table of Authorities ....................................................................................................... i

Preliminary Statement .................................................................................................... 1

Arguments ...................................................................................................................... 2

   I.  The Nominee And Alter Ego Doctrines Do Not Require a Direct Transfer. ........................ 2

      A.   The VSHPHH Trust's Nominee Analysis Fails ......................................... 3

      B.   The VSHPHH Trust's Alter Ego Analysis Fails ........................................ 8

   II.  The VSHPHH Trust's Remaining Arguments Fail. ........................................... 12

      A.   The VSHPHH Trust's Assertion that The United States Did
Not Try To Collect From Shant In Its Usual Course Is Both
Irrelevant And Wrong. ............................................................................ 12

      B.   The United States Did Not Need To Bring A Fraudulent-
Transfer Action. ..................................................................................... 13

      C.   The VSHPHH Trust's Efforts to Muddy the Record Fail ........................... 13

Conclusion ................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006)..................................................................................14

*Bernard v. Webb-McRae*,
    2020 WL 1329934 (D.N.J. Mar. 23, 2020)...........................................................14

*Coppa v. Tax'n Div. Dir.*,
    8 N.J. Tax 236 (1986) ............................................................................................9

*Don Gastineau Equity Trust v. United States*,
    687 F. Supp 1422 (C.D. Cal. 1987) ......................................................................11

*Feesers, Inc. v. Michael Foods, Inc.*,
    591 F.3d 191 (3d Cir. 2010)....................................................................................4

*Fraternal Ord. of Police, Lodge 1 v. City of Camden*,
    842 F.3d 231 (3d Cir. 2016).............................................................................14, 15

*G.M. Leasing Corp. v. United States*,
    429 U.S. 338 (1977)................................................................................................2

*Holman v. United States*,
    505 F.3d 1060 (10th Cir. 2007) ..............................................................................5

*LiButti v. United States*,
    107 F.3d 110 (2d Cir. 1997)..................................................................................10

*Magesty Sec. Corp. v. IRS*,
    2012 WL 1425100 (S.D.N.Y. April 24, 2012) .......................................................2

*Merrill Lynch Pierce Fenner & Smith, Inc. v. Nora-Johnson*,
    797 A.2d 226 (N.J. Super. App. Div. 2002) ..........................................................6

*Oxford Cap. Corp. v. United States*,
    211 F.3d 280 (5th Cir. 2000) ................................................................................13

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
    2006 WL 3041097 (D.N.J. Oct. 26, 2006).............................................................14

*In re Richards*,
    231 B.R. 571 (E.D. Pa. 1999) .........................................................................2, 3, 9

*Towe Antique Ford Found. v. Internal Rev. Serv'c.*,
    999 F.2d 1387 (9th Cir. 1993) ................................................................................9

*United States v. Balice*,
  2017 WL 3420918 (D.N.J. Aug. 9, 2017) ............................................................2

*United States v. Bogart*,
  715 F. App'x 161 (3d Cir. 2017) ........................................................................8

*United States v. Burnett*,
  2010 WL 3941906 (S.D. Tex. Oct. 7, 2010) ........................................................5

*United States v. Evseroff*,
  270 F. App'x 75 (2d Cir. 2008) ......................................................................9, 10

*United States v. Greer*,
  383 F. Supp. 2d 861 (W.D.N.C. 2005) ..........................................................10, 11

*United States v. Hovnanian*,
  2019 WL 1233082 (D.N.J. Mar. 18, 2019) (dkt. 24).....................................3, 4, 7, 8

*United States v. Hovnanian*,
  2022 WL 909868 (D.N.J. Mar. 29, 2022) (dkt. 112)..........................................3, 15

*United States v. Nassar*,
  699 F. App'x 46 (2d Cir. 2017) ............................................................................5

*United States v. Nat'l Bank of Comm.*,
  472 U.S. 713 (1985)..........................................................................................12

*United States v. Patras*,
  544 F. App'x 137 (3d Cir. 2013) ................................................................. *passim*

*United States v. Scherping*,
  187 F.3d 796 (8th Cir. 1999) ...............................................................................9

*United States v. Summerlin*,
  310 U.S. 414 (1940)..........................................................................................13

*United States v. Tyler*,
  528 F. App'x 193 (3d Cir. 2013) .......................................................................12

