ARI D. KUNOFSKY
JOSHUA D. ZIMBERG
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044
Telephone: (202) 353-9187
Facsimile: (202) 514-6866
Email: Ari.D.Kunofsky@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SHANT HOVNANIAN, *et al*., )<br>)<br>Defendant. )<br>_____ ) | No. 3:18-cv-15099-ZNQ-LHG |

**UNITED STATES' RESPONSE TO DEFENDANT VSHPHH TRUST'S
STATEMENT OF MATERIAL FACTS**

The United States responds to the Pachava Trust's statement of material facts as follows

under Fed. R. Civ. P. 56 and Local Rule 56.1(a).

**ADDITIONAL SUPPLEMENTAL FACTS**

The United States incorporates by reference its own statement of material facts, as well as

the accompanying exhibits and deposition transcripts.  (Dkt. 123.)  In addition, rather than

restating, the United States will incorporate from its own statement of material facts (dkt. 123-1)

when appropriate and will reference them throughout as "USA SOUF."

## RESPONSE TO STATEMENT OF MATERIAL FACTS

1. Ms. Hovnanian is the daughter of Vahak and Paris Hovnanian and the sister of Mr. Shant Hovnanian.

**Response:**  Undisputed.

2. Ms. Hovnanian is the current trustee of the Pachava Asset Trust and the VSHPHH Trust (sometimes hereinafter referred to as the "Trusts").

**Response:**  Undisputed.

3. Ms. Hovnanian's predecessors in that role included her former sister-in-law and a cousin. At one time, Ms. Hovnanian served as co-trustee of the VSHPHH Trust with Mr. Shant Hovnanian.

**Response:**  The United States disputes as to the VSHPHH Trust.  The trustees of the VSHPHH Trust were Shant Hovnanian and Nina Hovnanian.  (Dkt. 123-21, Ex. 114, VSHPHH Trust Agreement, p. 1.)  Nina admitted she may have been named as co-trustee when the VSHPHH Trust was formed on January 1, 2015, but she did not actually act as a trustee until Shant allegedly resigned as trustee at some unspecified point in 2017.  (Dkt. 123-1 SOUF ¶¶ 57, 61-63, 66, 70-74.)

The United States objects that the Pachava Trust is generally not relevant to this motion. Otherwise, undisputed.

4. Ms. Hovnanian works with her family's bookkeeper to maintain and administer the Pachava Asset Trust and the VSHPHH Trust.

**Response:**  The United States disputes that Karen Gandolfo maintained or administered the VSHPHH Trust or Pachava Trust.  Gandolfo is a SpeedUS employee who had a role as either Shant's secretary or bookkeeper. (Dkt. 123-4, VSHPHH Dep., Vol. I, pp. 33:24-34:11.) Gandolfo has been paid from several entities under Shant's control. (Ex. 123-11, Ex. 104 Hollobaugh Exp. Report, p. 44.)

As to the VSHPHH Trust, the United States disputes this statement.  There was no management of the VSHPHH Trust.  The VSHPHH Trust had no record of financial statements, contracts, ledgers, or tax returns.  (USA SOUF ¶ 75.)  Shant simply took the rental income from the Office Complex[1] (the VSHPHH Trust's only income producing asset) and deposited it in one of a company he controlled, HovSat, Inc.  (USA SOUF ¶¶ 75-84.)  HovSat is a defunct New Jersey corporation that Shant continued to use to try to disguise his activities.  *Id*. at ¶¶ 24-35. Gandolfo happened to have signature authority over HovSat's bank account, but Shant controlled HovSat.  *Id*. ¶¶ 36-39.  Gandolfo said she simply treated the VSHPHH Trust and HovSat as one in the same and that simply followed Shant's directions for the HovSat account.  *Id*. ¶ 40.  Shant could use the funds as he saw fit, including paying personal or household expenses.  *Id*. ¶¶ 34, 71.  Further, the VSHPHH Trust's bare assertion that Gandolfo acted as a manager is insufficient given that it refused to state during its Rule 30(b)(6) why a secretary or bookkeeper could be managing this trust or what her specific role was.  (*E.g*., Dkt. 123-4, VSHPHH Dep., Vol. I, pp. 33:24-34:11.)

