ARI D. KUNOFSKY
JOSHUA D. ZIMBERG
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-353-9187 (v)
202-514-6866 (f)
Ari.D.Kunofsky@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-15099-ZNQ-LHG |
| | ) | |
| SHANT HOVNANIAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | Motion Return Date: June 21, 2022 |
| | ) | |

# UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS
# MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE VSHPHH TRUST

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division

ARI D. KUNOFSKY
JOSHUA D. ZIMBERG
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-353-9187 (v)
202-514-6866 (f)
Ari.D.Kunofsky@usdoj.gov

**TABLE OF CONTENTS**

Table of Authorities ...................................................................................................... ii

Preliminary Statement................................................................................................. 1

Arguments.................................................................................................................... 3

   I.  The VSHPHH Trust Filed The Same Brief Twice. ................................................ 3

   II.  Just Saying A Trust Is Part of Estate Planning Does Not Inoculate Its
      Property From A Tax Lien If The Trust Is A Taxpayer's Nominee Or Alter Ego. ................ 3

   III.  The VSHPHH Trust Does Not Raise A Genuine Dispute of Fact....................................... 6

      A.  Non-Denials Cannot Create a Genuine Dispute And Support the
          United States' Case. ................................................................................................. 7

      B.  Unexplained Complaints About the United States' Expert
          Witness Do Not Raise A Genuine Dispute. ................................................... 10

      C.  Remaining Challenges Do Not Create a Genuine Dispute. ........................... 12

Conclusion ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006)..................................................................................6, 8

*Bernard v. Webb-McRae*,
    2020 WL 1329934 (D.N.J. Mar. 23, 2020).................................................................11

*Boyd v. City of Jersey City*,
    2018 WL 2958468 (D.N.J. June 13, 2018) .................................................................6

*Dandy v. Ethicon Women's Health & Urology*,
    2022 WL 1284735 (D.N.J. Apr. 29, 2022) ................................................................10

*Fraternal Ord. of Police, Lodge 1 v. Camden*,
    842 F.3d 231 (3d Cir. 2016).........................................................................................5

*G.M. Leasing Corp. v. United States*,
    429 U.S. 338 (1977).....................................................................................................3

*Holman v. United States*,
    505 F.3d 1060 (10th Cir. 2007) ...................................................................................4

*Keating v. Pittston City*,
    643 F. App'x 219 (3d Cir. 2016) .................................................................................8

*Lexington Ins. Co. v. W. Pa. Hosp.*,
    423 F.3d 318 (3d Cir. 2005).........................................................................................8

*LiButti v. United States*,
    107 F.3d 110 (2d Cir. 1997).........................................................................................3

*In re McCallan*,
    629 B.R. 491 (Bankr. M.D. Ala. 2021)......................................................................11

*Migliaro v. Fid. Nat'l Indem. Ins. Co.*,
    2017 WL 462631 (D.N.J. Feb. 3, 2017) ......................................................................9

*Oddi v. Ford Motor Co.*,
    234 F.3d 136 (3d Cir. 2000).......................................................................................11

*Quiroga v. Hasbro, Inc.*,
    934 F.2d 497 (3d Cir. 1991).........................................................................................7

*Read v. Profeta*,
   397 F. Supp. 3d 597 (D.N.J. 2019) ...................................................................................7

*In re Richards*,
   231 B.R. 571 (E.D. Pa. 1999) ......................................................................................4, 6

*SIPC. v. Bernard L. Madoff Inv. Sec. LLC*,
   592 B.R. 513 (Bankr. S.D.N.Y. 2018) ...........................................................................11

*In re TMI Litig.*,
   193 F.3d 613 (3d Cir. 1999) ..........................................................................................10

*United States v. Bogart*,
   2015 WL 1883210 (M.D. Pa. Feb. 11, 2015) ................................................................13

*United States v. Burnett*,
   2010 WL 3941906 (S.D. Tex. Oct. 7, 2010) ....................................................................4

