IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-cv-15099-ZNQ-LHG |
| | ) | |
| SHANT HOVNANIAN *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>DECLARATION OF JESSICA HOLLOBAUGH</u>

I, Jessica Hollobaugh, being of legal age and pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a Certified Public Accountant ("CPA") with Withum, Smith, & Brown in New Jersey.  In addition to being a CPA, I hold the Certified Fraud Examiner credential from the Association of Certified Fraud Examiners and the Accredited in Business Valuation credential from the American Institute of Certified Public Accountants.

2.      I specialize in forensic accounting services, white-collar investigations, corporate investigations, professional liability defense, shareholder disputes, and estate, trust, and other tax investigations.  I have performed complex forensic investigations to uncover fraud and embezzlement schemes.  I have also prepared state and federal tax returns, including estate tax returns and estate income tax returns.  I have been an accountant for over 17 years.  My *curriculum vitae* is attached as Appendix A to my Expert Report.

3.      The United States engaged me in this matter to examine the books and records of various companies related to Shant Hovnanian.  A list of the documents I considered is attached as Appendix B to my Expert Report.



Plaintiff
Exhibit

A

4.     I have attached my Expert Report, along with Appendixes A and B as well as

Exhibit K, which summarizes one of the entities I examined (HovSat's) cash flow.[1]  The Expert

Report, in full and including all the exhibits and appendices, accurately reflects my views,

summaries, and the opinions that I reached in this matter.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on June ____16____, 2022, in ___Princeton___, New Jersey.

JESSICA HOLLOBAUGH

---

[1] Exhibits A through L are transaction report detailing every transaction along with a corresponding summary.  These exhibits are voluminous, and they are not required to understand the statements made or conclusion drawn in my Expert Report.  My understanding is the defendants were given copies of these exhibits, but the United States did not submit them when providing my Expert Report to the Court.  I can provide these exhibits upon the Court's request.

2



**United States of America v. Shant Hovnanian, *et.al.***

Expert Report of
Jessica L. Hollobaugh, CPA/ABV, CFE
of WithumSmith+Brown, PC.
Dated June 30, 2021



**Plaintiff
Exhibit**

104

**WithumSmith+Brown, PC**   250 Pehle Avenue, Suite 104, Saddle Brook, New Jersey 07663   **T** (201) 265 2800   **F** (201) 265 8101   **withum.com**

AN INDEPENDENT MEMBER OF HLB • THE GLOBAL ADVISORY AND ACCOUNTING NETWORK



## Table of Contents

INTRODUCTION ........................................................................................................................ 1

    Summary and Conclusions ................................................................................................... 1

FACTS AND DOCUMENTS CONSIDERED ........................................................................... 3

    Documents Considered ........................................................................................................ 3

    Overview- Individuals and Corporations ............................................................................ 3

    Background of Entities ......................................................................................................... 6

        Speedus and Zargis ........................................................................................................ 6

        Pachava Trust and 520 NRR ......................................................................................... 8

        Village Mall and the VSHPHH Trust ......................................................................... 10

FORENSIC ANALYSIS ......................................................................................................... 13

    Speedus NY ....................................................................................................................... 14

        Analysis ........................................................................................................................ 14

        Summary and Conclusion ............................................................................................ 21

    Zargis ................................................................................................................................. 22

        Analysis ........................................................................................................................ 22

        Summary and Conclusion ............................................................................................ 26

    Pachava Trust and 520 NRR ............................................................................................ 27

        Analysis ........................................................................................................................ 27

        Summary and Conclusion ............................................................................................ 36

    VSHPHH Trust and the Village Mall / Hovsat dba Grandview .......................................... 37

        Analysis- Hovsat Bank Accounts and VSHPHH Bank Account ................................. 37

        Summary and Conclusion ............................................................................................ 47

CONCLUSION ........................................................................................................................ 49



## Appendices

Curriculum Vitae – Jessica L. Hollobaugh, CPA/ABV, CFE          APPENDIX A

Documents Reviewed                                             APPENDIX B

## Exhibits

Speedus Transaction Reports                                    EXHIBIT A

Speedus Cash Flow                                              EXHIBIT B

Zargis Transaction Reports                                     EXHIBIT C

Zargis Cash Flow                                               EXHIBIT D

Pachava Trust Income Tax Summary                              EXHIBIT E

Pachava Transaction Reports                                    EXHIBIT F

Pachava Trust Cash Flow                                        EXHIBIT G

520 Navesink River Road Real Estate Tax Summary              EXHIBIT H

Hovsat Transaction Reports                                     EXHIBIT I

VSHPHH Trust Transaction Reports                             EXHIBIT J

Hovsat / Village Mall Cash Flow                               EXHIBIT K



## INTRODUCTION

I have been engaged by the United States Department of Justice ("DOJ") in the matter United States of America, v. Shant Hovnanian, _et.al._

My curriculum vitae is attached at **Appendix A**.  I am a Certified Public Accountant ("CPA") with WithumSmith+Brown ("Withum") and hold the Certified Fraud Examiner ("CFE") credential from the Association of Certified Fraud Examiners ("ACFE") and the Accredited in Business Valuation ("ABV") credential from the American Institute of Certified Public Accountants ("AICPA").  I am compensated at a rate of $435 an hour for this report and testimony. This report was prepared by me and others under my supervision.

I was retained to examine the bank records and other records of various companies related to Shant Hovnanian ("Shant"), the Pachava Trust, and the VSHPHH Trust to assist the Government in determining if these trusts are the nominee or alter ego of Shant.[1]

## Summary and Conclusions

In 2008, Shant, his wife Hilde Jenssen Hovnanian ("Hilde"), and their children moved into a newly constructed residence at 520 Navesink River Road ("520 NRR").  520 NRR was built as a place for Shant's family to reside.  Title to the house, however, was in the name of Shant's mother, Paris Hovnanian ("Paris").  Shant did not pay any rent to live in the property but paid for the ongoing costs of the home.  On June 11, 2011, Paris transferred Shant's personal residence at 520 NRR into the Shant Hovnanian Asset Trust ("Shant Trust"), and, on October 11, 2011, the Shant Trust was renamed the Pachava Trust ("Pachava Trust").  Shant and his family continued to reside at 520 NRR after the property was transferred to the Pachava Trust. Shant still did not pay any rent for the usage of the property. Additionally, many of the costs of 520 NRR, including real estate taxes, were not paid by the Pachava Trust but were instead paid through bank accounts held in the name of SpeedusNY.com, LP ("Speedus NY") and Zargis Medical Corp. ("Zargis").

---

[1] Expert Witness Statement of Work between the Government and Jessica L. Hollobaugh, CPA/ABV, CFE



The Village Mall is a commercial property located in Freehold, New Jersey which was transferred from Paris and Vahak S. Hovnanian (collectively "Shant's Parents") to the VSHPHH Asset Trust ("VSHPHH Trust") on January 1, 2015.[2]  The Village Mall has active tenants, as well as second-floor office space used by Shant's father, Shant, and related businesses.  After the property was transferred to the VSHPHH Trust, no rental income was received from any related parties for use of the office. Additionally, the rental income received from the tenants was deposited into a bank account in the name of Hovsat, Inc. ("Hovsat").  Accordingly, the finances of the Village Mall, a supposed VSHPHH Trust asset, were commingled with the business operations of Hovsat, an entity in which Shant was actively involved.

As outlined above, the banking activity of accounts held in the name of Speedus NY, Zargis, and Hovsat were interrelated with the activity of the Pachava Trust and VSHPPH Trust.  Accordingly, as part of my analysis, I reviewed bank accounts held in the name of the Pachava Trust, VSHPHH Trust, Hovsat, Speedus NY, and Zargis, along with other financial documents of the trusts, Shant, and other related entities.  Based on the assumptions, analyses and discussions presented within the respective sections of this report, it is my opinion within a reasonable degree of professional certainty that:

- The Speedus NY Bank Accounts were comprised of personal deposits, included little, if any, ongoing business income, and were used by Shant to fund personal expenses, a $201,204 satisfaction of a tax lien against the Village Mall in 2015, and a $319,349 tax lien against 520 NRR in 2017;

- Shant used the Zargis Bank Account as a clearing account for funds of other entities, including, but not limited to, monies transferred in from the Speedus NY Bank Accounts for the payment of a real estate tax lien on 520 NRR;

- Shant obtained a benefit by living at 520 NRR without the payment of fair market rent and carried the burden of ownership of 520 NRR by funding the real estate taxes and other expense of the property.  Additionally, although Shant was not a known signatory on the Pachava Morgan Stanley Account, he maintained the ability to direct the movement of funds and payment of expenses, regardless of whether there was another trustee; and

- Although the title of the Village Mall was transferred to the VSHPHH Trust, other corporate procedures consistent with a property transferred to, and held in a trust, were not followed.  Furthermore, Shant and related entities benefited from usage of the second-floor office space without the payment of rent. The cash flow generated by the Village Mall was primarily used for the direct and/or indirect benefit of Shant.

---

[2] Deed dated January 1, 2015 (USAPROD-000415)



**FACTS AND DOCUMENTS CONSIDERED**

**Documents Considered**

A list of documents reviewed in this matter is attached as **Appendix B.**

**Overview- Individuals and Corporations**

In connection with this engagement, I reviewed financial records, deposition testimony and other information related to these individuals and entities:

- **Shant Hovnanian** ("Shant") is a Defendant in this matter.

- **Vahak S. Hovnanian** ("Vahak Sr.") was Shant and Nina Hovnanian's father.[3]  Vahak Sr. passed away on August 31, 2015.[4]  **Paris Hasmig Hovnanian** ("Paris") was Shant and Nina's mother[5] who passed away in November 2016.[6]

- The **Shant S. Hovnanian Asset Trust** ("Shant Trust") was established on October 8, 2007, with Shant Hovnanian identified as the Settlor and Hilde Jenssen Hovnanian as the Trustee.[7]

- The personal residence located at **520 Navesink Road**, Middletown Township, New Jersey ("520 NRR") was transferred into the Shant Trust on June 21, 2011[8]. Counsel has requested that I assume that no gift tax returns were filed to report this transfer.

- On October 11, 2011, the Shant Trust was retitled as the **Pachava Asset Trust**[9] ("Pachava Trust"). A corrective deed was filed on December 16, 2011 transferring the 520 NRR property from the Shant Trust to the Pachava Trust.[10]

---

[3] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p13:4-7
[4] Complaint for Federal Taxes filed October 18, 2018, paragraph 35
[5] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p13:4-7
[6] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p204:7
[7] Trust Agreement dated October 8, 2007 (HOVPROD-000711-735)
[8] Deed dated June 21, 2011 (HOVPROD-001253)
[9] Trust Agreement Amendment dated October 11, 2011 (HOVPROD-000736-738)
[10] Corrective deed dated December 16, 2011 (HOVPROD-001258)



- **Hilde Jenssen Hovnanian** ("Hilde") was Shant's second wife[11] and the original trustee for the Shant Trust and renamed Pachava Trust.[12]  Hilde served as trustee until April 2015.[13]

- **Peter Hovnanian** ("Peter"), Shant's cousin,[14] was appointed as a trustee of the Pachava Trust[15] from August 2016[16] through November 1, 2016.[17]

- The **VSHPHH Asset Trust** ("VSHPHH Trust") was established on December 28, 2012 by Shant's Parents as the Settlors and Shant and his sister, Nina Hovnanian, as the Trustees.[18] A deed dated January 1, 2015, transferred a commercial/retail property located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey, known as the **Village Mall,** ("Village Mall") from Shant's Parents to the VSHPHH Trust.[19] Counsel has requested that I assume that no gift tax returns were filed to report this transfer.

- **William Read Rankin ("Read")** is a lawyer who has represented Hovnanian entities and individuals.

- **Nina Hovnanian** ("Nina") is the current trustee of Pachava Trust and VSHPHH Trust.[20] She is also the sister of Shant.[21]

- **Vahak W. Hovnanian** ("Vahak Jr.") is Shant's oldest son[22], and is approximately 24 years old.[23] Shant has two other children, Paris and Charentz, approximate ages 17 and 16, respectively.[24]

- **Hovsat, Inc. dba Grandview Cable** ("Hovsat") was incorporated on November 19, 1984.[25] The State of New Jersey reports that Vahak Hovnanian was the last reported President and that the entities status was revoked in 2012, and has not been reinstated, for not filing annual reports for two consecutive years.[26] However, after Vahak Sr.'s death in 2015, Hovsat entered into a joint venture agreement with Omniverse on November 1, 2017 ("Joint Venture Agreement") and Shant signed as the authorized representative.[27]

---

[11] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p20:5-12
[12] Deposition Transcript of Hilde Jenssen dated April 16, 2021, p21:18-22
[13] Deposition Transcript of Hilde Jenssen dated April 16, 2021, p54:19 to 55:1
[14] Deposition Transcript of Hilde Jenssen dated April 16, 2021, p57:2-3
[15] Email from Jennifer McLaughlin to Peter Hovnanian dated August 2, 2016 (MorganStanley-00002635)
[16] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p135:2-8
[17] Email to Jennifer McLaughlin (Morgan Stanley) and Anthony Falcone dated January 13, 2017 (HOVPROD-001493)
[18] Trust Agreement dated December 28, 2012
[19] Deed dated January 1, 2015 (USAPROD-000415)
[20] Complaint for Federal Taxes filed October 18, 2018, paragraph 7
[21] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p14;4-6
[22] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p20:24 to 21:5
[23] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p21:3-5
[24] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p21:3-5
[25] New Jersey Business Gateway Information and Records Service report dated June 3, 2021 (EXPERTREQ-000501-505)
[26] New Jersey Business Gateway Information and Records Service report dated June 3, 2021
[27] OMNIPROD-0000121-0000129



- **Speedus Corp** was formed in October 1995 under the name CellularVision USA, Inc.  ("CVUS") to serve as a holding company for 100% of Hye Crest Management Inc. ("Hye Crest") and CellularVision of New York, LP ("CVNY"). Hye Crest had been formed in 1988 and CVNY in 1993 by Shant, Bernard Bossard and Vahak Sr.[28]  In February 1995, CVUS consummated its Initial Public Offering.[29]  In 1999, CVUS undertook a merger and changed its name to Speedus.com, and, at or around the same time CVNY, a wholly-owned subsidiary of Speedus.com ("Speedus.com") changed its name to **SpeedusNY.com, LP** ("Speedus NY").[30]  Shant was also identified as the Chairman of Speedus NY.[31] Similarly, in June 2002, Speedus.com changed its name to Speedus Corp. (together with subsidiary Speedus NY, "Speedus").[32] Shant, as Chairman of the Board of Directors, President, and Chief Executive Officer for Speedus, filed Form 15 with the SEC to effect a termination of the registration of its common stock in 2011.[33] Per the filing, Speedus planned to maintain a public listing on the OTC Pink Sheets market, or other similar market.[34]

- **Hovbilt, Inc.** ("Hovbilt") was a wholly owned subsidiary of VS Hovnanian and affiliate, and their principal business activity was the acquisition, development, and sale of residential real estate.[35,36] On October 1, 2013, Hovbilt filed a Summary of Schedules with the United States Bankruptcy Court, identifying VS Hovnanian as the 99.5% equity holder, and Shant, as Vice-President, signed the filing.[37]  As of December 31, 2008, VS Hovnanian Group, Inc. ("VS Hovnanian") was reportedly owned by Shant, Shant's Parents, and Nina Tower Hovnanian (Shant's first wife).[38,39,40]

- **Zargis Medical Corp.** ("Zargis") was a global medical device company that was 90% majority owned by Speedus as of the last 10-K filed in 2009.[41] On April 1, 2011, 3M acquired certain assets of Zargis.[42] Nina testified that Zargis is currently wholly owned by Speedus.[43]

---

[28] Speedus Corp 1996 Annual Report 10-K (EXPERTREQ-000451-500)
[29] Speedus Corp 1996 Annual Report 10-K (EXPERTREQ-000451-500)
[30] Speedus Corp 1999 Annual Report 10-K(EXPERTREQ-000508-552)
[31] Smartlinx Comprehensive Business Report (EXPERTREQ-000707-715)
[32] Speedus Corp 2002 Annual Report 10-K (EXPERTREQ-000610-652)
[33] Speedus Corp 2011 8-K dated February 16, 2011 (EXPERTREQ-000692-694)
[34] Speedus Corp 2011 8-K dated February 16, 2011 (EXPERTREQ-000692-694)
[35] Hovbilt, Inc. Financial Statements Years Ended December 31, 2001 and 2000 (HOVPROD-002651)
[36] On December 20, 2001 VS Hovnanian Group, Inc. contributes the shares from Shant's Parents, Shant, and Nina as contributions to Hovbilt. HOVPROD-002359 to 002370
[37] Hovbilt, Inc. United Stated Bankruptcy Court Summary of Schedules filing dated October 1, 2013 (EXPERTREQ-000015 to 000039)
[38] ICS Notes (USAPROD-000022)
[39] Shareholder Summary Schedule, VS Hovnanian Group 2001 Tax Return (HOVPROD-002485)
[40] On December 20, 2001, Shant's Parents (50%), Shant (25%), and Nina (25%) each transfer shares of stock to VS Hovnanian Group, Inc. as contributions to the entity (HOVPROD-002359 to 002370
[41] Speedus Corp 2009 Annual Report 10-K (EXPERTREQ-000653-691)
[42] 3M Press Release dated April 1, 2011; https://news.3m.com/English/press-releases/press-releases-details/2011/3M-Acquires-Certain-Assets-and-Builds-on-Relationship-with-Zargis-Medical-Corp/default.aspx (EXPERTREQ-000440-442)
[43] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p150:2-13



- **Hovnanian International** was a company owned by Vahak Sr. which owns a gated community named Vahakni located in Armenia.[44]  Nina testified that Hovnanian International was placed in an Armenian trust following Vahak Sr.'s death.[45]

- **Karen Gandolfo** ("Gandolfo") was an employee of Speedus beginning in 1997.[46]


**Background of Entities**

**Speedus and Zargis**

As will be more fully discussed throughout this report, the banking activity of accounts held in the name of Speedus NY and Zargis were interrelated with the accounts held in the names of the Pachava Trust and VSHPPH Trust. Accordingly, I have also analyzed Speedus NY and Zargis.

