IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
-------------------------------------------------------
UNITED STATES OF AMERICA,                :
                                         :
        Plaintiff,               :            Civil Action No.: 18-15099 (ZNQ)(LHG)
                                         :
                                         :
v.                                       :
                                         :
SHANT HOVNANIAN, et al.                  :
                                         :
        Defendants.              :
-------------------------------------------------------

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT VSHPHH TRUST'S MOTION FOR SUMMARY JUDGMENT

John M. Hanamirian, Esquire
HANAMIRIAN LAW FIRM, P.C.
40 E. Main Street
Moorestown, New Jersey 08057
(856) 793-9092 – t
(856) 793-9121 – f
jmh@hanamirian.com
*Attorney for Defendant VSHPHH Trust*

Motion Date: Tuesday, June 21, 2022

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

LAW AND ANALYSIS .......................................................................................................... 3

    I.        The Role of Vahak and Paris Hasmig Hovnanian ....................................... 3

    II.       Breach of Duty ................................................................................................ 4

    III.      Nominee or Alter Ego Claims ....................................................................... 5

    IV.     Trustees' Efforts to Preserve the Office Complex ....................................... 5

    V.      Nominee Lien: Taxpayer Not in Title .......................................................... 5

          A.  Alter Ego and Nominee Claims ............................................................. 6

          B.  Several Factors Preclude Any Alter Ego Claim ................................... 6

          C.  Summary of the Six Factor Test .......................................................... 10

CONCLUSION………........................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

Cohen v. United States, 1998 WL 953979, at *8 (C.D.Cal. 1998 ............................................. 9, 12

Don Gastineau Equity Trust v. United States, 687 F. Supp 1422, 1425 (C.D.Cal. 1987 ........... 8

Genger v. Genger, 990 N.Y.S.2d 498, 505, 121 A.D.3d 270 (1st Dep't 2014 .......................... 6

Hews Co., LLC v. Barnaby, No. CIV. 04-CV-292JM, 2007 WL 2033402, at *1-2 (D.N.H. July 11, 2007.................................................................................................................................. 8

In re Vebeliunas, 332 F.3d 85, 91 (2d Cir. 2003 .................................................................. 7, 8, 9

Oxford Capital Corp. v. United States. 211 F.3d 280, 284 (5th Cir. 2000)................................. 6

Spotts v. United States, 429 F.3d 248, 251 (6th Cir. 2005 ............................................................ 6

United States v. Evseroff, 2012 WL 1514860, at *10 (E.D.N.Y. 2012) ........................................ 10

United States v. Greer, 383 F.Supp.2d 861, 867-68 (W.D.N.C. 2005............................ 8, 9, 10, 12

United States v. Jones, 2012 WL 569366, at *9 (C.D.Cal. 2012) ................................................ 11

United States v. Kimball, 2016 WL 3566199, at *6 (D.Me. 2016)................................................ 7

United States v. Nassar, 2014 WL 5822677, at *5 (S.D.N.Y. 2014)........................................... 11

United States v. Patras, 909 F. Supp. 2d 400, 410 (D.N.J. 2012)............................................ 6, 11

United States v. Swan, 467 F.3d 655, 658 (7th Cir. 2006............................................................. 11

United States v. Towne, 406 F. Supp.2d 928, 937 (N.D.111. 2005) ...................................... 11, 12

Watkins Motor Lines v. De Galliford, 167 F.2d 274, 275 (5th Cir. 1948) ................................... 5

**References:**

William D. Elliot, Federal Tax Collections, Liens and Levies 19.10[2] (2nd Ed. 2000) ....... 6

## PRELIMINARY STATEMENT

The Internal Revenue Service ("IRS") in their Opposition, for the first time, asserts that the now deceased parents of Mr. Shant Hovnanian were complicitous in transferring assets to aid Mr. Shant Hovnanian in an imagined scheme to hide their own assets from the IRS. That theory does not make sense as the Hovnanian parents did not owe a tax liability or any other liability for that matter, and so, there was no reason for them to transfer assets out of their names. Further, there is no evidence of that type of behavior and instead of obtaining testimony and other evidence on that issue, the IRS chose not to depose or otherwise seek testimony from either of Mr. Shant Hovnanian or Vahak and Paris Hasmig Hovnanian's estate counsel, William Read Rankin. Instead, the IRS sought to preclude that testimony in favor of the bald inferences contained in their moving papers. (Dkts. 76 and 89.) Mr. Rankin and Nina Hovnanian have both stated that Vahak and Paris Hasmig Hovnanian transferred assets to trusts for their grandchildren to accomplish common estate planning objectives; that's it.

