**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**SHANT S. HOVNANIAN**, **_et al._,**<br><br>Defendants. | Civil Action No. 18-15099 (ZNQ) (LHG)<br><br>**OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon several Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Motions for Entry of Judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  The first Motion for Partial Summary Judgment was filed by Plaintiff the United States of America ("the Government") against Defendant Nina Hovnanian in her capacity as trustee for the Pachava Asset Trust ("MSJ against Pachava", ECF No. 122).  The second Motion for Partial Summary Judgment and Motion for Entry of Judgment was filed by the Government against Defendant Nina Hovnanian in her capacity as trustee for the VSHPHH Trust ("MSJ against VSHPHH", ECF No. 123).  Defendants Pachava Asset Trust ("Pachava") and VSHPHH Trust ("VSHPHH") each separately filed Motions for Summary Judgment against the Government ("Pachava MSJ", ECF No. 124; "VSHPHH MSJ", ECF No. 125).  The Court will also consider the Motion for Order of Sale of the 572 Wyckoff Mills Property ("Wyckoff Order of Sale", ECF No. 121) and the Motion for Order of Sale of the Village Mall Property ("Mall Order of Sale", ECF No. 123) filed by the Government.

1

The Government filed a Brief in Support of its Motion ("Gov. Moving Br. against Pachava", ECF No. 122-2) and a Statement of Undisputed Material Facts ("Gov. Pachava SUMF", ECF No. 122-1) with respect to its Motion against Pachava.  Pachava filed a Brief in Opposition to the Government's Motion ("Pachava Opp'n to Gov. Motion", ECF No. 129) along with its Counter Statement of Undisputed Material Facts ("Pachava Counter SUMF", ECF No. 129-10). The Government filed a Reply in response to Pachava's Opposition ("Reply to Pachava", ECF No. 135).

The Government also filed a Brief in Support of its Motion ("Gov. Moving Br. against VSHPHH", ECF No. 123-2) and a Statement of Undisputed Material Facts ("Gov. VSHPHH SUMF", ECF No. 123-1) with respect to its Motion against VSHPHH.  VSHPHH filed a Brief in Opposition to the Government's Motion ("VSHPHH Opp'n to Gov. Motion", ECF No. 128) along with its Counter Statement of Undisputed Material Facts ("VSHPHH Counter SUMF", ECF No. 128-8).  The Government filed a Reply to VSHPHH's Opposition ("Reply to VSHPHH", ECF No. 136).

Pachava filed a Brief in Support of its Motion ("Pachava Moving Br.", ECF No. 124-3) and a Statement of Undisputed Material Facts ("Pachava SUMF", ECF No. 124-6).  The Government filed a Brief in Opposition to Pachava's Motion ("Gov. Opp'n to Pachava Motion", ECF No. 130), along with a Response to Pachava's Undisputed Material Facts ("Gov. Counter to Pachava SUMF", 130-1).  Pachava filed a Reply to the Government's Opposition. ("Pachava Reply", ECF No. 137.)

VSHPHH filed a Brief in Support of its Motion ("VSHPHH Moving Br.", ECF No. 125-3) and a Statement of Undisputed Material Facts ("VSHPHH SUMF", ECF No. 125-4).  The Government filed a Brief in Opposition to VSHPHH's Motion ("Gov. Opp'n to VSHPHH

Motion", ECF No. 131) along with a Response to VSHPHH's Undisputed Material Facts ("Gov. Counter to VSHPHH SUMF", 131-1).  VSHPHH filed a Reply to the Government's Opposition. ("VSHPHH Reply", ECF No. 138.)

The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT the Government's Motion for Partial Summary Judgment against Pachava Asset Trust, GRANT the Government's Motion for Partial Summary Judgment against VSHPHH, GRANT the Government's Motion for Order of Sale of the 572 Wyckoff Mills Property, DENY Pachava's Motion for Summary Judgment, DENY VSHPHH's Motion for Summary Judgment, and GRANT the Government's Rule 54(b) Motions.

## I.   **BACKGROUND**

### A.   **The Parties**

The Government alleges that Defendant Shant Hovnanian ("Shant") owes more that $16 million in federal tax liabilities that arose because he engaged in illegal tax shelters.  At all times relevant to this case, Defendant Shant Hovnanian's primary residence is located at 520 Navesink River Road, Red Bank, New Jersey.  At all times relevant to this case, Defendant Nina Hovnanian was the trustee of VSHPHH and is also currently the trustee of the Pachava Asset Trust.  At all times relevant to this case, Pachava holds bare legal title to the property commonly known as 520 Navesink River Road, Red Bank, New Jersey.  At all times relevant to this case, VSHPHH holds bare legal title to the Village Mall property, which is located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey.