*Vegas Sands Corp. v. Ace Gaming, LLC*,
  713 F. Supp. 2d 427 (D.N.J. 2010) ......................................................................8

**Statutes**

26 U.S.C. § 6321 ......................................................................................................................2

26 U.S.C. §§ 6321-6322 .........................................................................................................12

26 U.S.C. § 6323(a) ................................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ..........................................................................................................15

Fed. R. Civ. P. 56 .....................................................................................................................2

Fed. R. Civ. P. 56(c)(1) ..........................................................................................................14

Fed. R. Evid. 702(a) ...............................................................................................................14

Fed. R. Evid. 704 ....................................................................................................................14

Local Rule 56.1 ..................................................................................................................2, 14

Local Rule 56.1(a) ..................................................................................................................15

Restatement (Third) of Trusts, §§ 39, 81 .................................................................................6

## PRELIMINARY STATEMENT

As explained more fully in the United States' own motion for partial summary judgment

(dkt. 123), the Village Mall is a shopping center located at 1 Dag Hammarskjold Blvd., Freehold,

New Jersey.  Title to the Village Mall had been held by Shant Hovnanian's parents.[1]  His parents

transferred legal title to the Village Mall to the VSHPHH Trust in 2015.  Shant and his sister,

Nina Hovnanian, were named as co-trustees and their children were named the beneficiaries.  At

the time of the transfer, Shant owed $16 million in unpaid income taxes.  Directly transferring

the property to Shant would have encumbered it with a federal tax lien.

Shant treated the Village Mall as his own property, ignoring his co-trustee and the

VSHPHH Trust.  He took all the rent for his own purposes, giving nothing to the VSHPHH Trust

or its beneficiaries.  Shant used the second floor of the Village Mall for his own businesses and

paid the Village Mall's expenses.  The VSHPHH Trust asserted that it did not need to file an

income tax return, because it did not think the rent was its income.  The rent went to one of

Shant's defunct companies, which did not report the income either.  The United States asserts

based on these facts that the VSHPHH Trust is Shant Hovnanian's nominee, and it seeks to

enforce federal tax liens against the Village Mall to collect on Shant's $16 million tax liability.

The VSHPHH Trust does not contest these facts in its motion for summary judgment.

The parties also agree that if the United States can show the VSHPHH Trust was Shant's

nominee or alter ego, then the United States will be able to foreclose its federal tax liens against

the Village Mall.

At its heart, the Pachava Trust's arguments revolve around a single point: the Pachava

Trust cannot be Shant's nominee or alter ego if he did not place the property into the trust for the

---

[1] This case involves several members of the Hovnanian family.  Following this Court's past
practice, the United States will refer to members by their first name after their first mention.

purpose of evading taxes.  This Court rejected this direct transfer theory at the motion-to-dismiss stage.  The VSHPHH Trust offers no new facts or law to justify a different result.

The VSHPHH Trust's motion for summary judgment is also defective on several fronts. It asserts the United States needed to bring a fraudulent-transfer action without explaining why a ruling that the VSHPHH Trust is Shant's nominee or alter ego would be insufficient.  A fraudulent-transfer action, however, is unnecessary because a finding that the VSHPHH Trust is Shant's nominee or alter ego means the property is his, and the United States can foreclose federal tax liens against the Village Mall.  *E.g.*, *United States v. Balice*, 2017 WL 3420918, *12 (D.N.J. Aug. 9, 2017).  Contrary to Fed. R. Civ. P. 56 and Local Rule 56.1, the VSHPHH Trust asserts many of its facts without support, and many of its facts are simply legal arguments or commentary on the weight of witnesses' testimony.  Thus, the United States asks that the Court deny VSHPHH Trust's motion for summary judgment.

## ARGUMENTS

## I.  The Nominee And Alter Ego Doctrines Do Not Require a Direct Transfer.

A federal tax lien reaches a taxpayer's property or right to property.  26 U.S.C. § 6321. The nominee and alter ego doctrines recognize that a taxpayer cannot defeat the tax lien by hiding their property with a third party.  *United States v. Patras*, 544 F. App'x 137, 140–41 (3d Cir. 2013); *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977).  This doctrine must be flexible as taxpayers – like Shant – are crafty.  *E.g.*, *In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999) (the nominee test is not applied "rigidly" or "mechanically"); *Magesty Sec. Corp. v. IRS*, 2012 WL 1425100, *4 (S.D.N.Y. April 24, 2012) (courts must "avoid an over-rigid preoccupation with questions of structure, and apply the preexisting and overarching principle that liability is imposed to reach an equitable result") (quoting *LiButti v. United Sta*tes, 107 F.3d 110, 119 (2d Cir. 1997)).