---

[1] The property at issue 1 Dag Hammarskjold Boulevard, a two-story building with several offices.  The United States has called this property the Village Mall in its briefs and motions.  In this Statement of Undisputed Facts, the VSHPHH Trust calls the property an "Office Complex." The United States will use the Office Complex in this response.

As to the Pachava Trust, the United States objects that Gandolfo's role is not relevant. If a response is required, Gandolfo did not testify that she managed the Pachava Trust, the real property, or the Pachava Trust's sole bank account. Instead, she took instructions from Shant regarding the house. (Dkt. 122-7, Gandolfo Dep., pp. 74:7-10 (Q. "[S]o when Shant said pay this house expense, you'd say okay? A. Well, yes. What else am I supposed to say?").). Gandolfo admitted she could not testify about whether the Pachava Trust received funds from particular accounts. *Id*., p. 52:15-21. She had no access to the Pachava Trust bank accounts. *Id*. And she further testified that she would follow Shant's instructions even when she knew she was commingling trust funds. *Id*., pp. 73:3-74:10. Being Shant's secretary and making payments, as Shant generally instructed does not rise to the role of a manager or administrator.

5. That bookkeeper, Karen Gandolfo, worked for the family in their home construction business for nearly thirty (30) years. The Hovnanian family of builders began their business as an effort to provide value to potential homeowners in the mid-priced real estate marketplace. The Hovnanian brothers are first generation immigrants from Baghdad, Iraq, with a history surrounding the Armenian Genocide in 1915, and made a life in the United States. They are a very close family. This matters because it matters, but also to allow the Court to understand that the family home held by the VSHPHH Trust was intended to be passed on to Vahak and Hasmig (Paris) Hovnanian's grandchildren and that the objective of any transfers to trust was to accomplish assurances that the grandchildren would be provided for in their estate planning.

**Response:** The United States disputes that Karen Gandolfo maintained or administered the VSHPHH Trust. Gandolfo is SpeedUS employee, who had a role as either Shant's secretary or bookkeeper. (Dkt. 123-4, VSHPHH Dep., Vol. I, pp. 33:24-34:11.) Gandolfo has been paid from several entities under Shant's control. (Ex. 123-11, Ex. 104 Hollobaugh Exp. Report, p. 44.)

The United States also objects to the relevance of this statement as the VSHPHH Trust never held a family home as one of its assets. (Dkt. 123-4, VSHPHH Dep., pp. 53:20-54:13.) It

is undisputed that the legal title to 520 Navesink (presumably the family home referenced in this paragraph) is owned by the Pachava Trust.  *E.g.*, Stmt. ¶ 22, below.

The United States also objects to any assertion that the property actually at issue in this motion was transferred for "estate planning" purposes.  The parties agree also that Nina does not have "familiarity or knowledge with respect to the transfer of the Properties to the Trusts." (Stmt. ¶ 27, below.)

6. In furtherance of their estate planning objectives to equalize assets to maximize the use of the unified credit and to provide for their grandchildren, on September 28, 2007, on January 1, 2015, Vahak S. Hovnanian and Paris H. Hovnanian a/k/a Paris H. Hovnanian transferred title to the real property located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey to the VSHPHH Trust, which was recorded on January 31, 2015. (Exhibit "A").

**Response:** The United States admits the transfer purports to have occurred on January 1, 2015. The deed transferring title was not recorded until July 31, 2015.  (Ex. A.)

The United States disputes the "estate planning purpose" for the reasons asserted in paragraph 5, above.

7. The VSHPHH Trust holds legal title to the real property located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey.

**Response:** Undisputed.

8. The VSHPHH Trust has not conveyed any legal or equitable title to the real property located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey to any other individual, individuals, or legal entity since July 1, 2015.

**Response:** The United States does not dispute this statement as to recorded conveyances.  The United States disputes the implication that Shant is not the equitable owner of the property as the VSHPHH Trust is his nominee or alter ego.

9. The United States filed and refiled several notices of federal tax liens that were recorded in the Office of the County Clerk of Monmouth County against Mr. Shant Hovnanian for his purported unpaid federal income taxes as follows:

**Response:** Undisputed.

10. On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "Shant S. Hovnanian Asset Trust, as nominee of Shant Hovnanian", Serial No.: 271810382, attaching to the real property located at 520 Navesink River Road, Middletown, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86;

**Response:** Notice of federal tax liens filed against the Shant S. Hovnanian Asset Trust are not

relevant to the VSHPHH Trust.  Otherwise, undisputed.