*United States v. Evseroff*,
   270 F. App'x 75 (2d Cir. 2008) .......................................................................................4

*United States v. Hovnanian*,
   2019 WL 1233082 (D.N.J. March 18, 2019) ..........................................................2, 3, 4

*United States v. Hovnanian*,
   2022 WL 279835 (D.N.J. Jan. 31, 2022) ...................................................................9, 13

*United States v. Hovnanian*,
   2022 WL 909868 (D.N.J. Mar. 29, 2022) .......................................................................3

*United States v. Nassar*,
   699 F. App'x 46 (2d Cir. 2017) .......................................................................................4

*United States v. Patras*,
   544 F. App'x 137 (3d Cir. 2013) ..........................................................................2, 3, 4, 5

*Yeager v. Covenant Sec. Servs., Ltd.*,
   2017 WL 2560340 (D.N.J. June 13, 2017) .....................................................................9

**Statutes**

26 U.S.C. § 6012(b)(4) ...........................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 56(a) ..................................................................................................................2

Fed. R. Civ. P. 56(c) ...............................................................................................................6, 8

Fed. R. Civ. P. 56(c)(1)(B) .........................................................................................................9

Fed. R. Civ. P. 56(c)(2)..............................................................................................................11

Fed. R. Civ. P.56(c)(2), (4) .........................................................................................................5

Fed. R. Evid. 1006 ....................................................................................................................10

Local Rule 56.1(a) ..................................................................................................................2, 6

**PRELIMINARY STATEMENT**

Based on the United States' motion (dkt. 123) and the VSHPHH Trust's opposition (dkt. 128), there can be no dispute that the VSHPHH Trust held the Village Mall, a shopping center located at 1 Dag Hammarskjold Boulevard, as Shant Hovnanian's nominee. Shant treated and viewed the property as his own, while the VSHPHH Trust only held bare legal title.[1] Thus, the Village Mall should be subject to his federal tax liens and sold to pay his $16 million tax liability.

The VSHPHH Trust does not dispute that the key facts necessary to determine it was Shant's nominee. Title to the Village Mall had been held by Shant Hovnanian's parents and was transferred to the VSHPHH Trust on January 1, 2015. Shant and his sister, Nina Hovnanian, were named as co-trustees. But from the moment the property was placed in the VSHPHH Trust, Shant treated the Village Mall as his own property, ignoring his co-trustee and the VSHPHH Trust itself. Shant took all the rent for his own purposes, giving nothing to the VSHPHH Trust or its beneficiaries. The VSHPHH Trust testified that it did not need to file an income tax return, because it did not think the rent was its income. Shant used the second floor of the Village Mall for his own businesses, and he paid the Village Mall's expenses from his personal funds or rental income. Based on these facts, that the VSHPHH Trust was simply Shant's nominee.

In its opposition brief, the VSHPHH Trust simply rehashed arguments it already lost. The VSHPHH Trust's major argument is that Shant cannot be a nominee or alter ego because he is not in the chain of title. This Court rejected this requirement of a direct transfer at the motion-to-dismiss stage, and the VSHPHH Trust gives no reason to reconsider this analysis. *See, e.g.*,

---

[1] This case involves several members of the Hovnanian family. Following this Court's past practice, the United States will refer to members by their first name after their first mention.

*United States v. Hovnanian*, 2019 WL 1233082, *3 (D.N.J. March 18, 2019), *quoting United States v. Patras*, 544 F. App'x 137, 140–41 (3d Cir. 2013).  Indeed, except for a new introduction and asserting erroneously that the United States is asserting a breach of fiduciary duty claim against the Trust, the VSHPHH Trust is filing the same brief as its motion for summary judgment.  (Dkt. 125.)