*Speedus Background and Bank Accounts*

Around 2000, Speedus moved from Brooklyn to Manhattan[47] and ultimately in 2008 to the [Village Mall] office building in Freehold, New Jersey.[48] Although Gandolfo was provided log-in information for a Speedus QuickBooks file "nothing was ever entered ever again because there wasn't any income.  There wasn't any business.  There was nothing".[49] Based on Gandolfo's testimony, it does not appear that Speedus had any ongoing business after they moved to the Village Mall in 2008.

No QuickBooks files or any books of entry have been provided as part of discovery in this matter.  It is my understanding that no Speedus (Speedus Corp or Speedus NY) income tax returns have been filed reporting any business income or expenses relative to the time period of my analysis.

---

[44] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p23:10-22
[45] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p243:17 to 244:8
[46] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p10:17 to 11:8
[47] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p13:5 to 14:5
[48] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p14:2-5
[49] Deposition of Karen Gandolfo dated January 28, 2021, p18:4-7



Although Gandolfo testified that Speedus NY[50] had ceased operations years earlier,[51] there were several bank accounts at Chase Bank which had activity between 2013 and 2020.  As part of my analysis, I reviewed the following financial accounts, collectively the "Speedus NY Bank Accounts":

| Account | Type | Holder | Date Opened | Signatories | Bate # |
|---|---|---|---|---|---|
| Chase x8565 | Checking (Payroll) | Speedus NY | June 28, 1999 | Shant Hovnanian, CEO<br>Michael Bacon, EVP<br>Angela Vaccaro, Controller | JPMorgan-000012 |
| Chase x9365 | Checking | Speedus NY | June 28, 1999 | Shant Hovnanian, CEO<br>Thomas Finn, CFO<br>Angela Vaccaro, CAO<br>Michael Bacon, EVP | JPMorgan-000016 |
| Chase x0839 | Money Market | Speedus NY | April 19, 1994 | Shant Hovnanian, CEO<br>Angela Vaccaro, CAO | JPMorgan-000028 |
| Morgan Stanley x0617 | Active Asset Account | Speedus NY | April 15, 2013 | Shant Hovnanian | MorganStanley-00001532 |
| Interactive Brokers x2457 | Institution Master | Speedus NY | September 21, 2015 | Karen Gandolfo, Controller<br>Shant Hovnanian, Manager | USAPROD-000436-437 |

As outlined above, two accounts were opened in the name of Speedus NY between 2013 and 2015, one at Morgan Stanley which only listed Shant as a signatory, and one at Interactive Brokers which listed both Shant and Gandolfo as signatories. However, Gandolfo indicated that she established the Interactive Brokers account at Shant's direction.[52] She further indicated that she never used or accessed the account once it was set up, and she did not personally authorize any transactions from the account.[53]  Accordingly, it is my understanding that Shant was the only person who accessed these newly created accounts.

_Zargis Background and Bank Accounts_

Zargis was a global medical device company in which Speedus held majority ownership.[54] On April 1, 2011, 3M acquired certain assets of Zargis Medical Corp.[55] Gandolfo testified that she never kept QuickBooks or performed any service for Zargis and does not know who did.[56] She testified that the entity probably ceased operations sometime between 2010 and 2015.[57]

---

[50] Gandolfo indicates that Speedus Corp. and Speedus NY were the same (Deposition of Karen Gandolfo dated January 28, 2021, p18:10-18
[51] Deposition of Karen Gandolfo dated January 28, 2021, p18:19 to 19:11
[52] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p56:11 to 58:8
[53] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p56:11 to 58:8
[54] 3M Press Release dated April 1, 2011; https://news.3m.com/English/press-releases/press-releases-details/2011/3M-Acquires-Certain-Assets-and-Builds-on-Relationship-with-Zargis-Medical-Corp/default.aspx (EXPERTREQ-000440-442)
[55] 3M Press Release dated April 1, 2011; https://news.3m.com/English/press-releases/press-releases-details/2011/3M-Acquires-Certain-Assets-and-Builds-on-Relationship-with-Zargis-Medical-Corp/default.aspx (EXPERTREQ-000440-442)
[56] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p31:11-16
[57] Deposition Transcript of Karen Gandolfo dated January 28, 2011, p31:20 to 32:12



No QuickBooks files or any books of entry have been provided as part of discovery in this matter. Zargis last filed an income tax return in 2007,[58] and it is my understanding that no income tax returns have been filed reporting any business income or expenses during the period of my analysis.

Zargis established checking account x9074 at PNC Bank ("Zargis Bank Account") in January 2001 with Shant listed as the only signatory.[59]

**Pachava Trust and 520 NRR**

_520NRR and the Transfer to the Pachava Trust_

Shant and Hilde moved into 520 NRR with their children around summer 2008. [60]The property was titled to Paris, Shant's mother, but the family did not pay rent to Paris.[61] Hilde testified that it was considered their family house and home, and Shant and Hilde were responsible for the upkeep.[62] Shant and Hilde used the home as their family home until September of 2013[63] when the family moved to Norway.[64]  On June 21, 2011, while Shant and his family were residing at 520NRR,[65] the property was transferred from Shant's mother, Paris, to the Shant Trust.[66] The Shant Trust had been established by Shant in 2007 with Shant as settlor, Hilde as trustee, and their three children as beneficiaries.[67] Several months later, on October 11, 2011, the Shant Trust, which was holding 520 NRR, was renamed the Pachava Trust but the settlor, Shant, and trustee, Hilde, remain unchanged in the amendment.[68] Hilde, as initial trustee, testified that Shant's parents did not contribute any assets to the trust other than 520 NRR.[69]

In 2013, the family moved to Norway, and, between 2013 and 2015, Shant was traveling between Armenia, Norway, and the U.S., staying at 520 NRR when in the U.S.[70]  Shant and Hilde divorced in April of 2015, and, while the children continued to reside in Norway, Hilde indicated that Shant left for the United States, and, to her knowledge, he resided at 520 NRR while there.[71] In August of 2015, the children moved back to the United States and lived with Shant at 520 NRR.[72]

---

[58] ICS Notes (USAPROD-000183)
[59] PNC-000258
[60] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p19:5-17
[61] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p19:5 to 21:13
[62] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p19:5 to 21:13
[63] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p19:5-17
[64] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p45:17 to 46:20
[65] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p19:5-17
[66] Deed dated June 21, 2011 (HOVPROD-001253)
[67] Shant S. Hovnanian Asset Trust Agreement dated October 8, 2007 (HOVPROD-000711-735)
[68] Trust Agreement dated October 11, 2011 (HOVPROD-000736-738)
[69] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p26:9-19
[70] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p52:6 to 53:18
[71] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p58:25 to 59:8
[72] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p59:9-14



*Pachava Trustees and Bank Account*

Hilde was trustee of the Pachava Trust from its inception through the end of April 2015, when she and Shant were divorced, and she resigned as trustee.[73] Both Hilde and Nina testified that the only asset contributed to the Pachava Trust was 520 NRR.[74,75] Real estate taxes on the 520 NRR are approximately $100,000 per year.  According to Hilde, once 520 NRR was in trust, the real estate taxes and expenses for 520 NRR were the responsibility of Shant and Hilde as parents of the beneficiaries.[76]

An account was initially opened at UBS for the Pachava Trust.  Then, in June 2013, Hilde established an account, ending with the four digits x1955, at Morgan Stanley in the name of the Pachava Trust ("Pachava Morgan Stanley Account")[77] and the assets previously held at UBS[78] were transferred to the Pachava Morgan Stanley Account.[79] Hilde indicated that outside of the banking activity, as reported on the bank statements, there were no other financial records kept regarding the Pachava Trust.[80] Nina also testified that she has access to the bank records for Morgan Stanley online, but other than utility bills, there are no other records for the trust, and no prior records had been turned over to her by Peter or Hilde, the prior trustees.[81]

Hilde testified that upon her resignation as trustee in April of 2015, she and Shant decided that Peter Hovnanian ("Peter"), Shant's cousin, would replace Hilde as trustee.[82] Hilde never had direct contact with Peter to discuss his appointment; instead Shant was left to execute the appointment of Peter.[83] Hilde also did not contact Morgan Stanley to inform them of her resignation.[84] Although Hilde resigned in April 2015, email correspondence from Morgan Stanley indicates the bank had not yet formalized Peter's appointment as trustee as of August 2, 2016,[85] over one full year after Hilde resigned."[86] On November 1, 2016, Shant then contacted Morgan Stanley to advise them that "the trustee for Pachava is changing to [William] Read Rankin,"[87]  and on January 13, 2017, Peter sent a letter of resignation to Morgan Stanley with an effective date of November 1, 2016.[88]  However, neither Peter nor Read were ever identified as the trustee on the account statements, and the Pachava Morgan Stanley account remained titled to "Hilde Jenssen

---

[73] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p:54:19 to 55:1
[74] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p26:9-19 and Deposition Transcript of Nina Hovnanian dated January 11, 2021, p85:16 to 86:8
[75] Nina indicates that there may be an access deed or easement related to the dock.
[76] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p:27:1-7
[77] Morgan Stanley Option New Account Form and Client Agreement dated June 18, 2013 (Morgan Stanely-00000001)
[78] UBS x1448 Hilde Jenssen Hovnanian Trustee, Pachava Asset Trust (FALCONE-000042)
[79] Morgan Stanley-00000016
[80] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p21:14 to 22:25
[81] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p77:3 to 80:3
[82] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p55:22 to 56:12
[83] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p55:22 to 56:12
[84] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p:57:4-6
[85] Morgan Stanley-00002635 to 00002637
[86] Morgan Stanley-00002635 to 00002637
[87] Morgan Stanley-00003584
[88] Email to Jennifer McLaughlin (Morgan Stanley) and Anthony Falcone dated January 13, 2017. (HOVPROD-001493)



Hovnanian TTEE" between Hilde's resignation in April 2015, all the way through Nina's appointment in December 2017.[89]

Nina became trustee on December 20, 2017,[90] and, during that same month, the name on the Morgan Stanley account was updated to "Nina Hovnanian TTEE".[91] Unlike Hilde who testified that the expenses of 520 NRR were the responsibility of her and Shant, Nina testified that she did not know how the expenses of 520 NRR were expected to be funded.[92]

Further, although Nina became trustee in December 2017, she did not start making decisions related to the Pachava Trust until later, and that it does appear that Shant was making decisions during that time period.[93] It was not until July 12, 2018, than Nina sent an email to Morgan Stanley apprising them that she was the trustee and that all notifications regarding the Pachava Trust should be sent to her.[94]

**Village Mall and the VSHPHH Trust**

_Village Mall and the Transfer to the VSHPHH Trust_

The VSHPHH Trust was established on December 28, 2012.[95] Shant's Parents were listed as the Settlors and Shant and his sister, Nina, were listed as the Trustees.[96] The Village Mall was transferred to the VSHPHH Trust by Shant's Parents on January 1, 2015.[97] Until Shant resigned in 2017, Nina and Shant were co-trustees of the VSHPHH Trust,[98] although Shant was more in charge and would confer with Nina.[99]

The Village Mall was a commercial property with rent paying tenants.  Even though the income-producing property was titled to the VSHPHH Trust on January 1, 2015, no bank account was setup for the trust activities for approximately five more years, in December 2019.  Instead, Nina indicated the rental income for the Village Mall was initially deposited to Vahak Sr.'s personal accounts, and after his death [on August 31, 2015], Shant arranged for the rents to be deposited to the Hovsat Bank Accounts.[100] Nina indicates that Hovsat was managing the Village Mall during this time, and Gandolfo was provided access to the Hovsat Bank Accounts, probably by Shant.[101]

---

[89] HOVPROD-000003-00677
[90] Morgan Stanley-000100002 and Deposition Transcript of Nina Hovnanian dated January 12, 2021, p197:9 to 198:6
[91] HOVPROD-000258
[92] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p226:17-20
[93] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p170:15 to 172:15
[94] MorganStanley-00007549
[95] VSHPHH Trust Agreement dated December 28, 2012 (HOVPROD-000775 to 000800)
[96] VSHPHH Trust Agreement dated December 28, 2012 (HOVPROD-000775 to 000800)
[97] Deed dated January 1, 2015 (USAPROD-000415)
[98] Deposition Transcript of VSHPHH Trust (Nina Hovnanian) dated February 22, 2021, p20:9 to 21:17
[99] Deposition Transcript of VSHPHH Trust (Nina Hovnanian) dated February 22, 2021, p27:5-9
[100] Deposition Transcript of VSHPHH Trust (Nina Hovnanian) dated February 22, 2021, p67:7-12.
[101] Deposition Transcript of VSHPHH Trust (Nina Hovnanian) dated February 22, 2021, p67:13-25



In December of 2019, nearly five years after the Village Mall property was titled to VSHPHH Trust, and two years after Nina took over as sole trustee, a bank account was setup for the trust at TD Bank.  Accordingly, between January 1, 2015, and December of 2019, the VSHPHH Trust did not have its own bank account but instead utilized commingled bank accounts titled to Hovsat.

### Hovsat dba Grandview

Hovsat was established in 1984, and based on the filing documents, Arthur Havighorst was listed as the agent for the entity, while Vahak Sr. was listed as the President.[102] Hovsat last filed an income tax return in 2008, listing Shant's Parents, Shant, and Shant's first wife as officers.[103] In 2012, the State of NJ revoked the entities status for failure to file annual reports, citing that last annual report was filed for year 2009.[104] It is my understanding that there have been no income tax returns filed by Hovsat relative to the time period of my analysis.

Based on the following testimony and documentation, it is my understanding that Hovsat provided cable TV services:

- Gandolfo testified that Grandview provided cable services to the Villages, a senior community.[105]

- Nina indicated Hovsat d/b/a Grandview, was the entity that received all the cable payments.

- Additionally, on November 1, 2017, Shant authorized Hovsat to enter into a Joint Venture Agreement with Omniverse under which Hovsat was described as a "multi-channel programming provider."[106]

---

[102] New Jersey Business Gateway Report dated June 3, 2021
[103] ICS Notes (USAPROD-000088)
[104] New Jersey Business Gateway Report dated June 3, 2021
[105] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p22:15-25
[106] OMNIPROD_0000121-0000129



*Hovsat and VSHPHH Bank Accounts and General Ledgers*

As previously discussed, between January 1, 2015 and December 2019, the VSHPHH Trust did not have its own bank account, but instead all the Village Mall rents were deposited to Vahak Sr.'s accounts and, later, into accounts held in the name of Hovsat. As part of my analysis, I have reviewed the following financial accounts of Hovsat, collectively the Hovsat Bank Accounts:

| Bank | Account | Type | Holder |
|------|---------|------|--------|
| Affinity FCU | x2523 | Membership Eligibility | Hovsat Inc. |
| Affinity FCU | x0902 / x7159 | Business Checking | Hovsat Inc. |
| Affinity FCU | x0901 | Business Savings | Hovsat Inc. |
| Affinity FCU | x2090 | Business Savings | Hovsat Inc. |[107]

The application for the Hovsat Bank Accounts was completed on October 12, 2011 listing Arthur Havighorst, Vice President, as the only signatory.[108] On March 27, 2012 an addendum to the application added Gandolfo and Antranik Sarkes to the account as Authorized Representatives.[109] The Hovsat Bank Accounts functioned as commingled accounts which received income and paid expenses relative to both Hovsat/Grandview, including funds related to the Omniverse Joint Venture Agreement, and the Village Mall.

The VSHPHH Trust never held a bank account until December 2019 when Nina established TD Bank checking x8609 in the name of the trust ("VSHPHH Trust Account") and advised Gandolfo that she "wasn't to use the Hovsat" account anymore.[110] Nina and Gandolfo are signatories on the VSHPHH Trust Account.[111] Within a month of the account being setup, the Hovsat Bank Accounts stopped being used, even for Hovsat related transactions.  Accordingly, even though a new account was setup in the name of the VSHPHH Trust, the practice of commingling the funds continued, as income and expenses relative to both Hovsat/Grandview and the Village Mall were now filtered through the new VSHPHH Trust Account.