As stated in the VSHPHH Trust's ("Trust") moving papers, in this case, the IRS seeks to seize certain assets of Vahak Hovnanian, Sr. and Paris Hasmig Hovnanian that they left for their grandchildren in order to pay some alleged debts of their adult son, Mr. Shant Hovnanian.

The court should not allow this to happen.

First, the Hovnanian grandparents had the right to dispose of the assets in their estate however they wished.  They were wealthy in their own right.  During their long lifetimes they built many communities, selling thousands of homes in New Jersey.

Here, as part of their estate planning, grandparents Vahak and Paris Hasmig Hovnanian chose to irrevocably place the assets in issue in trusts for the benefit of their five (5) grandchildren, many years ago.

1

The court should respect and uphold this right.

To seize the assets in issue, the IRS advances several arguments that misapply precedent and law. In the case law cited by the IRS, transferors who have debts (usually tax, penalty, and interest) seek to fraudulently transfer assets to others, or to others they control, so as to avoid seizure. That does not apply in this case.

The basic problems with the IRS's arguments are:

(1) The "transferors" referred to in the case law are the Hovnanian grandparents, Vahak and Paris Hasmig Hovnanian, as title owner transferors, not to their son Shant: their son Shant has never been in the chain of title;

(2) There is no fraud here by the Hovnanian grandparents;

(3) The Hovnanian grandparents were not under the control of their adult son;

(4) The trusts were not formed by the Hovnanian grandparents for any illegal purpose;

(5) The transfers were part of an estate plan many years in the making;

(6) The transfers were irrevocable;

(7) The transfers were not made under duress of any kind; and

(8) Whatever benefits or burdens the son may have received, he did not own the properties at issue.

Next, the six (6) tests for ownership articulated in <u>Petras</u>, *infra*, apply to the Hovnanian grandparents, as owner transferors, not to their son. When applied correctly to the Hovnanian grandparents, rather than to their son, the six (6) tests defeat the IRS's view.

And finally, the statute of limitations bars any relief to the IRS for these trust transfers which happened many years ago.

## LAW AND ANALYSIS

There is nothing in the IRS moving papers that is novel as compared to the balance of their pleadings in this matter. Instead, the entirety of the Opposition is a rehash.

### I.     The Role of Vahak and Paris Hasmig Hovnanian

In its pleadings and correspondence with the Court to date, the IRS sets forth that the conveyances from Vahak and Paris Hasmig Hovnanian were fraudulent as to the IRS in that they were done at a time when Mr. Shant Hovnanian owed federal income taxes and were potentially made without adequate consideration and rendered Mr. Shant Hovnanian insolvent, and/or they were made to hinder, delay, or defraud the United States. Therefore, the conveyances can be set aside as fraudulent. In addition, the IRS alleges that the Trusts hold the real properties located at 520 Navesink River Road, Red Bank, New Jersey ("520 Navesink Home") and 1 Dag Hammarskjold Boulevard, Freehold, New Jersey ("Office Complex"), as nominees or as the alter ego of Mr. Shant Hovnanian.

The Office Complex was not contributed to the VSHPHH Trust by Mr. Shant Hovnanian, but was instead contributed by his father and mother. (Exhibit "A".) In addition, the IRS claims are undermined by the very trust agreement that created the VSHPHH Trust ("Trust Agreement"), a document that shows that the Trust was established long before some of Mr. Shant Hovnanian's tax liabilities arose (which the Complaint nor any other communication bothers to mention), that Mr. Shant Hovnanian was never a beneficiary of the VSHPHH Trust (which the Complaint also omits), and that the VSHPHH Trust is irrevocable and could not be undone by Mr. Shant Hovnanian. (Exhibit "B".) Next, the allegations in the Complaint, pleadings and the documents

3

produced in this case regarding Mr. Shant Hovnanian's use of the property at issue are irrelevant or insufficient to establish either alter ego or nominee liability.