## B.     Procedural History

The Government filed its Complaint on October 18, 2018.  ("Compl.", ECF No. 1.)  In its efforts to collect the alleged $16 million in owed federal taxes, the Government now seeks to attribute two pieces of real property to Shant: 520 Navesink River Road, Middletown Township, New Jersey (Block 1043, Lot 67.02) (the "Navesink Property"); and 1 Dag Hammarskjold Boulevard, Freehold, New Jersey (Block 143, Lot 25.04) (the "Village Mall Property").[1]  As a result, the Government also seeks to attach federal tax liens and foreclose on these pieces of real property in order to satisfy Shant's income tax liability.  (*Id.* ¶¶ 18–35, 43–49.)  On January 16, 2018, the Government filed a notice of federal tax lien in the Office of the County Clerk of Monmouth County against Shant for his unpaid federal income taxes.  (*Id.* ¶¶ 47, 49, 50.)  The Government listed both Pachava and VSHPHH as his nominees.  (*Id.* ¶¶ 47, 49.)  On October 18, 2018, the Government filed this action seeking an order that it has valid federal tax liens against the Navesink Property and the Village Mall Property, and that the liens may be foreclosed against such properties.  (*Id.* at 11.)  On February 12, 2019, Defendant Nina Hovnanian ("Nina"), in her capacity as trustee, filed the Motions to Dismiss seeking dismissal for both Pachava and VSHPHH, which the Court ultimately denied.  ("Order", ECF No. 25.)

## C.     Undisputed Facts

The Court has found the following facts to be relevant and undisputed.

Nina is the daughter of Vahak and Paris Hovnanian, and the sister of Shant Hovanian. (Pachava SUMF, ¶ 1.)  Nina is the current trustee for both Pachava and VSHPHH.  (*Id.*)  Pachava owns the title to the family home—the home at issue in this litigation—which is the Navesink

---

[1] The Government also alleges that Defendant Shant is the true and equitable owner of another piece of real property, 572 Wyckoff Mills Road, Howell Township, New Jersey (Block 143, Lot 26.01), through Defendant Adelphia Water Company, Inc. (Compl. ¶¶ 36–42).

Property located at 520 Navesink River Road, Red Bank, New Jersey.  (*Id.* ¶ 7; Gov. Pachava SUMF ¶ 6.)  After the home was built in 2008, Shant, his wife, and his children moved onto the property.  (Pachava Counter SUMF ¶ 10; Gov. Pachava SUMF ¶ 10.)  Shant and his wife were responsible for paying the expenses of the property.  (*Id.* ¶ 14; *Id.* ¶ 14.)  Namely, several household expenses for the Navesink Property, like utility bills, were paid predominately from a Morgan Stanley bank account ending in 1955 that was in the name of Pachava.  (*Id.* ¶ 29; *Id.* ¶ 29.)

On January 5, 2012, Shant's mother, Paris Hasmig Hovnanian, recorded a deed transferring the legal title of 520 Navesink to the Shant S. Hovnanian Asset Trust for $1.  (*Id.* ¶ 20; *Id.* ¶ 20.)  The Shant S. Hovnanian Asset Trust was created by Shant for the benefit of his children.  (*Id.* ¶ 20; *Id.* ¶ 20.)  His wife, Hilde Jenssen ("Hilde") was named as trustee.  (*Id.*; *Id.*)  Also on January 5, 2012, the Shant S. Hovnanian Asset Trust filed a corrective deed to reflect legal title to the 520 Navesink property was transferred to the Pachava, not the Shant S. Hovnanian Asset Trust.  (*Id.* ¶ 22; *Id.* ¶ 22.)  In a document dated October 11, 2011, the Shant S. Hovnanian Asset Trust changed its name to the Pachava Asset Trust.  (*Id.* ¶ 23; *Id.* ¶ 23.)  Following their divorce in 2015, Shant and Hilde agreed Peter Hovnanian, Shant's cousin, should be the replacement trustee.  (*Id.* ¶ 39; *Id.* ¶ 39.)  On December 20, 2017, Shant's sister, Nina, was named as trustee for the trust up to and including the time the instant action was filed.  (*Id.* ¶ 58; *Id.* ¶ 58.)  Shant never paid any rent while living at the 520 Navesink Property.  (Gov. Pachava SUMF ¶ 13.)

VSHPHH is a named defendant with respect to the Village Mall property.  (Gov. VSHPHH SUMF ¶ 9.)  The Village Mall is a two-floor office complex located at 1 Dag Hammarskjold Boulevard, Freehold, New Jersey.  (*Id.* ¶ 8; VSHPHH Counter SUMF ¶ 8.)  Shant's parents formed VSHPHH on December 28, 2012.  (*Id.* ¶ 55; *Id.* ¶ 55.)  Shant and Nina were named as co-trustees of VSHPHH.  (*Id.* ¶ 57; *Id.* ¶ 57.)  On January 1, 2015, Shant's parents transferred the Village Mall

to VSHPHH for $1.00.  (*Id.* ¶ 9; *Id.* ¶ 9.)  Shant resigned as trustee of VSHPHH in 2017, leaving Nina as the sole trustee.  (*Id.* ¶ 62; *Id.* ¶ 62.)  VSHPHH never filed income tax returns (Form 1041) with the IRS.  (*Id.* ¶ 65; *Id.* ¶ 65.)  The first floor of the Village Mall contained tenants that paid rent.  (*Id.* ¶ 13; *Id.* ¶ 13.)  Shant, on the other hand, did not pay rent for any usage of space at the Village Mall.  (*Id.* ¶ 20; *Id.* ¶ 20.)