This Court has held twice before "property should be construed as belonging to the taxpayer if he/she treated and viewed the property as his/her own, in spite of the legal machinations employed to distinguish legal title to the property." *United States v. Hovnanian*, 2022 WL 909868, *3 (D.N.J. Mar. 29, 2022) (dkt. 112); *United States v. Hovnanian*, 2019 WL 1233082, *3 (D.N.J. Mar. 18, 2019) (dkt. 24). Shant acted like the owner of the Village Mall, taking all the rent for himself, ignoring his co-trustee and his fiduciary obligation as well as any other legal formalities. The VSHPHH Trust tries to ignore this fact because the people involved were family members, including his co-trustee. But this argument asks the Court to ignore Shant and his family's machinations and to consider only the formal chain of title. But that elevates form over substance. In the nominee and alter-ego analysis, it is the substance and not the form that matters. *E.g.*, *In re Richards*, 231 B.R. at 580–81 ("[I]n intra-family transfers where little heed is paid to legal formalities" one consequence is the IRS may foreclose on property held in a trust acting as a nominee or alter ego).

### A. The VSHPHH Trust's Nominee Analysis Fails.

The parties agree the nominee standard is evaluated under the six-factor *Patras* test. (Opp. Br., p. 26.) In *Patras*, the Third Circuit held the factors are: "(1) whether the nominee paid adequate consideration for the property; (2) whether the property was placed in the nominee's name in anticipation of a suit or other liabilities while the taxpayer continued to control . . . the property; (3) the relationship between the taxpayer and the nominee; (4) the failure to record the conveyance; (5) whether the property remained in the taxpayer's possession; and (6) the taxpayer's continued enjoyment of the benefits of the property." *Patras*, 544 F. App'x at 141.

The VSHPHH Trust's argument rests on the assertion that "if the taxpayer did not contribute the property at issue to the … nominee, then there can be no nominee liability." (Opp. Br., p. 27.) This argument runs contrary to the flexible nature of the nominee standard, leaving

3

crafty taxpayers like Shant with an opening to defeat enforcement of the federal tax lien.  It also strays from this Court's earlier holdings, and the ruling of other courts of appeals that considered and rejected this direct-transfer argument.

While discussing the *Patras* factors, this Court held the VSHPHH Trust made "hay of the fact that Defendant Shant did not contribute either property to [the trust], but the Third Circuit's test for nominee liability ponders 'whether the property *was placed* in the nominee's name in anticipation of a suit,' *not* 'whether the *defendant-taxpayer* placed the property in the nominee's name in anticipation of a suit.'" *Hovnanian*, 2019 WL 1233082, *5 (emphasis in original) (quoting *Patras*, 544 F. App'x at 141–42).  The VSHPHH Trust gives no valid reason for reexamining this argument or reaching a different result.  *See Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191, 207 (3d Cir. 2010) (parties must show "extraordinary circumstances" to justify a court revisiting a prior ruling of law).

The same logic that this Court applied to the second *Patras* factor applies equally to the fifth and sixth *Patras* factors.  These factors look at whether the taxpayer "retained" possession or "continued" to enjoy the benefit of the property.  *Patras*, 544 F. App'x at 141–42.  Neither factor requires a direct transfer, as the VSHPHH Trust asserts.  Rather, courts look at the taxpayer's actions after legal title transfers to the nominee to see if the putative nominee or the taxpayer is acting as the owner.

Similarly, the VSHPHH Trust cherry-picks statements to support its direct-transfer theory, ignoring inconvenient facts or procedural history.  For example, the VSHPHH Trust cites the *Nassar* district court opinion.  (Opp. Br., p. 26, *citing United States v. Nassar*, 2014 WL 5822677, *5 (S.D.N.Y. 2005).)  There, a taxpayer bought an apartment and immediately transferred it to a trust, which the court held was a nominee.  *Id*.  The district court said a

4

nominee standard could apply in a case in which the property was "placed" into the hands of a nominee. *Id.* The VSHPHH Trust draws from the court's use of the word "placed" that the only time there can be a nominee is when the taxpayer is a transferor. (Opp. Br. p. 27.)