11. On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "Pachava Asset Trust, as nominee of Shant Hovnanian", Serial No.: 271810381, attaching to the real property located at 520 Navesink River Road, Middletown, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86:

a. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on September 26, 2018;

b. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2018;

c. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 12, 2018;

d. On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only
with respect to the tax period ended December 31, 2007, in the amount of $18,452.57.
That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019;

**Response:** Notice of federal tax liens filed against the Pachava Asset Trust are not relevant to the

VSHPHH Trust.  Otherwise, undisputed.


12. On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the
Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant
Hovnanian", Serial No.: 271810383, attaching to the real property located at 1 Dag
Hammarskjold Boulevard, Howell Township; New Jersey, regarding the tax periods ended
December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the
amount of $14,243,835.86:

a. September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with
respect to the tax periods ended December 31, 2002, and December 31, 2003, in the
amount of $11,276,611.01. That Notice was recorded in the Monmouth County

b. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only
with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the
amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's
Office on October 1, 2018;

c. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only
with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the
amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's
Office on October 12, 2018;

d. On September 11, 2019, a Notice of a Federal Tax Lien Refile was prepared but only
with respect to the tax period ended December 31, 2007, in the amount of $18,452.57.
That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019;

**Response:** Undisputed.

13. On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810384, attaching to certain real property located at 124 Wemrock Road, Freehold Township, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86:

> a. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on September 26, 2018;

> b. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2018;

> c. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 12, 2018;

> d. On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of $18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019;

**Response:** Notice of federal tax liens filed against the 124 Wemrock property are not relevant to this litigation, as the United States is not seeking to foreclose its liens against it.  Otherwise, undisputed.

14. On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810385, attaching to the real property located at 7 Highway 33, Manalapan Township, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86;

      a. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on September 26, 2018;

      b. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2018;

      c. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 12, 2018;

      d. On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of $18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019;

**Response:** Notice of federal tax liens filed against the 7 Highway 33 property are not relevant to this litigation, as the United States is not seeking to foreclose its liens against it.  Otherwise, undisputed.

15. On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810386, attaching to the real property located at Shafto Road, Borough of Tinton Falls, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86:

> a. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on September 26, 2018;

> b. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2018;

> c. On September 25, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 12, 2018;

> d. On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of $18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019;

**Response:** Notice of federal tax liens filed against the Shafto Road property are not relevant to this litigation, as the United States is not seeking to foreclose its liens against it.  Otherwise, undisputed.

16. On January 16, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810389, attaching to the real property located at Wyckoff Mills Road, Howell Township, New Jersey, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,243,835.86;

    a. On October 2, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 4, 2018;

    b. On October 2, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,61 1.01. That Notice was recorded in the Monmouth County Clerk's Office on October 10, 2018;

**Response:** Notice of federal tax liens filed against the Wyckoff Mills property are not relevant to this litigation, as the United States is not seeking to foreclose its liens against it. Otherwise, undisputed.

17. On May 3, 2018, a Notice of a Federal Tax Lien was filed and recorded in the Monmouth County Clerk's Office against the "VSHPHH Trust, as Nominee of Shant Hovnanian", Serial No.: 271810479, attaching to any interest in VEC Realty LLC, regarding the tax periods ended December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2007, in the amount of $14,244,335.86:

    a. On October 2, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 4, 2018;

    b. On October 2, 2018, a Notice of a Federal Tax Lien Refile was prepared but only with respect to the tax periods ended December 31, 2002, and December 31, 2003, in the amount of $11,276,611.01. That Notice was recorded in the Monmouth County Clerk's Office on October 10, 2018; and

c. On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of$18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019.

**Response:** Notice of federal tax liens filed against the VEC Realty property are not relevant to this litigation, as the United States is not seeking to foreclose its liens against it.  Otherwise, undisputed.

18. On September 11, 2019, a Notice of Federal Tax Lien Refile was prepared but only with respect to the tax period ended December 31, 2007, in the amount of $18,452.57. That Notice was recorded in the Monmouth County Clerk's Office on October 1, 2019.