The United States will not waste the Court's time restating the arguments from its response to the VSHPHH Trust's motion for summary judgment.  (Dkt. 131.)  It will instead focus on the few new legal assertions the VSHPHH Trust has made, and the VSHPHH Trust's attempts to raise factual disputes.  The VSHPHH Trust cannot dispute the facts, so it does not even try.  It instead offers meaningless yet legal-sounding phrases like the "document speaks for itself."  It also tries to misdirect the Court from facts it dislikes.  The United States stated the VSHPHH Trust never became a lessor on the leases to tenants of the VSHPHH Trust.  The VSHPHH Trust denied this allegation, but it provides leases where it was not the lessor.  These tactics cannot create genuine disputes under Fed. R. Civ. P. 56(a) and should be treated as undisputed Local Rule 56.1(a).  Because the VSHPHH Trust does not have a valid legal theory and it has failed to show a genuine dispute of material fact, summary judgment should be granted in the United States' favor.  Specifically, the VSHPHH Trust should be declared Shant's nominee, the federal tax liens that encumber the VSHPHH Trust should be enforced against the Village Mall, and the United States' proposed order of sale should be entered.

# ARGUMENTS

## I. The VSHPHH Trust Filed The Same Brief Twice.

The VSHPHH Trust filed a Memorandum in Opposition to this Motion ("Responsive Brief") that is an almost carbon copy of its Brief in Support of its Motion for Summary Judgment. *Compare* dkt. 128 (Resp. Br.), *with* dkt. 123-1 (Br. in Supp.). Rather than belabor the points, the United States asks the Court to simply see its opposition brief at docket 131, and it will address the few new arguments below.

## II. Just Saying A Trust Is Part of Estate Planning Does Not Inoculate Its Property From A Tax Lien If The Trust Is A Taxpayer's Nominee Or Alter Ego.

In its introduction, the VSHPHH Trust emphasizes that Shant's parents placed the Village Mall into a trust as part of their "estate planning" and asserts that this estate planning label is impenetrable. (Resp. Br., pp. 1-2.) This Court and multiple circuit courts have rejected this argument. This argument also is unsupported by any facts to show there was any "estate planning" here.

The nominee and alter-ego doctrines are flexible doctrines meant to avoid a taxpayer defeating a tax lien by putting title in another person's name. *See, e.g.*, *Patras*, 544 F. App'x at 140–41; *LiButti v. United States*, 107 F.3d 110, 119 (2d Cir. 1997); *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977). This Court has held twice that a "property should be construed as belonging to the taxpayer if he/she treated and viewed the property as his/her own, in spite of the legal machinations employed to distinguish legal title to the property." *United States v. Hovnanian*, 2022 WL 909868, *3 (D.N.J. Mar. 29, 2022) (dkt. 112); *Hovnanian*, 2019 WL 1233082, *3 (dkt. 24).

This Court and several Courts of Appeals have held that the nominee and alter ego doctrines cannot be circumvented by keeping a taxpayer out of the legal chain of title.

3

*Hovnanian*, 2019 WL 1233082, *5; *United States v. Nassar*, 699 F. App'x 46, 48 (2d Cir. 2017) (rejecting the argument that placing title directly into a trust could defeat a nominee claim); *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007) (same); *United States v. Burnett*, 2010 WL 3941906, *7 (S.D. Tex. Oct. 7, 2010) ("While nominee status may be found when a taxpayer owns the property at issue and then transfers that property, it is incorrect to conclude that nominee status exists only in that situation."), *aff'd*, 452 F. App'x 569 (5th Cir. 2011).  This Court rejected the direct-transfer rule, holding that the "Third Circuit's test [in *Patras*] for nominee liability ponders 'whether the property was *placed* in the nominee's name in anticipation of a suit,'" *not* "whether the *defendant-taxpayer placed* the property in the nominee's name in anticipation of a suit." *Hovnanian*, 2019 WL 1233082, *5.  Just like it did in its motion for summary judgment, the VSHPHH Trust ignores that it already lost this argument before this Court, and it gives no reason to reach a different conclusion today.