Gandolfo entered bills related to Hovsat/Grandview and the Village Mall into a QuickBooks file. Gandolfo indicated that she was not a "bookkeeper" but just entered bills into QuickBooks and paid them, pointing to the fact that she "did not have any training in bookkeeping or accounting" but instead just used common sense.[112]  Gandolfo did not do bank reconciliations to ensure all transactions were entered and indicated that if transfers were made between entities she "wasn't really great at making sure that was entered into QuickBooks" but if she happened to see the

---

[107] The Membership Eligibility account does not have activity and holds a $5 balance for the duration of time the statements we were provided.
[108] Affinity FCU-001371
[109] Affinity FCU-001351
[110] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p92:7-19
[111] Business Account Maintenance statement (TDBank-0000318)
[112] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p15:7 to 16:20



transfer online, she "would just throw it into due to, due from or whatever" but had no documents to back up what the actual transaction represented.[113]

**FORENSIC ANALYSIS**

I reviewed the bank accounts held in the name of the Pachava Trust, VSHPHH Trust, Hovsat, Speedus NY, and Zargis, along with other financial documents of the trusts, Shant, and other related entities for purposes of determining the sources and uses of cash within each entity. In compiling the transaction activity within the accounts, my general procedures ("General Procedures") in analyzing the data were as follows:

- Classified the deposits by source of funds based on professional judgment and my review of the bank statements, deposit tickets, deposition transcripts, and other relevant financial documents.

  - If the source of funds was from a related Hovnanian entity or individual, I recorded the deposits to a "Due to/from" account;

  - If the source of funds was not from a known related entity or individual, but the deposit was for a known related entity or individual, I recorded the deposit to a "Due to/from" account. If the transaction impacted another entity which I analyzed, I also adjusted the ledger of that entity to include the "non-cash" transaction (i.e., the income received by one entity on behalf of the other); and

  - If the source of the funds was not from a known related entity or individual, I recorded the deposit to an income account.

- Classified the disbursements in categories based on professional judgment and my review of the canceled checks, deposition transcripts, and other relevant financial documents provided in discovery.

  - If the disbursement of funds was to a related Hovnanian entity or individual, I recorded the disbursement in a "Due to/from" account;

  - If the disbursement of funds was not to a known related entity or individual, but the disbursement was for the benefit of a known related entity, property, or individual, I recorded the disbursement in a "Due to/from" account. If the transaction impacted another entity which we analyzed, I also adjusted the ledger of that entity to include the "non-cash" transaction (i.e., the expense paid by one entity on behalf of the other); and

---

[113] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p94:7 to 96:16



<ul>
<li>o  If the disbursement of funds was not to a known related entity or individual, and otherwise not categorized based on the above, I recorded the disbursement in an expense account.</li>
</ul>

Additional specific procedures will be discussed in detail within the respective Financial Analysis section of the entities throughout this report. As the banking activity of accounts held in the name of Speedus NY and Zargis was interrelated with the accounts held in the names of the Pachava Trust and VSHPPH Trust, I will first discuss my analysis of Speedus NY and Zargis.  The following sections present my detailed analysis of accounts held in the name of these entities:

- Speedus NY
- Zargis
- Pachava Trust
- VSHPHH Trust and the Village Mall/ Hovsat d/b/a Grandview

**Speedus NY**

**Analysis**

I analyzed the financial documents for the Speedus NY Bank Accounts made available through the subpoenas at Chase Bank, Morgan Stanley, and Interactive Brokers, along with other relevant documents produced in discovery, in accordance with the General Procedures previously outlined.  In addition:

- I was provided with documents from Interactive Brokers showing an account opened for Speedus NY in September 2015.  Although this account is an asset of Speedus NY, I was not provided with complete statements to reconcile this account, so I have captured the transactions to and from this account as transfer activity.
- My analysis begins on April 29, 2013, as that was the date the Speedus NY Morgan Stanley account was opened. However, the Chase Bank documents only contained information beginning in June 2013. Accordingly, with the exceptions of transfers between Morgan Stanley and Chase, the activity from the Chase accounts for April 29 through May 31, 2013 is not included in my analysis.

My compilation of the transactions in the Speedus NY Bank Accounts for the period April 29, 2013 through July 31, 2020 is included at **Exhibit A**.



*Sources and Uses of Cash*

I then prepared a cash flow analysis for the Speedus NY Bank Accounts ("Speedus NY Cash Flow" attached as **Exhibit B**). A summary of the funds deposited to the Speedus NY Bank Accounts is as follows:

| Sources | Apr - Dec 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | Jan- July 2020 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Settlement Income | $  - | $  - | $  576,957 | $  1,617,217 | $  - | $  - | $  - | $  - | $  2,194,175 |
| Shant's Divorce Proceeds | - | - | 337,044 | - | - | - | - | - | 337,044 |
| Tranfers from Related Entities | 18,400 | 13,150 | 45,821 | 24,300 | 85,875 | 98,733 | 64,980 | 19,200 | 370,459 |
| Gift - Paris Hovnanian | 268,476 | - | - | - | - | - | - | - | 268,476 |
| Miscellaneous Deposits | 3,244 | 10,100 | 898 | - | 1,820 | 8,557 | - | - | 24,618 |
| **Total Sources** | **$  290,120** | **$  23,250** | **$  960,720** | **$  1,641,517** | **$  87,695** | **$  107,290** | **$  64,980** | **$  19,200** | **$  3,194,772** |

As outlined above, between April 2013 and July 2020, Speedus NY was funded as follows:

- Settlement Income - $2,194,175 - Pursuant to a letter dated August 26, 2020 from Sperling & Slater, the firm was engaged by Shant and related entities to pursue two separate claims against professionals who previously provided opinion letters in connection with distressed asset debt transactions.[114] On June 18, 2015, $576,957 was deposited directly to Speedus NY Morgan Stanley x0617 account from Northern Trust. In October 2016, additional funds totaling $1,617,217 were wired into Interactive Brokers through the Northern Trust on behalf of Sperling Slater, PC.[115]

- Divorce Proceeds- $337,044– Shant and Hilde were divorced in April 2015, and as part of the divorce settlement, Shant received these funds from Hilde.[116]

- Gift- $268,476- Represents a transfer completed by Shant to open the Speedus NY Morgan Stanley account with funds of Shant's mother. Although this transaction was documented with Morgan Stanley as the "gifting of assets,"[117] Nina asserted that these funds represented a loan from Paris to Speedus NY but was unable to provide any details of the terms, interest rate, or any re-payments made.[118] Additionally, it is my understanding that Paris' estate did not file an estate tax return which would identify any loans due to her, Speedus did not file an income tax return which would identify any loans payable, and no other accounting records or documentation has been submitted in discovery to substantiate the alleged loan receivable. Accordingly, we have classified the transaction as a gift.

---

[114] EXPERTREQ-000002
[115] EXPERTREQ-000001
[116] Deposition Transcript of Hilde Jenssen dated April 16, 2021, p61:15 to 63:19
[117] Morgan Stanley- 00007830 to 00007834
[118] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p212:2 to 216:23



- Transfers from Related Parties- $370,459- As outlined at **Exhibit B**, funds were received into the Speedus NY Bank Accounts from the Zargis Bank Account ($161,279), Hovsat Bank Accounts ($134,200), Hovnanian International ($64,980) and Hovbilt ($10,000).

- Miscellaneous Deposits- $24,618- Includes deposits are otherwise unclassified and include a $10,100 bank check drawn on RBC in 2014 and a $8,557 check drawn on Signature Bank in 2018.

As highlighted above, most of the funding into the Speedus NY bank accounts occurred in 2015 and 2016, when divorce and settlement proceeds more than $2.5 million were received. Prior to the receipt of these funds in 2015, the Speedus NY Bank Accounts had been reduced to only $14,003 as of December 31, 2014.

Similarly, disbursements from the Speedus NY Bank Accounts saw a marked increase beginning in 2015. The largest volume of the Speedus NY disbursement activity was executed by use of Shant's debit card attached to the Morgan Stanley x0617 account.[119]  Between April 2013 and July 2020, nearly $3,000,000 was disbursed from the Speedus NY Bank Accounts, with over half of the funds being transferred to or for the benefit of related parties.

The disbursements from the Speedus NY Bank Accounts are as follows:

| Uses | Apr - Dec 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | Jan- July 2020 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Expenses Paid** | | | | | | | | | |
| Payroll and Benefits | $ (32,179) | $ (23,558) | $ (57,938) | $ (56,662) | $ (55,593) | $ (60,158) | $ (58,842) | $ (18,671) | $ (363,599) |
| Travel & Restaurants | - | - | (63,727) | (49,092) | (55,633) | (12,962) | - | - | (181,415) |
| Professional Fees | (75,500) | - | (6,718) | - | - | - | - | - | (82,218) |
| Children's School | - | - | (60,821) | (41,561) | (284) | - | - | - | (102,666) |
| Unidentifed & unclassified | (3,345) | (100) | (20,910) | (15,672) | (32,600) | (71) | - | - | (72,697) |
| Food, Home & Personal Care | (62) | 31 | (17,880) | (20,345) | (18,799) | (3,287) | - | - | (60,342) |
| Automobile Expense | (150) | (150) | (712) | (39,152) | (1,994) | (505) | - | - | (42,662) |
| Cash | - | - | (8,621) | (20,256) | (12,151) | (1,125) | - | - | (42,152) |
| Property Care & Maintenance | - | - | (13,070) | (8,902) | (1,482) | (42) | - | - | (23,495) |
| Entertainment (NRCC, other) | - | - | (10,211) | (5,754) | (4,761) | (273) | - | - | (20,999) |
| Insurance | (15,245) | - | (35) | (282) | - | - | - | - | (15,562) |
| Supplies & Other Expenses | (2,242) | (1,205) | (1,801) | (3,796) | (3,805) | (1,237) | (436) | (210) | (14,731) |
| Telephone, Utilities & Waste Disposal | (469) | - | (3,698) | (3,596) | (1,115) | (346) | - | - | (9,224) |
| **Transfers to or Paid for the Benefit of:** | | | | | | | | | |
| Related Entities | (93,410) | - | (37,500) | (818,000) | (641,000) | (27,998) | (5,000) | - | (1,622,908) |
| Village Mall | - | - | (201,204) | - | - | - | - | - | (201,204) |
| Zac's Garage | - | - | (35,000) | - | (46,667) | - | - | - | (81,667) |
| Unknown- Securities Transferred Out | - | - | (40,475) | - | - | - | - | - | (40,475) |
| Paris Hovnanian (MS x0028) | (13,750) | - | - | - | - | - | - | - | (13,750) |
| Vahak Paris Hovnanian | - | - | - | (7,000) | - | (750) | - | - | (7,750) |
| **Total Uses** | $ (236,352) | $ (24,982) | $ (580,319) | $ (1,090,068) | $ (875,883) | $ (108,753) | $ (64,278) | $ (18,881) | $ (2,999,516) |

---

[119] Debit Card – Shant Hovnanian card ending in 3389 (Morgan Stanley-00001200)



The disbursements from the Speedus NY Bank Accounts included the following:

- Payroll and Benefits- $363,599- include all payments to, or for the benefit of Karen Gandolfo, in addition to the payroll taxes and fees paid directly to the payroll provider, ADP, and taxes paid to the state. As will be discussed later in this report, Gandolfo was also paid through the bank accounts of other entities. Similarly, the life insurance and telephone expense, benefits of Gandolfo, were funded through Hovsat for a number of years.

- Travel & Restaurants – $181,415- includes airline tickets, hotel expenses, rental car expenses, Uber transactions, and restaurants.  The charges are made throughout the world: New Jersey, New York, London, Hawaii, Saint Vincent, the Grenadines, and Armenia.

- Professional Fees- $110,218- The legal fees were largely paid in 2013 with $70,000 paid to William Read Rankin.

- Children's School Costs – $102,666- payments directly to the Ranney School, as well as associated purchases of textbooks, etc.

- Unclassified Expenses – $72,697- this includes payments or disbursements to payees that we could not otherwise classify, including over $31,000 paid to Marie Conroy.

- Food, Home & Personal Care – $60,342- purchases at grocery stores, medical expenses, clothing purchases, pharmacy purchases and pet expenses.

- Automobile Expenses – $42,512- includes gas and repair payments, as well as a purchase of $37,940 at Auto Exotica on January 4, 2016.

- Cash - $42,152- the cash withdrawals were comprised of the following:

    - $31,993 were ATM withdrawals from the Pachava Morgan Stanley Account.  Shant is the only authorized signatory, and the Morgan Stanley statements reflect that Shant is the holder of the ATM card.

    - $4,659 of checks were written to cash from the Pachava Morgan Stanley Account. Shant is the only authorized signer on the account.



- o   $5,500 were withdrawn from Chase x9365 with bank withdrawal slips[120] which appear to contain a signature similar to that for Shant which is included on record with the bank.[121]

- Property Care & Maintenance – $23,495 and Telephone, Utilities & Waste Disposal- $9,224- These categories include landscaping, repairs, and utilities expenses. Speedus NY did not own real property or pay rent for the usage of any office space.

- Entertainment – $19,752- Includes dues for the Navesink Country Club, as well as additional personal entertainment expenses such as Xbox, iTunes, Michaels Stores, Toys R Us, etc.

- Transfers to Related Entities- $1,622,928- Includes the following:

  - o   Transfers to Pachava Morgan Stanley Account- $156,498- Around the time that Hilde resigned as trustee of the Pachava Trust, Speedus NY began to fund the Pachava Trust.

  - o   Transfer to Zargis Bank Account- $349,200- Includes $340,000 related to two transfers on January 13 and 17, 2017. As will be more fully described within the "$340,000 Transfer to Zargis for 520 NRR" and Zargis Financial Analysis sections of this report, the $340,000 was transferred from the Speedus NY Bank Account and disbursed from the Zargis Bank Account to fund a $319,349 tax lien filed against 520 NRR.

  - o   Hovnanian International- $1,007,000- Between 2016 and 2017, $1,007,000 was transferred from the Speedus NY Bank Accounts to Hovnanian International. Nina testified that Shant had nothing to do with Hovnanian International,[122] and that the entity was held by a trust for benefit of Vahak Sr.'s grandchildren.[123]  No records are available for this entity to determine the use of the funds; however, as will be described later in this report, Hovnanian International funded both the Pachava Trust and VSHPHH Trust beginning in 2019.

  - o   Transfers to and Payment of Expenses for Hovbilt – $57,575- During 2013, $30,575 was paid through the Speedus Morgan Stanley account for professional fees related to the Hovbilt bankruptcy. In addition, $17,000 was transferred directly to Hovbilt.

---

[120] JPMorgan-001153, 001219
[121] JPMorgan-000016
[122] Deposition Transcript of Nina Hovnanian dated January 11, 2021, p24:2-13
[123] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p243:17 to 244:8



- ○ Transfers to Hovsat- $52,635 was transferred directly to Hovsat, $26,635 prior to 2014, and $26,000 between 2015 and July 2020.

- Payment of Village Mall Tax Lien- $201,204- On April 10, 2015, $201,204 was paid to William Read Rankin[124] to settle the outstanding tax lien on the Village Mall.[125] As described in the following section "$201,204 Payment of the Village Mall Taxes," these funds were used to satisfy a tax lien on the Village Mall, which was deeded to the VSHPHH Trust on January 1, 2015 and came from Shant's divorce proceeds.

- Transfers to Zac's Garages- $81,667- It is my understanding that the Gapave Trust, a trust settled by Shant,[126] owns 50% of Zac's Garage,[127] and accordingly, these transfers have been classified as a related party transaction.

- Transfers out of Account- $40,475- In 2015, securities were transferred out of the Speedus NY Morgan Stanley Account to an unknown account.

*$340,000 Transfer to Zargis for 520 NRR Taxes*

On January 13, 2017 and January 17, 2017, a total of $340,000 was transferred out of the Speedus NY Bank Accounts to the Zargis Bank Account.  As previously discussed, after ending 2014 with a $14,003 balance, during 2015 and 2016, the Speedus NY Bank Account was funded with approximately $2.5 million in funds related to Shant's divorce proceeds and settlement proceeds.