The applicable law with respect to nominee or alter ego liability presupposes that the transferee is the nominee or alter ego of the transferor. That is not this case. In this case, the transferors are Vahak Hovnanian and Paris Hasmig Hovnanian. The IRS's attempt to impose a nominee or alter ego liability analysis and to present claims against Mr. Shant Hovnanian in its Motion for Partial Summary Judgment as to the VSHPHH Trust and the Complaint are based upon an analysis of Mr. Shant Hovnanian and his relationship with the Trust, but he is not the proper focus for that purpose. Rather, it must be the transferor that is attempting to escape liability through a transfer to a nominee or an alter ego. There are no allegations that either Vahak or Paris Hasmig Hovnanian, the transferors, had an objective in transferring assets other than advancing estate planning. If Vahak and/or Paris Hasmig Hovnanian were attempting to conceal their own assets or insulate Mr. Shant Hovnanian from his purported tax liability, they simply would not have transferred the asset to the Trust. There was no urgency to transfer assets as some of the transfers took place many years apart. Further, neither Vahak nor Paris Hasmig Hovnanian achieved any immediate economic or other benefit from the transfers and, by making the transfers, they exposed their son to the claims identified herein when doing nothing would have insulated their son. Given the foregoing, the IRS's alter ego and nominee claims against the Trust are unsustainable.

## II.    Breach of Duty

There is nothing in the record identifying any claim for breach of fiduciary duty. The IRS likely does not have standing to pursue or even assert such a claim and this type of grasping at straws and changing legal theory is reflective of the lack of substance to the IRS claims.

### III. Nominee or Alter Ego Claims

The IRS applies an incorrect analysis to claims of nominee ownership, focusing on a third-party as opposed to the transferor. If Vahak and Paris Hasmig Hovnanian were seeking to protect any assets from creditors of Mr. Shant Hovnanian, they simply would not have transferred any assets. There was no compulsion. Instead, the record reflects that Vahak and Paris Hasmig Hovnanian sought to accomplish estate planning. That is reasonable given their ages at that time.

### IV. Trustees' Efforts to Preserve the Office Complex

The testimony and the record reveals that the Office Complex was running at best, at break-even. The Trustees' efforts were to assure the expenses associated with that property were paid to preserve the underlying asset for Vahak and Paris Hasmig Hovnanian's grandchildren. The gift to the VSHPHH Trust was a gift of the Office Complex itself, not necessarily a gift of the net income. The trustees' obligation is to preserve trust assets, and they did.

### V. Nominee Lien: Taxpayer Not in Title

As previously stated, the IRS's theory of the case is that the real property transaction wherein the Office Complex was transferred to the VSHPHH Trust was the result of fraudulent conveyances from Mr. Shant Hovnanian. The IRS, of course, bears the burden of proving this theory of the case at trial. *See* Watkins Motor Lines v. De Galliford, 167 F.2d 274, 275 (5th Cir. 1948). It will be unable to do so because it has absolutely no credible evidence to support that claim.

A.      Alter Ego and Nominee Claims

The entirety of the IRS's alter ego and nominee claims against the VSHPHH Trust are predicated on a "rewrite" of the facts to meet the multi-factor test of a nominee determination, United States v. Patras, 909 F. Supp. 2d 400, 410 (D.N.J. 2012).

Mr. Shant Hovnanian does not have an interest under state law to the Office Complex, based upon the property transfer recorded as a matter of public record with the Monmouth County Clerk's Office. (Exhibit "A".) As a result, the Nominee Liens are invalid because Mr. Shant Hovnanian was never in title, and "[a] federal tax lien does not arise or attach to property in which a person has no interest under state law". Spotts v. United States, 429 F.3d 248, 251 (6th Cir. 2005). During the course of this case, the IRS has not put forth any challenge to this assertion; rather, it has contended that the nominee liens are nonetheless justified.

B.      Several Factors Preclude Any Alter Ego Claim

The Trust relies upon Judge Anne E. Thompson's March 18, 2019, Opinion, where she states the following: "As a threshold matter, New Jersey law governs whether the Pachava Trust or the VSHPHH Trust is a *nominee* of Defendant Shant" ((emphasis added) at Dkt. 34). ("A nominee theory involves the determination of the true beneficial ownership of property. An alter ego theory focuses more on those facts associated with a 'piercing the corporate veil' analysis." Oxford Capital Corp. v. United States. 211 F.3d 280, 284 (5th Cir. 2000) (quoting William D. Elliot, Federal Tax Collections, Liens and Levies 19.10[2] (2nd Ed. 2000))).