After several years of audits, the partnership Shant Hovnanian used in his tax shelter was tried before the U.S. Tax Court in December of 2010.  (Pachava Counter SUMF ¶ 17; Gov. Pachava SUMF ¶ 17.)  The Tax Court issued its decision on September 20, 2011, ruling against Shant's partnership, and requested further information to compute the exact amounts due.  (*Id.* ¶ 18; *Id.* ¶ 18.)  The Tax Court entered its final decision on December 21, 2011.  (*Id.* ¶ 19; *Id.* ¶ 19.)  The Tax Court upheld the Service's determination and the Second and Third Circuits affirmed the Tax Court's decisions.  (*Id.* ¶ 1; *Id.* ¶ 1.)  A delegate of the Secretary of the Treasury made the following federal income tax (Form 1040) assessments against Shant for the tax periods identified below:

| Tax Period | Date of Assessment | Amount of Tax Assessment | Balance as of September 30, 2018 |
|---|---|---|---|
| 2002 | 10/22/2008 2/13/2013 | $3,914,430 $241,764 | $12,274,759 |
| 2003 | 10/22/2008 2/13/2013 | $7,964 $309,108 | $840,528 |
| 2004 | 2/13/2013 | $983,773 | $3,074,834 |
| 2007 | 3/29/2010 | $11,223 | $19,268 |
| | | | Total $16,209,389 |

(*Id.* ¶ 2; *Id.* ¶ 2.)  The Court entered default judgment as to the amount owed by Shant for these taxes.  (*Id.* ¶ 3; *Id.* ¶ 3.)

D.      **Jurisdiction**

The Court has subject matter jurisdiction over the Government's claims under 28 U.S.C. § 1331.

## II.    <u>LEGAL STANDARD</u>

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).  To

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. A court should grant summary judgment where the non-movant's evidence is merely colorable or not significantly probative, because "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" *Coit v. Garman*, 812 F. App'x 83, 85–86 (3d Cir. 2022) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (citation omitted).

There is also "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. However, summary judgment is not appropriate "if reasonable minds could differ as to the import of the evidence." *See Anderson*, 477 U.S. at 250–51.

## III.   DISCUSSION

### A.   Pachava Trust Motions

In its Motion for Partial Summary Judgment against Pachava, the Government argues that, given the facts of this case, it is seeking a determination that Pachava is Shant's nominee and that the tax liens assessed against him consequently attach to the Navesink Property. (Gov. Moving Br. against Pachava at 4.) To that extent, the Government argues that Pachava simply held title of the Navesink Property and Shant actually had control over the property, as evidenced by him paying the property's bills, living on the property, and being the decisionmaker for anything that had to do with the property. (*Id.* at 2.)

"When there is a tax lien on a taxpayer's property, the Government may seek to satisfy it by levying upon property the taxpayer controls." *United States v. Patras*, 544 F. App'x 137, 140 (3d Cir. 2013). When the "Government seeks to reach" real property, the Court must determine

what rights the taxpayer has in such property to determine if it is subject to the lien.  *Drye v. United States*, 528 U.S. 49, 58 (1999).  If the property is under the control of a third party found to be the delinquent taxpayer's nominee or alter ego, it can be subject to a tax lien.  *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977).  A third party is a taxpayer's nominee where "the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of [that] third party while actually retaining some or all of the benefits of true ownership."  *Patras*, 544 F. App'x at 141 (citing *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007)); *see also Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 & n.3 (9th Cir. 2013).

As laid out in *Patras,* the test for a nominee relationship under both federal and New Jersey law is generally set out with six factors:

1. Whether the nominee paid adequate consideration for the property;
2. Whether the property was placed in the nominee's name in anticipation of a suit or other liabilities while the taxpayer continued to control . . . the property;
3. The relationship between the taxpayer and the nominee;
4. The failure to record the conveyance;
5. Whether the property remained in the taxpayer's possession; and
6. The taxpayer's continued enjoyment of the benefits of the property.

*Hovnanian*, 2019 WL 1233082, at *7–8 (quoting *Patras*, 544 F. App'x at 141–42).  These factors should not be applied rigidly or mechanically.  *In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999).  The overarching key to the nominee test is determining if a party exercises "active" or "substantial" control over the property.  *In re Richards,* 231 B.R. at 579.  If a taxpayer is the true owner of the property, that property is subject to the tax lien.

At this juncture, it is worth noting that Pachava's Opposition brief is identical to the one that it filed for its Motion for Summary Judgment against the Government.  For this reason, the Court will address both Pachava's Opposition and its Motion for Summary Judgment together.

Defendant Pachava first argues that "the IRS's theory of the case is that the real property transactions wherein the Properties were transferred to the Pachava Asset Trusts were the result of fraudulent conveyances." (Pachava Opp'n to Gov. Motion at 18; Pachava MSJ at 16.)  Pachava goes on to argue that the Government's claims fall under the New Jersey's Fraudulent Transfer Act ("FTA"), which has a four-year statute of limitations and the Government has waited beyond those four years to file its claim, thus precluding them from pursuing the nominee lien. (*Id.* at 19–20; *Id.* at 16–17.)  Although the Government never asserts any alter ego liability in its Motion for Partial Summary Judgment, Pachava argues that the Government's alter ego claim fails. Defendant next argues that the nominee claim fails because "Shant was never in title to the Properties, and a 'federal tax lien does not arise or attach to property in which a person has no interest under state law.'" (*Id.* at 22–23; *Id.* at 19–20.)