But the VSHPHH Trust fails to note that when *Nassar* was before the Second Circuit, the court of appeals considered and rejected the VSHPHH Trust's direct-transfer argument.[2] *United States v. Nassar*, 699 F. App'x 46, 48 (2d Cir. 2017). The Second Circuit held that "[e]ven if we were to accept the unsubstantiated contention that [the taxpayer] never intended to personally hold title to the apartment, we would conclude that, under the totality of the undisputed circumstances, [the taxpayer] is the beneficial owner of the apartment and the Trust is his bare legal title-holding nominee." *Id.* The Second Circuit emphasized that control over the property is the key concern, not the specific path the title took to reach the trust.

The Second Circuit is not alone: other courts of appeals have also rejected the direct-transfer rule or have affirmed district court decisions rejecting this rule. For example, the Tenth Circuit held "[a]lthough in many instances the delinquent taxpayer will have transferred legal title to a third party, an actual transfer of legal title [by the taxpayer] is not essential to the imposition of a nominee lien." *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007); *see United States v. Burnett*, 2010 WL 3941906, *7 (S.D. Tex. Oct. 7, 2010) ("While nominee status may be found when a taxpayer owns the property at issue and then transfers that property, it is incorrect to conclude that nominee status exists *only* in that situation."), *aff'd*, 452 F. App'x 569 (5th Cir. 2011). Just like it did before, this Court should rule consistently with this authority and reject the proposed direct-transfer rule.

---

[2] The VSHPHH Trust cited the Second Circuit *Nassar* decision in its reply in support of its motion to dismiss, making its failure to do so here curious. (Dkt. 22, VSHPHH Reply Br., p. 10 n.7.)

In short, without the direct-transfer rule, the VSHPHH Trust's motion for summary judgment fails. Indeed, its entire analysis simply repeats some variant of this argument in analyzing the factors or just ignores the facts present in this case.

Three additional *Patras* factors warrant discussion. In the third *Patras* factor, the Court looks at the relationship between the taxpayer and the nominee, the VSHPHH Trust ignores this test, and asserts the factor should look at the relationship between the "transferor" and the nominee. (Opp. Br., p. 27.) This attempted sleight of hand to rewrite the words of the Third Circuit's opinion cannot succeed unless the Court accepts the direct-transfer rule.

Examining the third *Patras* factor (the relationship between the taxpayer and nominee), Shant dominated the Village Mall. From the moment the legal title was placed into the VSHPHH Trust, Shant exercised exclusive control over the Village Mall and ignored the VSHPHH Trust. (USA SOUF, ¶ 14, 66-94.) He treated the Village Mall as his own, taking all the rental income and commingled it with his other companies. *Id*. He paid expenses as they came due for Village Mall from bank accounts under his control that had nothing to do with the VSHPHH Trust. *Id*. These expenses included personally paying over $200,000 in real estate taxes from his personal funds. *Id*. ¶ 90.

The VSHPHH Trust had two trustees. The trustees needed to act unanimously. Restatement (Third) of Trusts, §§ 39, 81; *see, e.g.*, *Merrill Lynch Pierce Fenner & Smith, Inc. v. Nora-Johnson*, 797 A.2d 226, 228 (N.J. Super. App. Div. 2002). Nina – Shant's sister and co-trustee – admitted she did not manage the VSHPHH Trust. (USA SOUF, ¶¶ 66, 70, 72, 73, 74.) Nina conceded that she did not even begin to "learn the ropes" of the VSHPHH Trust until Shant resigned in late 2017. *Id*., ¶¶ 72-73. Indeed, the VSHPHH Trust never filed a tax return, and when pressed it testified that it did not consider the rental income generated from the Village

Mall to be the Trust's income.  (Dkt. 123-4, VSHPHH Trust Dep., Vol 1., p. 125:5-22.)  Instead, the VSHPHH Trust considered the rental income to be one of Shant's defunct entities (HovSat, Inc.).  *Id.*  These facts indicate the relationship between Shant and the VSHPHH Trust indicates the VSHPHH Trust was simply Shant's nominee.

Under the fifth and sixth *Patras* factors (continuing possession and enjoyment), the VSHPHH Trust asserts Shant did not possess or enjoy the property before the transfer of title to the VSHPHH Trust in in 2015, so he cannot have continued to do so.  (Opp. Br., p. 28.)  This assertion is just a retooling of the direct-transfer rule.