**Response:** Undisputed.

19. On October 18, 2018, the IRS filed the within Complaint seeking to validate the Nominee Liens (Dkt. 1).

**Response:** It is undisputed that the United States filed a Complaint on October 18, 2018.  The United States disputes the Complaint was filed to "validate Nominee Liens."  The relevant counts were to declare the VSHPHH Trust as Shant Hovnanian's nominee or alter ego and enforce the federal tax lien under 26 U.S.C. § 7403.  (Dkt. 1, Count III and V.)

20. Agent Michael MacGillivray of the IRS prepared a report and provided testimony surrounding the IRS collection efforts as against Mr. Shant Hovnanian. (Exhibit "B").

**Response:** Michael MacGillivray is a revenue officer, not an agent.  (Dkt. 123-6, MacGillivray Dep., p. 7:2-4.).  Further, Exhibit B is not a report but the IRS Collection Case History, which "reflect pertinent events that occurred during the case investigation."  Id.,  pp. 104:9-105:9.  The United States does not dispute that MacGillivray gave deposition testimony.

21. The IRS did not seek to collect from Mr. Shant Hovnanian through the "usual" methods of bank and investment account levies or other collection efforts, but rather immediately sought to impose the Nominee Liens. (MacGillivray Dep. 46:8-47:8; Exhibit "C".)

**Response:** The United States disputes this statement.  The IRS issued multiple levies to try to

collect from Shant Hovnanian, and Revenue Officer MacGilivray testified that he issued levies

against Shant as well as his nominees.  (*E.g.*, Ex. C., pp. 40:10-42:12 (nominee levy served on

nominee SpeedUS), 118:8-20 (other nominees); Ex. B, pp. 25-35 (listing levies issued to various

entities)).


22. Agent MacGillivray's Report states that the IRS was aware of the transfers of the real properties located at 520 Navesink River Road and 1 Dag Hammarskjold Boulevard ("Office Complex") as early as June 2013:

*Indications are that TP's master file address, (I Dag Hammarskjold Plaza, Freehold, New Jersey), is a business office for his family's business. (Hovnanian Builders). It appears that TP and his spouse reside at 520 Navesink River Road, Red Bank, New Jersey. The taxpayer's father, Vahak S. Hovnanian, transferred the property at 520 Navesink River Road, Red Bank, New Jersey to the taxpayer's mother for $1.00 on 09/28/2007. The taxpayer's mother, Paris Hasmig Hovnanian, transferred the property to The Shant S. Hovnanian Asset Trust for $1.00 on 06/21/2011. This trust transferred the property to Pachava Asset Trust for $1.00 on 12/16/2011. This deed indicates that The Shant S. Hovnanian Asset Trust had changed its name to Pachava Asset Trust. (Exhibit "C" at pg. 3.)*

**Response:** The United States also disputes that this statement, quoted from the Case History

Notes, supports the notion that the IRS was aware of the transfer of the Office Complex to the

VSHPHH Trust in 2013.  The quoted section reflects that Shant Hovnanian represented to the

IRS that the Office Complex was his personal address.

The quoted text also does not support the assertion that the United States was aware in

2013 of the transfer of legal title to the Office Complex.  That transfer of legal title to the

VSHPHH Trust is purported to have occurred on January 1, 2015.  (Ex. A, Deed.)  and the

VSHPHH Trust did not exist before January 1, 2015.  (Ex. E VSHPHH Trust Agreement.)

The United States objects that the statements regarding the Pachava Trust and

520 Navesink River Road are not relevant to this motion.  It is undisputed that MacGillivray was

aware of the transfer of legal title to the 520 Navesink property from Shant Hovnanian's mother

to the Pachava Trust in 2013.

23. Agent MacGillivray's Report also demonstrates that the IRS knew and understood
that Mr. Shant Hovnanian was not present at the Properties:

*ATTEMPTED CONTACT TAXPAYER*
*RESULTS: FV to 1 Dag Hammarskjold Blvd, Howell Township, New*
*Jersey. Shant Hovnanian 's business office.*
*The doors to the main building were locked. RO gained access to the*
*main building through the office of Jerry Hillman, CPA RO asked an*
*African American woman if Shant Hovnanian was present. She seemed*
*to not know him. She said "Isn't he the manager or something. " She*
*instructed RO to go through a door to the rights to gain access to the*
*main building. RO entered the main building to find all of the lights*
*off RO looked on the first floor and the second floor. All doors were*
*locked and all lights were off Shant Hovnanian and/or his secretary*
*were not present. There was an access door to J Vero Associates. RO*
*knocked on the door. A woman came to the door. (RO thinks this is J*
*Vero). RO asked if Shant Hovnanian was present. She stated that she*
*does not remember the last tome [sic] that she saw Shant Hovnanian.*
*RO left.*