Further, simply saying placing property in trust as part of "estate planning" cannot override these flexible doctrines.  Even when people engage in valid estate planning and put property into a trust, the trust can still be held to be a taxpayer's nominee if that taxpayer then ignores the trust and treats the property like it is his or her own.  *United States v. Evseroff*, 270 F. App'x 75, 77 (2d Cir. 2008); *In re Richards*, 231 B.R. 571, 580-81 (E.D. Pa. 1999); *see Nassar*, 699 F. App'x at 48 (holding even if a trust took title directly to a property, it would not matter because the taxpayer was in fact the beneficial owner).  The motive of Shant's parents is not one of the factors the Third Circuit identified in *Patras* for the nominee test, nor can it override a nominee situation.  *See Patras*, 544 F. App'x at 140–41(listing standard and applicable factors).  What matters are the actions of the taxpayer and nominee in relation to the

4

property.  Shant acted as the owner of the Village Mall, and the VSHPHH Trust let him.  *See Patras*, 544 F. App'x at 140–41(listing standard and applicable factors).

Finally, the VSHPHH Trust has no evidence supporting that estate planning ever occurred.  (Dkt. 128-8, Resp. to Stmt. of Facts ("Resp SOUF"), ¶ 13.)  The only evidence the VSHPHH Trust adduced was a conclusory declaration from Nina Hovnanian saying the transfer was some sort of unexplained estate planning.  (Dkt. 128-6.)  But the VSHPHH Trust concedes that Nina does not have "familiarity or knowledge with respect to the transfer of the Properties to the Trusts."  (Resp. Br., pp. 16-17.)  Because Nina has no personal knowledge about the transfer and the VSHPHH Trust does not submit any admissible evidence to support that there was estate planning, her bare statement on its own cannot create a genuine dispute for purposes of summary judgment.  Fed. R. Civ. P.56(c)(2), (4) (requiring declarations to be based on personal knowledge); *see, e.g.*, *Fraternal Ord. of Police, Lodge 1 v. Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (evidence considered on summary judgment must be admissible at trial).  Because the VSHPHH Trust cannot come forward with a scintilla of evidence to show a genuine dispute with the facts the United States relies on, the Trust should be declared Shant's nominee.

The VSHPHH Trust's remaining arguments are simply attempts to mischaracterize the United States' arguments.  For example, the United States asserted the trustees had a duty to act solely in their beneficiaries' best interest.  (Dkt. 122-2, pp. 2, 14.)  Nina and Shant, as co-trustees, had to act unanimously, yet Nina ignored her purported duties and did nothing.  Indeed, alleging she lacked knowledge of the transfer of the legal title and her failure to act as a trustee reveals the VSHPHH Trust was ignored and that the Village Mall was just Shant's property.  The VSHPHH Trust tries to sidestep the merits of this argument, retorting that: "[t]here is nothing in the record identifying any claim for breach of fiduciary duty, the IRS likely does not have

5

standing to pursue or even assert such a claim and this type of grasping at straws and changing legal theory is reflective of the lack of substance to the IRS claims." (Resp. Br., p. 17.) The United States is not bringing a fiduciary-breach claim and is not changing its arguments. Simply put, saying property is in trust is meaningless if the trustees do nothing but leave the property to its true owner: Shant. *In re Richards*, 231 B.R. at 580-81 ("[I]n intra-family transfers where little heed is paid to legal formalities" one consequence is the IRS may foreclose on property held in a trust acting as a nominee).

### III. The VSHPHH Trust Does Not Raise A Genuine Dispute of Fact.

In its preamble to its response to the statement of material statement, the VSHPHH Trust laments that somewhere there must be a dispute of fact. (Resp. SOUF, pp. 1-2.) It then tries to blame its lack of information on the United States. *Id*. But blame does not create genuine disputes. A party must instead "point to some evidence in the record that creates a genuine" dispute. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *Boyd v. City of Jersey City*, 2018 WL 2958468, at *11 (D.N.J. June 13, 2018) (same); *see* Fed. R. Civ. P. 56(c). Similarly, Local Rule 56.1(a) requires the VSHPHH Trust to respond to note "agreement or disagreement" and "stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." Local Rule 56.1(a). The Local Rule then admonishes that "any material fact *not disputed shall be deemed undisputed* for purposes of the summary judgment motion." *Id*. 56.1(a) (emphasis added). The VSHPHH Trust's anemic effort to generate disputes fail.