---

[124] Morgan Stanley-00001087 to 00001096
[125] Morgan Stanley- 00010106 to 00010107
[126] HOVPROD-000687
[127] ICS Notes (USAPROD-000128)



As set forth in the Zargis Financial Analysis, the $340,000 transfer into the Zargis Bank Account was used within several days to fund the real estate tax lien for 520 NRR as follows:

| | | Zargis Bank Account | | |
|---|---|---|---|---|
| | | PNC-000137-138 | | |
| **Date** | **Description** | **Amount** | **Balance** | |
| 1/11/2017 | Balance | | $ 14,041.55 | |
| 1/13/2017 | From Speedus Chase x9365 (check 17424) | $ 140,000.00 | 154,041.55 | JPMorgan-000264,266 |
| 1/17/2017 | From Speedus Morgan Stanley x0617 | 200,000.00 | 354,041.55 | MorganStanley-00001411 |
| 1/19/2017 | Cashier's Check- Middletown Township | (319,349.49) | 34,692.06 | USA PROD-000537-543 |

Accordingly, although the 520 NRR tax lien payment was disbursed through the Zargis Bank Account, the payment was funded by Shant's divorce proceeds and settlement proceeds within the Speedus NY Bank Account.

### $201,204 Payment of the Village Mall Taxes

On March 1, 2015, the Speedus NY Morgan Stanley Account had a balance of $16,352.[128]  On March 20, 2015, $272,918 from Shant's divorce settlement was deposited into the Speedus NY Morgan Stanley Account, and after other disbursements from the account, the remaining balance was $284,682 as of March 30, 2015, summarized as follows:

| | | Speedus Bank Account | | |
|---|---|---|---|---|
| | | MS x0617 | | |
| | | MorganStanley-00001081-1092 | | |
| **Date** | **Description** | **Amount** | **Balance** | |
| 3/1/2015 | Balance | | $ 16,352.00 | |
| 3/20/2015 | Divorce Proceeds | $ 272,917.87 | 289,269.87 | Deposition Transcript of Hilde Jenssen dated April 16, 2021, p61:15 to 63:19. |
| 3/21 -3/31/2015 | Other Acvtivity | (4,587.70) | 284,682.17 | |
| 4/10/2015 | Branch Check -  William Read Rankin | (201,204.18) | | MorganStanley-00001087-1096, Morgan Stanley-00010106-10107 |

As outlined above, no other deposits were made to the account, and on April 10, 2015, $201,204 was paid to William Read Rankin[129] to settle the outstanding tax lien on the Village Mall.[130] Accordingly, on April 10, 2015, Shant's personal divorce proceeds were used to pay the tax lien on the Village Mall, which was titled to the VSHPHH Trust at that time.

---

[128] Morgan Stanley-00001081
[129] Morgan Stanley-00001087 to 00001096
[130] Morgan Stanley- 00010106 to 00010107



**Summary and Conclusion**

My analysis of the Speedus NY Bank Accounts is summarized as follows:

- Shant was an authorized signer on all accounts and was the only holder of the Speedus NY Morgan Stanley debit card.  There has been no evidence to indicate that anyone besides Shant had access to the Speedus NY Bank Accounts during the period of my review.

- Additionally, based on testimony provided, and my analysis and discussion as presented in this report, Speedus NY does not appear to be carrying on any ongoing business operations within the Speedus NY Bank Accounts, as supported by the following:

  o Gandolfo indicated that Speedus has not had any business operations since the early 2000s. Gandolfo receives paychecks from Speedus but indicated that she does not perform any duties for Speedus.

  o Speedus and Speedus NY have not filed any income tax returns to report any business income or expenses during the period of my review.

  o Between May 2013 and July 2020, the funding sources of the Speedus NY Bank Accounts were primarily Shant's personal funds, including gifts and divorce proceeds, and a settlement of legal malpractice claims relating to prior tax litigation.  Accordingly, there were no significant funding sources that indicate there was any ongoing business operations.

  o The expenses paid from the Speedus NY Bank Accounts include personal expenses including groceries, medical expenses, clothing, travel and restaurants, children's school costs, cash withdrawals, Navesink Country Club dues, and other entertainment expenses.



- In addition, the Speedus NY Bank Accounts directly funded the $201,204 satisfaction of a tax lien against the Village Mall in 2015, and a $319,349 tax lien against 520 NRR in 2017.  The properties were titled to the VSHPHH Trust and Pachava Trust, respectively, at the times these payments were made.

Accordingly, it is my opinion that the Speedus NY Bank Accounts were comprised of personal deposits, included little, if any, ongoing business income, and were used by Shant to fund personal expenses, a $201,204 satisfaction of a tax lien against the Village Mall in 2015, and a $319,349 tax lien against 520 NRR in 2017.

## Zargis

## Analysis

I analyzed the financial documents for the Zargis Bank Account made available through the subpoena at PNC Bank, along with other relevant documents produced in discovery, in accordance with the General Procedures previously outlined.  In addition:

- There were deposits to the Zargis Bank Account labeled within the bank statements as "ACH Settlement Debits Grandview."  In my analysis, I classified these transactions, along with the associated returns, as amounts due to Hovsat/Grandview.  I also adjusted my analysis of Hovsat/Grandview to include this income.

The compilation of the transactions in the Zargis Bank Account for the period September 1, 2013 through January 31, 2020 is included at **Exhibit C**.

### Sources and Uses of Cash

As set forth on **Exhibit D**, I then prepared a cash flow analysis for the Zargis Bank Account ("Zargis Cash Flow").  A summary of the sources of funds into the Zargis Bank Account between September 2013 and January 2020 is as follows:

| Sources of Cash | Sept - Dec 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | Jan 2020 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Hovsat/ GrandView Revenues (pd to Zargis) | $ 34,992 | $ 114,180 | $ 66,494 | $ 56,677 | $ 49,393 | $ 45,933 | $ 39,546 | $ 3,712 | $ 410,927 |
| From 3M Company | 20,291 | 39,279 | 71,408 | 52,252 | 86,505 | 40,036 | 30,625 | - | 340,397 |
| Speedus NY Bank Accounts | - | - | - | - | 340,000 | - | - | - | 340,000 |
| Other Deposits | - | - | - | - | - | 350 | - | - | 350 |
| **Total Sources** | **$ 55,283** | **$ 153,459** | **$ 137,902** | **$ 108,929** | **$ 475,898** | **$ 86,318** | **$ 70,171** | **$ 3,712** | **$1,091,674** |



As shown above, between September 2013 and January 2020, $1,091,674 of funds were deposited or transferred into the Zargis Bank Account.  The transactions included:

- 3M- $340,397- Deposits from 3M appear to be residual receipts related to Zargis' 2011 sale of assets to 3M.

- Hovsat Revenues- $410,927- Hovsat revenues, notated on the bank statements as payments to Grandview, were deposited to the Zargis Bank Account.

- Speedus NY Bank Accounts- $340,000- As previously discussed in the Speedus NY Financial Analysis section of this report, funds were transferred from the Speedus NY Bank Accounts to the Zargis Bank Account on January 13, 2017 ($140,000)[131] and January 17, 2017 ($200,000).[132] An additional $9,200 was transferred from Speedus to Zargis prior to September 2013, as reflected in the Speedus cash flow attached as **Exhibit B**.

- Other deposits - $350 - The documents obtained from PNC Bank do not include the origination of these wire transfers into the account.

The funds disbursed from Zargis totaled $1,089,143, and are summarized as follows:

| Uses Of Cash | Sept - Dec 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | Jan 2020 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Expenses: | | | | | | | | | |
| Wires to Karen Gandolfo | - | (13,950) | (13,500) | (13,202) | - | - | - | - | (40,652) |
| Cash Withdrawals | (550) | (1,000) | - | (1,100) | (13,959) | (6,350) | - | - | (22,959) |
| Professional Fees | (10,000) | (5,000) | (1,500) | - | (5,000) | (890) | - | - | (22,390) |
| Bank Service and ADP Fees | (1,702) | (5,779) | (5,912) | (5,769) | (5,384) | (5,290) | (3,510) | (256) | (33,601) |
| Other | (913) | (1,112) | (1,547) | (4,625) | (8,186) | (2,609) | (9,183) | (200) | (28,375) |
| Dues- Navesink Country Club | - | - | - | - | (4,000) | (2,380) | - | - | (6,380) |
| Subtotal | (13,165) | (26,841) | (22,459) | (24,695) | (36,529) | (17,519) | (12,693) | (456) | (154,357) |
| To or for the benefit of: | | | | | | | | | |
| 520 NRR Real Estate Taxes | - | - | - | - | (366,977) | - | - | - | (366,977) |
| Hovsat Bank Accounts | (40,900) | (97,650) | (84,650) | (66,179) | (16,950) | (8,500) | (23,400) | - | (338,229) |
| Speedus NY Bank Accounts | (2,000) | (12,750) | (27,421) | (5,900) | (53,875) | (13,733) | (10,000) | - | (125,679) |
| Pachava Morgan Stanley Account | - | - | - | (1,750) | (4,000) | (16,600) | (3,000) | - | (25,350) |
| Hovbilt Inc. | - | (4,000) | - | - | - | (10,900) | - | - | (14,900) |
| Vahak Hovnanian | - | (12,000) | (3,250) | (500) | (8,250) | (8,690) | (30,960) | - | (63,650) |
| Subtotal | (42,900) | (126,400) | (115,321) | (74,329) | (450,052) | (58,423) | (67,360) | - | (934,786) |
| Total Uses | $ (56,065) | $(153,241) | $(137,780) | $ (99,024) | $(486,581) | $ (75,942) | $ (80,053) | $ (456) | $ (1,089,143) |

---

[131] JPMorgan-001193, PNC-000137 to 000138
[132] PNC-0005, PNC000137 to 000138



As outlined above, of the $1,089,143 in total uses of cash between September 2013 and January 2020, only $154,357 were funds that were not paid to, or for the benefit of, a related entity. These $154,357 in disbursements from the Zargis Bank Account included the following:

- Wires to Karen Gandolfo- $40,652- Payments from the Zargis Bank Account to Karen Gandolfo were direct wires, not payroll paid through ADP.  Gandolfo testified that she never kept QuickBooks or performed any service for Zargis.[133]

- Cash Withdrawals- $22,959- Cash is withdrawn via bank withdrawal tickets which include a signature of the requester.  Shant is the only authorized signatory on the account.[134]

- Professional Fees- $22,390- includes payments to William Read Rankin (legal), Kelley Drye & Warren (legal), and Meredith O'Brien, LCSW (mental health counselor).

- Bank Service and ADP Fees- $33,601- includes payments for bank service fees, along with a flat rate ADP monthly service fee.  There is no payroll processed from the Zargis Bank Account.

- Other Expenses- $28,375- includes unclassified expenses, including $5,460 paid to Marie Convoy in 2016 and 2017, $3,000 to John Hodian in 2017, and $7,633 to GGKAT, LLC in 2019.

- Navesink Country Club Dues- $6,380- includes payments for the membership at Navesink Country Club.

---

[133] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p31:11-16
[134] PNC-000258



Most of the funds disbursed from the Zargis Bank Account were transferred to other entities or used for the benefit of other entities as follows:

- 520 NRR Tax Payments- $366,977- As previously discussed $340,000 was transferred from Speedus NY Bank Accounts to the Zargis Bank Account, increasing the balance in the Zargis Bank Account from $14,042 to $354,041 as follows:

| | Zargis Bank Account | | |
| | PNC-000137-138 | | |
| Date | Description | Amount | Balance | |
| 1/11/2017 | Balance | | $ 14,041.55 | |
| 1/13/2017 | From Speedus Chase x9365 (check 17424) | $ 140,000.00 | 154,041.55 | JPMorgan-000264,266 |
| 1/17/2017 | From Speedus Morgan Stanley x0617 | 200,000.00 | 354,041.55 | MorganStanley-00001411 |
| 1/19/2017 | Cashier's Check- Middletown Township | (319,349.49) | 34,692.06 | USA PROD-000537-543 |

On January 19, 2017, two days after the funds were received into the Zargis Bank Account, a cashier's check of $319,349.49 was issued to Middletown Township to settle a tax lien on 520 NRR for unpaid taxes dating back to December 2014.[135]  Based on the balances in the account, the tax lien could not have been paid without the $340,000 transferred from the Speedus NY Bank Account. As previously discussed, although the 520 NRR tax lien payment was disbursed through the Zargis Bank Account, the payment was funded by Shant's divorce proceeds and settlement proceeds within the Speedus NY Bank Account.

Approximately one month later, on February 13, 2017, an ACH transaction from the Zargis Bank Account paid the current tax bill for 520NRR in the amount of $23,814.[136]  Another payment for the subsequent quarter 520 NRR tax bill of $23,814 on May 11, 2017 was also paid from the Zargis Bank Account.[137]  At the time of these transfers, 520 NRR was titled to the Pachava Trust.

- Hovsat Bank Accounts- $338,229- Partially offsetting the deposits of $410,927 of Hovsat/Grandview's revenue into the Zargis Bank Account, funds were transferred from the Zargis Bank Account to the Hovsat Bank Accounts totaling $338,229.

- Speedus NY- $125,679- Zargis transferred funds to the Speedus NY Bank Accounts.

- Pachava Morgan Stanley Account- $25,350- transferred from the Zargis Bank Account to the Pachava Morgan Stanley account.

---

[135] USAPROD-000537 to 000543
[136] PNC-000142
[137] PNC-000156



- Hovbilt- $14,900- Zargis transferred funds to Hovbilt in 2014 and 2018.

- Vahak Hovnanian- $63,650- There were transfers totaling $67,400 to an account identified as "Vahak Hovnanian" on the PNC bank wire transfer documents.  It is unclear if this is an account in the name of Vahak Sr. or Vahak Jr.

**Summary and Conclusion**

My analysis of the Zargis Bank Account is summarized as follows:

- Shant is the only signatory on the account.

- Additionally, based on testimony provided, and my analysis and discussion as presented in this report, Zargis does not appear to be carrying on any ongoing business operations within the Zargis Bank Account, as supported by the following:

    o There are residual deposits from 3M into this account, but there are no associated business expenses for Zargis paid through the account, such as payroll, rent, or utilities, which would be indicative of ongoing business operations. Gandolfo is wired funds from the Zargis Bank Account, even though she testified that she does not provide any services for Zargis.

    o Zargis has not filed any income tax returns setting forth any business activity during the period of my analysis.

- My analysis also demonstrated that the Zargis Bank Account acted as a clearing account for other entities, whereby funds were deposited to the Zargis Bank Account and then transferred out, as follows:

    o Of the $1,091,674 in funding sources between September 2013 and January 2020, at least $934,786 is transferred to or for the benefit of a related entity or individual.

    o $410,927 of funds due to Hovsat/Grandview for cable services are deposited to the Zargis Bank Account. Funds from the Zargis Bank Account totaling $338,229 are then transferred to the Hovsat Bank Account.



  o The Zargis Bank Account received $340,000, or 33% of its funding, from the Speedus NY Bank Accounts on January 13 and 17, 2017. $319,349 of the funds were immediately passed through the account to pay a real estate tax lien of 520 NRR.

Accordingly, it is my opinion that Shant used the Zargis Bank Account as a clearing account for funds of other entities, including, but not limited to, monies transferred in from the Speedus NY Bank Accounts for the payment of a real estate tax lien on 520 NRR.

**Pachava Trust and 520 NRR**

**Analysis**

I analyzed the financial documents for the Pachava Morgan Stanley account x1955 made available through the subpoena at Morgan Stanley, along with other relevant documents produced in discovery, in accordance with the General Procedures previously outlined. In addition:

- Morgan Stanley x1955 opened in June 2013 with transfers from UBS x1448. I have not included the UBS activity in my analysis but the transfers from UBS into Morgan Stanley have been recorded and included in the June 2013 Pachava Morgan Stanley Account balance.

Attached as **Exhibit F** is my compilation of the transactions in the Pachava Morgan Stanley Account between June 1, 2013 and December 31, 2019.