With respect to an alter ego claim against a trust, a plaintiff must show that the trust was *"formed* for an illegal purpose" – i.e., the creator of the trust formed it in order to commit fraud or conceal assets. Genger v. Genger, 990 N.Y.S.2d 498, 505, 121 A.D.3d 270 (1st Dep't 2014)(emphasis added; dismissing the claim that trust was a mere alter ego, reasoning that

6

"[t]here is no authority for applying, by analogy, a theory of 'piercing the corporate veil' to disregard the form of a trust when the trust was not formed for an illegal purpose and there is the requisite separation between beneficiary and trustee"); *see also* In re Vebeliunas, 332 F.3d 85, 91 (2d Cir. 2003).

Here, the IRS admits that Mr. Shant Hovnanian did not create the VSHPHH Trust (his father and mother created it); he did not transfer the asset at issue, the Office Complex, to the Trust (it was contributed to the Trust by his parents); and he is not a beneficiary of the Trust (the grandparents named all of their grandchildren as the beneficiaries of the VSHPHH Trust). (Complaint ¶¶ 29 and 31.) (Exhibit "B".) These admissions preclude any claim of alter ego liability because they establish that the VSHPHH Trust was not created or owned by Mr. Shant Hovnanian, since he is neither a settlor nor a beneficiary of the Trust. The admissions also establish that Mr. Shant Hovnanian did not form the VSHPHH Trust for an illegal purpose (since he did not form it at all), and the Trust was not used to commit a fraud against the IRS, since the property transferred into it (the Office Complex) did not belong to Mr. Shant Hovnanian (it was contributed to the Trust by his parents, Vahak Hovnanian and Paris Hasmig Hovnanian - the very people who established the Trust for the benefit of their grandchildren), and thus was not an asset that Mr. Shant Hovnanian already owned but was trying to conceal. (Being a co-trustee of the VSHPHH Trust did not make Mr. Shant Hovnanian an owner. *See* United States v. Kimball, 2016 WL 3566199, at *6 (D.Me. 2016) (rejecting IRS argument that taxpayer's status as trustee established that trust was his alter ego, reasoning "it is 'standard common-law doctrine' that a trustee holds a 'nonbeneficial' ownership and that it is the beneficiaries of the trust who hold beneficial interests or equitable title while the trustee ordinarily 'holds 'bare' legal title.'"). In any event, the IRS has also admitted that Mr. Shant Hovnanian is no longer a co-trustee; his sister, Nina Hovnanian is now the sole trustee.

(Complaint ¶ 30.)) Given the foregoing, there is no basis for alter ego liability against the VSHPHH Trust. *See* In re Vebeliunas, *supra,* 332 F.3d at 90 (under New York law, alter ego claim against trust was inappropriate because there was no allegation that "Trust was used to conceal assets from creditors," and no allegation that property contributed to trust was part of a "fraudulent conveyance"). *See* United States v. Greer, 383 F.Supp.2d 861, 867-68 (W.D.N.C. 2005).

Notwithstanding its admissions (and their consequences), the IRS argues that the VSHPHH Trust is a mere alter ego of Mr. Shant Hovnanian because Mr. Shant Hovnanian has allegedly paid some of the expenses of the Office Complex property and has allegedly directed some of the tenants of that property to make their rent payments to bank accounts under Mr. Shant Hovnanian's control, conduct that, according the IRS, establishes that the Office Complex property is owned by Mr. Shant Hovnanian because it demonstrates that he has both the "burdens" and "benefits" of ownership. (Complaint ¶¶33-35.) Even assuming these allegations are true for purposes of this Motion, these alleged actions by Mr. Shant Hovnanian do not serve to create an ownership interest that does not otherwise exist. *See,* e.g., Hews Co., LLC v. Barnaby, No. CIV. 04-CV-292JM, 2007 WL 2033402, at *1-2 (D.N.H. July 11, 2007)(fact that debtor "paid some trust expenses ...on a trust where his children were beneficiaries does not suggest that the trust was, or is, a sham," and did not create ownership interest in trust or its underlying properties).