Pachava also adopts faulty arguments that Shant does not satisfy the *Patras* factors. (*Id.* at 32; *Id.* at 29.)  It claims the first factor is not satisfied because "the property never belonged to the taxpayer." (*Id.*; *Id.*)  The second factor is not met because the second factor relates to the transfer of property by the transferor, not the transferee, such that the analysis would be that Shant's parents were the persons seeking to avoid a claim. (*Id.* at 33; *Id.* at 30.)  According to Pachava, the third factor is not met because the analysis looks at the relationship between the nominee and the transferor and there is no relationship between Shant's mother and the Pachava Trust. (*Id.*;*Id.*) Lastly, factor four is not satisfied because the conveyance was recorded and factors five and six are not met because there is no showing that Shant lived at the Navesink Property. (*Id.*; *Id.*)  Based on these arguments, Pachava argues that the Government's Motion for Partial Summary Judgment against Pachava should be denied, and instead Pachava's Motion for Summary Judgment should be granted.

10

Pachava's arguments are largely mistaken.  "While related, the concepts of 'nominee[,'] 'transferee[,'] and 'alter ego' are independent bases for attaching the property of a third party in satisfaction of a delinquent taxpayer's liability."  *E.g.*, *Oxford Cap. Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000).  Although a nominee has "true beneficial ownership of property," a fraudulent transfer seeks to avoid a transfer made to generally hinder, delay, or defraud creditors. *Id*.  The Government can enforce its liens against the taxpayer's property, including property held by a nominee or alter ego.  *Hovnanian*, 2022 WL 909868, *3 ("the right to foreclose on these liens extends to property held by third parties who are 'acting as a nominee or alter ego . . . .'") (quoting *United States v. Wunder*, Civ. No. 16-9452, 2019 WL 2928842, *4 (D.N.J. July 8, 2019), *aff'd*, 829 F. App'x 589 (3d Cir. 2020)).  That said, the Government did not need to—nor did it—bring any claims under alter ego liability or the FTA.  Thus, the statute of limitations with respect to the FTA and the arguments against alter ego liability are misplaced.

Pachava's arguments that the nominee claims are insufficient are also mistaken.  Pachava seems to conflate the plain language of the rule set forth in *Patras*.  For example, factor one asks whether the *nominee*—in this case, Pachava—paid adequate consideration, not the taxpayer as Pachava asserts.  *Patras*, 544 F. App'x at 142.  As for the second factor, courts are clear that the proper analysis is whether the *nominee* purchased the property in anticipation of a suit or other liabilities and nothing to do with the transferor, as Pachava claims.  *Id.*  Pachava also misapplies the third *Patras* factor because the rule clearly states that the Court needs to consider "the relationship between the *taxpayer* and the *nominee*", not the taxpayer and the transferor as argued by Pachava.  *Id.* at 141 (emphasis added).  Accordingly, the Court rejects Pachava's arguments.

Turning to the *Patras* factors themselves, the first, second, and fourth factors focus on the mechanics of the transfer and, for the reasons set forth below, they favor a conclusion that Pachava

was just Shant's nominee.  The first factor is satisfied because it is undisputed that the transfer

from Shant's mother to Pachava was only for one dollar (Gov. Pachava SUMF ¶ 20; )—clearly, a

nominal amount.  (Ex. 101, Deed, at 1.)  *See Coles v. Osback*, 92 A.2d 35, 36 (N.J. Super. Ct. App.

Div. 1952) (holding that the first factor was satisfied because the sale price of the property was

below market value).  Moreover, the second factor is satisfied because it is likewise undisputed

that the Hovnanians recorded the transfer of the Navesink Property after Shant lost a case before

the United States Tax Court with regard to his tax liabilities (Ex. 101, Deed, at 1; Gov. Pachava

SUMF ¶ 17).  *See id.* (holding that the second factor was satisfied after the debtor placed the

property in his son's name after suit was filed against him).  As for the fourth factor, the

conveyance was recorded, which does militate against finding Pachava is a nominee, but this factor

alone is not dispositive.  *Patras*, 544 F. App'x at 142.  *See also Gilchinsky v. National Westminster

Bank N.J.*, 732 A.2d 482, 491 (N.J. 1999) (lack of concealment was "only marginally relevant" in

NJFTA case); *In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999) (according the fact that the

transfer was recorded "relatively little weight").  On balance, factors one, two, and four (and the

relevant undisputed evidence before the Court) therefore favor a conclusion that Pachava is a mere

nominee.

   *Patras* factors three, five and six examine the relationship between the nominee and

taxpayer, as well as whether the taxpayer retained possession and enjoyed the benefits and bore

the burdens of owning the property.  *Patras*, 544 F. App'x at 141.  Factor three looks at the

relationship between the taxpayer and the nominee.  Here, factor three is satisfied because Shant

is so closely intertwined with everyone involved in Pachava.  Namely, Shant "was the one who

settled the Pachava Trust," "his mother contributed the property," his wife at the time served as

the original trustee, his cousin followed his wife as trustee following the divorce, "his sister