While not binding, this Court already said that it would weigh "heavily" in favor of finding a nominee if the United States can show: (1) "Shant receives rental income from the Village Mall Property and pays both its municipal taxes and utility bills[,]" and (2) Shant tried to hide ownership by having tenants "make rental payments directed to his father—even after his father passed away—which were then deposited into a bank account controlled by Shant." *Hovnanian*, 2019 WL 1233082, *5.[3]  The United States has made this showing in its own motion.  (USA SOUF ¶¶ 59-60, 66-73, 94.)  The VSHPHH also concedes for purposes of its motion that Shant took the rent and paid the expenses for the VSHPHH Trust.  (Opp Br., p. 24.)  The Court should accordingly deny the VSHPHH Trust's motion for summary judgment and grant the United States' motion.

---

[3] The VSHPHH Trust asserts the United States claimed that Shant lived at the Village Mall, and that this contention does not create an ownership interest.  (Opp. Br., pp. 24-25.)  Not so.  The United States alleged that Shant told a Revenue Officer that he resided at the Village Mall in 2016 to hide he was living at 520 Navesink River Road, which is another Shant property held in the name of another trust.  (Compl. ¶ 26 ("Shant Hovnanian has taken steps to hide his ownership of the 520 Navesink . . . .")  The parties apparently agree that Shant lied to the Revenue Officer to conceal where he was residing.

**B.  The VSHPHH Trust's Alter Ego Analysis Fails.**

The VSHPHH Trust spends a significant portion of its brief separately analyzing the alter ego and nominee standards.  Yet VSHPHH Trust has not shown – and cannot show – that it is entitled to judgment as a matter of law on either point.  And it must show it can do so under both standards to be entitled to judgment.

"Under the nominee theory, the Government may levy upon only those assets to which a third party holds legal title, but from which the delinquent taxpayer enjoys the true beneficial ownership." *United States v. Bogart*, 715 F. App'x 161, 166 n.4 (3d Cir. 2017) (quoted in *Hovnanian,* 2019 WL 1233082, *4 n.4).  "Under an alter ego theory, however, the Government may seize all of the assets of an alter ego [entity] if the separate entity is merely a sham."  *Id*. These analyses are distinct, but the distinction has "no bearing" if a single piece of property is at issue.  *Id*.

As this Court noted, to prove an alter-ego relationship exists, the United States must show that the trust was a "mere instrumentality" of the defendant, so that "liability generally is imposed only when the [defendant] has abused the privilege of incorporation by using the [trust] to perpetrate a fraud or injustice, or otherwise to circumvent the law."  *Hovnanian,* 2019 WL 1233082, *4 (quoting *Shotmeyer v. N.J. Realty Title Ins. Co*., 948 A.2d 600, 608 (N.J. 2008) (quoting *Dep't of Envtl. Prot. v. Ventron Corp*., 468 A.2d 150 (N.J. 1983)).

A "mere instrumentality" has no real "separate existence but . . . [is] merely a conduit." *Vegas Sands Corp. v. Ace Gaming, LLC*, 713 F. Supp. 2d 427, 444 (D.N.J. 2010) (*quoting State Dept. of Envtl. Prot. v. Ventron Corp*., 94 N.J. 473, 500, 468 A.2d 150 (1983).  The undisputed facts show the VSHPHH Trust had no real separate identity.  It just held legal title.  Shant acted as the Village Mall's owner, making all the decisions and taking all the rent for himself.  Further, it would be an injustice to allow a taxpayer like Shant to avoid using his assets to pay a

$16 million federal tax liability because his assets happen to be in the name of an entity that he

ignores.  *See Coppa v. Tax'n Div. Dir.*, 8 N.J. Tax 236, 245 (1986) (A "guiding principle [of the

alter ego doctrine] is the protection of the government against evasion of taxes by the formation

of a corporate paper entity."); *United States v. Scherping*, 187 F.3d 796, 801, 804 (8th Cir. 1999)

("[T]here are strong policy reasons for reverse piercing the corporate veil in the present case, that

is, avoiding fraud and collecting delinquent federal taxes."); *Towe Antique Ford Found. v.

Internal Rev. Serv'c.*, 999 F.2d 1387, 1393 (9th Cir. 1993) (holding injustice prong can be

satisfied if an entity is used to avoid the collection of taxes).