*ACTION DATE: 03 /20/2018 SYSTEM DATE: 03 / 20/2018*
*CONTACT: FIELD CREATE ID: 21013529*
*ATTEMPTED CONTACT*
*ATTEMPTED CONTACT- TAXPAYER*
*RESULTS: FV to 520 Navesink River Road Middletown Township New*
*Jersey Afternoon*
*As RO drove up the driveway it was apparent that the Range Rover*
*had been moved. RO drove up near the front door and young man was*
*visible walking around the house with black dog. He walked toward*
*RO 's vehicle. RO exited his vehicle and walked toward him . RO asked if*
*he is Shant Hovnanian 's son Vahak Hovnanian? He conformed **[sic]***

14

*that he is Shan! Hovnanian 's son, Vahak Hovnanian . (Note : Vahak Hovnanian is known to be 21 years old). RO asked if Shant Hovnanian was available. He stated that Shant Hovnanian is not present Shant Hovnanian is currently in Armenia. Shant Hovnanian will return in approximately 1 week. RO handed two envelopes to Vahak Hovnanian and RO 's business card:*

(Exhibit "C" at pg 315 to 316).

**Response:** The United States disputes the quoted statement establish that the IRS knew Shant was or was not "present" at the properties.  First, the VSHPHH Trust also has not come forward with any facts to show an alternative residential address for Shant other than 520 Navesink.

Second, the quoted statements do not support the notion that Shant was never "present" at these properties if that statement is intended to mean he never resided or lived at these properties. The statements are notes of specific conversations on specific dates with third-party contacts and thus are inadmissible hearsay to the extent submitted for the truth of the matters asserted.  And if considered, the statements show that Shant was not present at particular locations on particular days, not statements of where Shant generally resided or lived.

Third, Shant did use the second floor of the Office Complex for his businesses, rent free, and had a desk or office that was his. (USA SOUF ¶¶ 15, 21-22.)  Shant stated to Revenue Officer MacGillivray that he lived at the Office Complex, while his minor children lived at his 9,000 square foot house located at 520 Navesink.  *Id*. ¶¶ 16-20.  The parties agree Shant's statements to the Revenue Officer were false.  (*See* VSHPHH Br. in Supp. Mot. for Summ. J., pp. 24-25.)  The United States never asserted Shant's statement was true but used it to establish that Shant tried to hide his ownership of the 520 Navesink property.  (E.g., Compl., ¶ 26.)

24. Jessica L. Hollobaugh prepared an expert report and provided testimony on behalf of the IRS.  That report and the related testimony are both littered with legal conclusions admittedly outside of the scope of Ms. Hollobaugh's expertise.

**Response**: It is undisputed that Jessica Hollobaugh prepared an expert report and testified.  The United States objects that the statement that the report is "littered with legal conclusions," is in itself a legal conclusion, argumentative, and an unsupported assertion.  Fed. R. Civ. P. 56(c)(1); Local Rule 56.1(a) ("Each statement of material facts shall … not contain legal argument or conclusions of law.").

25. That expert report in accounting concludes that the bookkeeping for the Trusts was, as one might expect with family matters, not maintained with all of the formalities that may normally be associated with recordkeeping where a third-party is involved. Here, it was all family.

**Response:** The United States disputes the statement that the activities here are what "one might expect with family matters" or ones that are "normal."  The VSHPHH Trust provides no facts to support this contention.

The Office Complex was an operating business, not just some intra-family affair.  Yet the VSHPHH Trust admitted it did not file any tax returns and was simply ignored while Shant exclusively ran this business as his own personal venture.  (See USA SOUF ¶¶ 65-84.)  Indeed, at one point the VSHPHH Trust testified that no income tax return was filed for the VSHPHH Trust because rent was deposited with Shant's company, HovSat. (Dkt. 123-4, VSHPHH Trust Dep., Vol 1., p. 125:5-22.)  While not an accurate statement of the tax law, the VSHPHH Trust is admitting that it did not consider the rental income from the Office Complex as its income.  That cannot be swept away as sloppy bookkeeping for a family business.  That is a concession that the VSHPHH Trust considered the main benefit to be had from the Office Complex (its rental income) to be someone else's.