### A. Non-Denials Cannot Create a Genuine Dispute And Support the United States' Case.

The non-movant cannot simply "rest upon mere allegations, general denials, or … vague statements" to generate a genuine dispute. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991); *accord Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) ("Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment."). Most of the VSHPHH Trust's responses are general denials, meaningless legalisms like a fact cannot be admitted or denied, or statements that simply ignore the facts being alleged. (Resp. SOUF, ¶¶ 1, 3, 4, 5, 7, 8, 9, 10 11, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 25, 26, 27, 28, 29, 30, 34, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 66, 67, 68, 69, 70, 71, 72, 73, 74, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 93, 92, 94.) These tactics cannot create a genuine dispute.

The VSHPHH Trust repeatedly asserts it does not know if a statement is true or false (or says it does not have personal knowledge about a particular fact). For example, the rental income was deposited in an account under Shant's control but in the name of a company called HovSat. The United States alleged that Shant was taking funds from the HovSat account for his own personal use, and the VSHPHH Trust responded that it did not know if that statement was true. *Id*. ¶ 39. Shant's secretary (Karen Gandolfo) testified as such, and the VSHPHH Trust simply rejects that testimony by saying it does not know if her testimony is accurate. *Id*. The VSHPHH Trust's counsel was present at her deposition, had an opportunity to cross-examine her, and the VHSPHH Trust has the underlying bank records. This sort of general denial in the face of such a record cannot create a genuine dispute. *Quiroga*, 934 F.2d at 500.

As another example, the United States alleged that Shant took $201,204 from yet another bank account in the name of another defunct company under his control (SpeedUS) to pay the

7

real estate taxes due on the Village Mall. (Resp. SOUF, ¶¶ 46, 90.) There was no record by the VSHPHH Trust recording this payment — the single largest expense of the Village Mall. *Id.* This payment shows that Shant treated the Village Mall like it was his own by using his own funds to pay the expenses and ignoring the VSHPHH Trust. The VSHPHH Trust's own expert witness did not dispute that SpeedUS was defunct or that Shant used funds from a SpeedUS account to pay the taxes. *Id*. Yet the VSHPHH Trust tries to dispute these facts (and its own expert witness) by saying it does not know if the fact is true. *Id*. It does not offer another payment source, proof that SpeedUS was in operation, or any other evidence. It offers mere speculation. Speculating that something might not be true "does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *See, e.g.*, *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (quoted in *Keating v. Pittston City*, 643 F. App'x 219, 225 (3d Cir. 2016)).

   The VSHPHH Trust also tries to create a dispute by repeatedly expressing displeasure that the United States cites one form of evidence over submitting evidence it considers "better." (*E.g.*, Resp. SOUF ¶¶ 51, 56.) For example, it complains the United States should have submitted bank records as "better evidence" versus a deposition talking about a bank account. *Id*. ¶ 51. The VSHPHH Trust never submitted those records, let alone explain how they create a genuine dispute. *Id*. It instead asserts at one point that "[t]he Federal Rules of Civil Procedure and the Federal Rules of Evidence do not allow a party to pick and choose how they want to obtain or use evidence." *Id*. ¶ 56. This statement is incorrect. Rule 56(c) only requires evidence "in a form that would be admissible in evidence," rather than the best possible evidence in the opposing party's eyes. The VSHPHH Trust had an equal opportunity to obtain and submit its preferred evidence. Fed. R. Civ. P. 56(c); *Berckeley*, 455 F.3d at 201. Since it did not, there is

no genuine dispute.  Further, many times this tactic is an attempt to circumvent the preclusion order entered against it for not presenting proper testimony under Fed. R. Civ. P. 30(b)(6). *United States v. Hovnanian*, 2022 WL 279835, *8 (D.N.J. Jan. 31, 2022).  The VSHPHH Trust's discovery violations should not create genuine disputes now.