*Shant's Involvement with the Pachava Morgan Stanley Account*

Shant's involvement with the Pachava Morgan Stanley Account changed over time.  Shant's wife, Hilde, was trustee between June 21, 2011, the date 520 NRR was initially transferred to the trust, up until her resignation in April 2015. During that time, Shant directed the movement of Pachava Morgan Stanley funds and made decisions regarding the expenses of 520 NRR.  For example:

- On January 28, 2014, Morgan Stanley emailed both Hilde and Shant asking if the $22,544.90 of 520 NRR real estate taxes due on February 1, 2014 could be paid out of the Pachava Morgan Stanley Account, and



the next day, Shant, not Hilde, responded "not yet, but can you transfer 9k to [H]ovsat and 750 to [V]ahak [Jr.]?"[138]  On January 30, 2014, $9,500 was transferred to Hovsat and $750 to Vahak Jr.[139]

o   As will be more fully described below, and as outlined at **Exhibit H**, the real estate taxes on 520 NRR subsequently went unpaid until one payment was made on December 29, 2014, and then again until Zargis made a $319,349 tax lien payment on January 19, 2017.

o   Prior to Shant's request for the $9,500 transfer to Hovsat, the Hovsat AFCU bank accounts were overdrawn.[140]  Over the next seven days, Hovsat utilized the $9,500 in funds for expenses unrelated to 520 NRR, as follows:

| **Hovsat AFCU Accounts** Affinity-FCU-001844 to 001849 and 001384 to 001595 | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Transactions** | | | | **Balance** | | | |
| **Effective Date** | **Description** | **Note** | **x0902** | **x0902** | **x2523** | **x0901** | **Total** |
| 1/29/2014 | Ending Balance | | | (203.04) | 5.00 | 26.39 | (171.65) |
| 1/30/2014 | Insufficient Funds Charges | | (100.00) | (303.04) | 5.00 | 26.39 | (271.65) |
| **1/30/2014** | **Wire-in from Pachava** | | **9,000.00** | **8,696.96** | **5.00** | **26.39** | **8,728.35** |
| 1/30/2014 | Check 2069: Kevin Morrison | D | (150.00) | 8,546.96 | 5.00 | 26.39 | 8,578.35 |
| 1/30/2014 | Check 2057: The Hartford | B | (329.01) | 8,217.95 | 5.00 | 26.39 | 8,249.34 |
| 1/31/2014 | Bank Fee | | (2.00) | 8,215.95 | 5.00 | 26.39 | 8,247.34 |
| 1/31/2014 | Deposit | | 232.25 | 8,448.20 | 5.00 | 26.39 | 8,479.59 |
| 1/31/2014 | Dividend | | 0.04 | 8,448.24 | 5.00 | 26.39 | 8,479.63 |
| 2/1/2014 | Quickbooks online | | (39.95) | 8,408.29 | 5.00 | 26.39 | 8,439.68 |
| 2/3/2014 | Check 2070: Kevin Morrison | A | (1,628.03) | 6,780.26 | 5.00 | 26.39 | 6,811.65 |
| 2/4/2014 | Solinus Inc | C | (115.90) | 6,664.36 | 5.00 | 26.39 | 6,695.75 |
| 2/4/2014 | Transfer AFCU x1502 (Vahak Sr.) | | 2,700.00 | 9,364.36 | 5.00 | 26.39 | 9,395.75 |
| 2/5/2014 | Check 2071: Antranik Sarkes | A | (1,921.97) | 7,442.39 | 5.00 | 26.39 | 7,473.78 |
| 2/6/2014 | Direct TV Service | E | (6,716.51) | 725.88 | 5.00 | 26.39 | 757.27 |
| Gandolfo Grandview general ledger provides the following details for these payments | | | | | | | |
| | A Payroll period ended 1/31/14. | D Gas | | | | | |
| | B Worker's compensation insurance. | E Direct TV- TF | | | | | |
| | C Email hosting | | | | | | |



After Hilde's resignation in April 2015, and prior to Nina's appointment as trustee on December 20, 2017, Shant's involvement with directing the movement of funds into and out of the Pachava Morgan Stanley Account became more pronounced, and as stated earlier, it was not until July 12, 2018 that Nina advised Morgan Stanley that all inquiries related to the trust should be directed to her.[141] Some examples of Shant's involvement are as follows:

- On Monday, February 22, 2016, Shant emailed Jennifer McLaughlin, a Morgan Stanley employee handling the Pachava Morgan Stanley Account ("Jennifer"), to transfer $3,500 to Pachava Trust from Speedus "…as we have done before."[142] On February 22, 2016, the Pachava Morgan Stanley Account received $3,500[143] from the Speedus NY Morgan Stanley Account.

- On Wednesday, March 23, 2016, Shant emailed Michele Ciacma at Morgan Stanley "$2000.00 from speedusny.com" to which Michele replied, "I transferred the $2000 from the Speedus NY account to the [Pachava] Trust account ending in 955," indicating she moved funds from the Speedus NY Bank Accounts to the Pachava Morgan Stanley Account.[144]

- On August 9, 2016, after the "appointment" of Peter as the trustee, Shant received an email from Jennifer that stated, "[a]re you able to contact the Red Bank branch for a transfer into the Pachava Asset Trust? We have a debit of $536.06 resulting from the $978.59 Chubb charge."[145] On August 9, 2016 a transfer of $1,000 was made to the Pachava Morgan Stanley Account from the Zargis Bank Account. As outlined in both the Speedus NY and Zargis Financial Analysis sections of this report, and as will be more fully outlined below, the Speedus NY Bank Accounts and Zargis Bank Account, both of which were used by Shant, were a continued source of funding to the Pachava Morgan Stanley Account between 2015 and 2019.

- On September 12, 2016, Anthony Falcone, CPA emailed Morgan Stanley requesting copies of the financial documents for the year 2015 and copies Shant, not Peter, who is the purported trustee at the time.  Likewise, Morgan Stanley responded and indicated that they verbally confirmed this request with Shant.[146]

---

[141] Morgan Stanley-0007549
[142] Morgan Stanley-00002471
[143] HOVPROD-000283
[144] Morgan Stanley-00002555
[145] Morgan Stanley-00002641
[146] Morgan Stanley-00003545



Additionally, even after Nina became trustee on December 20, 2017, Shant continued to be involved with the finances of the Pachava Morgan Stanley Account:

- On February 14, 2018, Morgan Stanley emailed Shant "The balance in Pachava is down to $155.89, should we transfer assets from Speedus to cover the bills toward the end of the month?"[147] On February 20, 2018, $3,000 was transferred from the Zargis Bank Account to the Pachava Morgan Stanley Account, after which time bills for 520 NRR utilities and Geico auto insurance were paid as follows:

| 2/14/2018 | | Balance | | 155.89 |
|---|---|---|---|---|
| 2/20/2018 | | Tranfer from Zargis | 3,000.00 | 3,155.89 |
| 2/21/2018 | Automated Payment | NJ American Water | (1,108.08) | 2,047.81 |
| 2/21/2018 | Automated Payment | NJNG | (855.06) | 1,192.75 |
| 2/23/2018 | Automated Payment | FirstEnergy | (799.31) | 393.44 |
| 2/26/2018 | Automated Payment | Geico | (385.14) | 8.30 |

[148]

- On March 27, 2018, Morgan Stanley emailed Shant, not Nina, to indicate "Verizon bill is posted to Pachava today, we need to move the $97.55 you have in Speedus to just cover the payment," to which Shant replied "sure go ahead."[149]

- On March 28, 2018, Morgan Stanley again emailed only Shant indicating that "the $10,000 wire into Speedus posted this morning.  Should we move fund to Pachava to cover April's bills?"[150] The same day, Shant responded "yes, do 3k, mark it on behalf of Zargis,"[151] and $3,000 was transferred into the Pachava Morgan Stanley Account.[152]

- On May 8, 2018 Morgan Stanley emailed Shant, "just an FYI- the Pachava Asset trust currently has $1,026.15 cash available. The automated payments will begin to hit the account in a few days, just wanted to let you know in case you wanted to transfer addtl funds to cover."[153] No funds were transferred to the Pachava Morgan Stanley Account and on May 10, 2018, the Chubb payment for 520 NRR insurance bounced.[154]

Accordingly, as demonstrated above, even when there was an appointed trustee, Shant directed Morgan Stanley with respect to the movement of funds in and out of the Pachava Morgan Stanley Account.

---

[147] Morgan Stanely-00007178-0007179
[148] HOVPROD-000078-000085
[149] Morgan Stanley-00007177
[150] Morgan Stanley-00007177
[151] Morgan Stanley-00007177
[152] HOVPROD-000091
[153] Morgan Stanley-00007176
[154] HOVPROD-000107



<u>*520 Navesink River Road Real Estate Taxes*</u>

An analysis of the real estate tax assessment and payments for 520 NRR between June 1, 2013 and December 31, 2020 is attached as **Exhibit H**.  As outlined, therein, 520 NRR has been subjected to numerous tax liens for failure to pay real estate taxes.  Accordingly, except for approximately 5 quarters, a lienholder has paid the real estate taxes directly to Middletown Township.

Of the real estate taxes, and accumulated interest and fees, that were assessed during this time, $72,485 was funded through the Pachava Morgan Stanley Account and $366,977 was funded through the Zargis Bank Account. The payments of the real estate taxes will be discussed in more detail in the next section of this report.

As shown at **Exhibit H**, since the last payment made from the Zargis Bank Account in May 2017, all real estate taxes on 520 NRR were made by a lien holder. The tax records show that a Foreclosure notice was placed on the property in March 2020,[155] and the tax sale was canceled in October 2020.[156]

<u>*Sources and Uses of Cash within the Pachava Morgan Stanley Account*</u>

As discussed earlier, 520 NRR was transferred from Shant's mother, Paris, to the Pachava Trust on June 21, 2011, while Shant and his family were residing in the home.  In my professional experience, when real property, such as the 520 NRR personal residence, is gifted into a trust, and held for the benefit of the beneficiaries, the following are generally present:

- Gift tax return setting forth the transfer of the asset (required since the property transferred into the trust exceeded the annual gift tax exclusion of $13,000 in 2011);

- Lease agreement(s) between tenant(s) and the trust setting forth a fair market value rental;

- Trust tax returns reporting the rental income and expenses of the trust property; and

- Bank account in the trust's name:

    o  Deposits of rental income;

---

[155] 2020.03.09 Foreclosure Lis Pendens (EXPERTREQ-000443-446)
[156] 2020.10.15 Tax Sale Cert Cancellation (EXPERTREQ-000447-450)



- o   Disbursement of funds to maintain the property, including, real estate taxes, insurance, utilities, and maintenance and repairs expenses; and,

- o   Disbursement of funds for administration of the trust, such as tax filing fees.

It is my understanding that no gift tax returns were filed by Paris to set forth the transfer of the property.  Additionally, no lease agreements have been produced in discovery and both Hilde and Nina testify that the Pachava Trust received no rental income during their respective tenures as trustees.[157,158] Furthermore, although the Pachava Trust filed income tax returns for 2013 through 2017, no rental income or expenses are reported. A summary of the tax returns is attached as **Exhibit E**.

The Pachava Trust setup an independent bank account.  Attached at **Exhibit G** is a cash flow analysis I prepared for the Pachava Morgan Stanley Account ("Pachava Cash Flow") to analyze the sources and uses of funds within the account.  A summary of the sources of funds indicated that there was no rental income deposited.  Instead, the sources of the funds into the Pachava Morgan Stanley Account were as follows:

| | Jun - Dec 2013 | 2014 | Jan - Apr 2015 | May - Dec 2015 | 2016 | 2017 | 2018 | 2019 | June 2013-Dec 2019 |
|---|---|---|---|---|---|---|---|---|---|
| **Sources of Cash** | | | | | | | | | |
| Hilde Nedrehagen | - | 144,818 | 34,960 | - | - | - | - | - | 179,778 |
| Speedus NY Bank Accounts | - | - | 30,000 | 3,500 | 44,000 | 51,500 | 27,998 | - | 156,998 |
| Insurance Proceeds | - | - | - | - | - | - | - | 99,210 | 99,210 |
| Zargis Bank Accounts | - | - | - | - | 1,750 | 4,000 | 16,600 | 3,000 | 25,350 |
| Hovnanian International | - | - | - | - | - | - | 6,000 | - | 6,000 |
| Other Funds | 3,571 | - | - | - | - | - | - | - | 3,571 |
| **Total Sources** | $ 3,571 | $ 144,818 | $ 64,960 | $ 3,500 | $ 45,750 | $ 55,500 | $ 50,598 | $ 102,210 | $ 470,906 |

As shown above, between June 1, 2013 and December 31, 2019, $470,906 of funds were deposited or transferred into the Pachava Morgan Stanley Account.  The transactions included:

- Hilde- $179,778- In 2014 and 2015, while married to Shant, Hilde transferred approximately $180,000 into the Pachava Morgan Stanley Account. She testified that the bulk of these funds were used to fund real estate taxes and repairs on the 520 NRR home.[159]

- Speedus NY Bank Accounts- $156,998- Between 2015 and 2018, after Hilde's resignation, funds were transferred to the Pachava Morgan Stanley Account from the Speedus NY Bank Accounts.  As outlined in the Speedus section of this report, the Speedus NY Bank Accounts were comprised of personal deposits,

---

[157] Deposition Testimony of Nina Hovnanian dated January 11, 2021, p56:15-20
[158] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p71:11-15
[159] Deposition Transcript of Hilde Jenssen dated April 21, 2021, p39:4-9



included little, if any, ongoing business income, and were used by Shant to fund personal expenses and tax liens associated with the properties held in trusts.

- Insurance Proceeds- $99,210- In 2019, the Pachava Trust received funds from Chubb which Nina testified were to fix the house.[160] At the time of her testimony in January 2021, Nina testified that the insurance proceeds had not yet been used, and that Pachava had a balance of approximately $100,000 in cash.[161]

- Zargis Bank Account- $25,350- Between 2016 and 2019, $25,350 was transferred from the Zargis Bank Account to the Pachava Morgan Stanley Account.

- Hovnanian International- $6,000- In 2018, while Nina was trustee, she indicated that Hovnanian International transferred $6,000 to the Pachava Morgan Stanley Account, because "Pachava needed money, so I loaned it to them or I repaid another loan," further referencing a loan which Hovnanian International owed to Hovbilt.[162]  It was unclear from Nina's testimony why Hovnanian International would repay Pachava a loan due to Hovbilt.

- Other Funds- $3,571

- Rental Income- $0- As previously discussed, no lease agreements were produced and both Hilde and Nina testified that no rental income was received for the 520 NRR property.  Similarly, the tax returns did not report any rental income and my analysis of the banking activity did not reveal any rental deposits.

The funds disbursed from the Pachava Morgan Stanley Account totaled $781,466, and are summarized as follows:

| | Jun - Dec 2013 | 2014 | Jan - Apr 2015 | May - Dec 2015 | 2016 | 2017 | 2018 | 2019 | June 2013- Dec 2019 |
|---|---|---|---|---|---|---|---|---|---|
| **Uses of Cash** | | | | | | | | | |
| Expenses: | | | | | | | | | |
| 520 NRR Expenses | (28,317) | (77,559) | (8,398) | (23,025) | (17,567) | (25,769) | (24,471) | (57,174) | (262,280) |
| Credit Card Payments | (64,912) | (105,907) | (61,872) | (3,590) | - | - | - | - | (236,281) |
| Children's School Expenses | (19,900) | - | - | - | - | (43,885) | (19,825) | - | (83,610) |
| Professional Fees | (300) | (27,929) | - | - | - | - | (750) | (10,085) | (39,064) |
| Golf Club Dues & Memberships | (3,954) | (14,028) | (4,688) | - | - | - | - | - | (22,670) |
| Insurance- Geico (Auto) | - | (188) | (810) | (2,440) | (5,456) | (4,892) | (1,541) | - | (15,326) |
| Cash Withdrawals | (7,856) | (2,497) | - | (600) | - | - | - | (1,400) | (12,354) |
| Travel | - | - | - | - | - | - | - | (2,753) | (2,753) |
| Other Uses | (9,016) | (10,080) | (3,558) | (1,032) | (1,857) | (1,834) | (2,794) | (10,454) | (40,623) |
| To or for the Benefit of: | | | | | | | | | |
| Transfers to Related Entities | (8,000) | (38,056) | - | - | - | (500) | - | (12,500) | (59,056) |
| Vahak Hovnanian | (1,300) | (3,150) | - | - | (500) | (2,500) | - | - | (7,450) |
| **Total Uses** | **$ (143,555)** | **$ (279,393)** | **$ (79,325)** | **$ (30,687)** | **$ (25,380)** | **$ (79,380)** | **$ (49,381)** | **$ (94,366)** | **$ (781,466)** |

---

[160] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p299:2-13
[161] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p299:14-16
[162] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p246:21 to 247:23



The disbursements from the Pachava Morgan Stanley Account included the following:

- 520 NRR Expenses- $262,280- As previously discussed, and as outlined at Exhibit H, between June 1, 2013, and December 31, 2019, the real estate taxes alone for 520 NRR were $611,435, yet only $262,280 of expenses, including real estate taxes, insurance, utilities, landscaping, and repairs and maintenance were paid through the Pachava Morgan Stanley Accounts.  As discussed in other sections of this report, the 520 NRR expenses were funded as follows:

    o 520 NRR Tax Payments- $366,977- As previously discussed in the Speedus and Zargis sections of this report, a $340,000 transfer from the Speedus NY Bank Accounts to Zargis directly funded a $319,349 tax lien against 520 NRR in 2017.  Additional payments in the amount of $23,814 and $23,814 were also paid from the Zargis Bank Account during 2017.

    o Hovsat Bank Accounts- $12,308.39- As will be discussed later in this report, the Hovsat Bank Accounts directly paid landscaping, repairs and maintenance, and disposal costs for 520 NRR.

- Credit Cards- $236,281- Credit card payments were made to Chase, UBS, Bank of America, and Kohls. Gandolfo testified that she did not know who held the credit cards for which payments were being made.[163] Hilde testified that she was unaware of the specific transactions related to the credit cards.[164] She further indicated:

    o Shant had a Chase credit card.[165]

    o Shant had a Bank of America credit card, and she was unaware of anyone else that would have a Bank of America credit card paid out of the account.[166]

    o Shant had access to a UBS credit card, and she does not know anyone else with a UBS credit card[167] that would have been paid from the Pachava Morgan Stanley Account.