The only reason why bill payments may be important in an alter ego or nominee case involving a trust is because they may bolster other evidence establishing that the property that previously belonged to the taxpayer still belongs to that same taxpayer – i.e., he never truly relinquished it notwithstanding the fact that he placed it into a trust. *See,* e.g., Don Gastineau Equity Trust v. United States, 687 F. Supp 1422, 1425 (C.D.Cal. 1987)(taxpayer's payment of

property taxes and other bills with respect to real property was significant to alter ego claim because taxpayer created trust and contributed property at issue to the trust, and court found that the bill payments reflected that taxpayer still *"retained* the complete, unrestricted beneficial use of the real property" that he previously owned, while purporting to "shield" property from IRS via the trust)(emphasis added).

There is, however, no reason to ascribe significance to such bill payments when, as is the case here, the taxpayer or debtor (here Mr. Shant Hovnanian) did not create the VSHPHH Trust, did not contribute the property at issue to the Trust and is not a beneficiary of the Trust. *See* In re Vebeliunas, *supra,* 332 F.3d at 93 (where debtor's wife created trust at issue and debtor's wife funded trust with her own inheritance, court rejected alter ego claim predicated in part on debtor's payment of expenses, since such payments "do not evidence a transfer in ownership"); Greer, *supra,* 383 F.Supp.2d at 867 (where trust was created and funded by taxpayer's mother, court rejected alter ego and nominee claims predicated in part on allegation that taxpayer-trustee paid "the Trust's property taxes" because such conduct did not create ownership interest in property that was not contributed by the taxpayer); *cf.* Cohen, *supra,* 1998 WL 953979, at *8 (where taxpayer-trustee did not create trust or contribute properties at issue to trust, court rejected alter ego and nominee claims based in part on allegation that taxpayer commingled his own income with monies held in the trust's bank account, reasoning that such conduct did not create ownership interest in the properties held by the trust).

Nor does Mr. Shant Hovnanian's alleged taking of rental income belonging to the Trust establish an ownership interest, either in the VSHPHH Trust or in the Office Complex. *See* Cohen, supra, 1998 WL 953979, at *8 (rejecting alter ego and nominee claims predicated in part on the taxpayer-trustee taking income belonging to trust for his own personal use; court reasoned that the

9

taxpayer's "treatment of the Trust as his personal bank account and his disregard of certain Trust formalities constitutes a failure to maintain an arm's length relationship, but that failure did not transfer title to the Trust's major assets" to the taxpayer, since at most such conduct constitutes "fiduciary breaches" that "do not convert the principal of the Trust to [the taxpayer's] personal property"); *see also* Greer, *supra,* 383 F.Supp.2d. at 868-69 (rejecting alter ego and nominee claims predicated in part on allegation that taxpayer-trustee disbursed trust income to himself in contravention of provisions of trust; court reasoned that "failure to abide by the terms of a trust by a trustee does not render the trust invalid," and that instead "the trustee would be in breach of his fiduciary duty and liable for damages caused by the breach").

Finally, the assertion that Mr. Shant Hovnanian resided at the Office Complex is absurd. The testimony was that Mr. Shant Hovnanian may have slept on a couch in the office, but that is not determinative of residency and certainly does not give rise to an ownership interest. The IRS knew that Mr. Shant Hovnanian did not spend time at the Office Complex, as reflected in Agent Michael MacGillivray's Report. (Exhibit "C" at pg. 315 to 316.)

### C.    Summary of the Six Factor Test

While they are closely related, the key difference between nominee liability and alter ego liability is that "the nominee theory focuses on the taxpayer's control over and benefit from the property while the alter ego theory emphasizes the taxpayer's control over the entity that holds the property." *See* United States v. Evseroff, 2012 WL 1514860, at *10 (E.D.N.Y. 2012). To determine whether a trust is a taxpayer's nominee under New Jersey law, courts examine the following:

> (1) whether the nominee paid adequate consideration for the property; (2) whether the property was placed in the nominee's name in anticipation of a suit or other liabilities while the taxpayer continued to control. .. the property; (3) the relationship between the taxpayer and the nominee; (4) the failure to record the conveyance;

10

>   (5) whether the property remained in the taxpayer's possession; and
>   (6) the taxpayer's continued enjoyment of the benefits of the property.