12

[currently] serves as trustee, and his children are the sole beneficiaries." (Pachava Dep. at 27:21-25.) *Hovnanian*, 2019 WL 1233082, at *6. Factors five and six look at whether the property remained in the taxpayer's possession, and whether the taxpayer's continued to enjoy the benefits of the property. As proof of factors five and six, the Government's evidence includes unrebutted deposition testimony it elicited from Shant's wife at the time, Hilde Jenssen ("Hilde Dep.", ECF No. 122-9), and corroborated by deposition testimony from, Jennifer Generoso, a corporate designee-witness for Morgan Stanley, the firm that managed Pachava's financial account ("Generoso Dep.", ECF No. 122-5). Specifically, Hilde's testimony was that the Navesink Property was Shant's primary residence starting in 2008 where he, she, and their children all resided[2] (Hilde Dep. 19:5-17; "Generoso Dep.", ECF No. 122-5, at 10:4-25), Shant did not pay rent while residing there (*id.* at 20:9-11), and he paid for all of the property's expenses (*id.* at 19:18-21:13; "Gandolfo Dep.", ECF no. 122-7, at 53-5–54:9). *See Patras*, 511 F. App'x at 142 (fifth factor satisfied because it was established that the defendant resided in the property uninterrupted and without a lease to support his assertion that payments he was making constituted rent).

In summation, the undisputed record indicates that: the transfer was made for minimal consideration (factor one), the transfer happened after Shant lost a case before the United States Tax Court (factor two), Shant had a close relationship via familial relations with each of the trustees (factor three), and the property remained in Shant's possession as it was his primary residence for the time in question (factors five and six). This is consistent with the Government's position that Pachava is a mere nominee. *See Jugan v. Friedman*, 646 A.2d 1112, 1119 (N.J.

---

[2] Shant initially claimed to have resided at Village Mall ("MacGillivray Dep.", ECF No. 123-6, 87:16-88:8) but this claim contradicts the Government's evidence that he was living at the Navesink Property. Shant's initial claim that he was living at Village Mall was promptly abandoned following the Government's Motion for Partial Summary Judgment. (VSHPHH Opp'n to Gov. Motion at 28.)

Super. Ct. App. Div. 1994) (a debtor's wife was a nominee because the debtor had transferred the property at issue to his wife (factor 3) without receiving any consideration (factor 1) for the purpose of evading his creditors (factor 2) while continuing to control and enjoy the benefits of the property (factors 5 and 6)); *Coles*, 92 A.2d at 38–40 (a son was the nominee owner of property for the benefit of his parents (factor 3), who lived there (factors 5 and 6); that the sale price of the property was below market value (factor 1); and that the debtor placed the property in his son's name after suit was filed against him (factor 2)); *Sweney v. Carroll*, 178 A. 539, 542-44 (N.J. Ch. 1935) (considering similar factors); *cf. Holman*, 505 F.3d at 1065 (a third party is a nominee where the taxpayer retains the benefit of ownership); *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728-29 (11th Cir. 1989) (weighing similar factors to determine "who has 'active' or 'substantial' control" (citation omitted).

For these reasons, the Court concludes that there is no genuine dispute that the Pachava Trust is Shant's nominee and Shant is the beneficial owner of the Navesink Property—effectively subjecting the Navesink Property to the tax lien. Accordingly, the Court will grant the Government's Motion for Partial Summary Judgment against the Pachava Asset Trust and deny Defendant Pachava's Motion for Summary Judgment.

### B. VSHPHH Trust Motions

#### 1. Motion for Summary Judgment

In its Motion for Partial Summary Judgment against VSHPHH, the Government is seeking a determination that VSHPHH is also Shant's nominee and that the tax liens assessed against him consequently attach to the Village Mall property as well. (Gov. Moving Br. against VSHPHH at 1.) To that extent, the Government argues that VSHPHH simply held title of the Village Mall property and Shant actually had control over the property, as evidenced by him paying the property's bills from his personal account, collecting the property's rents into his business'

account, using the property rent-free, and not filing any income tax returns for the Trust because rent received for the property was not considered income for the Trust.  (*Id*. at 2–3.)

Similar to Pachava, VSHPHH submitted the same arguments for both its Opposition and its Motion for Summary Judgment.  The Court will once again address both at the same time. VSHPHH argues essentially the same points as Pachava; that the "the IRS's theory of the case is that the real property transactions wherein the Office Complex was transferred to VSHPHH was the result of fraudulent conveyances." (VSHPHH Opp'n to Gov. Motion at 18; VSHPHH MSJ at 15.)  VSHPHH also argues that the nominee claim fails because "Shant was never in title to the Properties, and a 'federal tax lien does not arise or attach to property in which a person has no interest under state law.'" (*Id*. at 21; *Id*. at 17.)  To support its position, VSHPHH argues that the facts do not satisfy the *Patras* factors.  The first factor fails because Shant's parents transferred the property, not Shant himself.  (*Id*. at 31; *Id*. at 27.)  The second factor fails because it relates to the transfer of property by the transferor, not the transferee, such that the analysis would be that Shant's parents were the persons seeking to avoid a claim.  (*Id*.; *Id*.)  The third factor is not met because the analysis looks at the relationship between the nominee and the transferor and there is no relationship between Shant's parents and VSHPHH.  (*Id*.;*Id*.)  Lastly, VSHPHH argues that factor four is not met because the conveyance was recorded, and factors five and six are not met because there is no showing that Shant remained on the property and continued to enjoy the benefits of the property.  (*Id*. at 32; *Id*. at 28.)  In fact, as noted above, Shant initially represented that he resided at the Village Mall (MacGillivray Dep., 87:16-88:8), but this position was promptly abandoned in VSHPHH's Opposition, which noted that "the assertion that Mr. Shant Hovnanian resided at the Office Complex is absurd."  (*Id*. at 28.)  Based on these arguments, VSHPHH

contends that the Government's Motion for Partial Summary Judgment should be denied, and instead their Motion for Summary Judgment should be granted.