The VSHPHH Trust asserts that here there could not be fraud or injustice because the

VSHPHH Trust was part of the "estate planning" of Shant's parents.  The VSHPHH Trust has

produced no admissible evidence of this estate planning, precluding its consideration.  Even still,

saying "estate planning" is no panacea.  The relevant inquiry is how a taxpayer uses the trust

over time.  *See*, *e.g.*, *United States v. Evseroff*, 270 F. App'x 75, 77 (2d Cir. 2008); *In re

Richards*, 231 B.R. 571, 580 (E.D. Pa. 1999).  For example, in *Richards*, the Richards' placed

their residence into a trust as part of estate planning.  *In re Richards*, 231 B.R. at 570.  Much like

Shant, the Richards did not respect the trust.  In the end, the Court held "[t]he Richards'

unequivocal actions here speak louder than their assertions and are consistent with a

determination that the Richards viewed and treated the home as their own."  *Id*. at 580.  As a

result, the bankruptcy court held the property was theirs as either a nominee or alter ego, which

the district court affirmed under a nominee theory.  *Id*.

The VSHPHH Trust also tries to assert an alter ego can only exist if it is created for an

illegal purpose (allowing a trust to escape the alter-ego analysis if it is later used for fraud or

injustice after it is formed).  It cites exclusively to New York law for the proposition that the

trust must be formed for an illegal purpose, just like it did when it moved to dismiss and asserted New York law applied.  (Opp. Br., p. 18.)  But the VSHPHH Trust also concedes New Jersey law applies, which this Court already held in 2019.  *Id.*, *citing Hovnanian*, 2019 WL 1233082, *4.

Again, that argument fails under its own weight.  The VSHPHH Trust cites no case in this jurisdiction to support its illegal-purpose argument.  *Id*.  The Second Circuit, applying New Jersey law, noted that if a taxpayer "dominates or controls" an alter ego or nominee, then that taxpayer cannot "escape his tax liabilities" based on an "over-rigid" analysis.  *LiButti*, 107 F.3d at 109.  Limiting the alter-ego analysis to just scenarios where a trust was created for an improper purpose (and not one that was used for that purpose) would conflict with this more flexible rule.[4]

Finally, the VSHPHH Trust's remaining arguments consist solely of cherry-picking from various cases, just as it did during the motion-to-dismiss stage.  The VSHPHH Trust relies heavily upon *United States v. Greer*, 383 F. Supp. 2d 861, 867-868 (W.D.N.C. 2005), to support the legal contention that no alter-ego situation could occur if the taxpayer does not create the trust.  (Opp. Br., pp. 21-22.)  In *Greer*, a mother of a taxpayer transferred property to a trust. *Greer*, 383 F. Supp. 2d at 865-866. The taxpayer was named as the trustee and was also one of several beneficiaries of the trust.  *Id.* The United States asserted that the taxpayer acted as more than just a trustee or beneficiary.  *Id*., at 864.  After a trial, the Court found the taxpayer's actions generally fell within his role as a trustee and beneficiary, and he did not prevent "other

---

[4] The VSHPHH Trust is also misstating New York law, which does not require the trust itself to be created for a subjectively illegal purpose.  *Evseroff*, 270 F. App'x at 77 (holding under New York law that the "critical issue in resolving a nominee or alter ego claim is not motive, but control" to commit a fraud or other wrongful act.)

beneficiaries from using the property." *Id*.  This case is readily distinguishable.  Shant – who is not a beneficiary and who ignored his co-trustee – took every dime of rental income for himself, using it for his own benefits either personally or for his business ventures.  (USA SOUF ¶¶ 67-78, 85-86.)  He also used the second floor for his own purposes, rent free.  (USA SOUF ¶¶ 15, 20-21.)  The VSHPHH Trust has not and cannot come forward with any evidence that would contradict this assertion.