Further, the VSHPHH Trust admitted that its records were inaccurate during the deposition and stated it was hiring an auditor to create an accurate financial picture. (Dkt. 123-4, VSHPHH Dep., Vol. II, pp. 155:10-157:3.) It never did so. *Id*. Any pre-litigation assertion that the Office Complex was run informally does not explain why an accurate financial picture was not provided in three years of discovery. The only reasonable inference is such a financial picture would corroborate that Shant treated the Office Complex like it was his own property.

Finally, Hollobaugh's analysis was not limited to critiquing the bookkeeping or formalities kept by the VSHPHH Trust. She performed a forensic analysis of the two trusts at issue in this litigation and analyzed who economically benefited from the trusts that supported these statements, and she examined the flow of funds between the various entities under Shant Hovnanian's control. A copy of the report is available at docket 123-11.

26. Ms. Hollobaugh, during her deposition, admitted that family-owned businesses accounts are typically less formal than companies of a larger size or owned by strangers (Hollobaugh Dep., 14:11-22; Exhibit "D".)

**Response:** Undisputed.

27. The IRS sought the testimony of Nina Hovnanian, the current trustee of the Trusts, but not someone who had familiarity or knowledge with respect to the transfer of the Properties to the Trusts.

**Response:** The United States does not dispute that Nina Hovnanian has no familiarity and knowledge. It notes that Nina was named as a trustee from the moment the VSHPHH Trust was established and thus should have had familiarity or knowledge. The United States also notes it sought the testimony of the VSHPHH Trust under Fed. R. Civ. P. 30(b)(6). Producing Nina unprepared was a choice of the VSHPHH Trust. (Dkt. 112, 113.)

28. Vahak and Hasmig Hovnanian passed away before the Complaint was filed.

**Response:** Undisputed.

29. Mr. Shant Hovnanian was available for deposition testimony, but the IRS concluded that it was too much trouble to seek his testimony in Armenia, potentially having to invoke the Hague Convention.

**Response:** The United States objects that this statement is a legal conclusion, argumentative, and an unsupported assertion. Fed. R. Civ. P. 56(c)(1); Local Rule 56.1(a) ("Each statement of material facts shall … not contain legal argument or conclusions of law."). It also mischaracterizes the procedural history of this case.

The United States sought the testimony of the VSHPHH Trust under Fed. R. Civ. P. 30(b)(6). It did not need to separately reach out to Shant to learn about the VSHPHH Trust's information. It was on the VSHPHH Trust to produce a deponent with knowledge about the VSPHH Trust. (Dkt 112.) Further, the Trustee refused to share Shant's address or contact information during this case. (*E.g.*, Dkt. 123-3, Pachava Dep. Vol. I, p. 16:12-17:10.) The United States also notes that Shant was available to provide information to Nina and the VSHPHH Trust before the close of fact discovery. (*Id.*, p. 51:5-9) (Shant and Nina Hovnanian talked weekly). The VSHPHH Trust chose not to do so.

30. The "Pachava" in the name "Pachava Asset Trust" is an acronym reflecting the first initial of the first names of each of Vahak and Paris (Hasmig) Hovnanian's grandchildren. The "VSHPHH" in the name "VSHPHH Trust" is an acronym reflecting the initials of Vahak S. Hovnanian and Paris H. Hovnanian.

**Response:** Undisputed as to the VSHPHH Trust.

The United States disputes this fact because the word "Pachava" consists of the just the initials of Shant's three children, not all the grandchildren.  (Dkt. 123-3, Pachava Dep., Vol. I. p. 61:15-23.)  Nina – Shant's sister – has children who are also grandchildren of Vahak and Paris Hovnanian.  (*E.g*., Dkt. 123-21, Ex. 114, VSHPHH Trust Agreement, p. 2, listing all five grandchildren as beneficiaries.)  Nina's children are not beneficiaries of the Pachava Trust.

31. The Nominee Liens affect the ownership interests of the Trusts, create a cloud on the chain of title, and render the title to the Properties potentially unmarketable by the Trusts.