Similarly, the VSHPHH Trust says that documents speak for themselves.  (*E.g.*, Resp. SOUF, ¶¶ 24, 25, 26, 44, 45, 33.)  That sort of statement does not raise a genuine dispute and those facts remain undisputed.  *Migliaro v. Fid. Nat'l Indem. Ins. Co.*, 2017 WL 462631, *1 n.2 (D.N.J. Feb. 3, 2017) (facts are treated as undisputed when an opposing party says a document speaks for itself), *aff'd*, 880 F.3d 660 (3d Cir. 2018); *Yeager v. Covenant Sec. Servs., Ltd.*, 2017 WL 2560340, at *1 n.1 (D.N.J. June 13, 2017) (same).

Finally, the United States noted on several occasions the VSHPHH Trust did not produce information in discovery to show the absence of a fact.  Fed. R. Civ. P. 56(c)(1)(B) (allowing a party to establish that an "adverse party cannot produce admissible evidence to support the fact").  The VSHPHH Trust responded that the matter had been resolved via "motion practice and written opinion." *Id*. ¶¶ 63, 74, 82, 92.  The VSHPHH Trust was sanctioned with a preclusion order.  *Hovnanian*, 2022 WL 279835.  It is conceding has not and cannot offer anything to contradict the United States' statements, so they too should be considered undisputed.

Along with being unable to create a genuine dispute, the repeated non-denials bolster the United States' nominee case.  They show that Shant ignored the VSHPHH Trust and treated the Village Mall like his own.  The United States alleges that after the Village Mall transferred to the VSHPHH Trust, Shant had substantial control over the Village Mall and how its rental income was used, and Shant allowed his companies to use the second floor without paying rent.  (Resp.

SOUF, ¶¶ 20-22, 66-71.)  The VSHPHH Trust repeatedly said it did not know if these facts were true.  But the only way it could not know what happened to its rental income for years (or not know if it collected rent from its second-floor insiders) is if Shant took ownership and the VSHPHH Trust did not care while it was ostensibly acting in the sole interest of its beneficiaries who never received a dime.

### B. Unexplained Complaints About the United States' Expert Witness Do Not Raise A Genuine Dispute.

The United States cites the expert report of forensic accountant, Jessica Hollobaugh, CPA/ABV, CFE.  In the portions of the report on which the United States relies, Hollobaugh traces funds through various bank accounts, adds up certain transactions, or says certain transactions were not present.  (*See* Ex. A, Hollobaugh Decl. & Report.)[2]  The United States submitted this report rather than the voluminous records supporting these individual transactions.  The VSHPHH Trust did not point out any dispute with the transactions she identified, despite having access to all the records.  *See, e.g.*, Fed. R. Evid. 1006 (summaries are admissible).

The VSHPHH Trust instead repeatedly objects to any citation to Hollobaugh, noting she is not "the appropriate person to provide that support; such testimony is clearly outside the scope of [her] expertise."  (Resp. SOUF ¶¶ 46, 85, 86, 87, 88, 89, 90 & 93.)  For the reasons explained in the report, Hollobaugh qualifies as an expert witness to provide the accounting analysis, and she gives an opinion and analyzed the source, flow, and ultimate beneficiary of the funds here.  *See, e.g.*, *In re TMI Litig.*, 193 F.3d 613, 664-666 (3d Cir. 1999) (setting forth standard for

---

[2] The United States submitted the expert report without an accompanying declaration.  The VSHPHH Trust did not object to the lack of a declaration.  But the United States is submitting a declaration with this brief out of an abundance of caution.  *E.g.*, *Melendez v. Target Corp.*, 2022 WL 1617709, *5 (D.N.J. May 23, 2022) (failure to submit a declaration can be cured by submitting a declaration on reply); *Dandy v. Ethicon Women's Health & Urology*, 2022 WL 1284735, *2 (D.N.J. Apr. 29, 2022) (considering an expert report but ordering plaintiff to submit a report that was sworn or declared under penalty of perjury).