---

[163] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p82:20 to 83:19
[164] Deposition Transcript of Hilde Jenssen dated April 16, 2021, p40:9 to 45:16
[165] Deposition Transcript of Hilde Jenssen dated April 16, 2021, p42:6-10
[166] Deposition Transcript of Hilde Jenssen dated April 16, 2021, p40:19 to 41:5
[167] Deposition Transcript of Hilde Jenssen dated April 16, 2021, p44:11 to 45:16



- Children's School Costs- $83,610- Nina testified that these payments were made because the children were the beneficiaries of the trust, and that the children were living in 520 NRR when they were attending school.[168] As previously outlined, these costs were paid out of the Speedus NY Bank Accounts in 2015 and 2016.

- Professional Fees- $39,064- Professional fees include payments to William Reed Rankin ($10,000 in 2014), Bathgate Wegner ($17,104 in 2014), Falcone ($300 in 2013, $825 in 2014 and $750 in 2018), The Hanamarian Law Firm ($10,000 in 2019) and Rocket Lawyers ($84.98 in 2019).

- Golf Club Memberships- $22,670- includes fees paid to Navesink Country Club and Metedeconk Country Club.
- Auto Insurance- $15,326- includes payments to Geico auto insurance.

- Cash Withdrawals- $12,354- Between 2013 and 2015, cash was withdrawn from the Pachava Morgan Stanley Account including checks to cash, ATM withdrawals, and the purchases of foreign currency. In 2019, $1,400 was withdrawn by Nina.[169]

- Other uses - $40,623 - includes bank charges, margin interest, expenses related to sports & hobbies, food and restaurant charges and unclassified expenses.

- Transfers to Related Entities- $59,056- includes transfers of $500 to the Speedus NY Bank Accounts, $3,000 to Hovbilt, and $55,556 to the Hovsat Bank Accounts.  Nina initially testified that the $55,000 in payments to Hovsat were payments to cover the costs of the Village Mall parking lot paving project.[170]  However, the parking lot project was completed in 2019, and, as outlined in **Exhibit G**, $46,056 of the transfers to Hovsat were completed years earlier in 2013 and 2014.  Subsequently, Nina provided a list of various items which the transfers may be related to, however, she could not recall any specifics.[171]

- Transfers to Vahak Jr.- $2,650 in transfers were made to Vahak Jr. bank account ending x8087.[172]

- Transfers to Vahak Hovnanian - $4,800 – these transfers occurred between 2014 and 2018. The documents on reference transfers to Vahak, no further identification to determine if these related to Vahak Sr. or Vahak Jr.

---

[168] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p264:15 to 265:12
[169] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p270:19 to 272:11
[170] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p274:2-11
[171] Deposition Transcript of Nina Hovnanian dated January 12, 2021, p274:2 to 279:13
[172] Morgan Stanley-00001533



**Summary and Conclusion**

My analysis of the Pachava Morgan Stanley Account is summarized as follows:

- Even though Shant was not a known signatory on the Pachava Morgan Stanley Account, Shant had the ability to direct the movement of funds in and out of the account, regardless of whether there was another alleged trustee during the time.

- Prior to being moved to the Pachava Trust in 2011, 520 NRR was the family home for Shant, Hilde and their children. After 520 NRR was transferred into a trust for the benefit of Shant's three children, Shant continued to obtain the benefit of living in the property without paying any rent to the Pachava Trust.

- Expenses of 520 NRR were funded through bank accounts in other entities names, either through direct payment of 520 NRR expenses, or through the transfer of funds from those accounts to the Pachava Morgan Stanley Account.  However, Pachava Trust returns do not evidence any loans to related parties, accounting records were not maintained to track any of the related party transfers or payments, and Speedus, Zargis, and Hovsat have not filed any tax returns.   The transfers to the Pachava Morgan Stanley Account and expenses of 520 NRR known to be funded through other bank accounts are as follows:

    o $366,977 of real estate taxes for 520 NRR were funded through the Zargis Bank Account, which acted as a conduit of the funds received from the Speedus NY Bank Accounts.  Speedus NY Bank Accounts were comprised of personal deposits, included little, if any, ongoing business income, and were used by Shant to fund personal expenses, along with property tax liens.

    o Other expenses of 520 NRR, totaling $12,548.39, including landscaping, repairs and maintenance, and disposal costs, were funded directly through the Hovsat Bank Accounts.

    o Speedus NY Bank Accounts transferred $156,998 and the Zargis Bank Account transferred $25,350 directly into the Pachava Morgan Stanley Account.

Accordingly, it is my opinion that Shant obtained a benefit by living at 520 NRR without the payment of fair market rent and carried the burden of ownership of 520 NRR by funding the real estate taxes and other expense of the property through other bank accounts he utilized.  Additionally, although Shant was not a known signatory on the Pachava Morgan Stanley Account, he maintained the ability to direct the movement of funds and payment of expenses, regardless of whether there was another trustee.



**VSHPHH Trust and the Village Mall / Hovsat dba Grandview**

**Analysis- Hovsat Bank Accounts and VSHPHH Bank Account**[173]

As previously discussed, the revenues and expenses for both Hovsat and the Village Mall are deposited and disbursed through the same accounts- the Hovsat Bank Accounts through January 2020 and the VSHPHH Bank Account from December 2019 forward. We analyzed the financial documents for the Hovsat Bank Accounts and VSHPHH Bank Account made available through the subpoena at AFCU and Morgan Stanley, along with other relevant documents produced in discovery, in accordance with the General Procedures previously outlined. In addition:

- I reviewed Gandolfo's general ledgers for the Hovsat Bank Accounts and VSHPHH Bank Accounts to obtain additional details of bills and check payment notes entered into QuickBooks by Gandolfo.

- Between 2015 and early 2017, the rent checks from the tenants of the Village Mall continued to be deposited into AFCU x1502, which was titled to Vahak Sr. ("Vahak x1502").  The funds from Vahak x1502 were then transferred to the Hovsat Bank Accounts. A review of the Vahak x1502 bank statements for 2015 to 2017 shows little to no activity beyond the deposit and transfer of the rents. Therefore, I have included all the transfers from Vahak x1502 as rental income.

- We assumed all repairs and maintenance costs and all the real estate taxes on the property to be expenses for the Village Mall, unless another property was clearly specified.

Attached as **Exhibit I** is a transaction register of the activity within the Hovsat Bank Accounts between January 1, 2015 and April 30, 2020.  Attached at **Exhibit J** is a transaction register of the activity within the VSHPHH Bank Account between December 18, 2019 through September 30, 2020.

---

[173] Regardless of which entity the account was titled to, the accounts included commingled activity of Hovsat/Grandview and the Village Mall/VSHPHH.



*Shant's Involvement with the Hovsat Bank Accounts*

Testimony in this matter is unclear and contradictory as to the function of Hovsat, who is responsible for Hovsat, the interrelationship between Hovsat and the Village Mall, and who benefits from any income received from Hovsat:

- Gandolfo testified that the VSHPHH Trust owns Grandview[174] and Grandview, Hovsat, and the trust are all one.[175]  Nina, on the other hand, explicitly stated Grandview is "not in the VSHPHH Trust," and indicated that she does not know who owns Hovsat and that Gandolfo likely just assumed that the VSHPHH Trust owned it.[176]

- Hilde did not know specifically what Hovsat did but indicated that, to her knowledge, "it was one of Shant's companies, but it was an account."[177] Nina testified that she thinks Gandolfo is in charge of Hovsat, because Shant is not.[178] Gandolfo testifies that, prior to 2015, she would communicate with Shant regarding Hovsat decisions and what bills needed to be paid, but he then stopped responding to her.[179]

- Nina indicated that Shant told her that Hovsat managed the Village Mall.[180] Gandolfo, who performed the bookkeeping for both Hovsat and the Village Mall, indicated she was not aware of any management agreements between Hovsat and the Village Mall and there was no role between Hovsat and the Village Mall other than using the shared bank account.[181]

- Gandolfo indicated that before the VSHPHH Trust setup a separate account in December 2019, she would go to Shant for instructions.[182] Additionally, Gandolfo indicated, Shant, and later Nina, directed her where to deposit the rents from the Village Mall.[183]

---

[174] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p25:14-20
[175] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p97:22 to 98:2
[176] Deposition Transcript of Nina Hovnanian dated February 22, 2021, p55:14 to 56:2
[177] Deposition Transcript of Hilde Jenssen dated April 16, 2021, p30:17-23
[178] Deposition Transcript of Nina Hovnanian dated February 22, 2021, p24:4-13
[179] Deposition Transcript of Nina Hovnanian dated February 22, 2021, p33:7 to 34:24
[180] Deposition Transcript of Nina Hovnanian dated February 22, 2021, p23:16 to 24:3
[181] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p89:9-16
[182] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p98:3-8
[183] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p30:23 to 31:4



As outlined above, the testimony in the matter was unclear as to Shant's specific involvement with Hovsat.  Overall, discovery indicates that Shant authorized Hovsat to enter a Joint Venture with Omniverse[184]  and that Shant was active in the Joint Venture.[185] In 2019, Omniverse initiated litigation against Hovsat, whereby Omniverse set forth their understanding of Hovsat, as follows:[186]

- Hovsat is a revoked New Jersey corporation with offices at 2500 Shafto Road and 1 Dag Hammarskjold Blvd (Village Mall);

- Hovsat is a cable operator company that delivered cable service to multi-dwelling units;
- Hovsat is believed to be or have been owned and operated by Shant;

- Shant owned and operated a network of cable companies, including Speedus NY, Grandview Cable, and Hovsat;

- The joint venture agreement was agreed to and executed by Shant; and

- Omniverse investor David Cash made multiple email communications with Shant and later met Shant in New Jersey.

Based on the above testimony, review of the Omniverse production, and Omniverse's understanding of the Hovsat operations, it is reasonable to assume that Shant was actively involved with the operations of Hovsat.

*Sources and Uses of Cash*

As discussed earlier, the Village was transferred from Shant's Parents to the VSHPHH Trust on January 1, 2015, at which time the Village Mall was an income-producing commercial rental property with tenants.  In my professional experience, when an income-producing property, such as the Village Mall, is gifted to a trust, the following are generally present:

- Gift tax return setting forth the transfer of the asset (required since the property transferred into the trust exceeded the annual gift tax exclusion of $14,000 in 2015);

- Lease agreement(s) between tenant(s) and the trust setting forth a fair market value rental;

---

[184] OMNIPROD-0000121-0000129
[185] OMNIPROD-0000186-0000192,
[186] Third Party Complaint of Omniverse v Hovsat dated September 25, 2019 (EXPERTREQ-000364-459)



- Trust tax returns reporting the rental income and expenses of the trust property; and

- Bank account in the trust's name:

  o Deposits of rental income;

  o Disbursement of funds to maintain the property, including, real estate taxes, insurance, utilities, and maintenance and repairs expenses; and

  o Disbursement of funds for administration of the trust, such as tax filing fees.

It is my understanding that no gift tax returns were filed by Paris to set forth the transfer of the property.  No lease agreements have been produced between the related parties and the VSHPHH Trust.  Additionally, no current lease agreements between the tenants and the VSHPHH Trust have been produced in discovery; but, Nina testified that the tenants are all basically month to month,[187] which, given the history of the property, is reasonable. Even though the Village Mall was an income-producing property, the VSHPHH Trust failed to setup an independent bank account until December 2019.  Instead, for nearly five years between January 2015 and December 2019, Nina indicated the rental income for the Village Mall was initially deposited to Vahak Sr.'s personal accounts, and after his death on August 31, 2015, Shant arranged for the rents to be deposited to the Hovsat Bank Accounts.[188]  Since Hovsat had operations of its own, the banking activities of Hovsat and the Village Mall were commingled into one bank account.

Nina testified that since the VSHPHH Trust did not have a bank account, and was not generating net income, the VSHPHH Trust did not file tax returns.[189]

A summary of the combined sources and uses of cash in the Hovsat Bank Accounts and VSHPHH Bank Accounts (collectively, the "Hovsat and VSHPHH Bank Accounts") between January 1, 2015 and September 30, 2020 ("Hovsat/Village Mall Cash Flow") is attached as **Exhibit J**.  I categorized the commingled banking activity between (1) the Village Mall, (2) Hovsat and (3) Other, as set forth below.

---

[187] Deposition Transcript of VSHPHH (Nina Hovnanian) dated February 22, 2021; p103:10-25
[188] Deposition Transcript of VSHPHH Trust (Nina Hovnanian) dated February 22, 2021, p67:7-12
[189] Deposition Transcript of VSHPHH Trust (Nina Hovnanian) dated February 22, 2021, p125:5 to 126:10



*Sources and Uses of Cash – Village Mall*

The sources and uses of cash for the Village Mall can be summarized as follows:

| Village Mall | 2015 | 2016 | 2017 | 2018 | 2019 | Sep-20 | Total |
|---|---|---|---|---|---|---|---|
| **Sources** | | | | | | | |
| Rental Income | - | 4,344 | 71,372 | 75,129 | 78,916 | 71,633 | 301,394 |
| Rental Income- Hovnanian entities | - | - | - | - | - | - | - |
| Rental Income- AFCU x1502 | 78,770 | 72,700 | 11,255 | - | - | - | 162,725 |
| Total Rental Income | 78,770 | 77,044 | 82,627 | 75,129 | 78,916 | 71,633 | 464,119 |
| **Uses** | | | | | | | - |
| Real Estate Taxes | - | (63,323) | (33,960) | (34,128) | (34,564) | - | (165,975) |
| Repairs & Maintenance | (3,976) | (3,073) | (4,960) | (4,742) | (42,031) | (6,973) | (65,754) |
| Utilities | (9,504) | (8,047) | (8,987) | (10,947) | (9,292) | (11,542) | (58,318) |
| Other Uses | (15,059) | (9,706) | (7,901) | (12,405) | (9,525) | (5,165) | (59,760) |
| Total Uses | (28,539) | (84,149) | (55,807) | (62,222) | (95,410) | (23,680) | (349,807) |
| **Net Village Mall prior to Litigation Costs** | $ 50,231 | $ (7,104) | $ 26,820 | $ 12,907 | $ (16,494) | $ 47,953 | $ 114,312 |
| Professional Fees | - | - | - | (6,000) | (92,700) | (6,000) | (104,700) |
| **Net Village Mall** | $ 50,231 | $ (7,104) | $ 26,820 | $ 6,907 | $ (109,194) | $ 41,953 | $ 9,612 |

As shown above, between January 1, 2015 and September 20, 2020, the Village Mall had $9,612 in net cash flow, after payment of $104,700 of professional fees in 2018 to 2020.  The sources and uses of funds included:

- Rental Income- $301,394- represents tenant payments which were deposited into the Hovsat Bank Accounts, and later the VSHPHH Bank Account

- Rental Income- related entities- $0- I did not identify rental income from any related parties.  Nevertheless, Gandolfo indicated that the second-floor of the Village Mall property included an office for Vahak Sr., an office for Gandolfo, and a desk that Shant would utilize.[190]  Prior to Hovbilt's bankruptcy petition date and through at least October 2014, Hovbilt was recording $5,000 per month for rent, or $60,000 per year, payable to Paris.[191]  It is my understanding that this rent related to the second-floor office space at the Village Mall.[192]  However, from the date that the Village Mall was transferred to the VSHPHH Trust, no related party has deposited any amount to the Hovsat and VSHPHH Bank Accounts for rent associated with the second-floor of the Village Mall.

- Rental Income- ACFU x1502- $162,725- Gandolfo testified that the tenants paid rent to Vahak Sr., and that continued even after his death in 2015.[193]  My analysis indicates that, until early 2017, over a year after Vahak

---

[190] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p113:18 to 114:17
[191] EXPERTREQ-00004 to 000014
[192] Hovbilt Tax Returns identify Suite 12 at Dag Hammarskjold Blvd. as Hovbilt's address and likewise report rent expense of $5,000 per month (HOVPROD-003513)
[193] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p109:3-15



Sr.'s death, the rent checks for the Village Mall continued to be deposited into Vahak x1502, and funds from Vahak x1502 were then transferred to the Hovsat Bank Accounts.[194] The tenants were eventually told to switch and make the checks payable to Hovsat.[195]

- Real Estate Taxes- $165,975- represents the payments made to Howell Township for real estate taxes of the Village Mall.  In addition to the payments made through the Hovsat Bank Account, a tax lien of $201,204.18 was paid through the Speedus NY Bank Accounts.  As more fully described in my analysis of the "$201,204 Payment of the Village Mall Taxes", on April 10, 2015, Shant's personal divorce proceeds were used to pay the tax lien on the Village Mall, which was titled to the VSHPHH Trust at that time.

- Repairs & Maintenance - $65,754 – includes payments to Jersey Elevator, Frank's Aluminum & Glass, and repairs included on Gandolfo's ledgers as expenses for the Village Mall. The increased expense in 2019 is related to the paving of the parking lot.
- Utilities - $58,318 – Gandolfo's ledgers indicated utility expenses, including JCP&L and New Jersey American Water, related to the Village Mall.