Patras, 544 F. App'x at 141-42 (collecting cases under New Jersey law).

Thus, the focus in nominee liability cases is on the taxpayer transferring property that he owns to another party or entity to hold for him on his behalf, while the taxpayer continues to fully enjoy all of the benefits of the property as if he had never transferred it. As one federal Court of Appeals has put it: "Suppose a person who wants to evade taxes parks his property with a friend or family member. That would be a fraudulent conveyance, and so the person to whom the property was conveyed would be deemed the taxpayer's 'nominee' and forced to cough it up." United States v. Swan, 467 F.3d 655, 658 (7th Cir. 2006); see also United States v. Nassar, 2014 WL 5822677, at *5 (S.D.N.Y. 2014)(key to nominee liability is "whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, *retaining* all or some of the benefits of being the true owner")(emphasis added); United States v. Jones, 2012 WL 569366, at *9 (C.D.Cal. 2012)(same).

Obviously, then, if the taxpayer did not contribute the property at issue to the purported third-party nominee, then there can be no claim for nominee liability. See United States v. Towne, 406 F. Supp.2d 928, 937 (N.D.111. 2005)(rejecting IRS claim of nominee liability, reasoning that "[t]he key to the Court's analysis under the Government's nominee theory is whether the transferor had control over the Property," and "[h]ere, the transferor is ... not the [Taxpayer]").

Here, there can be no claim of nominee liability because the IRS admits that the taxpayer (Mr. Shant Hovnanian) did not transfer the property at issue (the Office Complex) to the purported nominee (the VSHPHH Trust). (Complaint ¶¶ 29 and 31). Instead, it was the taxpayer's father and mother who contributed that property to the Trust. (Id.). *See* Towne, supra, 406 F. Supp.2d at 937

11

(no nominee liability under these circumstances); Greer, *supra*, 383 F. Supp.2d at 867 (same); Cohen v. United States, 1998 WL 953979, at *8 (C.D.Cal. 1998) (same).

The second factor, whether the property was transferred in anticipation of a suit or claim, is not met here. The property transfer in anticipation of a suit has to relate to the transfer of property by the transferor, not the transferee. The analysis would be that Mr. Shant Hovnanian's parents were the persons seeking to avoid a claim, suit or other liability and there is no claim in this case nor evidence in the record to support that assertion.

The third factor, namely the relationship between the taxpayer and the nominee, is not met. The taxpayer is Mr. Shant Hovnanian and his relationship to the VSHPHH Trust is not the relevant relationship analysis. Rather, the nominee relationship is viewed in the context of the relationship between the nominee and the transferors. In that regard, there is no relationship between Vahak Hovnanian and/or Paris Hasmig Hovnanian and the VSHPHH Trust.

The fourth factor, the failure to record the conveyance, is not applicable as the conveyance here was recorded, but again, this relates to the motivation of the transferor and that person's efforts to hide the transfer. That did not occur here.

The fifth factor, "whether the property remained in the taxpayer's possession", is not met. The use of the word "remained", of course, connotes that the taxpayer had possession of the transferred property before the transfer. There is no contention that Mr. Shant Hovnanian possessed the Office Complex before it was transferred to Trust. (Exhibit "A".)

Finally, the sixth factor, "the taxpayer's continued enjoyment of the benefits of the property", again, of course, connotes that the taxpayer had the enjoyment of the benefits of the property before the transfer. Otherwise, why use the word "continued". There has been no showing that Mr. Shant Hovnanian enjoyed any benefits of the Office Complex before the property was

transferred to the Trust, so he did not "continue" to enjoy any benefits. The words have to have meaning.

## CONCLUSION

For the foregoing reasons, this Court should enter an Order granting Defendant VSHPHH Trust's Motion for Summary Judgment.

Dated: June 17, 2022

Respectfully submitted,

*[signature]*

John M. Hanamirian, Esquire
HANAMIRIAN LAW FIRM, P.C.
40 E. Main Street
Moorestown, New Jersey 08057
(856) 793-9092 – t
(856) 793-9121 – f
jmh@hanamirian.com