Using the same standard and *Patras* factors noted in section III.A *supra*, the Court determines that the *Patras* factors are satisfied with respect to VSHPHH.  VSHPHH makes similar faulty arguments as those made by Pachava, which evidence a misunderstanding of the *Patras* factors.  Factor one is again satisfied because Shant's parents transferred the Village Mall to VSHPHH for only $1.00 in 2015.  (Gov. VSHPHH SUMF ¶ 9.)  Factor two is satisfied because the transfer to VSHPHH occurred after Shant lost his case with regard to his tax liabilities (Gov. VSHPHH SUMF ¶ 4.    Factor three is satisfied because the taxpayer (Shant), and the nominee (VSHPHH) are closely related in that, at the time of the transfer, Shant and his sister were co-trustees of the Trust, and their children were the sole beneficiaries.  Shortly after the transfer of the Village Mall Property and after Shant lost his case in Tax Court, he resigned as trustee of VSHPHH, leaving his sister as sole trustee.    Although factor four weighs in favor of VSHPHH because the transfer was recorded, as noted above, this factor alone is not dispositive.  The fifth and sixth factors are satisfied because the Village Mall remained in Shant's possession, and Shant continued to enjoy the benefits of the Village Mall, which were especially made evident by VSHPHH's deposition, as set forth below.  ("VSHPHH Dep.", ECF No. 123-4, 27:6-9, 37:16-18, 54:14-20.)

Nina, testifying as a Rule 30(b)(6) witness on behalf of VSHPHH, testified that after the Village Mall was transferred to VSHPHH, Shant continued to exercise substantial control until he resigned as trustee in 2017.  (*Id.* 27:6-9, 37:16-18, 54:14-20.)  When VSHPHH took legal title to the Village Mall, rent checks from the first-floor tenants continued to be paid to a bank account held in the name of Shant's father, which was authorized by Shant.  (*Id.* 67:7-25.)  The rent that

was collected was not used for paying expenses of the Village Mall.  (Ex. 104, Hollobaugh Exp. Report, at 37.)  Instead, rent was deposited from the father's account into Shant's account in the name of one of Shant's businesses—HovSat, Inc.  *Id.*  In early 2017, Shant instructed the tenants to pay rental income directly to HovSat, rather than to his father's account or into a VSHPHH account. (VSHPHH Dep., 67:9-15, 104:12-20); *see, e.g., Berkshire Bank v. Town of Ludlow, Mass.*, 708 F.3d 249, 253 (1st Cir. 2013) (finding an LLC was a nominee in part where a taxpayer admitted to taking 10–15% of the revenue to pay personal expenses).  Nina never had authority over the HovSat account and could not access it.  (VSHPHH Dep., 68:2-5.)  Moreover, not only did Shant not pay rent for any of the space he used in the Village Mall, but he used the rental income from the Village Mall for his personal expenses (Ex. 105, Paulikens Exp. Report, at 8) and none of the funds from the Village Mall were ever distributed to the VSHPHH beneficiaries. (Ex. 104, Hollobaugh Exp. Report, Ex. K.)  Shant was also paying for the Village Mall's real estate taxes from his personal business account.  (*Id.*; Ex. 105, Paulikens Exp. Report, at 21-22.)  Other Village Mall expenses, like utilities and real estate taxes, were also paid from Shant's personal business account.  (Ex. 104, Hollobaugh Exp. Report, Ex. K.)

Unsurprisingly, VSHPHH argues that it was not Shant's nominee and therefore the tax liens cannot be placed on the Village Mall.  (*See generally,* VSHPHH Opp'n to Gov. Motion.) Although VSHPHH insists that it does not satisfy the six *Patras* factors, it fails to cite meaningful evidence in response to the Government's showing.  The sole evidence VSHPHH refers to is with respect to the fifth factor—whether the property remained in Shant's possession (Ex. A, 128-1). *Patras*, 544 F. App'x at 141.  To that effect, VSHPHH provides the deed of the Village Mall which illustrates that the transfer of the Village Mall was between Shant's parents and VSHPHH.  (Ex. A at 1.)  The deed is of no moment because the Government's position is not that Shant had actual

possession of the Village Mall.  Rather, the Government's arguments and evidence assert that Shant retained possession of the Village Mall *via its nominee,* VSHPHH.  Thus, VSHPHH's reference to the deed does not raise a genuine issue of material fact with respect to factor five.

Based on the Government's showing as to five of the six *Patras* factors, the Court finds that there is no genuine dispute that VSHPHH is Shant's nominee.  Accordingly, the Court will grant the Government's Motion for Partial Summary Judgment.

### 2.   Motion for Order of Foreclosure and Sale of the Village Mall Property

As part of its Motion for Partial Summary Judgment as to VSHPHH, the Government requests that the Court authorize the foreclosure and sale of the property.  (Gov. Moving Br. against VSHPHH at 14.)  This section of the Government's Motion for Partial Summary Judgment is unopposed.