As another example, the VSHPHH Trust also cites to *Don Gastineau Equity Trust v. United States*, 687 F. Supp 1422, 1425 (C.D. Cal. 1987) for the proposition that paying expenses is only evidence of ownership if the taxpayer previously owned the property.  (Opp. Br., p. 23.)  In *Don Gastineau*, a taxpayer transferred property to a sham trust.  *Don Gastineau*, 687 F. Supp. at 1425.  One factor the court considered was that the taxpayer continued paying expenses related to the property as evidence that the taxpayer "retained the complete, unrestricted beneficial use of the real property." *Id*., p. 1425. The court did not hold that evidence of the payment of expenses can only be used in a case in which the taxpayer was the prior owner; it merely was the way the court characterized the facts in a case involving a direct transfer.  In short, the VSHPHH Trust is taking language from *Don Gastineau* out of context.

In the end, Shant abused the ability to have VSHPHH Trust hold legal title for his property.  He used the Village Mall for his exclusive benefit, not the beneficiaries'.  His co-trustee, who was the mother or aunt of the beneficiaries, simply let him.  Shant cannot have this property be his own except when it comes to paying his $16 million tax liability.  The Court should accordingly deny the Trust's motion for summary judgment.

## II.  The VSHPHH Trust's Remaining Arguments Fail.

The VSHPHH Trust offers a mishmash of additional arguments throughout its brief. None of these arguments should preclude the United States from a declaration that the federal tax lien attaches to the Village Mall.

### A.  The VSHPHH Trust's Assertion that The United States Did Not Try To Collect From Shant In Its Usual Course Is Both Irrelevant And Wrong.

The VSHPHH Trust asserts the United States did not "seek to collect from [Shant] through the 'usual' methods of bank and investment account levies or other collection but rather immediately sought to impose Nominee Liens."  (Opp. Br., p. 10.)  It asserts the IRS' filing of a notice of federal tax lien, and this action to collect a $16 million tax liability somehow "defy logic."  *Id*. at 12.

The VSHPHH Trust fails to explain the legal significance of this argument or how collecting tax liability from a taxpayer's assets is illogical.  The VSHPHH Trust's statement is also factually incorrect.  The United States did seek to levy Shant's assets.  Though Shant had no bank accounts in his own name, the IRS successfully levied bank accounts Shant hid under the name of his companies (SpeedUS.)

The VSHPHH Trust's argument also shows it does not understand the nature of a federal tax lien.  A federal tax lien arises upon assessment of a tax and attaches to a taxpayer's property and rights to property.  26 U.S.C. §§ 6321-6322; *United States v. Nat'l Bank of Comm.*, 472 U.S. 713, 719–20 (1985).  If the VSHPHH Trust is declared to be Shant's nominee or alter ego, it is a recognition that the lien attached by operation of law as the Village Mall is really Shant's property.  The filing of a notice of federal tax lien is not necessary to create the lien and it only provides notice and priority against certain specified interests, such as a judgment lien creditor, security interest holder, and mechanics lienor.  26 U.S.C. § 6323(a); *see, e.g.*, *United States v.*

12

*Tyler*, 528 F. App'x 193, 198 (3d Cir. 2013).  Thus, the VSHPHH Trust's assertions about the

IRS' filing of a notice of federal tax lien does not affect the nominee relationship or the outcome.

### B. The United States Did Not Need To Bring A Fraudulent-Transfer Action.

The VSHPHH Trust asserts – with no support – that the United States is bringing a

fraudulent-transfer action.  (Opp. Br., p. 13.)  The United States did not bring a fraudulent-

transfer action in its Complaint.  (Dkt. 1.)  More importantly, it did not need to do so.

"While related, the concepts of 'nominee[,'] 'transferee[,'] and 'alter ego' are

independent bases for attaching the property of a third party in satisfaction of a delinquent

taxpayer's liability."  *E.g.*, *Oxford Cap. Corp. v. United States*, 211 F.3d 280, 284 (5th Cir.

2000).  While a nominee has "true beneficial ownership of property," a fraudulent transfer seeks

to avoid a transfer made to generally hinder, delay, or defraud creditors.  *Id*.  Because the United

States can enforce its liens properly held by a nominee or alter ego, there was no need to bring a

fraudulent-transfer action here to enforce its tax lien.[5]

### C. The VSHPHH Trust's Efforts to Muddy the Record Fail.

The VSHPHH Trust's final ploy is to make baseless assertions that there may be

problems with the United States' evidence and to make factual assertions that lack proper

support.  These tactics should be ignored.

First, the VSHPHH Trust asserts the United States' expert witness gave an opinion that is

"littered with legal conclusions."  (Opp. Br. 11.)  The VSHPHH Trust provides no specific

examples or any analysis to say why this assertion matters.