**Response:** The United States objects that this statement is a legal conclusion.  Local Rule 56.1(a) ("Each statement of material facts shall … not contain legal argument or conclusions of law.").  To the extent a response is required, the United States disputes that title is unmarketable. The property is encumbered by a federal tax lien and the proceeds of any fair market sale would need to be paid to the United States.

32. The IRS has tried to collect tax debts against Defendant Mr. Shant Hovnanian, but apparently has been unsuccessful.

**Response:**  It is undisputed that the United States has not collected the full debt owed yet.  It disputes it has been unsuccessful.

34. Plaintiff now seeks to collect the purported tax debt of Mr. Shant Hovnanian from third parties, including, inter alia, Defendant VSHPHH Trust.

**Response:** The United States disputes that these are "purported tax debts." A default judgment has been entered. (Dkt. 35.) The United States further disputes that it is collecting from a third party, as the VSHPHH Trust was Shant's alter ego or nominee. Thus, it is seeking to collect from Shant despite his machinations to the contrary.

35. Plaintiff claims that the Trust is a mere alter ego of Mr. Shant Hovnanian, or, alternatively, a mere nominee holding property that in fact belongs to Mr. Shant Hovnanian. Plaintiff has made similar claims against several other third parties.

**Response:** Undisputed, except that an alter ego or nominee is not a true third parties.

36. The statute of limitations for a fraudulent conveyance claim is four (4) years from the date of the transfer that might be in question.

**Response:** The United States objects that this statement is a legal conclusion. Local Rule 56.1(a) ("Each statement of material facts shall … not contain legal argument or conclusions of law."). The United States denies, as it is not subject to state statutes of limitations when seeking to challenge a conveyance as fraudulent. *United States v. Summerlin*, 310 U.S. 414, 416 (1940).

37. The Complaint itself contains an admission, namely that the 1 Dag Hammarskjold Boulevard property was not contributed to the VSHPHH Trust by Mr. Shant Hovnanian, but was instead contributed by his father and mother.

**Response:** Undisputed.

38. Trust agreement that created the VSHPHH Trust ("Trust Agreement") shows that the Trust was established long before some of Mr. Shant Hovnanian's tax liabilities arose (which the Complaint nor any other communication bothers to mention), that Mr. Shant Hovnanian was never a beneficiary of the VSHPHH Trust (which the Complaint also omits), and that the VSHPHH Trust is irrevocable and could not be undone by Mr. Shant Hovnanian.

**Response**: It is undisputed that Shant is not a named beneficiary of the VSHPHH Trust, and that the VSHPHH Trust states it is irrevocable.  That being said, the words on the trust agreement belie what actually happened.  Shant had full control over the assets within the VSHPHH Trust and he was able to take funds out for non-trust purposes even though he was not a beneficiary or trustee, rending the notion that the trust was "irrevocable" meaningless.  (Dkt. 123-1, USA SOUF ¶¶ 14, 24-43, 66-93.)

The United States further objects that the VSHPHH Trust was established before the tax liabilities arose.  Shant had been assessed the full amount of the tax liability by 2013.  (USA SOUF ¶ 3.)  The VSHPHH Trust was not formed until January 1, 2015.  And despite the legal title to the Office Complex being transferred to the VSHPHH Trust, Shant and his co-trustee (Nina) treated the Office Complex as Shant's personal property.  The VSHPHH Trust was simply Shant's nominee or alter ego.

39. There are no allegations that either Vahak or Hasmig Hovnanian, the transferors, had an objective in transferring assets other than advancing estate planning.

**Response**: The United States disputes this statement as the Pachava Trust has presented no evidence in admissible form that the transferors engaged in estate planning or that estate planning was the sole object of the transfer of the Office Complex to the VSHPHH Trust.  (*See* Resp. to Statement of Fact No. 5.)  The person who arranged the transfer litigated Shant's tax shelter liability before the Tax Court and the property was transferred shortly before the death of Shant's father, indicating an alternative possible motive to the transfer.   (USA SOUF ¶¶ 9-12.)

Date: June 7, 2022,

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division

*/s/ Ari D. Kunofsky*
ARI D. KUNOFSKY
JOSHUA D. ZIMBERG
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044
Telephone: (202) 353-9187
Facsimile: (202) 514-6866
Email: Ari.D.Kunofsky@usdoj.gov