admitting expert evidence). The VSHPHH Trust does not challenge Hollobaugh's qualifications are sufficient to opine as a forensic accountant, the facts she considered, or the methodology of her analysis. Her report is thus admissible and may be considered on summary judgment. *E.g.*, *Oddi v. Ford Motor Co.*, 234 F.3d 136, 154-55 (3d Cir. 2000) (rejecting that a separate *Daubert* hearing was needed to grant summary judgment).[3]

The VSHPHH Trust instead asserts that Hollobaugh's statements fall outside the scope of her expertise, which is simply wrong. Forensic accountants, like Hollobaugh, trace funds and summarize financial conditions, which is what she did here. *E.g.*, *SIPC. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 519 (Bankr. S.D.N.Y. 2018), *aff'd sub nom.*, 605 B.R. 570 (S.D.N.Y. 2019), *aff'd sub nom.*, 830 F. App'x 669 (2d Cir. 2020) (Reconciling "bank records and other sources and trac[ing] the flow of those funds" are "tasks typically performed by forensic accountants."); *In re McCallan,* 629 B.R. 491, 512 (Bankr. M.D. Ala. 2021), *aff'd sub nom.* 2022 WL 982663 (M.D. Ala. Mar. 30, 2022) (where a forensic accountant "traced the money business entities controlled by Timothy McCallan, through a number of bank accounts and through several entities owned or controlled by Timothy McCallan, to pay the mortgage on the Melbourne, Florida property."). Thus, the VSHPHH Trust's thin legal arguments do not raise any genuine dispute to the facts that Hollobaugh presented.

---

[3] The VSHPHH Trust also asserts that it will raise additional objections to her testimony later. The promise of an objection in the future cannot preclude summary judgment now. Fed. R. Civ. P. 56(c)(2); *see, e.g.*, *Bernard v. Webb-McRae*, 2020 WL 1329934, *2 (D.N.J. Mar. 23, 2020) (a court need not guess at a party's arguments); *Oddi*, 234 F.3d at 154-55.

11

### C. Remaining Challenges Do Not Create a Genuine Dispute.

The VSHPHH Trust's remaining statements raise random statements that cannot generate a genuine dispute. In paragraph 2, the United States asserted that Shant lived in Armenia during this litigation. (Resp. SOUF, ¶ 2.) The VSHPHH Trust does not contest this fact, but it instead accuses the United States of attempting to confuse the Court. *Id*. It then cites testimony about where Shant lived before this litigation began, not during the litigation. *Id*. The VSHPHH Trust's response does not respond to the facts alleged, is disingenuous, and is immaterial to this motion.

The United States asserted the VSHPHH Trust never named itself as a lessor over the tenants of the Village Mall to show it did not consider itself the lessor. (Resp. SOUF, ¶¶ 13-14.) The VSHPHH Trust denied this fact, says the leases speak for themselves. *Id*. Yet the leases it filed with the Court do not list VSHPHH Trust as lessor; they predate the transfer and list Shant's parents as lessors. (Dkt. 128-10 to -12, Ex. BB.) That it could not produce any leases in its own name simply shows there is no genuine dispute, just misdirection.

In paragraphs 31 to 36, the United States discussed that Shant deposited the rental income from the Village Mall with HovSat. (Resp. SOUF, ¶¶ 31-36.) The United States noted that the VSHPHH Trust tried to deny that Shant controlled HovSat, but it did not know who was in charge of HovSat. *Id*. It then speculated that Shant's secretary (Karen Gandolfo) may have been in charge. *Id*. The VSHPHH Trust's testimony was evasive, using a lack of knowledge to create the appearance of a dispute about who was really in charge. *Id*. The United States cleared this fog by deposing Gandolfo, who admitted she took instructions from Shant. *Id*. ¶¶ 31-40.