As outlined above, between January 1, 2015 and September 30, 2020, the Village Mall activities within the Hovsat and VSHPHH Bank Accounts generated positive cash flow of $114,312 before consideration for the legal fees paid for this Litigation. In the years 2015 to 2018, prior to the parking lot paving project and the large litigation costs, the Village Mall generated $76,854. This is before any consideration for rents from related parties for use of the second-floor space, as no such funds were received. However, any cash flow generated by the Village Mall was subsequently utilized for other purposes, as will be described further in the next sections of this report.

---

[194] AFCU x1502 Subpoena Response
[195] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p109:14 to 110:24



*Sources and Uses of Cash- Hovsat*

The following is a summary of the sources and uses of funds categorized to Hovsat/Grandview:

| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Total |
|---|---|---|---|---|---|---|---|
| **Sources and Uses of Cash** | | | | | | | |
| **GrandView / Hovsat** | | | | | | | |
| Sources | | | | | | | |
| Paid to Hovsat/Grandview | 21,119 | 11,814 | 13,329 | 18,237 | 12,729 | 11,698 | 88,926 |
| Zargis Medical | 84,650 | 66,179 | 16,950 | 8,500 | 23,400 | - | 199,679 |
| Omniverse | 99,000 | 108,000 | 108,000 | 224,225 | 181,462 | - | 720,687 |
| Uses | | | | | | | - |
| DirecTV | (65,908) | (69,627) | (70,786) | (67,096) | (68,163) | (21,903) | (363,483) |
| Maintenance - Kevin Morrison | (48,393) | (45,405) | (42,972) | (46,608) | (53,751) | (30,187) | (267,316) |
| Karen Gandolfo | (11,431) | (5,869) | (6,041) | (6,228) | (13,328) | (13,838) | (56,735) |
| Storage Rental- Zac's Garage | (4,494) | (4,494) | (5,122) | (4,890) | (5,431) | (5,219) | (29,650) |
| Consulting | (49,074) | (26,908) | - | - | - | - | (75,981) |
| Utilities | (5,742) | (4,544) | (4,476) | (4,875) | (4,134) | (167) | (23,937) |
| Computer/Internet/Programming | (9,581) | (9,067) | (8,601) | (9,838) | (9,129) | (3,605) | (49,820) |
| Other Uses | (10,412) | (6,124) | (4,921) | (5,342) | (4,694) | (4,248) | (35,741) |
| **Net GrandView / Hovsat** | **$ (267)** | **$ 13,956** | **$ (4,639)** | **$ 106,086** | **$ 58,962** | **$(67,469)** | **$ 106,629** |

As shown in the above summary, Hovsat generated $106,629 of cash flow within the Hovsat and VSHPHH Bank Accounts between 2015 and September 2020. The sources and uses of funds included:

- Paid to Hovsat/Grandview - $88,926 – Hovsat/Grandview revenues deposited directly to the Hovsat Bank Accounts, and later the VSHPHH Bank Account.

- Zargis - $199,679 - Between 2015 and 2019, $261,754 in Hovsat/Grandview deposits went to the Zargis Bank Account. During this period $199,679 was transferred from the Zargis Bank Account into the Hovsat Bank Account. We have included these transfers as a source of cash from Hovsat operations.

- Omniverse - $720,687- Amounts paid to Hovsat from Omniverse under the Joint Venture Agreement.

- DirecTV - $363,483 - Hovsat provided cable service to the senior community, The Villages,[196] and operated under a joint venture with Omniverse.

---

[196] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p118:23-25



- Maintenance - Kevin Morrison - $267,316 –payments to the technician who repairs the cable.[197] Nina testified that Morrison also did maintenance at the Village Mall.[198] However, the payments to Kevin Morrison were classified by Gandolfo as expenses for Grandview/Hovsat.[199]

- Karen Gandolfo - $56,735 – Certain checks to Gandolfo indicate they are reimbursements (i.e., "Oct travel", "Dec reimbursement", etc.) while others have no memo and do not provide a reason for the payment.

- Consulting - $75,891 - Antranik Sarkes was identified as a consulting expense for Hovsat in the general ledgers prepared by Gandolfo.[200]

- Utilities - $23,937 – Gandolfo's ledgers indicated utility expenses, including JCP&L and New American Water, related to Hovsat/Grandview.

- Computer, Internet & Programming - $49,820 – includes payments to Intuit (QuickBooks) as well as payments to third parties, Solinus and Tribune Media Services, which were identified as programming and cable costs in Gandolfo's ledgers.

- Other Uses - $142,296 - The other uses include payments to Gandolfo, computer and internet expenses and other office expenses.

---

[197] Deposition Transcript of Karen Gandolfo dated January 28, 2021, p67:17-21
[198] Deposition Transcript of Nina Hovnanian dated February 22, 2021, p26:2-5
[199] General ledgers for Grandview prepared by Karen Gandolfo
[200] General ledgers for Grandview prepared by Karen Gandolfo



*Sources and Uses of Cash – Other*

In addition to the expense payments, there are other sources and uses of cash, including transfers to and from the Hovsat and VSHPHH Bank Accounts and other related entities, as follows:

| Other Sources and Uses of Cash | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Total |
|---|---|---|---|---|---|---|---|
| Hovnanian International | - | - | - | - | 6,000 | 49,980 | 55,980 |
| VEC Realty, LLC (Paid to VSHPHH) | - | - | - | - | 15,003 | - | 15,003 |
| Speedus NY Account Transfers | 4,000 | 17,000 | - | - | 5,000 | - | 26,000 |
| Speedus NY Account Transfers | (18,400) | (18,400) | (12,000) | (40,000) | (45,000) | - | (133,800) |
| Speedus NY Expenses Paid | (5,074) | (5,518) | (6,292) | (5,611) | (5,470) | (5,317) | (33,281) |
| Other Deposits | - | - | - | - | 200 | - | 200 |
| Interest Income | 1 | 1 | 6 | 6 | 15 | 0 | 28 |
| 520 Navesink River Road Expenses | - | (3,900) | (936) | (2,949) | (960) | - | (8,745) |
| Pachava Trust Bank Account | - | - | - | - | 9,500 | (5,000) | 4,500 |
| Other Expenses- Cash/Unidentified | - | (3,000) | (229) | (200) | (437) | (6,751) | (10,617) |
| NCC Membership | - | - | - | (2,305) | - | - | (2,305) |
| Drivers License Expenses (Shant) | (24) | - | (72) | - | - | - | (96) |
| Children's School Costs | - | - | (15,800) | - | (36) | (4,500) | (20,336) |
| **Net Other Sources & Uses** | **$(19,497)** | **$(13,818)** | **$(35,323)** | **$(51,059)** | **$(16,184)** | **$28,412** | **$(107,469)** |

- Hovnanian International - $55,980 – As previously discussed, over $1,000,000 was transferred from the Speedus NY Bank Accounts to Hovnanian International. Since Nina became sole trustee of the VSHPHH Trust, $55,980 has been transferred into the Hovsat and VSHPHH Bank Accounts from Hovnanian International.

- VEC Realty, LLC - $15,003 – Check payable to the VSHPHH Trust from VEC Realty, LLC. The ICS notes indicate that the VSHPHH Trust owns 33.3% of VEC Realty.[201]

- Speedus NY – As previously discussed, the Speedus NY Bank Accounts were comprised of personal deposits, had little, if any, ongoing business income, and were used by Shant to fund personal expenses and tax liens associated with 520 NRR and the Village Mall. The transactions with Speedus NY included:

    a. Account Transfers – $26,000 was transferred into the Hovsat Bank Accounts and $133,000 was transferred to the Speedus NY Bank Account.

---

[201] ICS Notes (USAPROD-000209)



    b.   Speedus NY Expense Paid - $33,281 – The Hovsat and VSHPHH Bank Accounts paid for expenses which were identified as Speedus NY.

- 520 NRR Expenses - $8,745 – Landscaping, repairs, and disposal expenses for 520 NRR were funded through the Hovsat Bank Accounts.

- Pachava Trust- $4,500 – In 2019, there were transfers totaling $9,500 from the Pachava Morgan Stanley account to the Hovsat AFCU x7159 account. In 2020, there was a transfer of $5,000 from the VSHPHH Bank Account to the Pachava Morgan Stanley Account, for a net amount of $4,500.

- NCC Membership - $2,305 – Navesink Country Club dues were paid from the Hovsat Bank Account in 2018.

- Children's School Costs - $20,336 –Ranney School payments for Shant's children paid out of the Hovsat Bank Account.

As previously outlined, both the Village Mall and Hovsat/Grandview generated positive cash flow within the Hovsat and VSHPHH Bank Account between January 1, 2015 and December 31, 2018, however, that cash flow was utilized to make other payments as follows:

| | **2015** | **2016** | **2017** | **2018** | **2015-2018** |
|---|---|---|---|---|---|
| Opening Cash | $ 1,266 | $ 31,733 | $ 24,767 | $ 11,625 | $ 1,266 |
| Cash Flow of Village Mall and Grandview/Hovsat | | | | | |
| Net Village Mall prior to Litigation Costs | 50,231 | (7,104) | 26,820 | 12,907 | |
| Professional Fees | - | - | - | (6,000) | |
| Net Village Mall | 50,231 | (7,104) | 26,820 | 6,907 | 76,854 |
| Net GrandView / Hovsat | (267) | 13,956 | (4,639) | 106,086 | 115,136 |
| **Net Cash Flow prior to Other Uses** | **49,964** | **6,851** | **22,181** | **112,993** | **191,990** |
| Other Sources and Uses | | | | | |
| Net to/from Speedus NY Bank Accounts | (14,400) | (1,400) | (12,000) | (40,000) | (67,800) |
| Payment of Speedus NY Expenses | (5,074) | (5,518) | (6,292) | (5,611) | (22,495) |
| 520 Navesink River Road Expenses | - | (3,900) | (936) | (2,949) | (7,785) |
| Children's School Costs | - | - | (15,800) | - | (15,800) |
| NRCC Membership & Drivers License (Shant) | (24) | - | (72) | (2,305) | (2,401) |
| Interest Income | 1 | 1 | 6 | 6 | 13 |
| Other Expenses- Cash/Unidentified | - | (3,000) | (229) | (200) | (3,429) |
| **Net Other Uses** | **(19,497)** | **(13,818)** | **(35,323)** | **(51,059)** | **(119,697)** |
| Change in Cash | 30,467 | (6,966) | (13,142) | 61,934 | 72,293 |
| Ending Cash | $ 31,733 | $ 24,767 | $ 11,625 | $ 73,559 | $ 73,559 |



Accordingly, as outlined in the prior chart, the net cash flow from the Village Mall was utilized to fund other sources, including:

- Speedus NY- $90,295- includes $67,800 of net transfers to the Speedus NY Bank Accounts and $22,495 of Speedus NY expenses paid from the Hovsat Bank Accounts. As previously discussed, Shant used the Speedus NY Bank Accounts to pay personal expenses and tax liens on the properties placed in trust.

- 520 NRR Expenses - $7,785 – this represents landscaping, repairs, and disposal expenses for 520 NRR paid through the Hovsat and VSHPHH Bank Accounts.

- NCC Membership & Shant's Driver's License Expenses- $2,401 – payments made to the Navesink Country Club and NJMVC for Shant's driver's license paid from the Hovsat Bank Account.

**Summary and Conclusion**

My analysis of the Hovsat and VSHPHH Bank Accounts is summarized as follows:

- Although the Village Mall was titled to the VSHPHH Trust, other corporate procedures, which would generally be adhered to were not followed:

  o No gift tax returns were filed to report the transfer of the Village Mall to the VSHPHH Trust.

  o An independent bank account was not used for the trust activities. Instead, the finances of the Village Mall were commingled with the finances of other related entities as the VSHPHH Trust did not establish a bank account to receive the rental income or pay the rental expense of the property until December 2019, nearly five years after the Village Mall was titled to the trust, and well after this litigation had commenced. Between January 2015 and February 2017, the rents of the Village Mall were paid into a personal bank account of Vahak Sr., even though Vahak Sr. passed away on August 31, 2015. However, even after the rents stopped being deposited to Vahak Sr.'s accounts, the finances of the Village Mall were commingled with the finances of Hovsat/Grandview in Hovsat Bank Accounts until December of 2019. Once the VSHPHH Trust established its own bank account in December 2019, the finances of the Village Mall and Hovsat remained commingled, albeit in a new account titled to the VSHPHH Trust.



- o   Accurate accounting records were not maintained setting forth the income, expenses, and assets (i.e., cash balances) relative to the operations of the property.  Instead, a QuickBooks file was maintained by Gandolfo in which bills were entered so checks could be printed, but otherwise bank accounts were not reconciled and transfers to and from related entities were not tracked.  In fact, nobody, besides Gandolfo ever even reviewed the QuickBooks reports.

- o   The VSHPHH Trust did not file income tax returns to report any income or expenses relative to the Village Mall.

In addition, I also found that:

- The Speedus NY Bank accounts, funded by Shant's divorce proceeds and settlement proceeds, paid a $201,204 satisfaction of a tax lien against the Village Mall in 2015, after it had been titled into the VSHPHH Trust.

- The Village Mall property, titled to the VSHPHH Trust, generated positive cash flow which was deposited into the commingled bank accounts.  Those funds were disbursed for to, or for the benefit of Shant, 520 NRR, and Speedus NY.  As previously discussed, the Speedus NY Bank Account were comprised of personal deposits, included little, if any, ongoing business income, and were used by Shant to fund personal expenses.

- The second-floor of the Village Mall contained office space which was utilized by Vahak Sr., Shant, and Gandolfo, who maintains the QuickBooks files for Hovsat and the Village Mall, as well as performing various other duties.  The office was previously rented to Hovbilt for $60,000 per year; however, no rents were received by the Village Mall from any other entity.

Based on my review and analysis, it is my opinion that, although the title of the Village Mall was transferred to the VSHPHH Trust, other procedures that would be consistent with a property transferred to and held in a trust were not followed.  Furthermore, Shant and related entities benefited from usage of the second-floor office space without the payment of rent and the cash flow generated by the Village Mall was primarily used for the direct and/or indirect benefit of Shant.

withum✛

**CONCLUSION**

Based on the assumptions, analyses and discussions presented within this report, it is my opinion within a reasonable degree of professional certainty that:

- The Speedus NY Bank Accounts were comprised of personal deposits, included little, if any, ongoing business income, and were used by Shant to fund personal expenses, a $201,204 satisfaction of a tax lien against the Village Mall in 2015, and a $319,349 tax lien against 520 NRR in 2017;

- Shant used the Zargis Bank Account as a clearing account for funds of other entities, including, but not limited to, monies transferred in from the Speedus NY Bank Accounts for the payment of a real estate tax lien on 520 NRR;

- Shant obtained a benefit by living at 520 NRR without the payment of fair market rent and carried the burden of ownership of 520 NRR by funding the real estate taxes and other expense of the property.  Additionally, although Shant was not a known signatory on the Pachava Morgan Stanley Account, he maintained the ability to direct the movement of funds and payment of expenses, regardless of whether there was another trustee; and,

- Although the title of the Village Mall was transferred to the VSHPHH Trust, other corporate procedures consistent with a property transferred to, and held in, a trust were not followed.  Furthermore, Shant and related entities benefited from usage of the second-floor office space without the payment of rent and the cash flow generated by the Village Mall was primarily used for the direct and/or indirect benefit of Shant.

I reserve the right to amend or supplement this report should such action be deemed appropriate or necessary.

Sincerely,

*Jessica Hollobaugh*

Jessica Hollobaugh, CPA/ABV, CFE
Partner, Forensic and Valuation Services

# APPENDIX A

withum.com

**Withum**

# Jessica Hollobaugh, CPA/ABV, CFE

Partner, Market Leader, Forensics, Investigations and White-Collar Criminal Defense



## PROFESSIONAL EXPERIENCE

- With over 17 years of diversified public accounting experience, the traditional accounting background attained earlier in her career is leveraged in providing a wide range of consulting services to attorneys, corporations and individuals in connection with complex civil and criminal litigation.
- Performs complex forensic investigations to uncover fraud and embezzlement schemes.
- Specializes in forensic accounting services, economic damage calculations, white-collar investigations, corporate investigations, estate, trust and other tax investigations, professional liability defense, and shareholder disputes .