In light of the Court's judgment, the Court may order a forced sale of the Village Mall.  26 U.S.C. § 7403; *United States v. Bogart*, 715 F. App'x 161, 169 (3d Cir. 2017); *see also United States v. Rodgers*, 461 U.S. 677, 693–94 (1983) ("[W]e must read the statute [§ 7403] to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any claim or interest in it)").  The decision to force a property sale is in the Court's discretion, however, the discretion not to sell is limited and "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes."  *Id*. at 711.

Courts must consider several factors where a § 7403 sale would cause undue hardship to an innocent third party:

> (1) the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes; (2) whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain

> proceedings, of course), have a legally recognized expectation that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors; (3) the likely prejudice to the third party, both in personal dislocation costs and in . . . practical undercompensation; and (4) the relative character and value of the non-liable and liable interests held in the property.

*Id*. at 710–11.

To the extent that the Court has already determined that VSHPHH is Shant's nominee *supra* implies that it was not an "innocent" third party, and the exercise of equitable discretion may not even be warranted. *Bogart*, 715 F. App'x at 169.  Nonetheless, the application of the *Rodgers* factors yields the same result.  First, there is no evidence that Shant has any assets other than the properties enumerated herein that the Government could attach to satisfy the tax debt; the Government, therefore, has a strong interest in a forced sale of the property.  *Id.* (citing *United States v. Winsper*, 680 F.3d 482, 489–90 (6th Cir. 2012)).  Although the second factor would weigh against foreclosure "under normal circumstances," it is neutralized by the Court's finding that Shant participated in the transfer of the property in an attempt to frustrate the Government's efforts to collect his taxes.  *Id.* (citing *United States v. Barr*, 617 F.3d 370, 376 (6th Cir. 2010); *accord United States v. Bierbrauer*, 936 F.2d 373, 376 (8th Cir. 1991)).  The third factor appears to be neutral insofar as there has been no showing with respect to prejudice or under-compensation to third parties, *e.g.*, the tenants of the Village Mall Property (indeed it is entirely possible a new owner may prefer that they remain).  Finally, no other interest in the property is greater than Shant's.  *Id.* at 170.  On balance, therefore, the factors do not warrant the exercise of the Court's equitable discretion to decline to decree the sale.  *Id.* (affirming the district court's decision to enter the order of sale).  Accordingly, the proposed Order of Sale submitted with the Government's Motion will be issued.

### 3.      Motion for Entry of Final Judgment Regarding Village Mall Property

As part of its Motion for Partial Summary Judgment, the Government also requests that the Court's resolution of the Village Mall Motion, including any order of sale, as well as the default judgment previously entered against Shant as to the amount of his liability ("Clerk's Judgment", ECF No. 35), be entered as a final judgment under Fed. R. Civ. P. 54(b).  The Government says it will not move to enforce its lien through sale of the Village Mall property without the Rule 54(b) certification because it anticipates prospective buyers being hesitant to purchase the property without a final order.  (Gov. Moving Br. against VSHPHH at 20.)  VSHPHH is silent on the Government's Motion for Entry of Judgment.

Federal Rule of Civil Procedure 54(b) provides a mechanism for a district court to render "final" its judgment as to fewer than all claims in a given matter.  It is understood that certification of a judgment as final under the Rule is the exception rather than the usual course before a district court.  *See Elliott v. Archdiocese of New York*, 682 F.3d 213, 220 (3d Cir. 2012).  The Rule provides, in pertinent part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed. R. Civ. P. 54(b).

A decision to certify a final decision involves two separate findings: (1) there has been a final judgment on the merits, *i.e.*, an ultimate disposition on a cognizable claim for relief; and (2) there is "no just reason for delay."  *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).  If this initial hurdle is cleared, the court must then determine that the matter is "ready for appeal . . . taking into account

judicial administrative interests as well as the equities involved." *Id*. at 8.  In making this latter determination, the district court is obligated to explain the exercise of its discretion.  *See Cemar, Inc. v. Nissan Motor Corp.*, 897 F.2d 120 (3d Cir. 1990) (dismissing appeal, vacating order, and remanding when the district court failed to explain its reason for Rule 54(b) certification).

On July 25, 2019, the Court entered default judgment against Shant for the federal income tax liabilities for the years 2002, 2003, 2004, and 2007 in the amount of $16,209,389 as of September 30, 2018, "with interest accruing after that date according to law until paid."  (Clerk's Judgment, ECF No. 35.)  The default judgment is a final judgment on the merits for the purposes of Rule 54(b) because it is an ultimate disposition of the Government's claims against Shant.  *See Dawidoicz v. Rutgers University*, Civ. No. 18-3285, 2021 WL 1720782, at *5 (D.N.J. April 29, 2021).  Likewise, the Court's decision, *supra*, to enter summary judgment on behalf of the Government with respect to VSHPHH also constitutes a final judgment because it ultimately disposes of the Government's claims against VSHPHH.