---

[5] The VSHPHH Trust also asserts the time to bring a fraudulent transfer has lapsed.  The United States is not bound by the state-law statute of limitation.  *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *Patras*, 544 F. App'x at 143.

An expert witness may provide opinion testimony if it will "help the trier of fact to understand the evidence or to determine a fact." Fed. R. Evid. 702(a).  An expert witness cannot make a legal argument, but she can address relevant issues even if those issues are the ultimate issue in a case.  Fed. R. Evid. 704; *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *Pfizer, Inc. v. Teva Pharms. USA, Inc*., 2006 WL 3041097, *2 (D.N.J. Oct. 26, 2006).

The United States' expert witness is forensic accountant Jessica Hollobaugh, CPA/ABV, CFE.  The VSHPHH Trust does not point out a single flaw in her analysis or challenge her qualifications to testify.[6]  To briefly respond to this makeweight argument, Hollobaugh provided an admissible expert analysis despite the VSHPHH Trust's bare statement to the contrary.  (Dkt. 123-11, Ex. 104.)  Shant used multiple bank accounts to pay personal expenses and to otherwise hide his control over several business entities, including the Village Mall.  *Id*., pp. 37-48; Ex. K. She examined the flow of funds between these multiple accounts, finding nothing went to the VSHPHH Trust.  *Id*.  She also provided examples in which Shant used rental income as he saw fit.  *Id*.  These are factual analyses that a forensic accountant like Hollobaugh can provide to assist the trier of fact by showing Shant received the benefits and bore the expenses of the Village Mall, and the VSHPHH Trust never explains why this helpful analysis is an improper legal one.

Second, the VSHPHH Trust's statement of facts violates the summary judgment standards in multiple ways.  Many of the statements lack any citations to supporting evidence, violating both Local Rule 56.1 and Fed. R. Civ. P. 56(c)(1), which means they cannot be considered for this motion.  *See, e.g., Fraternal Ord. of Police, Lodge 1 v. City of Camden*,

---

[6] "It is not the Court's responsibility to sift through the record in order to make [the VSHPHH Trust's] arguments for [it]."  *E.g., Bernard v. Webb-McRae*, 2020 WL 1329934, *2 (D.N.J. Mar. 23, 2020).

842 F.3d 231, 238 (3d Cir. 2016).  In addition, several statements, which are identified in the United States' response, are based on inadmissible hearsay that could not be admitted at trial and thus cannot be considered on summary judgment.  *Id*.  Several purported statements of fact are also just legal arguments, violating Local Rule 56.1(a).

Third, the VSHPHH Trust asserts the United States should have deposed Shant rather than Nina as its representative.  (Opp. Br., p. 12.)  It asserts Nina had no personal knowledge or familiarity about the transfer of the Village Mall.  *Id*.  But Nina was the deponent that the VSHPHH Trust selected for the deposition taken under Federal Rule of Civil Procedure 30(b)(6).  The VSHPHH Trust designated her to testify under Rule 30(b)(6), so her "lack of knowledge" is not the shield the trust claims it is.  The VSHPHH Trust needed to put forward a witness who could testify about the "information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  The VSHPHH Trust did not do so, and it refused to cooperate afterward (for example, by putting forward Shant as a witness).  *Hovnanian*, 2022 WL 279835, *9.

Nina's lack of knowledge and refusal to cooperate led the Court to sanction the VSHPHH Trust with a preclusion order.  The Court held that "[n]ot only was Defendant Nina not prepared . . . , but the Trusts have not offered any reason for the lack of preparation. They have simply continued to advocate that it is up to the Government to find other witnesses to answer their questions.  In doing so, they have completely ignored the obligations imposed by a Rule 30(b)(6) notice."  *Id*.  To grant summary judgment in whole or in part on the notion that the United States should have obtained evidence from Shant but failed to do so would nullify this Court's sanction order and turn Rule 30(b)(6) on its head.

**CONCLUSION**

The VSHPHH Trust's motion for summary judgment should be denied.


Date: June 7, 2022,

<div style="margin-left: 50%;">

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division

*/s/ Ari D. Kunofsky*
ARI D. KUNOFSKY
JOSHUA D. ZIMBERG
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044
Telephone: (202) 353-9187
Facsimile: (202) 514-6866
Email: Ari.D.Kunofsky@usdoj.gov

</div>