The VSHPHH Trust asserts the United States is misciting the record. *Id*. It did not. Gandolfo acted on Shant's instruction, including opening an account in her own name for his exclusive use and taking HovSat funds to pay Shant's personal expenses. *Id*. ¶¶ 39, 51. The

12

VSHPHH Trust also accuses the United States' counsel of misogyny by saying a secretary could not manage a business, rather than recognizing Gandolfo's testimony showed Shant was in charge. Hurling insults cannot generate a material dispute. *United States v. Bogart*, 2015 WL 1883210, *9 (M.D. Pa. Feb. 11, 2015) ("[A]cerbic asides, caustic commentaries, [or] disgruntled digressions" are never appropriate and cannot create a genuine dispute), *report & rec. adopted*, 2015 WL 1883255 (M.D. Pa. Mar. 27, 2015), *aff'd*, 715 F. App'x 161 (3d Cir. 2017).

In its motion for summary judgment, the United States noted the VSHPHH Trust conceded in discovery that it had no banking or financial records of its own, instead producing the records of HovSat (a/k/a Grandview Cable) where it recorded some of its financial activities. (Resp. SOUF, ¶¶ 75-78.) Yet in response, the VSHPHH Trust denies this allegation and tries to assert that it submitted its own, separate financial records. *Id.* It cites an email where it provided HovSat records, hinting that the attachments to that email were the VSHPHH Trust's separate records.[4] It did not include the attachments, which were just HovSat records, which show the VSHPHH Trust income was commingled. After this email was sent, Nina admitted (and this Court recognized) the financial records were comingled with HovSat records when it precluded the VSHPHH Trust from producing additional financial records. *Hovnanian*, 2022 WL 279835, *4 ("Defendant Nina explained that Grandview Cable's QuickBooks account was used to track the activity of VSHPHH . . . ."). Falsely claiming the VSHPHH Trust produced different financial records than it did cannot generate a genuine dispute.

---

[4] After this email was sent, VSHPHH Trust admitted during its deposition that it needed to hire an accountant or auditor to prepare accurate financial statements. (Resp. SOUF, ¶ 77, *quoting* VSHPHH Dep., Vol. II, pp. 155:10-157:3.) The VSHPHH Trust never produced those records despite having a year between testifying that she needed to hire an accountant and the imposition of the preclusion order.

13

Finally, the VSHPHH Trust asserts it did not file an estate income tax return (Form 1041) because it had no "net income." (Resp. SOUF, ¶ 65.) The VSHPHH Trust at this point knows this assertion cannot hold water. The United States pointed out in its opening brief that a trust must file an income tax return if it earns $600 in gross income (not net income). (Dkt. 128-2, p.12, *citing* 26 U.S.C. § 6012(b)(4).) Further, the VSHPHH Trust never produced any financial statements it would say are reliable showing it operated at a loss in discovery despite being compelled to do so. And the VSHPHH Trust testified that the trust did not need to file tax returns because the rents were deposited with HovSat. (VSHPHH Trust Dep., Vol 1., p. 125:5-22.) When the VSHPHH Trust said the rent was someone's else, it reveals it did not think it was the true owner of the Village Mall.

## CONCLUSION

For these reasons, the United States asks the Court to grant its motion for partial summary judgment be granted, to declare the VSHPHH Trust to be Shant Hovnanian's nominee, and to order the sale of the Village Mall.

Date: June 17, 2022,

                                               Respectfully submitted,

                                               DAVID A. HUBBERT
                                               Deputy Assistant Attorney General
                                               Tax Division

                                             */s/ Ari D. Kunofsky*
                                             ARI D. KUNOFSKY
                                             JOSHUA D. ZIMBERG
                                             Trial Attorney, Tax Division
                                             U.S. Department of Justice
                                             Post Office Box 227
                                             Washington, D.C. 20044
                                             Telephone: (202) 353-9187
                                             Facsimile: (202) 514-6866
                                             Email: Ari.D.Kunofsky@usdoj.gov