## SERVICES

- Litigation Support
  - Civil
  - Criminal
- Forensic/Fraud Services
- White-Collar Investigations
- Professional Liability Defense
- Damage Measurement
- Business Valuations
- Marital Dissolution

## CREDENTIALS/EDUCATION

- Certified Public Accountant (CPA), New Jersey
- Accredited in Business Valuation (ABV)
- Certified Fraud Examiner (CFE)
- BS in Accounting, Richard Stockton College of New Jersey

## MEMBERSHIPS

- American Institute of Certified Public Accountants (AICPA)
  - Member of the Forensic and Valuation Service Section
  - Member of the CFF Exam Task Force
- New Jersey Society of Certified Public Accountants (NJCPA)
  - Member of the Business Valuation Forensic Litigation Services Group
- Association of Certified Fraud Examiners (ACFE)
- American Bar Association (ABA)
  - Member of the Litigation Section
  - Member of the Criminal Justice Section
- Women in White-Collar Criminal Defense Association (WWCDA)

## COMMUNITY INVOLVEMENT

- Public Member of the District VII Ethics Committee

## AWARDS

- NACVA 40 Under 40 Award, 2018
- Withum's Strength in Client Service Award Winner, 2018
- AICPA Forensic and Valuation Services Standing Ovation Award, 2016

withum.com

Withum

**CLIENT REPRESENTATIONS**

**Reflecting the diversity of her forensic accounting practice, Jessica's representative matters include:**

- A high profile internal investigation of a New York City literary agency which resulted in the discovery of over $3M of embezzlement where the responsible individual was later prosecuted and convicted by the United States Department of Justice
- A post judgment forensic investigation on behalf of a national insurance company, aimed at securing over $35M in judgments from debtors who utilized a scheme involving related entities, including off-shore captive insurance companies, to launder funds out of the judgment debtors possession in an effort to evade creditors
- Multiple professional liability defense matters involving the rebuttal of expert reports which asserted standard of care deficiencies and calculated clients' purported losses under several economic assumptions
- A consumer fraud and breach of warranty litigation claiming economic damages in excess of $13M against a national manufacturer in relation to the alleged failure of their product
- A probate litigation matter necessitating the analysis of offshore voluntary disclosure filings and tracing of offshore financial transactions to expose the actions of a trustee aimed at siphoning money out of the decedent's estate through the use of nominees
- A shareholder dispute in which a company was able to recapture severance paid to a departed former shareholder after it was determined that the departed shareholder had engaged in self-dealing to a detriment of the company totaling millions of dollars
- An investigation performed under retention by the United States Department of Justice, surrounding allegations that a contractor defrauded the United States by falsely claiming to be eligible for $16.5M in government contracts
- Various securities fraud litigation alleging the fraudulent sale of unregistered securities and the diversion of investor funds for improper purposes, requiring a detailed tracing pertaining to the sources and uses of funds

## Testimony

**Trial and Arbitration Testimony**

United States of America v. Casey David Crowther

(United States District Court, Middle District of Florida), 2021

Wicks v. Halpern

(Burlington County, NJ) 2016

**Deposition Testimony**

John W. Dwyer and Capital Funding Group, Inc. v Alan Zuccari

(United States District Court, District of Maryland), 2020

Integrated Laminate Systems, Inc. v. Fessenden Hall, Inc. and Wilsonart, LLC

(Camden County, NJ) 2019

McLain v Brown

(Bergen County, NJ) 2018

withum.com

Withum

## Presentations

Forensic Accounting: The Science of Financial Fraud Defense
2021 Forensic Science Summit for the Criminal Defense Bar
March 23, 2021


Hot Topics in Financial Crime: 2020 Edition
Missouri Society of Certified Public Accountants Forensic Conference
December 1, 2020


Hot Topics in Financial Crime: 2020 Edition
AICPA Forensic & Valuation Services Conference
November 11, 2020


The Forensic Accountant: Integral Roles in White Collar Criminal Defense
CPA Academy
June 4, 2020


COVID-19 Business Interruption Losses
New Jersey Coalition of Automobile Retailers
May 1, 2020


SBA Loans and Other COVID-19 Issues for Law Firms
Bergen County Bar Association
April 7, 2020


The Forensic Accountant on the White Collar Defense Team
Withum's Forensic and Valuation Services Symposium
December 6, 2019


The Forensic Accountant as an Intricate Part of the White Collar Criminal Defense Lawyer's Arsenal
AICPA Forensic & Valuation Services Conference
November 6, 2019


NJSBA Tax Fraud Seminar
New Jersey State Bar Association
February 22, 2017

withum.com

Withum

## Publications

The New Normal: Protecting Your Company from Employee Fraud
February 3, 2021

Litigation in a Pandemic Environment
AICPA Professional Insights
July 2020

COVID 19: Stop the Spread of Fraud
March 27, 2020

COVID 19: Recovering Business Interruption Losses
March 20, 2020

COVID 19: Business Interruption Losses
March 13, 2020

What is a Rule-of-Thumb Worth in Litigation
September 14, 2017

Valuation of a Construction Company- What is Different?
December 2, 2015

The Market Approach: Errors to Avoid
June 24, 2015

The Valuation Discount Debate
March 13, 2015

Don't Fall into the Non-Corporate Lessor Trap of Section 179
July 16, 2012

# APPENDIX B

**Documents Reviewed**

- Complaint for Federal Taxes Filed October 18, 2018: United States of America, Plaintiff v. Shant Hovnanian, Peter Hovnanian, Nina Hovnanian, Adelphia Water Company, Inc., MTAG Services, LLC, Ulysses Asset Sub II, LLC, and Township of Howell, Defendants

- Opinion issued on March 18, 2019 by the Honorable Anne E. Thompson, U.S.D.J

- Deposition Transcripts:
    - Hilde Jenssen dated April 16, 2021
    - Karen Gandolfo dated January 28, 2021
    - Michele Ciacma of Morgan Stanley dated May 5, 2021
    - Pachava Trust (Nina Hovnanian) Volume 1 – dated January 11, 2021
    - Pachava Trust (Nina Hovnanian) Volume 2 – dated January 12, 2021
    - VSHPHH Trust (Nina Hovnanian) Volume 1 – dated February 22, 2021
    - VSHPHH Trust (Nina Hovnanian) Volume 2 – dated February 23, 2021

- Affinity Federal Credit Union Document Production – Bates Affinity-FCU-000001-002185

- Chase Document Production – Bates JPMorgan-00001-001349

- Correspondence from JPMorgan Chase dated June 1, 2021 including wire transfer excel schedules

- Morgan Stanley Document Production – Bates Morgan Stanley-00000001-00012166

- TD Bank Document Production – Bates TD Bank-0000001-0000343

- Navesink Country Club Document Production – Bates NAVESINKCC-0000001-0000118

- PNC Bank Document Production – Bates PNC-000001-000260

- Anthony Falcone CPA Document Production – Bates FALCONE-000001-000329

- Document Production from John Hanamirian, Esq. – Bates HOVPROD-000001-003585

- USA Production of Documents – Bates USAPROD-000001-001043

- Interactive Brokers spreadsheet of Wire Transactions January 21, 2016 to November 18, 2016 – Bates EXPERTREQ-000001

- Sperling & Slater Correspondence dated August 26, 2020 – Bates EXPERTREQ-000002-000003

- Hovbilt United States Bankruptcy Monthly Operating Report for October 2014 – Bates EXPERTREQ-000004-000014

- Hovbilt United States Bankruptcy Court Summary of Schedules – Bates EXPERTREQ-000015-000039

- Grandview Cable Accounting Records as follows:

- o  Balance Sheet as of 12/15/2020 (excel)
- o  General Ledger 2012-Grandview (excel)
- o  General Ledger 2013-2014-Grandview (excel)
- o  General Ledger 2015-2017 (Grandview) (excel)
- o  General Ledger 2018-2020 – Grandview (excel)
- o  Profit & Loss 2012-2020 – Grandview (excel)
- o  Balance Sheets & Profit & Loss Stmts – Bates HOVPROD-003885-003915

- Omnisat/Omniverse Document Production – OMNIPROD-0000121-0000185

- Village Mall Accounting Records as follows:
  - o  Balance Sheets 2012 – 2020 (excel file)
  - o  Balance Sheets & Profit & Loss Stmts (PDF) – Bates HOVPROD-003916-003944
  - o  General Ledger 2012-2020 (excel file)

- Township of Middletown Tax Account Detail Inquiry including supporting documents from Township of Middletown – Bates EXPERTREQ-000697-701

- March 9, 2020 Foreclosure Lis Pendens; EXPERTREQ-000443-446

- October 15, 2020 Tax Sale Cert Cancellation; EXPERTREQ-000447-450

- 3M Press Release dated April 1, 2011, https://news.3m.com/English/press-releases/press-releases-details/2011/3M-Acquires-Certain-Assets-and-Builds-on-Relationship-with-Zargis-Medical-Corp/default.aspx EXPERTREQ-000440-442

- New Jersey Business Gateway – Business Entity Information and Records Service Report for Hovsat, dated June 3, 2021 EXPERTREQ-000501-505

- Speedus Corp. 1996 Annual Report 10-K; EXPERTREQ-000451-500

- Speedus Corp. 1998 Annual Report 10-K; EXPERTREQ-000553-609

- Speedus Corp. 1999 Annual Report 10-K; EXPERTREQ-000508-552

- Speedus Corp. 2011 8-K Current Report EXPERTREQ-000692-694

- Speedus Corp. 2011 Notice of Termination EXPERTREQ-000695-696

- New York Department of State Business Entity Database Search Results for Speedus NY, LP. – EXPERTREQ-000705-706

- New York Department of State Business Entity Database Search Results for Speedus Corp. – EXPERTREQ-000702-704

- Smartlinx Comprehensive Business Report for Speedus NY, LP. – EXPERTREQ-000708-715

- Third Party Complaint of Omniverse One World Television Inc. v. HovSat, Inc; Shant Hovnanian; and Does 1-10; EXPERTREQ-000364-459

# EXHIBIT K

**HOVSAT/VILLAGE MALL CASH FLOW**
**SUMMARY OF BANK ACCOUNTS (NOTE 1)**  EXHIBIT K
January 1, 2015 to September 30, 2020

| | | 2015 | 2016 | 2017 | 2018 | 2019 | September 2020 | Jan 2015 - Sept 2020 |
|---|---|---|---|---|---|---|---|---|
| **Opening Cash** | | $ 1,266.37 | $ 31,733.08 | $ 24,766.85 | $ 11,624.78 | $ 73,559.21 | $ 7,142.33 | $ 1,266.37 |
| **Sources and Uses of Cash** | | | | | | | | |
| **Village Mall** | | | | | | | | |
| Sources | | | | | | | | |
| Rental Income | | - | 4,344.17 | 71,372.20 | 75,129.37 | 78,915.99 | 71,632.76 | 301,394.49 |
| Rental Income- Hovnanian entities | F | - | - | - | - | - | - | - |
| Rental Income- AFCU x1502 | E | 78,770.00 | 72,700.00 | 11,255.00 | - | - | - | 162,725.00 |
| Uses | | | | | | | | |
| Real Estate Taxes | B | - | (63,323.09) | (33,959.77) | (34,128.39) | (34,563.54) | - | (165,974.79) |
| Repairs & Maintenance | | (3,975.89) | (3,073.13) | (4,960.11) | (4,741.54) | (42,030.61) | (6,973.00) | (65,754.28) |
| Utilities | G | (9,503.99) | (8,046.76) | (8,986.94) | (10,947.05) | (9,291.54) | (11,541.90) | (58,318.18) |
| Other Uses | | (15,059.11) | (9,705.57) | (7,900.57) | (12,404.93) | (9,524.74) | (5,165.17) | (59,760.09) |
| **Net Village Mall prior to Litigation Costs** | | **50,231.01** | **(7,104.38)** | **26,819.81** | **12,907.46** | **(16,494.44)** | **47,952.69** | **114,312.15** |
| Professional Fees | | - | - | - | (6,000.00) | (92,700.00) | (6,000.00) | (104,700.00) |
| **Net Village Mall** | | 50,231.01 | (7,104.38) | 26,819.81 | 6,907.46 | (109,194.44) | 41,952.69 | 9,612.15 |
| **GrandView / Hovsat** | | | | | | | | |
| Sources | | | | | | | | |
| Paid to Hovsat/Grandview | | 21,118.88 | 11,813.81 | 13,329.22 | 18,237.22 | 12,729.40 | 11,697.89 | 88,926.42 |
| Zargis Medical | A | 84,650.00 | 66,179.00 | 16,950.00 | 8,500.00 | 23,400.00 | - | 199,679.00 |
| Omniverse | | 99,000.00 | 108,000.00 | 108,000.00 | 224,225.25 | 181,462.00 | - | 720,687.25 |
| Uses | | | | | | | | - |
| DirecTV | | (65,907.92) | (69,626.86) | (70,785.67) | (67,096.43) | (68,163.07) | (21,903.08) | (363,483.03) |
| Maintenance - Kevin Morrison | | (48,392.97) | (45,405.22) | (42,971.79) | (46,607.99) | (53,751.27) | (30,186.51) | (267,315.75) |
| Karen Gandolfo | | (11,431.21) | (5,868.66) | (6,041.27) | (6,228.00) | (13,327.50) | (13,838.07) | - |
| Storage Rental- Zac's Garage | | (4,494.00) | (4,494.00) | (5,122.11) | (4,889.83) | (5,431.14) | (5,219.28) | (29,650.36) |
| Consulting | | (49,073.87) | (26,907.58) | - | - | - | - | (75,981.45) |
| Utilities | G | (5,742.17) | (4,543.70) | (4,475.82) | (4,874.88) | (4,133.77) | (166.60) | (23,936.94) |
| Computer/Internet/Programming | H | (9,581.39) | (9,066.63) | (8,600.64) | (9,837.64) | (9,128.83) | (3,605.14) | (49,820.27) |
| Other Uses | I | (10,412.32) | (6,124.39) | (4,920.66) | (5,341.73) | (4,693.91) | (4,248.45) | (35,741.46) |
| **Net GrandView / Hovsat** | | **(266.97)** | **13,955.77** | **(4,638.74)** | **106,085.97** | **58,961.91** | **(67,469.24)** | **106,628.70** |
| **Other Sources and Uses** | | | | | | | | |
| Hovnanian International | | - | - | - | - | 6,000.00 | 49,980.00 | 55,980.00 |
| VEC Realty, LLC (Paid to VSHPHH) | | - | - | - | - | 15,003.00 | - | 15,003.00 |
| Speedus NY Account Transfers | | 4,000.00 | 17,000.00 | - | - | 5,000.00 | - | 26,000.00 |
| Speedus NY Account Transfers | | (18,400.00) | (18,400.00) | (12,000.00) | (40,000.00) | (45,000.00) | - | (133,800.00) |
| Speedus NY Expenses Paid | D | (5,074.05) | (5,518.21) | (6,291.97) | (5,610.69) | (5,469.51) | (5,317.03) | (33,281.46) |
| Other Deposits | | - | - | - | - | 200.00 | - | 200.00 |
| Interest Income | | 0.72 | 0.74 | 5.78 | 5.70 | 15.30 | 0.13 | 28.37 |
| 520 Navesink River Road Expenses | C | - | (3,900.15) | (936.00) | (2,949.00) | (960.00) | - | (8,745.15) |
| Pachava Trust Account Transfers | | - | - | - | - | 9,500.00 | (5,000.00) | 4,500.00 |
| Other Expenses- Cash/Unidentified | | - | (3,000.00) | (229.45) | (200.00) | (437.00) | (6,750.70) | (10,617.15) |
| NCC Membership | | - | - | - | (2,305.01) | - | - | (2,305.01) |
| Drivers License Expenses (Shant) | | (24.00) | - | (71.50) | - | - | - | (95.50) |
| Children's School Costs | | - | - | (15,800.00) | - | (36.14) | (4,500.00) | (20,336.14) |
| **Net Other Sources & Uses** | | **(19,497.33)** | **(13,817.62)** | **(35,323.14)** | **(51,059.00)** | **(16,184.35)** | **28,412.40** | **(107,469.04)** |
| **Ending Cash** | | **$ 31,733.08** | **$ 24,766.85** | **$ 11,624.78** | **$ 73,559.21** | **$ 7,142.33** | **$ 10,038.18** | **$ 10,038.18** |

NOTES:

1. Includes the Hovsat and VSHPHH Bank Accounts.  Accounts in the name of Hovsat include Affinity Federal Credit Union a x0290, x7159 and x0902. Accounts in the name of of VSHPHH Trust include TD x8609.

A. GrandView income was deposited to the Zargis Bank Account as follows:

| | 2015 | 2016 | 2017 | 2018 | 2019 | Sep-20 | Total |
|---|---|---|---|---|---|---|---|
| | 66,493.55 | 56,677.05 | 49,393.20 | 45,932.60 | 39,546.00 | 3,711.95 | 261,754.35 |

Zargis transferred funds totaling $199,679 into the Hovsat Bank Accounts, as reflected in the cash flow above.

B. $201,214.18 tax lien against Village Mall property paid through Speedus NY Bank Accounts on April 10, 2015.

C. Expenses related to 520 NRR were paid through the Hovsat and VSHPHH Bank Accounts.

D. Expenses for Speedus paid through the Hovsat and VSHPHH Bank Accounts.

E. Village Mall rental income was deposited to AFCU x1502 (Vahak Sr.) and transferred into the Hovsat Bank Accounts.

F. No rental income was recorded for any Hovnanian related entities.

G. Utilities allocated based on classification of expenses in General Ledgers prepared by Gandolfo.

H. Includes payments for QuickBooks, Solinus Inc. and Tribune Media Services.

I. Includes telephone expense, bank charges, postage and other office supplies.