Here, there is also no "just reason for delay" in entering the partial judgment the Government seeks.  "Where the adjudicated and unadjudicated claims share significant similarities, such as involving the same parties, the same legal issues, or the same evidence, Rule 54(b) certification is disfavored." *Indivior Inc. v. Dr. Reddy's Labs. S.A.*, Civ No. 17-7111, 2020 WL 4932547, at *12 (D.N.J. Aug. 24, 20202).  While the Court understands the Third Circuit Court of Appeal's aversion to piecemeal appeals, it does not believe that delaying the instant matter any further would promote justice.  *Sussex Drug Products v. Kanasco, Ltd.*, 920 F.2d 1150, 1153 (3d Cir. 1990) ("[d]isfavoring piecemeal appeals is a long-standing policy of the federal courts").  At issue in this case are at least three properties: 572 Wyckoff Mills, 520 Navesink, and Village Mall.  (*See generally*, Gov. Moving Br. against VSHPHH, Gov. Moving Br. against Pachava.)

These three properties are all separable. They are distinct properties, whose title are held by three separate titleholders, that require separate evidence to prove ownership and tax lien attachment, that are the subject of three separate motions, that can all be sold separately.  They all also follow Shant's twenty-year evasion of taxes that have totaled over $16 million, which as the Government points out, is continuing to accrue interest.  The Government also correctly notes that the economics of this matter warrant the entry of an order of sale that is final because buyers will be more hesitant to purchase without a final order.  (*Id.*)  For these reasons, the Court will enter final judgment with respect to the foreclosure and order of sale of the Village Mall.

### C.      Wyckoff Mills Property: Motion for Order of Sale and Final Judgment

The Government moves for similar entry of an Order of Sale for the property commonly known as 572 Wyckoff Mills, Howell Township, New Jersey ("572 Wyckoff Mills").  ("Motion for Order of Wyckoff Sale", ECF No. 121.)  The Government also argues that the Default Judgments against Shant and Adelphia Water should be marked as final judgments because there is no just reason for delay.  (*Id.* at 1.)  This Motion is also unopposed.

The Government argues that under 26 U.S.C. § 7403, the United States may "direct a civil action to be filed in a district court . . . to enforce the lien" regarding federal taxes where there has been a refusal or neglect to pay them against property where the taxpayer holds "right, title, or interest."  In its Complaint, the Government alleges that Shant owned 572 Wyckoff Mills through Defendant Adelphia Water Company, Inc. (Compl. ¶ 50.)  It also asserted that Defendants Ulysses Asset Sub II, LLC ("Ulysses") and the Township of Howell may claim interests in the Property. (*Id*. ¶¶ 51–52.)

As noted above, the Court entered default judgment against Shant for $16,209,389 in unpaid federal tax liabilities for the years 2002, 2003, 2004, and 2007.  (Clerk's Judgment.)  The

Court also determined that Adelphia Water is Shant's nominee.  (ECF Nos. 112, 113.)  Thus, the Government's federal tax liens for Shant's liabilities encumber 572 Wyckoff Mills, and the Court can order the sale of the Property under 26 U.S.C. § 7403.

Further, the remaining claims as to the property have been resolved.  Former Defendant Township of Howell has been voluntarily dismissed from this matter.  ("Order of Dismissal", ECF No. 99.)  The Government and Ulysses, which are the only remaining parties that may claim an interest in 572 Wyckoff Mills, have agreed to the terms of the sale and distribution of the proceeds.  ("Stipulation", ECF No. 120.)

Using the same *Rodgers* analysis the Court used in III.B.2 *supra*, the Court will grant the Government's request for an order of sale and entry of final judgment.  To the extent that the Court has already determined that Adelphia Water is Shant's nominee implies that it was not an "innocent" third party, and the exercise of equitable discretion may not even be warranted.  *Bogart*, 715 F. App'x at 169.  Nonetheless, the application of the *Rodgers* factors once again yields the same result.  First, there is no evidence that Shant had any assets other than the properties enumerated herein that the Government could attach to satisfy the tax debt; the Government, therefore, had a strong interest in a forced sale of the property.  *Id.* (citing *United States v. Winsper*, 680 F.3d 482, 489-90 (6th Cir. 2012)).  Although the second factor would weigh against foreclosure "under normal circumstances," it is neutralized by the Court's finding that Shant participated in the transfer of the property in an attempt to frustrate the Government's efforts to collect his taxes.  *Id.* (citing *United States v. Barr*, 617 F.3d 370, 376 (6th Cir. 2010); *accord United States v. Bierbrauer*, 936 F.2d 373, 376 (8th Cir. 1991)).  Although the third factor may have originally weighed against foreclosure, the parties' stipulation to the Order of Sale neutralizes this factor as well.  *Id.* at 169–70.  Finally, no other interest in the property is greater than Shant's

interest. *Id.* at 170. On balance, therefore, the factors do not warrant the exercise of the Court's equitable discretion to decline to decree the sale. *Id.* (confirming the District Court's decision to enter the order of sale). The proposed Order of Sale submitted with the Government's Motion will therefore be entered.

The Court will also grant the Government's request for entry of final judgment pursuant to Rule 54(b) as to 572 Wyckoff Mills for the same reasons articulated for the Village Mall property.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the Court will GRANT the Government's Motion for Partial Summary Judgment against Pachava Asset Trust, GRANT the Government's Motion for Partial Summary Judgment against VSHPHH Trust, GRANT the Government's Motion for Order of Sale of the Village Mall Property, GRANT the Government's Motion for Order of Sale of the 572 Wyckoff Mills Property, DENY Pachava's Motion for Summary Judgment, DENY VSHPHH's Motion for Summary Judgment, and GRANT the Government's Rule 54(b) Motions. An appropriate Order will follow.

Date: **December 27, 2022**

<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

24